ORIGINAL

LEWIS BRISBOIS BISGAARD & SMITH LLP
ROY M. BRISBOIS, SB# 53222
brisbois@lbbslaw.com
JON KARDASSAKIS, SB#90602
kardassakis@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

Attorneys for Defendant,
AMERICAN HONDA MOTOR CO., INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TRUE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>Defendant. | CASE NO. ED CV 07-287 VAP (ORx)<br><br>**DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS [FRCP 12(b)(6), 9(b), 12(e)]**<br><br>Date:  May 14, 2007<br>Time:  10:00 a.m.<br>Courtroom:  2<br><br>Hon. Virginia A. Phillips<br><br>[Filed concurrently with Notice of Motion to Dismiss; Request for Judicial Notice] |

Defendant American Honda Motor Co., Inc. ("AHM") respectfully submits these points and authorities in support of its motion to dismiss plaintiff's Complaint.

/ / /

/ / /

/ / /

/ / /

/ / /

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1

**TABLE OF CONTENTS**

2    1.    INTRODUCTION .................................................................................... 2

3    2.    STATE LAW IS PREEMPTED WHERE ITS APPLICATION WOULD
4          STAND AS AN OBSTACLE TO THE ACCOMPLISHMENT AND
           EXECUTION OF FEDERAL OBJECTIVES ........................................... 3

5    3.    CONGRESS HAS MANDATED THAT EPA IS TO TEST FUEL
6          ECONOMY FOR ALL NEW AUTOMOBILES AND EPA MPG
           ESTIMATES SHALL BE PUBLISHED TO CONSUMERS TO USE THE
7          ESTIMATES TO COMPARE VEHICLES AND SELECT THE MOST
           FUEL EFFICIENT VEHICLES THAT MEET THEIR NEEDS ................... 5

8    4.    EACH COUNT SHOULD BE DISMISSED BECAUSE THE
9          COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A
           CLAIM UNDER CALIFORNIA LAW ..................................................... 8

10         A.    Count I Fails To State A Claim Under Business & Professions Code §
11               17200 et seq. .......................................................................... 9

12         B.    Count II Fails To State A Claim Under B&P 17500 set seq ................ 12

13         C.    Count III Fails To State A Claim Because It Depends Upon Counts I
                 And II Which Themselves Fail ...................................................... 12

14         D.    Count IV Fails To State A Claim Under Civil Code § 1750 et seq. ..... 13

15   5.    EACH OF PLAINTIFF'S CLAIMS FAIL TO COMPLY WITH THE
           PARTICULARITY REQUIREMENTS OF RULE 9(b) ......................... 13
16

17   6.    ALTERNATIVELY, RULE 12(e) APPLIES TO REQUIRE A MORE
           DEFINITE STATEMENT OF THE CLAIM ......................................... 16

18   7.    CONCLUSION .................................................................................. 18

19

20

21

22

23

24

25

26

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# TABLE OF AUTHORITIES

## State Cases

*In re Tobacco Cases II* (S147345) ........................................................... 9

*Pfizer Inc. v. Superior Court*, 45 Cal.Rptr. 3d 840 (2006) ........................ 9

## State Statutes

Cal. Business & Professions Code Section 17200............................. passim

Cal. Business & Professions Code Section 17204................................. 8, 9

Cal. Business & Professions Code Section 17500................. 2, 12, 14, 15

Cal. Business & Professions Code Section 17535............................. 8, 12

Cal. Civil Code Section 1750..................................... 2, 13, 14, 15

Cal. Civil Code Section 1770.......................................................... 15

Cal. Civil Code Section 1780.......................................................... 13

## Federal Rules of Court

F.R.C.P. Rule 9(b)............................................................ 3, 13, 14, 15

F.R.C.P. Rule 12(e)........................................................... 3, 16, 18

## Federal Cases

*Crosby v. National Foreign Trade Council*, 530 U.S. 363, 120 S.Ct. 2288, 147 L.Ed. 2d 352 (2000).......................................................... 3

*Geier v. American Honda Motor Company*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed 2d 914 (2000)....................................................... 3, 4, 5

*Hillsborough v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 105 S. Ct. 2371, 85 L.Ed.2d 714 (1985)....................................... 3

*Vess v. Ciga-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)............. 13, 14, 15, 16

