

1   BLECHER & COLLINS, PC
    MAXWELL M. BLECHER (SB # 26202)
2   515 South Figueroa Street, 17th Floor
3   Los Angeles, California 90071
    Telephone: (213) 622-4222
4   Facsimile: (213) 622-1656
    E-mail: mblecher@blechercollins.com
5
    CUNEO GILBERT & LADUCA, LLP
6   JON TOSTRUD (SB # 199502)
7   1801 Century Park East, Suite 2400
    Los Angeles, CA 90067
8   Telephone: (310) 418-8262
    Facsímile: (310) 556-9622
9   E-mail: tostrud@yahoo.com

10  JONATHAN W. CUNEO (pro hac vice)
11  WILLIAM H. ANDERSON (pro hac vice)
    CUNEO GILBERT & LADUCA LLP
12  507 C Street, NE
    Washington, DC 20002
13
14  NICHOLAS E. CHIMICLES
    MICHAEL D. GOTTSCH
15  DENISE DAVIS SCHWARTZMAN (pro hac vice)
    CHIMICLES & TIKELLIS LLP
16  361 West Lancaster Avenue
    Haverford, PA 19041
17
18  Attorneys for Plaintiff

19              UNITED STATES DISTRICT COURT

20         FOR THE CENTRAL DISTRICT OF CALIFORNIA

21                   EASTERN DIVISION

22  JOHN TRUE, Individually and On Behalf    ) CASE NO. ED CV 07-287 VAP (OPx)
23  All Others Similarly Situated,           )
                                             ) PLAINTIFF'S OPPOSITION TO
24              Plaintiff,                    ) DEFENDANT'S MOTION TO
                                             ) DISMISS COMPLAINT
25       v.                                   )
                                             ) Hon. Virginia A. Phillips
26  AMERICAN  HONDA MOTOR CO., INC.,         ) Date: June 18, 2007
                                             ) Time: 10:00 A.M.
27              Defendant.                    ) Courtroom: 2
28  _____ )

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PLAINTIFF'S CLAIMS UNDER THE CALIFORNIA FALSE
      ADVERTISING LAW, UNFAIR COMPETITION LAW AND CONSUMER
      LEGAL REMEDIES ACT ARE NOT PREEMPTED BY THE FEDERAL
      ENERGY POLICY AND CONSERVATION ACT . . . . . . . . . . . . . . . . . . . 2

      A.    There is No Express or Implied Congressional Intention in the EPCA
            to Preempt California's Laws Prohibiting Unfair and Deceptive
            Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            1.    Honda fails to demonstrate any express preemption of the
                  State Claims in the EPCA . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            2.    Honda fails to demonstrate any implied Congressional intent
                  to preempt the State Claims in the EPCA . . . . . . . . . . . . . . . 4

            3.    Defendant ignores the presumption against preemption . . . . . . . 7

      B.    Honda Has Provided No Support for Its Assertion That State Tort Law
            Liability for False Advertising Would Discourage Compliance with the
            EPCA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    Defendant's Reliance on *Geier v. American Honda Motor Co.*,
            529 U.S. 861 (2000), Is Misplaced . . . . . . . . . . . . . . . . . . . . . . . . 8

III.  PLAINTIFF'S CLAIMS ARE LEGALLY SUFFICIENT TO STATE A CLAIM
      FOR RELIEF UNDER CALIFORNIA LAW . . . . . . . . . . . . . . . . . . . . . . . 9

      A.    *Annunziato v. eMachines* Holds that Reliance Is Not Required
            to Plead Claims Under the UCL and FAL . . . . . . . . . . . . . . . . . . . . 10

      B.    Plaintiff's Claim Is Consistent with the Language and Stated Goals
            of Prop. 64 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      C.    Plaintiff's Unjust Enrichment Claim Under Count III Is Properly
            Before the Court Because Counts I and II State a Claim . . . . . . . . . 13

      D.    Count IV States a Claim Under Civil Code § 1750 *et seq.* Because
            No Reliance Is Required for a Material Misrepresentation Under
            That Statue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.   PLAINTIFF HAS PLEADED HIS CLAIMS WITH SUFFICIENT
      PARTICULARITY TO SATISFY RULE 9(b) . . . . . . . . . . . . . . . . . . . . . . 15

i

V.    PLAINTIFF HAS SATISFIED RULE 12(e) ........................... 16

VI.   CONCLUSION ............................................... 17

**TABLE OF AUTHORITIES**

### State Cases

Caro v. Proctor & Gamble, Co.,
    18 Cal. App.4th 644 (1993) .......................................... 14

Occidental Land, Inc. v. Superior Court,
    18 Cal.3d 355 (1976) ............................................... 14

Pfizer v. Superior Court,
    141 Cal. App. 4th 290, 45 Cal. Rptr.3d 840 (2006) ..................... 9

Vasquez v. Superior Court,
    18 Cal.3d 800 (1971) ............................................... 14

Wilens v. TD Waterhouse Group, Inc.,
    120 Cal. App. 4th 746 (2004) ....................................... 14

### State Statutes

Cal. Business and Professions Code Section 17200 et seq. ................. 2

Cal. Business and Professions Code Section 17204 ....................... 10

Cal. Business and Professions Code Section 17500 et seq. ................. 2

Cal. Business and Professions Code Section 17535 ....................... 10

Cal. Civil Code Section 1750 et seq. ................................. 2, 14

### Federal Cases

Anunziato v. eMachines,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ........................... 10, 11

Bly-Magee v. California,
    236 F.3d 1014 (2001) ............................................... 15

Cal. Coastal Comm'n v. Granite Rock Co.,
    480 U.S. 572 (1987) ............................................... 5, 8

Crosby v. National Foreign Trade Council,
    530 U.S. 363 (2000) ............................................... 4, 5

Decker v. Glenfed, Inc.,
    42 F.3d 1541 (9th Cir. 1994) ....................................... 15