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

## Federal Statutes

49 U.S.C. 32904 ............................................................................... 5

49 U.S.C. 32904(c) .......................................................................... 6

49 U.S.C. 32908(b) .......................................................................... 5

49 U.S.C. 32908(c)(3) ...................................................................... 6

## Federal Regulations

40 C.F.R. 600 ................................................................................... 6

40 C.F.R. 600.002-93(a)(18) ........................................................... 7

40 C.F.R. 600.209 (a) and (b) ......................................................... 6

40 C.F.R. 600.307-95 ...................................................................... 6

40 C.F.R. 600.307-95(a)(2)(iv) .................................................... 6, 7

40 C.F.R. 600.307-95(a)(3)(ii)(A) ................................................... 6

40 C.F.R. 600.307-95(a)(3)(ii)(B) ................................................... 6

40 C.F.R. 600.405.77 ...................................................................... 7

40 C.F.R. 600.407-08(a) .................................................................. 7

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

## 1.    INTRODUCTION

Plaintiff purports to allege against AHM four state law claims for (1) violation of California Business & Professions Code ("B&P") § 17200 et seq; (2) violation of B&P § 17500 et seq.; (3) unjust enrichment as a result of violation of B&P § 17200 et seq. and 17500 et seq.; and (4) violation of Cal. Civil Code § 1750 et seq.  The claims are all based on plaintiff's theory that it is an unlawful, unfair and/or fraudulent business practice to (accurately) advertise the Environmental Protection Agency's ("EPA") mileage per gallon ("MPG") estimates for the 2006 Honda Civic Hybrid ("HCH") because, plaintiff alleges, consumers do not achieve the EPA estimates.

Plaintiff's claims are each preempted by federal law.  Congress has expressed a clear intent that EPA MPG estimates should be disseminated to consumers so as to allow for comparisons among vehicles and "to help car buyers choose the most fuel-efficient vehicle that meets their needs."  (www.fueleconomy.gov, "Using The Fuel Economy Guide" (2006).)  Plaintiff's efforts to use state law to discourage AHM from using the EPA estimates in advertising would create an obstacle to achieving the federal objective of disseminating EPA MPG estimates to consumers.

An independent basis for this motion is that plaintiff also fails to allege viable claims under state law.  Subsequent to the passage of Proposition 64 in November 2005, California law limits suits brought under B&P § 17200 et seq. and § 17500 et seq. to persons who have read and suffered injury in fact "as a result of" allegedly false advertising.  Plaintiff omits any allegation that he read any ad before buying his 2006 HCH.  He necessarily could not have suffered injury "as a result of" an ad he did not read prior to purchasing his HCH in April 2006.  Additionally, plaintiff has not (and cannot) allege he was misled into believing AHM warranted that his driving would reproduce the EPA MPG estimates.  Plaintiff concedes AHM's ads advised "[a]ctual mileage may vary."  He also concedes, as he must, that the federally mandated fuel economy label on his car advised him "[a]ctual mileage will vary."

1   A third basis for this motion is that plaintiff's claims are grounded in fraud

2 and, therefore, must meet the particularized pleading requirements of F.R.C.P. Rule

3 9(b). Plaintiff's averments fail to meet those requirements. Stripping the deficient

4 allegations from the suit results in a failure to state a claim.

5   Alternatively, the Complaint is ambiguous and, pursuant to Rule 12(e),

6 plaintiff should be ordered to file a more definitive claim.

7 **2.**  **STATE LAW IS PREEMPTED WHERE ITS APPLICATION WOULD**

8    **STAND AS AN OBSTACLE TO THE ACCOMPLISHMENT AND**

9    **EXECUTION OF FEDERAL OBJECTIVES**

10   Congress has the power to preempt state law. Art. VI, cl. 2; *Crosby v.*

11 *National Foreign Trade Council*, 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed. 2d

12 352 (2000) ("*Crosby*").

13   The Supreme Court in *Hillsborough v. Automated Medical Laboratories, Inc.*,

14 471 U.S. 707, 712, 105 S. Ct. 2371, 85 L.Ed.2d 714 (1985) ("*Hillsborough*"),

15 identified three ways in which Congress may preempt state laws. First, Congress

16 may expressly state an intention to preempt ("express preemption"). Second,

17 Congress may preempt state law in a particular area where the scheme of federal

18 regulation is sufficiently comprehensive to create a reasonable inference that

19 Congress left no room for supplementary state regulation ("field preemption").

20 Third, state law is "nullified to the extent it actually conflicts with federal law"

21 ("implied conflict preemption"). *Hillsborough*, 471 U.S. 707, 713. This case

22 involves implied conflict preemption. State law must yield to a congressional Act

23 where "under the circumstances of [a] particular case, [the challenged state law]

24 stands as an obstacle to the accomplishment and execution of the full purposes and

25 objectives of Congress." *Crosby* at 373, citing *Hines v. Davidowitz*, 312 U.S. 52, 67,

26 61 S.Ct. 399, 85 L.Ed. 581 (1941).

27   In *Geier v. American Honda Motor Company*, 529 U.S. 861, 881, 120 S.Ct.

28 1913, 146 L.Ed 2d 914 (2000) ("*Geier*"), the Supreme Court held that state law is

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1   preempted where it would stand "as an obstacle to the accomplishment and

2   execution of" federal objectives as evidenced by federal statutes and regulations

3   applicable to motor vehicles.  While driving a Honda Accord, Geier collided with a

4   tree and was seriously injured.  Geier sued American Honda Motor Company, Inc.