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Printed on Recycled Paper

*Florida Lime & Avocado Growers, Inc. v. Paul,*
    373 U.S. 132 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Geier v. American Honda Motor Co.,*
    529 U.S. 861 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Hillsborough County, Florida v. Automated Med. Labs.,*
    471 U.S. 707 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hines v. Davidowitz,*
    12 U.S. 52 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lorillard Tobacco Co. v. Reilly,*
    533 U.S. 525 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Medtronic, Inc. v. Lohr,*
    518 U.S. 470 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Metrophones Telecomm. v. Global Crossing Telecomm.,*
    423 F.3d 1056 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Oxygenated Fuels Assoc. Inc. v. Davis,*
    331 F.3d 665 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Rice v. Santa Fe Elevator Corp.,*
    331 U.S. 218 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Skysign Int'l, Inc. v. City and County of Honolulu,*
    276 F.3d 1109 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Locke,*
    529 U.S. 89 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Vess v. Ciga-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

## **Federal Statutes**

49 U.S.C. § 32901 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

49 U.S.C. § 32908 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

49 U.S.C. § 32919 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

49 U.S.C. § 32919(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

*Printed on Recycled Paper*

1

## Federal Regulations

2

40 C.F.R. § 600.307-95(A)(3)(ii)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

3

49 Fed. Reg. 28962 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4

## Federal Rules of Court

5

6   F.R.C.P. Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

7   F.R.C.P. Rule 12(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

*Printed on Recycled Paper*

## I.    **INTRODUCTION**

Plaintiff John True's Complaint seeks relief based upon Defendant Honda's false and misleading advertising for the Honda Civic Hybrid ("HCH"), which Honda aggressively advertised based on fuel economy of 49-51 miles per gallon ("MPG"). Plaintiff paid a total cash price of $28,470.60 for his HCH. To date his average fuel economy is approximately 32 miles per gallon ("MPG"), only marginally better than the fuel economy for a standard engine Honda Civic, a substantially identical car. But, even the most expensive automatic standard engine Honda Civic "EX," the top-of-the-line model, loaded with sunroof and voice-activated touchscreen navigation costs only $21,260.00.

This case is not frivolous, nor speculative, as Defendant would have this Court believe. This case is also not about EPA testing methods or the federal car labeling rules, despite Defendant's best effort to claim it is. Further, this case does not question the quality or reliability of the Honda brand. However, this case does seek relief for tens of thousands of consumers like Mr. True, who purchased the HCH expecting to benefit from its "remarkable" fuel efficiency, and paid thousands of dollars extra for an HCH that looks identical and performs basically the same as the non-hybrid Honda Civic.

Defendant aggressively advertised the HCH in a media campaign touting its fuel efficiency in a manner that is deceptive at best, and patently false at worst. These assertions have been ubiquitous in print, on television, over the airways, and on its website. In Defendant's motion to dismiss Honda asks this Court to ignore the injuries to consumers who purchased the HCH and instead endorse Honda's view that the Energy Policy and Conservation Act ("EPCA") gave it a federally protected right to distort the truth.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Defendant's motion to dismiss is segregated into three equally unavailing sections:
(1) Plaintiff's claims are preempted by the EPCA; (2) Plaintiff's allegations do not state a claim under California law; and (3) Plaintiff failed to plead his claims adequately under the Federal Rules of Civil Procedure.[1]

## II.   PLAINTIFF'S CLAIMS UNDER THE CALIFORNIA FALSE ADVERTISING LAW, UNFAIR COMPETITION LAW AND CONSUMER LEGAL REMEDIES ACT ARE NOT PREEMPTED BY THE FEDERAL ENERGY POLICY AND CONSERVATION ACT

Plaintiff's narrowly focused Complaint challenges Honda's false and deceptive *advertising* of the Honda Civic Hybrid ("HCH") alleging violations of three California statutes: (1) the California False Advertising Law ("FAL"), California Business and Professions Code ("B&P") § 17200 *et seq.*; (2) the California Unfair Competition Law ("UCL"), California B&P § 17500 *et seq.*; and the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.* (the "State Claims").[2]  Plaintiff alleges that Honda's print and television advertising, as well as its website, aggressively advertised the HCH with grossly exaggerated claims for overall fuel economy of up to 50 MPG when Honda knew, but did not disclose, that the HCH did not achieve anywhere near 50 MPG, particularly in city driving where it ran closer to 26 MPG.  Complaint ¶ 21.  Plaintiff alleges that Honda's media campaign celebrating the purported fuel economy of the HCH specifically touted the HCH's superiority to the standard engine Honda Civic, a virtually identical car which costs approximately $7,000 less and performs only marginally below the HCH.  Complaint ¶ 24.

---

[1]     All references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

[2]     Class Action Complaint ("Complaint") Counts I, II, and IV, respectively, all relating to Honda's advertising.

*Printed on Recycled Paper*

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   Honda now attempts to hide behind the EPCA[3] to justify its deceptive advertising

2   campaign, moving to dismiss and arguing the EPCA preempts Plaintiff's claims. Honda's

3   preemption argument is based almost entirely on its own unsupported conclusion that

4   Plaintiff's State law claims stand as an obstacle to achieving a Congressional objective

5   which Honda defines as *disseminating* or *publishing* the EPA MPG. Memorandum of

6   Points and Authorities in Support of Motion to Dismiss ("Def. Memo." or "Memorandum")

7   at 2, 8. Honda also argues – again without any substantiation – that enforcement of the

8   State law claims would discourage Honda from using the EPA MPG estimates in

9   advertising. *Id.*

10

11   Honda's entire argument rests on the faulty premise that Plaintiff seeks to impose

12   liability on Honda for dissemination of the EPA test results, rather than *misrepresentation*

13   of the results, as detailed in the complaint. It requires a great leap in logic to find that a

14   federal policy requiring disclosure of EPA MPG test results on automobile stickers implies

15   a federal policy requiring that Honda *advertise* the EPA MPG to consumers in all media,

16   even when Honda knows those test results are extremely deceptive when not provided

17   with appropriate context.