5   under District of Columbia tort law, claiming the car was negligently and

6   defectively designed because it lacked an airbag.  The District Court dismissed the

7   suit because a Federal Motor Vehicle Safety Standard promulgated by the

8   Department of Transportation ("DOT") under the authority of the National Traffic

9   and Motor Vehicle Safety Act of 1966, FMVSS 208, gave car manufacturers a

10  choice as to whether to install airbags or other methods of passenger restraint.  Geier

11  sought to apply tort law to effectively establish a new standard – install airbags or

12  face liability – which would impede the federal objective of giving manufacturers a

13  choice.  The Court of Appeals affirmed, holding that because the "state-law tort

14  claims posed an obstacle to the accomplishment of FMVSS 208's objectives," it

15  conflicted with FMVSS and was preempted.  *Geier*, 529 U.S. 861, 866.

16      The Supreme Court affirmed.  The Supreme Court explained that the Safety

17  Act did not expressly preempt the claim (i.e., there was no language in the federal

18  Act expressly saying state law in the area was preempted) but a federal safety

19  standard will nonetheless preempt a state common-law tort action with which it

20  conflicts, and "a common-law 'no airbag' action like the one before us actually

21  conflicts with FMVSS." *Geier* at 874.  Geier argued there was no conflict because

22  as far as FMVSS 208 was concerned, the more airbags, and the sooner, the better.

23  But DOT's comments made clear the standard provided manufacturers a range of

24  choices, which would bring about a mix of different devices for passenger restraint

25  introduced gradually over time and "thereby lower costs, overcome technical safety

26  problems, encourage technological developments, and win wide-spread consumer

27  acceptance – all of which would promote FMVSS 208's safety objectives." *Geier*

28  at 875.  Geier's tort suit depended upon a claim that manufacturers had a duty to

install airbags. *Geier* at 881. "Because the rule of law for which petitioners contend would have stood 'as an obstacle to the accomplishment and execution of' the important means-related federal objectives that we have just discussed, it is preempted." *Geier* at 881.

**3.     CONGRESS HAS MANDATED THAT EPA IS TO TEST FUEL ECONOMY FOR ALL NEW AUTOMOBILES AND EPA MPG ESTIMATES SHALL BE PUBLISHED TO CONSUMERS TO USE THE ESTIMATES TO COMPARE VEHICLES AND SELECT THE MOST FUEL EFFICIENT VEHICLES THAT MEET THEIR NEEDS**

The Energy Policy and Conservation Act of 1975 ("EPCA") established a requirement that fuel economy information, designed for public use, in the form of fuel economy labels posted on window stickers of all new motor vehicles be made available to the public and required the publication of an annual booklet of fuel economy information. See P.L. 94-163. EPA is responsible for establishing the test methods and calculation procedures for determining the fuel economy estimates to be posted on the window stickers and in the annual booklet (now named the "Fuel Economy Guide"). 49 U.S.C. 32904 provides:

> (a)(1)  The Administrator of the Environmental Protection Agency shall calculate the average fuel economy of a manufacturer . . . in a way prescribed by the Administrator; and . . .

> (c)  Testing and Calculation Procedures – the Administrator [of the Environmental Protection Agency] shall measure fuel economy for each model and calculate average fuel economy for a manufacturer under testing and calculation procedures prescribed by the Administrator . . . .

49 U.S.C. 32908(b) provides: ". . . a manufacturer of automobiles shall attach a label

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  to a prominent place on each automobile . . . . The label shall contain the following
2  information: (A) the fuel economy of the automobile . . . ."

3       EPA published regulations implementing portions of the EPCA in 1976.
4  These regulations are codified at 40 C.F.R. Part 600 and have been updated. The
5  regulations mandate the format and the content of the fuel economy label that must
6  be affixed to a new motor vehicle. See, for example, 40 C.F.R. 600.307-95. The
7  regulations require fuel economy estimates for "CITY MPG" and "HIGHWAY
8  MPG" calculated in accordance with 40 C.F.R. 600.209 (a) and (b). 40 C.F.R.
9  600.307-95.

10       Congress and the EPA have considered that MPG actually achieved by
11  consumers can vary and, to address this concern, the regulations mandate that the
12  fuel economy label on every new car sold state, "Actual mileage will vary with
13  options, driving conditions, driving habits and [vehicle's/truck's] condition. Results
14  reported to EPA indicate that the majority of [vehicles/trucks] with these estimates
15  will achieve between __ and __ in the city, and between __ and __ on the highway."
16  40 C.F.R. 600.307-95(a)(3)(ii)(A). The regulations require that "The range values
17  for this statement are to be calculated in accordance with the following: (1) The
18  lower range values shall be determined by multiplying the city and highway
19  estimates by 0.85, then rounding to the next lower integer value. (2) The upper range
20  values shall be determined by multiplying the city and highway estimates by 1.15
21  and rounding to the next higher integer value." 40 C.F.R. 600.307-95(a)(3)(ii)(B).
22  The regulations mandate that the label include the statement, "Compare this
23  [vehicle/truck] to others in the FREE FUEL ECONOMY GUIDE available at the
24  dealer." 40 C.F.R. 600.307-95(a)(2)(iv).