18

19   Defendant's arguments are without merit and Honda's Motion should be denied.

20

21   **A.    There Is No Express or Implied Congressional Intention in the EPCA to Preempt California's Laws Prohibiting Unfair and Deceptive Advertising**

22

23   **1.    Honda fails to demonstrate any express preemption of the State Claims in the EPCA**

24

25   Honda essentially recognizes that the preemption section of the EPCA does not

26   expressly preempt Plaintiff's claim. Def. Memo. at 3. The preemption section in the

27

28   [3]   The EPCA, Pub. L. No. 94-163 (1975) is now codified at 49 U.S.C. § 32901 *et seq.*

Printed on Recycled Paper

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   EPCA, 49 U.S.C. § 32919, deals only with the § 32908 labeling requirement.  Section

2   32919 permits a state to adopt "a law or regulation on disclosure of fuel economy or fuel

3   operating costs for an automobile covered by section 32908 only if the law or regulation

4   is identical to that requirement." 49 U.S.C. § 32919(b).  While this regulation expressly

5   precludes California from requiring an automobile manufacturer to advertise 40 MPG for

6   a car that achieves 50 MPG according to EPA testing methods, it does not prevent

7

8   California from requiring that *advertising* provide appropriate context that is required on

9   the labels the statute actually regulates, so that a defendant is not permitted to use the

10  EPA estimates to misrepresent fuel economy to consumers.[4]

11      Here Honda falls far short of demonstrating any express preemption. The EPCA

12  has a section that defines what state statutes would be preempted and advertising is

13
    clearly not within the bounds of that preemption.
14

15      **2.      Honda fails to demonstrate any implied Congressional intent to
                  preempt the State Claims in the EPCA**
16

17      Honda relies on the theory of implied conflict preemption, arguing that California

18  law regulating honesty in advertising "stands as an obstacle to the accomplishment and

19  execution of the full purposes and objectives of Congress." *Crosby v. National Foreign*

20  *Trade Council*, 530 U.S. 363, 373 (2000) (internal citations omitted).   However, no matter

21  what theory of preemption is analyzed, all preemption analysis begins with an inference

22  of Congressional intent to preempt.  Congressional purpose is the ultimate touchstone of

23
    the inquiry. *See Hines v. Davidowitz*, 12 U.S. 52, 72 (1941); a*ccord Lorillard Tobacco*
24
    *Co. v. Reilly*, 533 U.S. 525, 542 (2001).  Congressional intent to preempt can be inferred
25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [4]     *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996) (court must identify the
    domain expressly preempted by statutory language); *see also, Metrophones Telecomm.*
27  *v. Global Crossing Telecomm.*, 423 F.3d 1056, 1072 (9th Cir. 2005) ("The presence of an
    express preemption provision supports an inference that Congress did not intend to
28  preempt matters *beyond* the reach of that provision." (internal citations omitted; emphasis
    in original)).

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

*Printed on Recycled Paper*

1  from the Statute's statement of purpose, its structure, its legislative history, or an

2  agency's specific statement of preemptive intent. *Crosby,* 530 U.S. at 373.  None of

3  these sources of Congressional intention are even discussed by Honda as providing

4  support for its conclusion that Congress intended to preempt operation of State deceptive

5  advertising laws by the EPCA.

6

7         Instead, Honda infers Congressional intention to preempt State law in the

8  comprehensive scheme set out in the EPA regulations.  Def. Memo. at 7.  The Supreme

9  Court, however, has specifically rejected the argument that the volume and complexity of

10  a federal statute and regulations are sufficient to demonstrate a Congressional intention

11  to preempt especially in the areas of traditional State regulation.  *Cal. Coastal Comm'n v.*

12  *Granite Rock Co.,* 480 U.S. 572, 583 (1987) ("we will pause before saying that the mere

13  volume and complexity of [the agency's] regulations indicate that the agency did in fact

14  attempt to preempt").  *See also Hillsborough County, Florida v. Automated Med. Labs.,*

15

16  471 U.S. 707, 716 (1985) ("we are even more reluctant to infer preemption from the

17  comprehensiveness of the regulations than from the comprehensiveness of statutes").[5]

18  Honda has failed to demonstrate any preemptive intent by Congress or the EPA in the

19  EPCA.

20

21         In order to succeed on a theory of implied conflict preemption, Honda must

22  demonstrate a Congressional intent to preempt, actual conflict with federal law or that

23  enforcement of the State law presents a clear obstacle to the Congressional purposes or

24  goals expressed in the regulatory scheme.  *See Cal. Coastal Comm'n,* 480 U.S. at 594.

25  The EPCA requires that:  (1) the EPA MPG  be posted on automobile window stickers;

26

27

28  _____

[5]     Honda's argument is particularly odd here where Honda concedes field
preemption does not apply.  Def. Memo. at 2.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 5 -

1    and (2) automobile dealers make available at the dealership a booklet comparing the

2    EPA MPG for new motor vehicles of the same class.

3        By cobbling together these two requirements, Honda infers that the Congressional

4    goal under the EPCA is that the EPA MPG must always be disseminated to consumers in

5

6    *advertising.  See* Def. Memo. at 5.  Nothing in the statute or regulation forbids Honda

7    from advertising a lower, more accurate MPG or advertising the HCH without mentioning

8    the MPG at all.  Nothing in the statute or the regulation supports Honda's conclusion that

9    its deliberately deceptive presentation of fuel efficiency for the HCH is justified or

10   compelled by the statutory scheme.  As a matter of fact, precedent suggests that Honda

11   could have not only advertised a more realistic number, but that they could have put a

12
     more reasonable number on the sticker also.  *See* Exhibit 1 (Letter and response from
13

14   Chrysler Motor Co. to the EPA requesting and granting permission to advertise lower and

15   more accurate fuel efficiency numbers on the Charger Shelby).

16       The logical inference from the federal scheme is that Congress intended to create

17   a uniform standard of *testing* (not advertising) so consumers could compare automobiles

18   *using identical parameters*, in short, compare apples to apples and oranges to oranges.

19
     In fact, the whole testing and disclosure regime set out in the regulations reflects a
20

21   Congressional understanding that the EPA MPG is not a real-world exercise because the

22   regulations require a disclaimer where EPA MPG is represented to consumers that

23   "actual mileage will vary with options driving conditions, driving habits and

24   [vehicle's/truck's] condition."  40 C.F.R. § 600.307-95(A)(3)(ii)(A).  *See also* Def. Memo.