25       Congress' intent that EPA MPG estimates should be widely disseminated to
26  consumers is further demonstrated by Congress' direction that DOE shall publish
27  and distribute the annual fuel economy information. 49 U.S.C. 32908(c)(3).
28  Pursuant to the regulations in effect in 2006, dealers were required to prominently

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  display booklets containing the EPA's MPG estimates without charge and in
2  sufficient quantity to be available for retention by each prospective purchaser.  40
3  C.F.R. 600.405.77.  ("Dealers" was defined to include any person engaged in the
4  sale or distribution of new automobiles to the ultimate purchaser.  40 C.F.R.
5  600.002-93(a)(18).)  Dealers were required to display these booklets in the same
6  manner used to display brochures describing the automobiles.  40 C.F.R.
7  600.405.77.  Currently automobile dealers are required to make the booklet
8  available either by providing printed copies of the annual Fuel Economy Guide
9  published by DOE or by displaying the Fuel Economy Guide on a computer that is
10  linked to the electronic version of the Fuel Economy Guide available at
11  http://www.fueleconomy.gov, or a booklet approved by EPA containing the same
12  information with highlight of the dealer's product line.  40 C.F.R. 600.407-08(a).
13  This comprehensive federal scheme evidences a federal objective that EPA city
14  MPG and highway MPG estimates, determined according to the EPA's test method,
15  shall be distributed to consumers so that they can use the EPA estimates for
16  comparison among various vehicles.  See 40 C.F.R. 600.307.95(a)(2)(iv).
17       DOE's "2006 Fuel Economy Guide" confirms that when AHM represented the
18  EPA's MPG estimates for the 2006 Honda Civic Hybrid as 49 MPG City, 51 MPH
19  Highway, this was an accurate and truthful statement.  (See
20  http://www.fueleconomy.gov/feg/FEG2006.pdf.  For the court's convenience, a
21  print copy of the 2006 Fuel Economy Guide is filed with this motion as Exhibit 1.)
22  Plaintiff concedes, "The fuel economy numbers that Honda *advertised* in print, TV,
23  and on the Worldwide Web for the HCH are those measured pursuant to the EPA
24  laboratory testing methods."  (Complaint, ¶ 17.)
25       DOE's "2006 FUEL ECONOMY GUIDE" further confirms that the reason
26  EPA MPG estimates numbers are to be published is "to help car buyers choose the
27  most fuel-efficient vehicle that meets their needs."  (http://www.fueleconomy.gov/
28  feg/FEG2006.pdf, "Using The Fuel Economy Guide.")

4830-6248-0129.3                               7

1    Plaintiff characterizes the EPA MPG estimates for the HCH as "false
2  statements of its fuel efficiency" and seeks to impose liability based on that premise.
3  Plaintiff's claims are all based on the core allegation that "Honda advertised the
4  HCH with false statements of its fuel efficiency and the cost savings realizable from
5  its purchase, specifically advertising remarkable overall efficiency of 49-50 miles
6  per gallon ("MPH") when Honda knew, or by the exercise of reasonable care should
7  have known, but omitted to state such statements were untrue, deceptive, or
8  materially misleading . . . ."  (Complaint, ¶ 4.)

9    Plain and simple, federal statutes and regulations required AHM to publish the
10  official EPA MPG estimates to consumers so that they will use the EPA MPG
11  estimates to compare vehicles and purchase more fuel efficient vehicles.  Plaintiff's
12  efforts to use California law to impose multi-million dollar liability on AHM because
13  it advanced the federal objectives by complying with federal statutes and regulations
14  and accurately disseminated the EPA's MPG estimates for the Honda Civic Hybrid
15  in the fuel economy label affixed to the vehicle and in other advertising and
16  marketing materials must fail.  Discouraging AHM from using the EPA MPG
17  estimates in advertising and marketing would undercut the federal objective of
18  widely publishing the EPA MPG estimates so that consumers will use the MPG
19  estimates in selecting the most fuel efficient vehicle that meets their needs.  If
20  California law were allowed to impose liability on AHM here, it would necessarily
21  be an obstacle to achieving federal objectives.  It is, therefore, preempted.  On this
22  basis, each and every one of plaintiff's claims must be dismissed.

23  **4.    EACH COUNT SHOULD BE DISMISSED BECAUSE THE**
24  **COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE**
25  **A CLAIM UNDER CALIFORNIA LAW**

26    In 2005, California voters approved Proposition 64, which made substantive
27  changes in B&P §§ 17204 and 17535, among other provisions.  Proposition 64
28  found and declared:

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1   These unfair competition laws are being misused by some

2   private attorneys who:

3   (1) File frivolous lawsuits as a means of generating

4   attorney's fees without creating a corresponding public

5   benefit.

6   (2) File lawsuits where no client has been injured in fact.

7   (3) File lawsuits for clients who have not . . . viewed the

8   defendant's advertising . . . .

9   (Proposition 64, Section 1(b)(1),(2) and (3).)