25   at Exh. 3 ("EPA rating is a useful tool for comparing vehicles... but it may not accurately

26   predict the average MPG").  Honda provides no such context, stating only that actual

27
     mileage *may* vary.
28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

*Printed on Recycled Paper*

1    Accordingly, Honda's inference of conflict preemption is not supported by law or

2  logic.

### 3.    Defendant ignores the presumption against preemption

Federal Courts have long recognized a general presumption against preemption of

State laws operating in areas traditionally regulated by States.  The historic police powers

of the States will only be supplanted by federal law when such is the clear intent and

purpose of the Congress.  *United States v. Locke*, 529 U.S. 89, 107 (2000) (quoting *Rice*

*v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *Oxygenated Fuels Ass'n Inc. v.*

*Davis*, 331 F.3d 665, 665 (9th Cir. 2003) ("there is a general presumption in areas

traditionally regulated by the States").  It is also well established that the regulation of

advertising falls squarely within the historic police powers of the State.  *Lorillard*, 533 U.S.

at 543; *accord Skysign Int'l, Inc. v. City & County of Honolulu*, 276 F.3d 1109, 1115 (9th

Cir. 2002) ("advertising is an area traditionally subject to regulation under the states'

police power, and we therefore presume federal law does not displace [state's] regulatory

authority").

### B.    Honda Has Provided No Support for Its Assertion That State Tort Law Liability for False Advertising Would Discourage Compliance with the EPCA

Defendant also argues that enforcing the State Claims would discourage Honda

from using EPA estimates in advertising, creating an obstacle to the federal objective of

disseminating EPA MPG estimates to consumers. Def. Memo. at 2.  Aside from the fact

that the federal objective that Honda sees thwarted is one entirely of its own invention,

there is nothing in the record before the Court demonstrating that Honda would in fact be

discouraged in any way from fulfilling its actual obligations under the EPCA.  To the

contrary, the requirements of the EPCA and the State Claims actually work together.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Printed on Recycled Paper

1  Requiring Honda to provide the EPA MPG numbers in the appropriate context in their

2  advertising would promote dissemination of the EPA MPG estimates, reinforce

3  California's goal of honesty in advertising and provide consumers with estimates of fuel

4  economy that are actually of some benefit to automobile purchasers.

5

6      On this record, where a defendant mounts a facial challenge to the statute based

7  on events expected to occur, there is no demonstration of implied conflict.  *Cal. Coastal*

8  *Comm.*, 480 U.S. at 594 (on the record of a facial challenge to the State statute, decline

9  to hold conflict is demonstrated).  No inevitable collision between State law and federal

10  law is apparent.  *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 145

11  (1963).

12      **C.    Defendant's Reliance on *Geier v. American Honda Motor***

13      ***Co.*, 529 U.S. 861 (2000), Is Misplaced**

14      Defendant relies heavily on *Geier*, but that reliance is clearly misplaced.  *See* Def.

15  Memo. at 7-8.  *Geier* is readily distinguishable, having little more in common with this

16  case than sharing the same defendant.

17

18      In *Geier*, plaintiff sued under District of Columbia tort law alleging her 1987 Honda

19  Accord was negligently designed because it was not equipped with an airbag.  In *Geier*,

20  Honda moved to dismiss, arguing that tort law was preempted by Department of

21  Transportation ("DOT") regulations because the DOT regulations did not *require* airbags,

22  but instead afforded automobile manufacturers a *range* of choices among passive

23  restraint devices, airbags being just one of them.  *Geier*, 529 U.S. at 865.  The Supreme

24  Court agreed, holding the tort claim was preempted because the tort suit proceeded on

25  the theory that Honda was negligent for *not* installing an airbag.  The Supreme Court held

26  that the suit undermined the purpose of the regulation, which was to "bring about a mix of

27  different devices introduced gradually over time; and FMVSS 208 [the statute at issue]

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

would thereby lower costs, overcome technical safety problems, encourage technological

development, and win widespread consumer acceptance -- all of which would promote

FMVSS 208's safety objectives." *Id.* at 875 (citing 49 Fed. Reg. 28962 (1984)).  Thus,

the plaintiff's lawsuit posed an actual conflict with the DOT regulations. *Id.* at 871.[6]

In *Geier*, the imposition of the State standard undermined the language and policy

objective of the Federal regulation.  In this action there is *no conflict* between the

California law and the testing and labeling regulations of the EPCA.  Honda can readily

comply with the law and regulations requiring automobile stickers with EPA MPG

disclosure and distribute a booklet at the dealership, while at the same time complying

with California law forbidding false and deceptive advertising.  Unlike in *Geier*, California

law does not impede efforts to comply with the EPCA, if Honda had advertised using the

language required to be included on the window stickers, Plaintiff would not be before the

Court, and this action would never have been filed.

## III.    PLAINTIFF'S CLAIMS ARE LEGALLY SUFFICIENT TO STATE A CLAIM FOR RELIEF UNDER CALIFORNIA LAW

Defendant argues that Plaintiff fails to state a claim under California law.  The

primary basis for Defendant's position is the highly contested heightened pleading

requirements arguably created by Proposition 64 ("Prop. 64").  Defendant asks this Court

to impermissibly rely upon *Pfizer v. Superior Court*, 141 Cal. App. 4th 290, 45 Cal. Rptr.3d

840 (2006), but *Pfizer* may not properly be cited in this district because the case has

been superseded by a grant of review (51 Cal. Rptr. 3d 707).  Nonetheless, two

quotations from *Pfizer* appear in Defendant's brief. *See* Def. Memo. at 9 n.1.  *Pfizer*

breaks with longstanding interpretations of the California Business and Professions Code

---

[6]      *See also Oxygenated Fuels*, 331 F.3d at 668.  (*Geier* distinguished by the Ninth Circuit finding that the Supreme Court gave deference to the regulatory agency's interpretation of its own statute.)

Printed on Recycled Paper

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

and, Plaintiff submits, overextends Prop. 64 insofar as it would preclude suits where plaintiffs have sustained real injuries – as in the instant action.  Moreover, there is well reasoned caselaw from this district that is more closely analogous to the facts of this case and *is* of precedental value to this Court.