10   **A.    Count I Fails To State A Claim Under Business & Professions Code**

11   **§ 17200 et seq.**

12   Proposition 64 was designed to preclude exactly this type of suit.  Proposition

13   64 revised B&P § 17204 to prohibit suits by persons other than the Attorney General

14   or district attorneys or a person "who has suffered injury in fact and has lost money

15   or property <u>as a result of</u> such unfair competition."  Proposition 64 changed

16   California law so that a private party plaintiff cannot allege a viable claim simply by

17   alleging a defendant published false or misleading advertising.  California law now

18   limits protection under B&P 17200 et seq. to a person who has actually read an

19   allegedly misleading advertisement and has suffered injury in fact "as a result of"

20   the ad, in other words, detrimentally relied on and was actually mislead by the ad.[1]

21

22

23   [1] This issue is currently before the California Supreme Court.  In *Pfizer Inc. v.*
*Superior Court*, 45 Cal.Rptr. 3d 840 (2006), a California Court of Appeal reversed an

24   order certifying a class of "all persons who purchased Listerine in California"
between certain dates in a suit alleging violation of B&P 17200 et seq. and B&P §

25   17500 et seq. on the basis of allegedly false advertising.  The Court of Appeal held

26   Prop. 64 changed the law so that plaintiffs "must have purchased the Listerine in

27   reliance on the allegedly false or misleading representations and as a result suffered
injury."  The California Supreme Court granted review and ordered briefing deferred

28   pending decision in *In re Tobacco Cases II* (S147345) which includes similar issues

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1    The Complaint alleges Honda's advertisements "were communicated to every

2    consumer who purchased an HCH from Defendant during the Class Period."

3    (Complaint, ¶ 5.)  But notably plaintiff omits any claim that he read any ads, much

4    less all AHM ads, before he purchased his vehicle.  Just as significantly, plaintiff

5    does not allege he believed as a result of reading the ads that he would achieve 49

6    MPG city or 51 MPG highway if he bought a 2006 HCH.  Nor could he reasonably

7    make that claim.  It is well publicized and a matter of common knowledge that:

8              Your vehicle's fuel economy will almost certainly vary from

9              EPA's fuel economy rating.

10             Fuel economy is not a fixed number, it varies based on

11         •        Where you drive

12         •        How you drive

13         •        Many other factors

14   (See http://fueleconomy.gov/feg/why__differ.shtml.  This site can easily be accessed

15   by going to fueleconomy.gov and clicking on "Why Your MPG Will Vary."  For the

16   Court's convenience, a printed copy of "Why Your MPG Will Vary" is filed with

17   this motion as Exhibit 2.)  DOE's website "fueleconomy.gov" also includes a

18   function allowing consumers to report their actual mileage.  (At "fueleconomy.gov"

19   click on "MPG Estimates From Users . . .")  The reports on this official government

20   website are that for the 2006 Honda Civic Hybrid, 71 vehicles reported Average User

21   MPG of 45.7 with some consumers reporting mileage as high as 61 MPG.  (See

22   http://www.fueleconomy.gov/mpg/MPG.do?action=browselist2&make=Honda&mo

23   del=Civic%20Hybrid.  For the Court's convenience, a printed copy is filed with this

24   motion as Exhibit 3.)  In short, some consumers get more than the EPA MPG

25   estimates.  Some get less.  The consumers who get the same or more MPG than the

26   _____

27   as to whether every member of a class must have actually relied on the

28   manufacturer's representations.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  EPA estimates obviously cannot have suffered any "injury in fact." As to consumers
2  who get less than the EPA estimates, the federal government is aware of this.

3     None of AHM's ads represent that any particular consumer will achieve the
4  EPA estimates. Plaintiff concedes AHM's ads advise "actual mileage may vary."
5  (Complaint, ¶ 19.) The fuel economy label on his car communicated to him,
6  "Actual mileage will vary with options, driving conditions, driving habits, and
7  [vehicle] condition . . . ." (Complaint, ¶16.) It is common knowledge that many
8  factors affect fuel economy and individual's MPG can vary. (See, Exhibit 2, DOE's
9  publication "Why Your MPG Will Vary.") Because plaintiff cannot dispute this, as
10  a matter of law, he can not establish he suffered injury "as a result of" what he
11  attempts to characterize as "false" advertising.

12     In an effort at artful pleading, the Complaint alleges "Honda's
13  misrepresentations of the HCH's fuel economy" were "a substantial factor, if not the
14  controlling factor, in inducing Plaintiff . . . to purchase the HCH." (Complaint, ¶ 5).
15  That cannot give rise to liability. It is a federal objective that EPA's MPG estimates
16  are to be a substantial factor in selecting vehicles. Moreover, alleging EPA's MPG
17  estimates were "a substantial factor" is not the same as an allegation that this
18  plaintiff (or any other consumer) reasonably believed AHM warranted his mileage.
19  He does not allege AHM communicated to him, or that he believed, he would
20  achieve 49 MPG City or 51 MPG Highway. He fails to state a viable claim..