**A.     *Annunziato v. eMachines* Holds That Reliance Is Not Required to Plead Claims Under the UCL and FAL**

Defendant argues that Counts I and II of Plaintiff's Complaint fail to state a claim under California Business & Professions Code ("B&P") §§ 17204 & 17535.  Def. Memo. at 9, 12.  Both of these code sections contain the identical language that only a Plaintiff, "who has suffered injury in fact and has lost money or property as a result of a violation of this chapter" may bring suit.  B&P §§ 17204 & 17535.  Defendant argues – without citing one case properly before this Court – this language means Plaintiff must prove he detrimentally relied on the challenged advertising as an element of his claims.  There is no such requirement on the Plaintiff.

In *Anunziato v. eMachines*, plaintiff sued defendant over a problem with overheating laptops using advertising claims made by eMachines as a basis for the suit.  The plaintiff did not allege that he relied on or even read the statements.  The defendant argued that plaintiff failed to state a claim because he failed to allege reliance.  *Anunziato v. eMachines*, 402 F. Supp. 2d 1133, 1137 (C.D. Cal. 2005).  The court stated that, "reading reliance into the UCL and the FAL would subvert the public protection aspects of those statutes."  *Id.*  The court used the example of "short weight" or "short count," situations where a box of cookies is advertised as weighing 16 ounces or holding 24 cookies when in point of fact it does not.  *Id.*

> A construction of these statutes that reduced them to common law fraud would not only be redundant, but would eviscerate any purpose that the UCL and FAL have independent of common law… The court need not

*Printed on Recycled Paper*

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

torture the language of the UCL and the FAL statutes to conclude that harm in fact will meet the "as a result of" requirement. Where the manufacturer of a product makes a false representation as to weight or count, to continue the above example, the consumer is unquestionably harmed as a result of the falsity because he was shortchanged... The Court finds that the remedial purposes of Proposition 64 are fully met without imposing requirements which go beyond actual injury. Significantly, none of the ballot materials which accompanied Proposition 64 -- the California Attorney General's summary, the commentary prepared by the California Legislative Analyst's Office, or the arguments for and against the Proposition -- mention reliance. They do stress injury in fact. The intent of Proposition 64 was to eliminate the filing of frivolous lawsuits brought to recover attorney's fees without a corresponding public benefit and the filing of lawsuits on behalf of the public welfare without any accountability to the public. (Prop. 64, § 1 (b).... Therefore, the Court declines to read a reliance requirement into the "as a result of" language in either Section 17200 or Section 17500.

*Id.* at 37-38.

The court in *Anunziato* recognized an important fact; the purpose of Prop. 64 was to stop abusive practices by attorneys, not to stop injured parties from being made whole. Here, Plaintiff and the proposed class were "short counted" in the manner the *Anunziato* court discussed and are entitled to relief. Defendant advertised and promoted the HCH touting that the car achieves specific fuel economy performance that it simply does not. The EPA testing guidelines that are used in Honda's advertising do not make it immune from suit for false advertising when Honda deliberately took EPA MPG numbers that *will vary* and presented them as if they were realistically achievable by all consumers.

The fact remains that Defendant distorted the fuel efficiency numbers to convince consumers that the numbers *did not* vary, instead of presenting them in the manner required by federal law, *i.e.* in the appropriate context, with the necessary caveats. As a result of Defendant's distortion, consumers were damaged by the difference between what they were told they were getting and what they actually got –

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

*Printed on Recycled Paper*

the short count.  For example, Consumer Reports, after thoroughly testing the 2006

Honda Civic Hybrid reported city MPG of 26, when the advertised rate was 48.  *See*

Exhibit 2.

Perhaps the most glaring example of this disingenuity is the "Savings Calculator"

Honda put on its website that encouraged consumers to calculate how much money

could be saved with the purchase of an HCH.  Instead of using the EPA MPG estimates

for the consumer's current car (to compare apples and apples), Honda instructed the

user to input their current car's *actual* MPG, which was then calculated against the

inflated fuel economy claimed by Honda.  After inputting average distance driven in a

day or week and the current price of gasoline the calculator purported to determine how

much HCH owners should expect to save in a five and ten year window (to the penny).

For the Court Defendant provided EPA guidance on the subject of fuel efficiency.  For

Plaintiff and the proposed class Defendant provided a specific amount of savings to be

achieved, without an honest explanation or context.  It is certainly curious that

Defendant would point to EPA language stating that fuel economy "will almost certainly

vary from EPA's fuel economy rating" in its brief, when that disclaimer never appeared

in their advertising or on Honda's website.  Def. Memo. at 10 (quoting

www.fueleconomy.gov).  To provide accurate context, Plaintiff refers the Court to

Complaint ¶ 20(c), which summarizes results taken from the so-called "Fuel Savings

Calculator" that Defendant *actually* provided to consumers, instead of the EPA

worksheet it provided to the Court.

**B.    Plaintiff's Claim Is Consistent with the Language and Stated Goals of Prop. 64**

Defendant alleges that Prop. 64 was "designed to preclude exactly this type of

suit."  Def. Memo. at 9.  Even a cursory review of the ballot materials for Proposition 64

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1    belies this argument.  The stated purpose of Prop. 64 was to "PROTECT SMALL

2    BUSINESSES FROM FRIVOLOUS LAWSUITS-CLOSE THE SHAKEDOWN

3    LOOPHOLE. [¶] There's a LOOPHOLE IN CALIFORNIA LAW that allows private

4    lawyers to file frivolous lawsuits against small businesses even though they have no

5    client or evidence that anyone was damaged or misled."  (Ballot Pamp., General Elec.

6    (Nov. 2, 2004) Ballot Argument in Favor of Prop. 64, at 40).  None of these concerns

7    holds true in the context of this litigation.