21     For these reasons, plaintiff fails to state a claim under Cal. B&P Code 17200 et
22  seq. Count 1 must be dismissed.[2]

23  _____

24  [2] Plaintiff has filed this as a class action Complaint. AHM anticipates addressing at a
25  subsequent stage of this litigation, if necessary, the fact that this suit could not
   possibly be certified as a viable class action. Under California law, any plaintiff and
26  every class member making a claim under B&P §§ 17200 and 17500 would have to
27  identify the particular advertisements he or she saw and would have to demonstrate
   that they were misled by the ad. There is no longer any rule in California that it could
28  just be assumed that all class members saw and relied on some advertisement that was

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

**B.    Count II Fails To State A Claim Under B&P 17500 set seq.**

Proposition 64 similarly amended B&P § 17535 so a suit by a private plaintiff may only be brought by one "who has suffered injury in fact and has lost money or property <u>as a result of</u> a violation of this chapter." B&P § 17535, emphasis added. Plaintiff attempts to circumvent this restriction by his broad-brush allegation that AHM's advertisements "were communicated to every consumer who purchased an HCH from Defendant during the Class period," and were "a substantial factor, if not the controlling factor, in inducing Plaintiff and each member of the Class to purchase the HCH." (Complaint, ¶ 5.) But as discussed above, his allegations are legally insufficient. Plaintiff does not allege which, if any, ads he read before he purchased his car in April 2006. Also, as a matter of law, he cannot claim he reasonably relied on the EPA MPG estimates but ignored the fuel economy label statement that "actual mileage will vary" or the other ads statements that "actual mileage may vary." Nor does he dispute that it is well publicized and well known that MPG can vary.

Accordingly, plaintiff's second count fails to state a claim under B&P Code § 17500 et seq. and must be dismissed.

**C.    Count III Fails To State A Claim Because It Depends Upon Counts I And II Which Themselves Fail**

Count III does not set forth any new facts or allege violation of another statute or violation of common law. It simply incorporates by reference the allegations made in the counts I and II and, on that basis, alleges "Defendant will be unjustly enriched unless ordered to disgorge" profits defendant reaped. (Complaint,

publicly available. These individualized fact questions preclude treatment of these claims on a class basis. Additionally, to show "actual injury in fact" each class member would have to provide evidence of their actual MPG. No one who achieved MPG equal to or greater than the EPA estimates could show actual injury.

1  ¶47.)  Because the counts incorporated by reference fail to state a claim, so does

2  Count III.

3    **D.    Count IV Fails To State A Claim Under Civil Code § 1750 et seq.**

4  Civil Code § 1780 provides:

5         Any consumer who suffers any damages <u>as a result of</u> the

6         use or employment by any person of a method, act, or

7         practice declared to be unlawful by Section 1770 may bring

8         an action . . . . (Emphasis added.)

9  The "as a result of" language imposes the same requirement discussed above

10  that plaintiff must have seen the ads and reasonably and detrimentally relied on

11  something that was misrepresented.  Plaintiff's failure to allege he saw any ads

12  before he bought his car and/or detrimentally relied on something misrepresented or

13  falsely advertised, means he has not alleged a viable claim.  Nor can he allege such a

14  claim since it is common knowledge that not everyone gets the same mileage and

15  both government publications and private ads remind that "your mileage will [or

16  may] vary."  Count IV must be dismissed.

17  **5.    EACH OF PLAINTIFF'S CLAIMS FAIL TO COMPLY WITH THE**

18      **PARTICULARITY REQUIREMENTS OF RULE 9(b)**

19  Federal Rule of Civil Procedure 9(b) provides, in pertinent part:

20         In all averments of fraud or mistake, the circumstances

21         constituting fraud or mistake shall be stated with

22         particularity . . . .

23  "Averments of fraud must be accompanied by 'the who, what, when, where, and

24  how' of the misconduct charged."  *Vess v. Ciga-Geigy Corp. USA,* 317 F.3d 1097,

25  1106 (9th Cir. 2003) *("Vess")*.  Rule 9(b) applies to each of the claims plaintiff

26  purports to plead because they each are "grounded in fraud."

27  In *Vess,* Vess brought a diversity class action alleging the defendants acted

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  illegally to increase sales of the drug Ritalin, in violation of the California Legal
2  Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq. and Cal. B&P §§ 17200
3  and 17500.  Vess' complaint alleged the defendants conspired to, among other
4  things, "fraudulently and falsely" represent that the diagnostic criteria for ADD in the
5  Diagnostic and Statistical Manual were scientifically reliable and "in an effort to
6  cover up this fraud" one defendant improperly clustered data.  The District Court
7  dismissed the complaint based on its failure to plead fraud with particularity as
8  required by Rule 9(b).

9      Vess argued on appeal that Rule 9(b) did not apply to his state law statutory
10 claims.  The Ninth Circuit disagreed: "It is established law in this circuit and
11 elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of
12 action."  *Vess* at 1103.  "Vess is correct that fraud is not an essential element of
13 California statutes on which he relies.  (Citation omitted.)  But he is not correct in
14 concluding that his averments of fraud therefore escape the requirements of the rule."
15 *Vess* at 1103.  As the Ninth Circuit explained:

16           In cases where fraud is not a necessary element of a claim, a
17           plaintiff may choose nonetheless to allege in the complaint
18           that the defendant has engaged in fraudulent conduct.  In
19           some cases, the plaintiff may allege a unified course of
20           fraudulent conduct and rely entirely on that course of
21           conduct as the basis of a claim.  In that event, the claim is
22           said to be "grounded in fraud" or to "sound in fraud," and
23           the pleading in that claim as a whole must satisfy the
24           particularity requirement of Rule 9(b).  (Citations omitted.)