8

9        First, this is not a frivolous case and Honda is most assuredly not a small

10   business.  Honda is an enormous multi-national corporation with annual sales in the

11   billions of dollars – $84.2 billion in 2006 to be exact.  Second, this is not a situation

12   where an attorney has filed a case without a Plaintiff, Mr. True is a very real and very

13   disgruntled customer that typifies a class of individuals who purchased the Honda Civic

14   Hybrid.  Third, the Plaintiff and proposed class have been both damaged and misled.

15   The false and deceptive advertising in this case damaged Plaintiff and the proposed

16   class in tangible ways.  They were told in print and in television advertising that they

17   were purchasing a car that achieved a specific level of fuel efficiency.  The actual fuel

18   efficiency of the automobile was not even close to what was advertised – causing

19   consumers to expend more resources on fuel than they were led to believe would be

20   necessary.  In addition, Plaintiff and the proposed class could have selected the nearly

21   equivalent non-hybrid Civic model for thousands of dollars less and achieved nearly

22   identical fuel economy.

25   **C.    Plaintiff's Unjust Enrichment Claim Under Count III Is Properly
             Before the Court Because Counts I and II State a Claim**

27   As addressed above Plaintiff's claims in Counts I and II do not fail to

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Printed on Recycled Paper

1  state a claim under applicable California law.  As a result, Defendant's request for

2  dismissal of Plaintiff's unjust enrichment claim must be denied.

3  **D.**    **Count IV States a Claim Under Civil Code § 1750 _et seq._ Because No**
4  **Reliance Is Required for a Material Misrepresentation Under That**
5  **Statute**

6    The Consumer Legal Remedies Act does not require reliance,  s*ee Wilens v. TD*

7  *Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754 (2003); *Caro v. Procter & Gamble*

8  *Co.*, 18 Cal. App. 4th 644, 668 (1993),  under certain circumstances (such as those

9  here) where the court can infer reliance based on material misrepresentations. *See*

10  *Wilens*, 120 Cal. App. 4th  at 755-56 (quoting *Occidental Land, Inc. v. Superior Court*,

11  18 Cal. 3d 355, 363 (1976); *Vasquez v. Superior Court*, 18 Cal. 3d 800, 814 (1971)).

12  
13  Defendant does not address – let alone refute – the inference of reliance present in this

14  case.

15    *Caro*, defined a material misrepresentation in the following way:

16    A misrepresentation of fact is material if it induced the plaintiff to alter his
17    position to his detriment.  Stated in terms of reliance, materiality means that
     without the misrepresentation, the plaintiff would not have acted as he did.

18  *Caro*, 18 Cal. App. 4th at 668.  In *Vasquez*, the court found that misrepresentations

19  
20  about the quality of frozen food and freezers were sufficient to find that material

21  misrepresentations had been made.  In *Occidental*, the court found material

22  misrepresentations where the developer of a neighborhood made misrepresentations

23  about the upkeep costs of common areas.

24    Likewise here, Defendant made misrepresentations about the mileage of the

25  HCH to justify the upcharge, when a less expensive, nearly identical, alternative

26  
27  existed.  Had Defendant stated the truth about the HCH, consumers would not have

28  

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

*Printed on Recycled Paper*

1  purchased the car for $7000 more than its functionally identical twin. As a result,

2  Plaintiff need not plead reliance in this case because it is inferred.

3  **IV.    PLAINTIFF HAS PLEADED HIS CLAIMS WITH SUFFICIENT PARTICULARITY**

4  **TO SATISFY RULE 9(b)**

5       Even if Plaintiff's case is grounded in fraud, which he does not concede it is, he

6  has more than adequately satisfied the standard of Rule 9(b). Defendant selectively

7  quotes from only one case, *Vess v. Ciga-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

8  Cir. 2003), to argue that Plaintiff's case is insufficiently pled under Rule 9(b).

9

10      *Vess* holds that circumstances constituting fraud must "be 'specific enough to

11 give defendants notice of the particular misconduct . . . so that they can defend against

12 the charge and not just deny that they have done anything wrong.'" *Vess*, 317 F.3d at

13 1106 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (quoting *Neubronner v.

14 Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). *Vess* goes on to say "[t]he plaintiff must set

15 forth what is false or misleading about a statement, and why it is false." *Id.* (quoting

16 *Decker v. Glenfed, Inc.* (*In re Glenfed, Inc. Sec. Litg.*), 42 F.3d 1541, 1548 (9th Cir.

17

18 1994)).

19      Here Plaintiff has plead with particularity the conduct alleged to be illegal, with

20 more than adequate specificity to give Defendant notice of the conduct alleged to be

21 illegal. Defendant's motion to dismiss undermines any argument that it has not been

22 sufficiently informed of the charges against it. Defendant is not in a position where it

23 must simply deny it has done anything wrong. Plaintiff alleged the statements it claims

24 are false and misleading regarding the HCH's fuel efficiency *see, e.g.,* Complaint ¶ 20,

25 and has alleged why he believes the statements are false and misleading. Plaintiff has

26 explained what disclaimers should have accompanied Honda's advertising of the HCH

27 and why Plaintiff believes these statements run counter to California law. Defendant

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

obviously understands the charges against it because it has constructed a preemption argument to dispute Plaintiff's position.

Plaintiff has satisfied the "who, what, when, where, and how." Def. Memo. at 15 (quoting from, but not citing *Vess*, 317 F.3d at 1106 (internal citations omitted)). Defendant concedes, as they must that the "who" has been satisfied. Def. Memo. at 15. The "what" is a discrete set of clearly identified inaccurate representations of fuel economy in HCH advertising. The "when" is during the class period referenced in the Complaint. *See* Complaint ¶ 27. The "where" is throughout California and the United States. *Id.* And the "how" is in print, television, radio, and Honda website advertising.

As demonstrated above, Defendant's argument that Plaintiff's claims are not pled with the required particularity under 9(b) is weak and falls apart under scrutiny.

**V.    PLAINTIFF HAS SATISFIED RULE 12(e)**

Rule 12(e) allows defendants to request a "more definite statement" if the defendant cannot reasonably be required to respond to a complaint because it is "vague or ambiguous." Rule 12(e) does *not* give a defendant *carte blanche* to turn every complaint to one pled under Rule 9(b). Defendant's Memorandum outlining the Complaint's alleged defects highlights the flaws in Defendant's reasoning, because Honda recites the following *from the Complaint*:

- the names of the magazines where the print ads were placed;
- the time frame of the print ads;
- the actual date of one of the ads;
- a description of Honda's website with relevant dates; and
- the 2007 brochure for the 2007 HCH.