25 *Vess* at 1103-1104.  The Court recognized that a plaintiff may choose not to allege a
26 unified course of fraudulent conduct in support of a claim, but rather to allege some
27 fraudulent and some non-fraudulent conduct.  In that event, only the allegations of
28 fraud are subject to Rule 9(b)'s heightened pleading requirements.  Rule 9(b)'s

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1   heightened pleading requirements will apply to any averment of fraud supporting the

2   claim. *Vess* at 1104.

3        "If particular averments of fraud are insufficiently pled under Rule 9(b), a

4   district court should 'disregard' those averments, or 'strip' them from the claim.  The

5   court should then examine the allegations that remained to determine whether they

6   state a claim." *Vess* at 1105.  Much like this suit, Vess purported to plead claims

7   under Cal. Civil Code § 1770 and B&P §§ 17200 and 17500.  The Ninth Circuit held,

8   "To the extent that Vess alleges fraud, his allegations should be 'disregarded,'

9   (citation omitted), or 'stripped from the claim,' (citation omitted), for failure to

10  satisfy Rule 9(b)." *Vess* at 1105.

11       The Complaint here "narrowly focuses on the use of false and deceptive

12  advertising by Defendant to sell the HCH [Honda Civic Hybrid]." (Complaint, ¶ 2.)

13  Count I purports to allege violation of B&P § 17200 et seq. and is premised upon

14  plaintiff's allegations that AHM disseminated or caused to be disseminated

15  "deceptive, untrue, or misleading advertising." (Complaint, ¶ 34.)  Count II purports

16  to allege violation of B&P § 17500 et seq. and alleges "Defendant disseminated or

17  caused to be disseminated the materially untrue and misleading or omissive

18  advertising described in this Complaint with the intent to directly or indirectly induce

19  Plaintiff and members of the Class to purchase the HCH." (Complaint, ¶ 41.)  Count

20  III purports to be "for unjust enrichment against defendant for violations alleged in

21  Counts I and II." (Complaint, p. 2, lines 5-6.)  Count IV purports to plead violation

22  of California Civil Code 1750 et seq. and is premised on claims of false advertising.

23  Simply put, the claims asserted are exclusively grounded in fraud and are, therefore,

24  subject to the heightened pleading requirements or Rule 9(b).

25       As the Ninth Circuit held in *Vess*, "averments of fraud must be accompanied

26  by 'the who, what, when, where, and how' of the misconduct charged. (Citation

27  omitted.)" *Vess* at 1106.  The Complaint alleges who, but fails to allege "what,

28  when, where, and how."  These averments of fraud must, therefore, be "stripped from

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  claim" and "disregarded." *Vess* at 1105.  Once they are stripped and disregarded, the

2  Complaint is devoid of facts and should, therefore, be dismissed.

3  **6.   ALTERNATIVELY, RULE 12(e) APPLIES TO REQUIRE A**

4  **MORE DEFINITE STATEMENT OF THE CLAIM**

5  F.R.C.P. 12(e) provides:

6  > If a pleading to which a responsive pleading is permitted is so

7  > vague or ambiguous that a party cannot reasonably be

8  > required to frame a responsive pleading, the party may move

9  > for a more definite statement before interposing a responsive

10 > pleading.  The motion shall point out the defects complained

11 > of and the details desired.  If the motion is granted and the

12 > order of the court is not obeyed within 10 days after notice of

13 > the order or within such other time as the court may fix, the

14 > court may strike the pleading to which the motion was

15 > directed or make such order as it deems just.

16 Plaintiff's Complaint is, at best, vague as to what ads plaintiff actually read

17 and when, what the ads (taken as a whole, as opposed to taking a single phrase or

18 sentence out of context) communicated, and how plaintiff could have been misled (if,

19 in fact, he claims he really was misled) since it is well know that many factors cause

20 MPG to vary and AHM did not warrant this plaintiff would achieve any particular

21 result.

22 The Complaint alleges AHM purchased two page advertisements making

23 claims about the HCH in *Time*, *Newsweek* and other large national publications since

24 at least 2003 through November 2006.  (Complaint, ¶ 20a.)  The Complaint does not

25 allege the particulars of these ads, or even what, if anything, they said that plaintiff

26 believes was false and misleading, except that "One such advertisement makes the

27 following assertion about the HCH, '[w]ith up to 650 miles to every tank of gas, its

28 America's fuel economy marvel.'  Advertisement *Time*, November 24, 2003."

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1   (Complaint, ¶ 20A.)  The Complaint does not allege what is false or misleading about

2   this statement.  If the claim is that the description of the Hybrid Civic as "America's

3   fuel economy marvel" is false, the Complaint needs to say that so we can test

4   whether that is a statement of fact, or mere puffing, which is not actionable.  If

5   plaintiff claims the falsity lies in the statement that the HCH will get "up to 650 miles

6   to every tank of gas," he needs to allege that.  Similarly, that paragraph alleges that

7   another ad states Honda is "The most fuel-efficient auto company in America . . . like

8   the 2006 50 MPG Civic Hybrid."  But the Complaint does not specify what, if

9   anything, about this ad plaintiff claims is false.  Also, the Complaint alleges this

10  advertisement in *Time* was published on October 2, 2006.  Plaintiff alleges he

11  purchased his HCH on April 16, 2006. (Complaint, ¶ 9.)  He could not possibly have

12  been induced to buy his car in April based on an ad that was not published until more

13  than five months later.