Def. Memo. at 17-18.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Printed on Recycled Paper

1    Allegations this specific are more than adequate to give Defendant fair notice of

2    Plaintiff's claims, particularly where, as here, the Complaint is abundantly clear that the

3    subject matter of the challenged ads is the touted fuel economy for the HCH.  *See*

4

5    Complaint ¶¶ 4, 20-23, 24; s*ee also* Def. Memo. at 17.

6    **VI.    CONCLUSION**

7    For all the foregoing reasons, and any others that may appear to the Court in a

8    hearing related to Defendant's Motion, Plaintiff John True respectfully requests that the

9    Court deny Defendant's Motion to dismiss Plaintiff's Complaint.

10   DATED: June 4, 2007                        MAXWELL M. BLECHER

11                                              BLECHER & COLLINS, P.C.

12                                              JON TOSTRUD

13                                              CUNEO GILBERT & LADUCA, LLP

14                                              JONATHAN W. CUNEO (*pro hac vice*)
                                                WILLIAM H. ANDERSON (*pro hac vice*)
15                                              CUNEO GILBERT & LADUCA, LLP

16                                              NICHOLAS E. CHIMICLES
                                                MICHAEL D. GOTTSCH
17                                              DENISE DAVIS SCHWARTZMAN
                                                (*pro hac vice*)
18                                              CHIMICLES & TIKELLIS LLP

19

20

21                                              By
                                                   MAXWELL M. BLECHER

22

23

24

25

26

27

28

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

January 19, 1983

Mr. Brian Burgess Certification Division
Mobile Source Air Pollution Control
Environmental Protection Agency 2565
Plymouth Road
Ann Arbor, Michigan 48105

Dear Mr. Burgess:

Chrysler Corporation is introducing a high performance derivative of the Dodge Charger which we will market under the sales name Dodge Shelby Charger. This model was added to the Charger carline via 1983 running changes #59 and #60 and it will enter production February 14, 1983. Although the Shelby Charger is a derivative of the original Charger, it has many unique performance oriented features.

We are concerned that, under current regulations, the Shelby Charger must be labeled with the Charger model type fuel economy. These values were calculated at the start of the model year and did not take into account the effect of the Shelby Charger performance features. These label values could overstate the actual fuel economy of the Shelby Charger by a substantial amount. This could result in a fuel economy shortfall and resulting customer dissatisfaction.

In order to furnish our customers with a more appropriate estimate of the fuel economy of the Shelby Charger, we wish to follow the proposed policy outlined in your letter to the industry dated August 10, 1981. This policy allows a manufacturer to use a reduced label value when the manufacturer deems it appropriate. We realize that this is only a proposed policy. However, as a responsible corporate citizen, we feel that it is in both the customers' and Chrysler's best interest that we voluntarily reduce the label values for the Shelby Charger.

Chrysler will use the following fuel economy values for both the Federal and California version of the Shelby Charger:

                25 Mpg City
                40 Mpg Highway
                30 Mpg
                Combined

If we did not take this action, the Shelby Charger's fuel economy would, by law, be reported as 28/46/34 for Federal applications and 26/41/31 for California applications.

If you have any questions, please contact me.

                        Sincerely yours,

                        CHRYSLER CORPORATION


JMG/MMK tlu                     J. M. German, Performance & Fuel Economy

February 11, 1983


Mr. J. M. German, Director

Labeling, Regulatory, and
Strategy Chrysler
Corporation
P.O. Box 1118
Detroit, MI 48288

Dear Mr. German:

This letter responds to your letter to Mr. Burgess of
January 19, 1983 concerning labeling the Shelby Charger with a
lower value than calculated under current regulations. Based
on your concern that the Charger model type fuel economy would
overstate the Shelby Charger fuel economy by a substantial
amount, we concur with your request to label the Shelby charger
with a lower value.

Our proposed policy letter of August 10, 1981, would allow the
manufacturer to lower the fuel economy number on a vehicle's
fuel economy label at its discretion. The manufacturer would
select the appropriate value (provided that it was less than
the general label value.) Since Chrysler has shown interest in
this flexibility, EPA will endeavor to finalize this policy in
the form of an advisory circular to the industry. Due to lack
of initial industry response we have not yet finalized this
policy, however, we will extend it to Chrysler in this case
based on the concerns you raised. Chrysler may set the level
of the label value provided that it is lower than the EPA
calculated value. EPA will not approve or disapprove this
value. For the purposes of corporate average fuel economy,
official test results for the Shelby Charger will apply. No
new model type will be created in this case.

For our records, Chrysler must supply us with the label
values you intend to use. It is Chrysler's responsibility to
establish an accurate and supportable value. While we will
not dispute Chrysler's determination, we strongly recommend
that the official test result for this vehicle be applied
since this value is supportable by data.

Sincerely yours,



Robert E. Maxwell, director
Certification Division
Office of Mobile Sources

Expert • Independent • Nonprofit

# ConsumerReports.org®

x Close

## CONSUMER REPORTS FINDS NEW-CAR WINDOW STICKERS VASTLY OVERSTATE VEHICLE FUEL ECONOMY RATINGS

*Hybrid cars among worst offenders; mpg shortfalls identified in 90% of vehicles testeds*



October 2005 issue

YONKERS, NY – New-car fuel economy tests conducted by *Consumer Reports* show that government figures posted on new-car window stickers can have shortfalls of up to 50 percent, according to an investigation published in the October issue of *Consumer Reports* magazine (*www.ConsumerReports.org*). Hybrid cars and the diesel version of one small SUV are among the worst offenders, costing consumers hundreds of dollars more in fuel per year than they were led to believe.

In a study of 303 cars and trucks, model-years 2000 to 2006, *Consumer Reports* found that shortfalls in miles per gallon (mpg) occurred in 90 percent of the vehicles tested. The largest discrepancies involved city driving, with some models falling short of claimed mpg by 35 to 50 percent (see table). Ironically, hybrids, whose selling point is fuel thriftiness, had some of the biggest disparities with fuel economy, averaging 19 mpg below Environmental Protection Agency (EPA) city ratings. On average, our highway mpg more closely reflected the EPA rating.