14    The Complaint refers to a "mainstay ad for the HCH on Honda's website

15  for months, if not years" (Complaint, ¶ 20b), but does not allege when, if ever,

16  he saw it, or what he alleges was false about anything said on the website.  The

17  Complaint does say the website referred "to the 49/51 city highway EPA

18  estimated fuel economy. . ." and states "actual mileage may vary."

19  (Complaint, ¶ 20b.)  But plaintiff admits 49/51 is a correct statement of the

20  EPA MPG estimates.  He admits the website said, "actual mileage may vary."

21  This is a true statement.  His allegations should explain how this could support

22  a claim of false advertising.

23    The Complaint alleges Honda's website "leads perspective HCH purchasers

24  to Calculate The Fuel Savings," without stating whether he did this, when or how.

25  (Complaint, ¶ 20c.)  The Complaint does not state what it is about this that he

26  contends is false or misleading.  He concedes that the ads include a reference to the

27  EPA testing and the caution "actual mileage *may vary*."

28    The Complaint refers to a brochure for the 2007 HCH.  (Complaint, ¶ 20d.)

1  Given his allegation that he purchased his vehicle on April 16, 2006, how could he
2  have been misled by a brochure published long after he bought his car?
3  Additionally, as he describes the brochure, it has a specific reference to the EPA
4  estimates. (Complaint, ¶ 20d.)  The Complaint fails to give AHM (and the Court)
5  fair notice of what exactly he alleges is the problem.

6      In enacting Proposition 64, it was the intention of California voters to protect
7  defendants from incurring substantial legal fees in defending suits of this sort.  The
8  suit should be dismissed now.  If for any reason the suit is not dismissed, the Court
9  should order, pursuant to Rule 12(e), that plaintiff file an amended complaint which
10 eliminates the ambiguity.

11 **7.     CONCLUSION**

12     American Honda Motor Co. Inc. respectfully submits that the Court should
13 dismiss each and every count for the reasons stated above.  If the Court declines to
14 dismiss, it should order plaintiff to file a more definite statement.

16 Dated:  April 19, 2007          LEWIS BRISBOIS BISGAARD & SMITH LLP

19      By: _____
20          ROY M. BRISBOIS
            JON KARDASSAKIS
21          Attorneys for Defendant
22          AMERICAN HONDA MOTOR
            CO., INC.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# PROOF OF SERVICE

Case Name: JOHN TRUE v. AMERICAN HONDA MOTOR CO., INC.

STATE OF CALIFORNIA         )
                          ) ss.
COUNTY OF LOS ANGELES    )

     I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and not a party to the within action; my business address is: 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012.

     On April 19, 2007, I served the following described as **DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS [FRCP 12(b)(6), 9(b), 12(e)]** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

## [SEE ATTACHED SERVICE LIST]

[X]    **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence by mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **(BY TELECOPY)** I caused such document to be delivered by telecopy transmission to the offices of the addressee.

[ ]    **(BY FEDERAL EXPRESS)** I caused such envelope to be delivered by Federal Express to the offices of the addressee.

[ X ]    **(FEDERAL)** I declare that I am employed in the offices of a member of this court at whose direction the service was made.

     Executed on April 19, 2007, at Los Angeles, California.

Susan Tarbouche

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

4837-8573-6193.1

1

## SERVICE LIST

2

3

4   Maxwell M. Blecher                Attorneys for Plaintiff
Blecher & Collins, P.C.           **JOHN TRUE**

5   515 South Figueroa Street, 17th Floor

6   Los Angeles, CA 90071-3334
Tel: (213) 622-4222

7   Fax: (213) 622-1656

8

9   Jon Tostrud                     Attorneys for Plaintiff
Cuneo Gilbert & Laduca, LLP     **JOHN TRUE.**

10   1801 Century Park East, Suite 2400
Los Angeles, CA 90067

11   Tel:  (310) 418-8262

12   Fax:  (310) 556-9622

13   Jonathan W. Cuneo             Attorneys for Plaintiff
William H. Anderson           **JOHN TRUE**

14   Cuneo Gilbert & Laduca LLP

15   507 C Street, NE
Washington, D.C. 20002

16

17   Nicholas E. Chimicles         Attorneys for Plaintiff
Michael D. Gottsch           **JOHN TRUE**

18   Denise Davis Schwartzman

19   Chimicles & Tikellis LLP
361 West Lancaster Avenue

20   Haverford, Pennsylvania 19041

21

22

23

24

25

26

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

4837-8573-6193.1