Hybrid cars still won three of the best five spots for overall mpg in the magazine's testing. A list of new car models with best and worst fuel mileage, as well as tips on how to save at the pump can be found at *www.ConsumerReports.org*.

"Current EPA figures are definitely misleading and ultimately expensive for consumers," said David Champion, Senior Director of *Consumer Reports'* Auto Test Center. The magazine attributes the problem to the use of the EPA's outdated testing procedures, dating back to the 1973 oil embargo, which don't account for the increased drive time spent in dense traffic and faster highway speeds on today's roads. The EPA also allows car manufacturers to use for testing purposes hand-built prototype vehicles and the most favorable test conditions for maximum fuel economy, yielding results that are nearly impossible for consumers to achieve. By contrast, *Consumer Reports* buys new cars and trucks anonymously from dealerships and uses special test equipment to accurately gauge real-world fuel economy using public roads and the test track on its 327-acre test facility in East Haddam, Connecticut.

"Just one in ten of the vehicles we tested achieved fuel economies as good as or better than EPA estimates," Champion said. For consumers, the news means that their vehicles typically cost hundreds more per year to operate than they were led to believe. Put another way, when gas in August hit $2.37 per gallon, the mpg shortchange effectively boosted the price for some motorists to $3.13 per gallon.

Assuming 12,000 miles per year of driving over five years and no further increases in gas prices, *Consumer Reports* figures show it will cost Dodge Ram 1500 pickup truck owners $2,558 more in fuel than the EPA estimates, $1,742 more for Mercury Grand Marquis owners and $1,316 more for Nissan Quest owners.

Looking at the bigger picture, *Consumer Reports* also believes car makers are falling short of government-mandated Corporate Average Fuel Economy (CAFE) levels because of the EPA's unrealistic tests and the National Highway Traffic Safety Administration's (NHTSA) inappropriate methods of calculation. If more accurate mpg figures were used by NHTSA to rate CAFE compliance, most automakers would likely fail to meet the standards, *CR's* study shows. For example, in 2003, for the vehicles studied in this report, the fleet average calculated using NHTSA's mpg estimates was overstated by 30 percent when compared with the fleet average calculated using *Consumer Reports'* road tests.

*Consumer Reports* uses a battery of 50-plus different tests to rate new cars, minivans, SUVs, and pickup trucks at its Auto Test Center in East Haddam, Connecticut. The magazine's team of auto engineers evaluates each vehicle's performance, safety, comfort, convenience, interior quality, fuel economy, cargo capacity, and more.

To earn a 'Recommended' rating from *Consumer Reports* magazine, new cars must perform well in testing; have average or better reliability; comply with *CR's* criteria for rollover safety, and, if crash-tested, provide good overall crash protection, based on *CR's* composite of insurance-industry and government crash test results.

| | | EPA | CR | EPA |
|---|---|---|---|---|
| | | | | |

| VEHICLE TYPE, MAKE & MODEL | CITY MPG | CITY MPG | SHORT-FALL |
|---|---|---|---|
| SMALL SUV – Jeep Liberty Diesel Ltd. (4WD) | 22 | 11 | 50% |
| HYBRID – Honda Civic Sedan | 48 | 26 | 46 |
| LARGE SEDAN – Chrysler 300C | 17 | 10 | 41 |
| MIDSIZED SUV – Chevrolet TrailBlazer EXT LT (4WD) | 15 | 9 | 40 |
| MINIVAN – Honda Odyssey EX | 20 | 12 | 40 |
| LUXURY SEDAN – BMW 745Li | 18 | 11 | 39 |
| PICKUP – Dodge Ram 1500 SLT (crew cab, 4WD) | 13 | 8 | 38 |
| FAMILY SEDAN – Oldsmobile Alero GL | 21 | 13 | 38 |
| LARGE SUV – Dodge Durango Limited (4WD) | 13 | 8 | 38 |
| SMALL SEDAN – Ford Focus ZX4 SES | 26 | 17 | 35 |

*Consumer Reports* is one of the most trusted sources for information and advice on consumer products and services. *CR* conducts the most comprehensive auto-test program of any U.S. publication or Website; *CR's* auto experts have decades of experience in driving, testing, and reporting on cars. To subscribe to *Consumer Reports*, call 1-800-234-1645. Information and articles from *Consumer Reports* can be accessed online at *www.ConsumerReports.org*.

OCTOBER 2005

© Consumers Union 2005. The material above is intended for legitimate news entities only; it may not be used for commercial or promotional purposes. Consumer Reports® is published by Consumers Union, an expert, independent nonprofit organization whose mission is to work for a fair, just, and safe marketplace for all consumers and to empower consumers to protect themselves. To achieve this mission, we test, inform, and protect. To maintain our independence and impartiality, CU accepts no outside advertising, no free test samples, and has no agenda other than the interests of consumers. CU supports itself through the sale of our information products and services, individual contributions, and a few noncommercial grants.

Copyright © 2000-2005 Consumers Union of U.S., Inc. No reproduction, in whole or in part, without written permission.

# PROOF OF SERVICE

STATE OF CALIFORNIA      )

COUNTY OF LOS ANGELES )

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 515 South Figueroa Street, 17th Floor, Los Angeles, California 90071-3334.  On **June 4, 2007**, I served the within:

     **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

on all interested parties in this action as follows:

**BY MAIL:**  by placing a true copy thereof in envelopes addressed to each of the persons named below at the addresses shown below:

Roy M. Brisbois                                    Attorneys for Defendant
Jon Kardassakis                                    **American Honda Motor Co, Inc.**
Lewis Brisbois Bisgaard & Smith LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

and by then sealing and placing said envelopes for collection at a designated location at Blecher & Collins's offices at 515 South Figueroa Street, 17th Floor, Los Angeles, California 90071-3334 during designated hours, for mailing on the above date, following ordinary business practices.

     I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service; pursuant to that practice, envelopes placed for collection at designated locations during designated hours are deposited with the United States Postal Service with first class postage thereon fully prepaid on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

     ☒ (Federal)  I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

BLECHER & COLLINS
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

THIS DOCUMENT WAS PRINTED USING RECYCLED PAPER

□ (State)     I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on **June 4, 2007**, at Los Angeles, California.

Rose Arbucci