1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   ROY M. BRISBOIS, SB# 53222
2  E-mail: brisbois@lbbslaw.com
   JON KARDASSAKIS, SB#90602
3  E-mail: kardassakis@lbbslaw.com
   221 North Figueroa Street, Suite 1200
4  Los Angeles, California 90012
   Telephone: (213) 250-1800
5  Facsimile: (213) 250-7900

6  Attorneys for Defendant,
   AMERICAN HONDA MOTOR CO., INC.

7

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

10

11 | JOHN TRUE, individually and on behalf    ) CASE NO. ED CV 07-287 VAP (ORx)
      of all others similarly situated,
12                                            ) The Hon. Virginia A. Phillips
                                              )
13              Plaintiff,                    )
                                              )
14                                            ) **DEFENDANT AMERICAN HONDA**
      v.                                      ) **COMPANY INC.'S REPLY TO**
15                                            ) **PLAINTIFF'S OPPOSITION TO**
   AMERICAN HONDA MOTOR CO.,                  ) **DEFENDANT'S MOTION TO**
16 | INC.,                                    ) **DISMISS COMPLAINT**
                                              )
17              Defendant.                    ) Date:  June 18, 2007
                                              ) Time:  10:00 a.m.
18                                            ) Courtroom: 2
                                              )
19                                            ) Complaint Filed:  March 9, 2007
                                              )
20 | _____ )

21        DEFENDANT AMERICAN HONDA MOTOR CO., INC. ("AHM")

22 respectfully submits this Reply to Plaintiff's Opposition to Defendant's Motion to

23 Dismiss Complaint ("Opposition").

24 ///

25 ///

26 ///

27

28

4828-1037-2865.1                          1                    ED CV 07-287 VAP (ORx)

1

# TABLE OF CONTENTS

2

<u>Page</u>

3

4    I.    PLAINTIFF'S CLAIMS ARE PRE-EMPTED BECAUSE AHM
          COULD NOT COMPLY WITH FEDERAL LAW WITHOUT
5          ENGAGING IN ADVERTISING THAT PLAINTIFF ALLEGES
          VIOLATES STATE LAW ................................................................ 2

6    II.   PLAINTIFF FAILS TO STATE CLAIMS FOR RELIEF UNDER
          CALIFORNIA LAW ...................................................................... 6

7

8    III.  THE CLAIMS PLED DO NOT MEET RULE 9(b) AND/OR RULE
          12(e) STANDARDS ..................................................................... 12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Federal Cases

4

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................ 8, 10

5

*Cattie v. Wal-Mart Stores, Inc.*, 2007 WL. 935582 ................................................ 9, 10

6

*Chamberlin v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005) ................... 8

7

*Laster v. T-Mobile U.S.A., Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005) ............... 7, 8

8

*Vess v. CIBA-Geigy Corp. USA*, 317 F.3d at 1106 ..................................................... 12

9

## State Cases

10

*Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644 (1993) ............................. 10, 11

11

*Pfizer v. Superior Court*, 45 Cal.Rptr.3d 840 (2006) ............................................... 7, 9

12

*Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971) ....................................................... 11

13

*Wilens v. T.D. Waterhouse Group, Inc.*, 120 Cal. App. 4th 746 (2003) ................... 10

14

## Federal Statutes

15

49 U.S.C. § 32908 ...................................................................................................... 2, 3

16

## Federal Regulations

17

40 C.F.R. 600.307-86 ..................................................................................................... 3

18

40 C.F.R. 600.307-95 ........................................................................................... 3, 4, 5, 6

19

40 C.F.R. 600.405-77 ..................................................................................................... 4

20

## State Statutes

21

Cal. Business & Professions Code § 17200 ................................................................ 6, 9

22

Cal. Civil Code § 1750 ......................................................................................... 9, 10, 11

23

Cal. Business & Professions Code § 17204 ................................................................... 6

24

25

26

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1

**State Cases, continued**

2  Cal. Business & Professions Code § 17500 *et seq* ................................................... 6, 7

3  Cal. Business & Professions Code § 17535 .............................................................. 6

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

I.    **PLAINTIFF'S CLAIMS ARE PRE-EMPTED BECAUSE AHM COULD NOT COMPLY WITH FEDERAL LAW WITHOUT ENGAGING IN ADVERTISING THAT PLAINTIFF ALLEGES VIOLATES STATE LAW**

The premise of plaintiff's Complaint is that AHM violated California law because AHM's advertising stated the EPA MPG estimates for the 2006 Honda Civic Hybrid were 49 MPG city and 51 MPG highway and, according to plaintiff, this was "untrue, deceptive or materially misleading." (Complaint, ¶ 4.) Plaintiff alleges "actual performance for the HCH is and was up to 53% below the miles per gallon of fuel efficiency or cost savings that Honda advertised." (Complaint, ¶ 4.) Plaintiff argues against pre-emption, claiming "Nothing in the statute or regulation forbids Honda from advertising a lower, more accurate MPG or advertising the HCH without mentioning the MPG at all." (Opposition, 6:6-10.) Plaintiff's argument does not withstand scrutiny. Federal law required AHM to advertise the EPA mileage estimates in at least two ways: (1) the fuel economy label that must be affixed to the vehicle, and (2) the fuel economy guide that AHM was required to distribute to consumers.

49 U.S.C. § 32908(b) required AHM to advertise the Civic's fuel efficiency via a bold statement in the fuel efficiency labels affixed to each vehicle:

> (b) Labeling Requirements Contents. - (1) Under regulations of the Administrator of the Environmental Protection Agency, a manufacturer of automobiles shall attach a label to a prominent place on each automobile manufactured in a model year. The dealer shall maintain the label on the automobile. The label shall contain the following information:
>
> (A) The fuel economy of the automobile.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1    (B)  The estimated annual fuel cost of operating the

2    automobile.

3    (C)  The range of fuel economy of comparable

4    automobiles of all manufacturers.

5    (D)  A statement that a booklet is available from the dealer

6    to assist in making a comparison of fuel economy of other

7    automobiles manufactured by all manufacturers in that

8    model year.  (Emphasis added.)

9    49 U.S.C. §32908(b).

10    Manufacturers have no discretion here.  They "shall attach a label to a

11    prominent place on each automobile. . . ."  Similarly, dealers have no discretion:

12    "The dealer shall maintain the label on the automobile."  Contrary to plaintiff's

13    claim that AHM could have chosen to not mention MPG at all, federal law requires

14    that the label "shall contain . . . the fuel economy of the automobile."  Simply put, if

15    AHM had followed plaintiff's suggestion that AHM advertise "the HCH without

16    mentioning the MPG at all," AHM would have violated 49 U.S.C. Section 32908(b).

17    As to plaintiff's claim that "nothing in the statute or regulation forbids Honda

18    from advertising a lower, more accurate MPG," 40 C.F.R. 600.307-95 required

19    AHM to advertise the EPA's MPG estimates in the fuel economy label.  40 C.F.R.

20    600.307-86(a)(2)(ii) requires that the fuel economy label include "The city and

21    highway fuel economy estimates calculated in accordance with Sec. 600.209(a) and

22    (b) . . ."  Contrary to plaintiff's claim, the federal regulations do not allow a dealer to

23    advertise via this label anything other than the EPA's MPG estimates.

24    It is, of course, a federal objective to have a uniform test protocol so that

25    consumers can compare MPG estimates for different models.  It would undermine

26    that goal if manufacturers and dealers developed their own individual test protocols

27    and then advertised MPG estimates derived from dissimilar test methods.  Congress

28

1   and the EPA weighed the pros and cons of various test protocols. Section 600.2099

2   (a) and (b) decided the issue.

3        A second way federal law required AHM to advertise the EPA MPG

4   estimates is that federal regulations require that the label advise consumers to

5   "compare this vehicle to others in the FREE FUEL ECONOMY GUIDE available at

6   the dealer." 40 C.F.R. 600.307-95(a)(2)(iv). 40 C.F.R. 600.405-77 required AHM

7   to distribute booklets which advertised the EPA mileage estimates, 41 MPG city and

8   51 MPG highway for the 2006 Civic Hybrid. AHM has no ability to deviate.

9        Plaintiff's Complaint alleges, "Honda's advertisements with their untrue,

10  materially misleading or deceptive statements concerning fuel efficiency and cost

11  savings were communicated to every consumer who purchased an HCH from .

12  Defendant during the Class Period." (Complaint, ¶ 5.) The only advertisement that

13  was "communicated to every consumer who purchased an HCH from Defendant"

14  was the fuel economy label. While plaintiff does not allege he saw any other form

15  of advertising before he bought his car, we know he saw the fuel economy label

16  because it was affixed to his vehicle in a prominent place when he bought it. Both

17  logic and plaintiff's Complaint admit that this 49 MPG city, 51 MPG highway

18  message in the required fuel economy label was communicated to, and relied upon,

19  by plaintiff.

20       Plaintiff's Complaint further concedes this federally mandated statement of

21  fuel economy was a substantial factor, if not the controlling factor, in his decision to

22  purchase: "Honda's misrepresentations of the HCH's fuel economy are a substantial

23  factor, if not the controlling factor, in inducing plaintiff and each member of the

24  Class to purchase the HCH." (Complaint, ¶ 5.) Both logic and plaintiff's own

25  admissions preclude any argument by plaintiff that he was only misled by something

26  other than the government mandated advertisements.

27       The Opposition makes the argument that "Honda can readily comply with the

28  law and regulations requiring automobile stickers with EPA MPG disclosure and

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  distribute a booklet at the dealership, while at the same time complying with

2  California law forbidding false and deceptive advertising." (Opposition, 9:8-11.)

3  This is not true.  Plaintiff's claim is that "advertising remarkable overall efficiency

4  of 49-50 miles per gallon of gasoline ("MPG")" violated California law because

5  "such statements were untrue, deceptive or materially misleading." (Complaint, ¶

6  4.)  It cannot be that advertising these numbers via the fuel economy label affixed to

7  the vehicle and via the fuel economy guide is not misleading, but advertising the

8  same EPA MPG estimates in a different medium is misleading.

9        The regulations further require that the fuel economy label on the car state:

10            Results reported to the EPA indicate that the majority of

11            vehicles with these estimates will achieve between [41][1/]

12            and [57] in the city, and between [43] and [59] on the

13            highway.

14  Plaintiff alleges he averages only 32 MPG in mixed highway and city driving.

15  (Complaint, ¶ 9.)

16        Plaintiff tries to argue that AHM can be held liable for advertising because

17  AHM did not place the advertising in the right "context."  As discussed in the

18  moving papers, the regulatory scheme is so detailed that 40 C.F.R. 600.307-95

19  mandated virtually every aspect of the advertising that was the fuel economy label.

20  This included requiring the rectangular shape, minimum height, minimum length,

21  that it be printed in color with contrasts, that it have a contrasting border, that the top

22  50% of the fuel economy label contain only the city MPG and highway MPG

23

24  _____

25  [1/]  40 C.F.R. 600.307-95(a)(3)(ii)(B) requires that these ranges be determined by multiplying the city and highway estimates by 0.85 then rounding down for the lower end of the range and multiplying by 1.15 and rounding up to calculate the higher range.  Applying this formula to 49 MPG City and 51 MPG Highway, defense counsel calculates these numbers as follows:  for the city estimates: 49 x 0.85 = 41.65, rounded down = 46; 49 x 1.15 = 56.35, rounded up = 57.

26

27

28

1  estimates and that they be in bold 10 points in size and that there be a fuel pump

2  logo. See 40 C.F.R. 600.307-95. AHM had no ability to alter the "context" in

3  which the EPA MPG estimates were advertised to consumers via the fuel economy

4  label. Similarly, dealers were required to distribute the fuel economy guide.

5  Dealers had no ability to alter the "context" in which this federal publication states

6  the 2006 Honda Civic Hybrid EPA estimates are 49 MPG City and 51 MPG

7  Highway.

8         In sum, if it could be "false advertising" or "unfair competition" actionable

9  under state law to communicate to consumers that the 2006 Honda Civic Hybrid had

10  estimated gas mileage of 49 MPG City and 51 MPG Highway, then committing

11  those offenses was compelled by federal law and regulation. Any effort to

12  discourage AHM or other dealers from complying with federal law in advertising

13  those numbers (including, but not limited to, in the fuel economy label and in the

14  fuel economy guide) would undermine federal law and the Congressional mandate.

15  Plaintiff's claims are, therefore, preempted.

16  **II.    PLAINTIFF FAILS TO STATE CLAIMS FOR RELIEF UNDER**

17  **        CALIFORNIA LAW**

18         Proposition 64 changed California law so that a claim for unfair competition

19  under Cal. Business & Professions Code ("B&P") § 17200, *et seq.*, or for false

20  advertising under B&P 17500, *et seq.*, may be brought by a person only if that

21  person "has suffered injury in fact and has lost money or property <u>as</u> <u>a</u> <u>result</u> <u>of</u>" the

22  unfair competition or false advertising. B&P § 17204; B&P § 17535. The issue for

23  the court is whether plaintiff here can show he suffered injury in fact and has lost

24  money or property "as a result of" AHM's advertising absent an allegation that he

25  actually saw the advertising and relied on it in making the decision to purchase his

26  car. Put another way, he necessarily could not have suffered injury "as a result of"

27  advertising he never saw. Similarly, he necessarily could not have suffered injury

28  "as a result of" advertising he only saw after he bought his car. And he necessarily

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1  did not suffer injury "as a result of" advertising (if any) that he saw but did not rely
2  on.  The plain language of the statutory provisions requires reliance.

3       The Opposition impliedly recognizes that the California Court of Appeal's
4  decision in *Pfizer v. Superior Court*, 45 Cal.Rptr.3d 840 (2006) ("*Pfizer*"), holds
5  that reliance is a necessary element.  (AHM's Points and Authorities in support of
6  this motion fully disclosed that the California Supreme Court granted review in
7  *Pfizer*.)  The Opposition asserts that this court may not rely upon *Pfizer*.  Notably,
8  the Opposition cites no rule or other authority to support that claim.  Absent any rule
9  to the contrary, it appears the court may find *Pfizer's* reasoning persuasive.  Or the
10  court may find persuasive and adopt the same rule based on the statutory language
11  alone and/or the decisions of other district courts that have held that Proposition 64
12  requires reliance.

13       In *Laster v. T-Mobile U.S.A., Inc.* 407 F.Supp.2d 1181, 1194 (S.D. Cal. 2005)
14  ("*Laster*"), plaintiffs alleged in a putative class action that the defendant cellular
15  phone companies and others involved with the sale of wireless telecommunications
16  services engaged in unfair and deceptive practices by charging sales tax on the retail
17  value of cellular phones that were advertised as "free" or at substantial discounts,
18  allegedly in violation of B & P § 17200, *et seq.* and § 17500, *et seq.*  Plaintiffs also
19  sought damages and injunctive relief under the Consumer Legal Remedies Act, Cal.
20  Civil Code § 1770, *et seq.* ("CLRA").  The district court granted defendants' motion
21  to dismiss plaintiffs unfair competition law and false advertising law claims without
22  prejudice and granted defendant's motion to dismiss the CLRA claims with
23  prejudice.  The court recognized that after Proposition 64, in order to state a viable
24  claim, the plaintiff must adequately allege causation.  A plaintiff who does not
25  allege he read or relied on the defendant's advertising cannot meet that requirement:

26       Plaintiffs, however, do not include *any* allegations in their
27       FAC that they relied on Defendants' advertisements in
28       entering into the transactions.  While Plaintiffs

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1    meticulously describe the allegedly misleading

2    advertisements (as later described in Plaintiffs' pleadings,

3    a 'bait-and-switch' leading to a 'fleece') none of the named

4    Plaintiffs allege that they saw, read, or in any way, relied

5    on the advertisements; nor do they allege that they entered

6    into the transaction *as a result of* those advertisements.

7    The language of the UCL, as amended by Proposition 64,

8    makes clear that such a showing of causation is *required*

9    as to each representative plaintiff. . . . Because Plaintiffs

10    fail to allege they actually relied on false or misleading

11    advertisements, they fail to adequately allege causation as

12    required by Proposition 64. Thus, under § § 17203 and

13    17204, Plaintiffs lack standing to bring their UCL and

14    FAL claims.

15    *Laster*, 407 F. Supp.2d 1181, 1194.

16    Similarly, in *Chamberlin v. Ford Motor Co.* 369 F. Supp.2d 1138 (N.D. Cal.

17 2005), the court recognized "in order to prove that non-disclosed information is

18 "material," plaintiffs must be able to show that "had the omitted information been

19 disclosed, one would have been aware of it and behaved differently." *Mirkin v.*

20 *Wasserman* 5 Cal.4th 1082, 1093." *Chamberlin*, 369 F.Supp.2d 1138, 1144-45.

21 Accordingly, a plaintiff must allege he or she actually reviewed the advertising.

22 Otherwise, they can make no showing that any omission was material to their

23 decision.

24    The Opposition relies on *Anunziato v. eMachines, Inc.* 402 F.Supp.2d 1133,

25 1137 (C.D. Cal. 2005) ("*Anunziato*"). In *Anunziato*, the complaint alleged a single

26 false statement made to the named plaintiff and to all class members. *Anunziato* is

27 distinguishable because it does not address a situation where a complaint alleges

28 numerous misrepresentations occurring over a lengthy period of time and where

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1   logically not all of the misrepresentations were made to this plaintiff (or any single

2   consumer). Additionally, subsequent cases have uniformly rejected *Anunziato's*

3   reasoning as it fails to give meaning to the "as a result of" language in the statutes

4        In *Cattie v. Wal-Mart Stores, Inc.* (2007) WL 935582 (S.D. Cal. 2007)

5   ("*Cattie*" a copy attached as Exhibit "A") the district court considered and declined

6   to follow *Anunziato*. Plaintiff alleged she bought bed linens from the defendants but

7   the thread count was lower than as advertised. She filed a putative class action

8   alleging violation of the Unfair Competition Law, Cal. B&P § 17200, *et seq.*

9   ("UCL"), the False Advertising Law ("FAL"), B&P § 17500, *et seq.*, and the

10  Consumer Legal Remedies Act, Cal. Civ. Code § § 1750, *et seq.*, (CLRA). The

11  defendants cited *Pfizer* for the proposition that plaintiff must both plead and prove

12  she relied on the false advertising.[2] Although aware that *Pfizer* had been vacated,

13  the court considered *Laster* and the language of Proposition 64 itself. Comparing

14  the reasoning of *Laster* and *Anunziato*, the court found the reasoning of *Laster* more

15  persuasive. *Cattie*, 2007 WL 935582 *7. The court reasoned "Requiring a plaintiff

16  merely to show that she bought a product and that the product was falsely advertised

17  would not, in the Court's opinion, show harm occurred "as a result of" the false

18  advertisement." *Cattie*, 2007 WL 935582, *7. The court dismissed the UCL and

19  FAL claims on this basis.

20

21

22

23        [2] The California Court of Appeal in *Pfizer* considered and disagreed with
    *Anunziato:* "While *Anunziato* expressed an understandable concern, it would
24  appear the court substituted its judgment for that of the voters and based its decision
    on the perceived ill effects a "reliance" requirement would have in hypothetical fact
25  situations. In view of Proposition 64's express requirement that a plaintiff suffered
    'injury in fact . . . *as a result of*' the fraudulent business practice or false advertising.
26  (§ § 17204, 17205, italics added), we believe the district court's decision in *Laster v.
    T-Mobile U.S.A., Inc.* (S.D. Cal. 2005) 407 F.Supp.2d. 1181, sets forth the correct
27  interpretation." *Pfizer*, 45 Cal.Rptr. 840, 852.

28

REPLY TO OPPOSITION TO MOTION TO DISMISS

1    Without acknowledging the significance of the "as a result of" language, the

2  Opposition argues the claim under Civil Code § 1750, *et seq.* does not require

3  reliance. *Cattie* is worth noting here in that it recognizes reliance is required for this

4  claim as well:

5    California requires a plaintiff suing under the CLRA for

6    misrepresentations in connection with a sale to plead and

7    prove she relied on a material misrepresentation. *Caro v.*

8    *Procter & Gamble Co.,* 18 Cal.App.4th 644, 668

9    [Cal.App. 4 Dist., 1993] (holding no material

10    misrepresentation was made to plaintiff suing under the

11    CRLA because he did not believe the allegedly misleading

12    statement.) Cf. *Anunziato v. eMachines, Inc.,* 402

13    F.Supp.2d 1133, 1137 (C.D. Cal. 2007) (acknowledging

14    the CRLA's reliance requirement.)

15  *Cattie* at \*6.

16    The cases cited in the Opposition do not support plaintiff's argument that

17  CLRA does not require reliance.  In *Wilens v. T.D. Waterhouse Group, Inc.,* 120

18  Cal.App.4th 746 (2003) ("*Wilens*"), the trial court denied plaintiffs motion to certify

19  a class action alleging violation of CLRA and UCL based upon alleged improper

20  termination of access to an internet stock trading service.  The Court of Appeal

21  affirmed the order denying class certification.  There was no claim for false

22  advertising.  The court had no occasion to, and did not, address whether reliance

23  was an element of the claim.  The court did mention that "[i]n CLRA actions

24  alleging fraud on behalf of a class of consumers, causation can sometimes be

25  inferred by the materiality of the misrepresentation." *Wilens,* 120 Cal.App.4th at

26  755. *Wilens* does not, however, support an argument that reliance can be inferred

27  here.  This is particularly so because there is no allegation that plaintiff ever saw

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

1 | AHM ads (other than he must have seen the fuel economy label affixed to the

2 | vehicle) before buying his vehicle.

3 |      The Opposition cites *Caro v. Proctor & Gamble Co.,* 18 Cal.App.4th 644,

4 | 668 (1993), ("*Caro*"). In *Caro*, plaintiff appealed from an order denying class

5 | certification in a suit alleging, among other things, violation of the UCL and CLRA

6 | based on a claim the defendant falsely advertised that a particular product was fresh

7 | orange juice, when it was actually reconstituted frozen juice. The Court of Appeal

8 | affirmed the order denying certification of the class. The Court of Appeal held, "the

9 | court properly concluded the issue whether any asserted misrepresentation induced

10 | the purchase of Citrus Hill Fresh Choice orange juice would vary from consumer to

11 | consumer." *Caro*, 18 Cal.App.4th 644, 668. *Caro* does not support plaintiff's

12 | argument that CLRA does not require reliance.

13 |      Finally, the Opposition cites *Vasquez v. Superior Court*, 4 Cal.3d 800 (1971),

14 | where consumers who bought frozen food and freezers on installment sales

15 | contracts sought rescission based on fraudulent misrepresentation. The court held

16 | that plaintiffs must prove reliance in order to prevail on a claim for

17 | misrepresentation. *Vasquez*, 4 Cal.3d 800, 814. *Vasquez* does not support plaintiff's

18 | claim that CLRA does not require reliance. Parenthetically, the court recognized

19 | that in some circumstances, reliance upon false misrepresentations may be inferred

20 | from the circumstances attending the transaction. *Vasquez* does not, however,

21 | support an argument reliance can or should be inferred here. Plaintiff could not

22 | possibly have relied on anything other than the fuel economy label on the vehicle

23 | absent, at a minimum, an allegation that he saw something else before buying the

24 | vehicle.

25 |      In sum, the "as a result of" language in B&P § 17204, § 17535 and Civil Code

26 | § 1750, *et seq.*, require that each plaintiff plead and prove reliance. Plaintiff's

27 | inability to plead he saw and relied on any advertisements means he has not plead a

28 | viable claim for relief. The claims should be dismissed on this second basis as well.

**III.    THE CLAIMS PLED DO NOT MEET RULE 9(b) AND/OR RULE 12(e) STANDARDS**

Plaintiff has not met the Rule 12(b) requirement from *Vess v. CIBA-Geigy Corp. USA*, 317 F.3d at 1106, of alleging "who, what, when, where and how." Most specifically, he has not alleged whether he saw any of the ads referred to in the Complaint. If he did, he does not allege when. As discussed above, advertisements plaintiff never saw, or only saw after he purchased his vehicle, could not have been a factor in his decision and cannot be the basis for his claim. He must allege what he saw, when he saw it, where and how.

As further detailed in the section of AHM's points and authorities relating to the Rule 12(e) motion, the Complaint also fails to specify what exactly plaintiff claims is misleading about most of the advertisements referred to in the Complaint. For example, as to the Time and Newsweek ads, which the Complaint alleges were published from 2003 through November 2006, he cannot really be claiming that ads published in 2003 made false or misleading statements about the 2006 Civic Hybrid. Is his claim that it was misleading to say the Civic Hybrid will get "up to 650 miles to every tank of gas"?

The Complaint does not specify the what, when, where and how and does not give fair notice of the claim.

Respectfully submitted,

DATED:  June 11, 2007        LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
       Jon Kardassakis
       Attorneys for Defendant
       AMERICAN HONDA MOTOR CO., INC.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012
TELEPHONE 213.250.1800

# EXHIBIT "A"



Slip Copy, 2007 WL 935582 (S.D.Cal.)
(Cite as: Slip Copy)

**c**
**Cattie v. Wal-Mart** Stores, Inc.
S.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
Catherine **CATTIE**, on behalf of Herself and All
Others Similarly Situated, Plaintiff,
v.
**WAL-MART** STORES, INC., and **Walmart.** Com
USA, LLC, Defendants.
No. 06CV0897-LAB (CAB).

March 21, 2007.

Blake M. Harper, Hulett Harper Stewart, San
Diego, CA, for Plaintiff.

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION
TO DISMISS**
LARRY ALAN BURNS, United States District
Judge.
*1 On June 9, 2006, Plaintiff filed her second
amended complaint ("SAC") FN1 in this putative
class action. On June 15, 2006, Defendants moved
pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss the
SAC, including claims by the putative class. The
Court took this motion under submission and now
renders its decision.

> FN1. The SAC is the operative complaint
> in this action.

Plaintiff has also requested that the Court take
judicial notice of certain California state court
decisions.

**I. LEGAL AND FACTUAL BACKGROUND**

Plaintiff, a resident of New Jersey, alleges she
bought bed linens from a website operated by

Defendants, and that the thread count of these linens
was lower than advertised. Thereafter, she brought
this putative nationwide class action, bringing
claims under the Unfair Competition Law (UCL),
Cal. Bus. & Prof.Code §§ 17200 *et seq.;* the False
Advertising Law (FAL), Cal. Bus. & Prof.Code §§
17500 *et seq.;* and the California Consumer Legal
Remedies Act (CLRA), Cal. Civ.Code. §§ 1750 *et
seq.,* seeking injunctive relief, damages,
disgorgement, interest, restitution, attorneys' fees,
and expenses.

Plaintiff alleges Defendant Wal-Mart Stores, Inc. ("
Wal-Mart Stores") is a Delaware corporation with
its principal place of business in Arkansas, and
Defendant Wal-Mart.com USA, LLC ("
Wal-Mart.com") is a wholly-owned subsidiary of
Wal-Mart Stores, with its principal place of
business in Brisbane, California. A limited liability
company is a citizen of every state in which its
owners are citizens. *Johnson v. Columbia
Properties Anchorage, LP,* 437 F.3d 894, 899(9th
Cir.2006). The import of Plaintiff's allegations,
then, is that Wal-Mart.com is a citizen of Delaware
and Arkansas. Plaintiff alleges the misleading
description of the bed linens was created in and sent
from Wal-Mart.com's headquarters in California,
and that a substantial part of the transactions giving
rise to its claims occurred in California and in this
district. Plaintiff further alleges that a class of
plaintiffs spread across the United States was
injured, and that the total amount in controversy
exceeds $5 million. Based on Plaintiff's allegations,
this Court has jurisdiction pursuant to 28 U.S.C. §
1332(d), assuming other requirements, such as party
standing, are met.

"The party seeking to invoke the court's jurisdiction
bears the burden of establishing that jurisdiction
exists." *Scott v. Breeland,* 792 F.2d 925, 927 (9th
Cir.1986). Because the Court is under an
independent duty to examine its own jurisdiction,
the Court's analysis is not limited to potential
jurisdictional defects raised by Defendants. *B.C. v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 935582 (S.D.Cal.)
(Cite as: Slip Copy)

Page 2

*Plumas Unified School Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999) (holding that federal courts are required to examine jurisdictional issues, even *sua sponte* if necessary).

Defendants contend Plaintiff and the class lack standing to sue either Defendant. Standing is a jurisdictional requirement, and a party invoking federal jurisdiction has the burden of establishing it. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Even though California state law has more lenient standing requirements, standing sufficient to meet federal standards is a jurisdictional requirement imposed by Article III of the U.S. Constitution and takes priority. *Lee v. American Nat'l Ins. Co.*, 260 F.3d 997, 999-1000, 1001-02 (9th Cir.2001). *Accord Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir.1994) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985)) (holding that standing to bring an action in federal court is determined under federal, not state law). By itself, a state law creating a right to sue cannot confer standing, although it can create an interest or legal right, the infringement of which could constitute an "injury in fact" sufficient to support standing. *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir.2001). Of course, because Plaintiff's claim arises under state law only, Plaintiff's substantive rights in this Court are no greater than they would be in state court, pursuant to the doctrine of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, Federal law may limit Plaintiff's standing, but it will not expand her right to bring this action beyond what is provided under state law.

**\*2** To show she has standing, Plaintiff must establish three things:
First [she must have] suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of....Third, it must be likely, as opposed to merely speculative,

that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (citations and internal quotation marks omitted). Here, Plaintiff's cause of action arises under state law. To the extent state law does not recognize Plaintiff's standing, she would lack a "legally protected interest" and would thus lack standing under federal law.

Defendants further contend Plaintiff has failed to state a claim because she did not comply with the CLRA's notice and demand requirement, an element of her claim. Defendants contend because Plaintiff's individual claims are barred, the class claims should also be dismissed.

Defendants submitted evidence in support of their motion. In evaluating the Rule 12(b)(1) motion to dismiss, the Court may properly consider these because Rule 12(b)(1) attacks on jurisdiction can be either facial or factual. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1040 n .2 (9th Cir.2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000)). By presenting evidence, a party converts its motion to dismiss into a factual motion, and the opposing party must furnish evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *Savage*, 343 F.3d at 1040 n. 2 (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989)).

When deciding either a Rule 12(b)(1) or Rule 12(b)(6) motion, the Court accepts all allegations of fact in the complaint as true and construes them in the light most favorable to the plaintiffs. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.2003) (citations omitted). However, the Court is not require to accept mere conclusory allegations nor does the Court necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Id.*

## II. DISCUSSION

### A. Whether Plaintiff Has Standing to Sue Wal-Mart Stores

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 935582 (S.D.Cal.)
(Cite as: Slip Copy)

### 1. Whether this Argument Is Properly a Factual Rule 12(b)(1) Motion

Defendants contend Plaintiff lacks standing to bring a claim against Wal-Mart Stores because she never bought anything from this Defendant "and therefore she has not suffered any injury-in-fact as a result of anything Wal-Mart Stores, Inc. did or did not do." (Memo of P & A at 1:10-22.) Defendants cite *Lee,* 260 F.3d 997, in support of their contention. *Lee* is not particularly apposite, however. In *Lee,* a plaintiff who concededly did not buy insurance from the defendant attempted to sue as a private attorney general under Cal. Bus. & Prof.Code § 17204, which does not require that a plaintiff suffer injury-in-fact in order to bring suit. 260 F.3d at 1001 . The emphasis there was not on whether the right defendant was named, but on whether that plaintiff-as opposed to some other plaintiff who did buy insurance-was the right person to bring the action. Here, however, Plaintiff did buy linens, although it is not clear whether she bought linens from both Defendants or only from Wal-Mart.com.

\*3 In essence, Defendants are arguing Plaintiff has sued the wrong Defendant. One element of standing is that a plaintiff's harm must be " 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560 (citations, alterations, and quotation marks omitted). Thus, if Plaintiff has failed to allege a connection between Defendant Wal-Mart Stores' conduct and her injury, her allegations fail to show she has standing to sue Wal-Mart Stores.

In some cases, naming the wrong defendant is analyzed in terms of standing. *See, e.g., Pritikin v. Department of Energy,* 254 F.3d 791, 798 (2001). On these facts, however, the jurisdictional question of standing is intertwined with the issue of whether Wal-Mart Stores was actually responsible for marketing the linens on the Wal-Mart.com website, which goes to the merits of the suit. *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.,* 711 F.2d 138, 139 (9th Cir.1983) (holding that the question of jurisdiction and the merits of an action will be considered intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief). In such a case, jurisdictional finding of disputed facts under Rule 12(b)(1) is inappropriate. *Id.* Where jurisdiction is intertwined with the merits, the Court assumes the truth of the allegations in a complaint unless controverted by undisputed facts in the record. *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir.2003).

In deciding this portion of the Motion, as well as the portion dealing with the CLRA's notice requirement, discussed below, the Court will therefore not look beyond the pleadings. The Court will, however, construe Plaintiff's proffered evidence as arguing Plaintiff could if permitted amend her complaint to add allegations consistent with the proffered evidence.

### 2. Facial Rule 12(b)(1) Challenge to Standing

Plaintiff initially filed suit against Wal-Mart Stores, Inc. Shortly thereafter, Plaintiff amended her complaint to name both Defendants. In the SAC, Plaintiff conflates the two Defendants and refers to both collectively as "Wal-Mart" or the "Company." (SAC at 3:1-4.) Throughout the SAC, the actions giving rise to this lawsuit are attributed to both jointly, even where it is clear only one Defendant is intended. *See, e.g.,* SAC at 4:18 ("[T]he Company operated more than 3,800 stores in the United States. "), 4:19 ("Wal-Mart maintains a website, http://www.walmart.com/.") The Court therefore construes the SAC's references to "Wal-Mart" or the "Company" as disjunctive-*i.e.,* either Wal-Mart Stores or Wal-Mart.com. Plaintiff therefore has not adequately alleged Wal-Mart Stores' participation in Wal-Mart.com's wrongful conduct. Because it is never adequately alleged in the SAC that Plaintiff bought bed linens from Wal-Mart Stores, or had any business relationship at all with Wal-Mart Stores, Plaintiff's theory that Wal-Mart Stores participated in the wrongful conduct against her and the other putative class members is not supported by the allegations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2007 WL 935582 (S.D.Cal.)
(Cite as: Slip Copy)

*4 It is well-established that a parent-subsidiary relationship alone is an insufficient basis on which to hold a parent liable for a subsidiary's actions. *United States v. Bestfoods,* 524 U.S. 51, 61-62 (1998). Accord *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1134 (9th Cir.2003) (citations omitted). There are two exceptions, however: "a subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego, or where the subsidiary acts as the general agent of the parent." *Id.* (citations omitted). Of course, a parent can also be directly liable if it participates in the wrongdoing. *Bestfoods,* 524 U.S. at 64-65.

Plaintiff contends in her Opposition that Wal-Mart Stores is a proper Defendant under three different theories: because Wal-Mart Stores directly participated in the· alleged unlawful business practices, because Wal-Mart. com is an alter ego of Wal-Mart Stores,[FN2] and because Wal-Mart.com was acting as Wal-Mart Stores' agent. (Opp'n at 12:5-16:11.) With regard to the last two theories, Plaintiff identifies facts she believes would support these theories, although she has made no allegations in the SAC supporting either. Plaintiff requests that if the Motion is granted, she be permitted to amend her complaint to plead facts supporting an alter ego theory, although she makes no such request to the other two identified theories.

> FN2. Plaintiff uses the phrase "unity of interest," but it *is* clear she is referring to an alter ego theory of liability.

In her Opposition to the Motion, Plaintiff has referred to evidence she believes would show Wal-Mart Stores participated in Wal-Mart.com's wrongdoing. (Opp'n at 12:12-13:7.) The facts she cites, however, merely show a close business relationship in terms of the entities' close identification with each other and use of common channels of distribution. *(Id.; cf. id.* at 14 n. 8 (citing similar evidence in support of alter ego theory).) While this might show Wal-Mart Stores participated in WalMart.com's distribution of products, or in its business generally, it does not adequately allege Wal-Mart Stores had anything to

do with the wrongdoing complained of, *i.e.,* the misleading product description appearing on the Wal-Mart. com website. Plaintiff cites no authority showing that a general business relationship of this kind is sufficient to show that Wal-Mart Stores participated in WalMart.com's wrongdoing. Rather, the rule given in authority Plaintiff cites requires a parent entity to participate directly in the wrongdoing, something Plaintiff has not alleged. (Opp'n at 12:14-18 (citing *Bestfoods,* 524 U.S. at 64-65).)

In California, a party seeking to pierce a corporate veil and hold a parent entity derivatively liable under the alter ego theory must show that two conditions are met:
1) there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist; and 2) there must be an inequitable result if the acts in question are treated as those of the corporation alone.

*5 *F. Hoffman-La Roche, Inc. v. Superior Court,* 130 Cal.App.4th 782, 796 (Cal.App. 6 Dist., 2005) (citations omitted).

Plaintiff acknowledges she is not able, without discovery, to produce evidence showing an inequitable result will follow if the Wal-Mart.com's actions are attributed to it alone. (Opp'n at 13:11-12.) Furthermore, while Plaintiff says she can produce evidence showing the two entities have a close relationship and used common distribution channels, the evidence she cites does not go so far as to show that "the separate personalities" of Wal-Mart Stores and Wal-Mart.com "do not in reality exist." 130 Cal.App.4th at 796. The alter ego test is satisfied, for example, where a parent corporation uses its subsidiary as a marketing conduit and attempts to shield itself from liability based on its subsidiaries' activities, ... [or] where the record indicates that the parent dictates every facet of the subsidiary's business-from broad policy decisions to routine matters of day-to-day operation.

*Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 935582 (S.D.Cal.)
(Cite as: Slip Copy)

Cir.2001) (alterations, internal quotation marks, and citations omitted). Assuming Plaintiff adds allegations suggested by the evidence she cites, the allegations would nevertheless fall short of supporting an alter ego theory of liability.

Because the allegations and proffered evidence are insufficient to show that Wal-Mart Stores was involved in the alleged wrongdoing against Plaintiff or even directs the type of activity Plaintiff complains of, the Court holds that Plaintiff has not adequately shown her injury is traceable to the actions of Wal-Mart Stores. On the basis of the proffered evidence, Plaintiff has not shown she can amend to cure these deficiencies.

### B. Whether Plaintiff Was Injured

Defendants contend, citing evidence, that Plaintiff bought one set of sheets eleven days before filing suit, and that there was no evidence Plaintiff was dissatisfied with the sheets she bought, or used them, or even opened them. (Memo of P & A at 2:6-11 (citing Decl. of Steven Frankel).) Defendants have not brought this as a separate argument, and have not submitted a great deal of evidence in support of it. Their evidence on this point, consisting in pertinent part of letters sent by their counsel, would be inadmissible if offered to show she did not rely on the allegedly false advertising. If Plaintiff did not rely on it, Defendants argue this would show she lacks standing to bring a CLRA claim. Defendants have not specifically extended this argument to her UCL and FAL claims though, as discussed below, the Court examines this issue *sua sponte.* Because this argument is not based on submitted evidence, the court will treat it as a facial Rule 12(b)(1) challenge.

### 1. CLRA's Reliance Requirement

Plaintiff alleges the thread count of the sheets she bought was lower than advertised and that, therefore, the sheets were not of the quality they were advertised to be. This can constitute an injury under the CLRA, Cal. Civ.Code § 1770(a)(7), provided other requirements are met. *Colgan v.*

*Leatherman Tool Group, Inc.,* 135 Cal.App.4th 663, 672 (Cal.App. 2 Dist., 2006) (affirming summary adjudication in favor of plaintiff on CLRA claim where defendant's advertisements misrepresented product's origin).

*6 In a claim for false advertising, one of these requirements is reliance. California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation. *Caro v. Procter & Gamble Co.,* 18 Cal.App.4th 644, 668 (Cal.App. 4 Dist., 1993) (holding no material misrepresentation was made to plaintiff suing under the CLRA because he did not believe the allegedly misleading statement). *Cf. Anunziato v. eMachines, Inc.,* 402 F.Supp.2d 1133, 1137 (C.D.Cal.2005) (acknowledging the CLRA's reliance requirement).

Because Plaintiff's claims are based on allegations of false advertising, Plaintiff must allege she relied on the false advertising. *Laster v. T-Mobile USA, Inc.,* 407 F.Supp.2d 1181, 1194 (S.D.Cal.2005). She must also allege the misrepresentation was material as to her, *i.e.,* "that without the misrepresentation, [P]laintiff would not have acted as [s]he did." *Caro,* 18 Cal.App.4th at 668 (citation and quotation marks omitted). The SAC, however, does not allege Plaintiff relied on the false advertising when entering into the transaction to purchase the linens. This is a particular concern because Defendants aver Plaintiff, represented by four different law firms, filed a nationwide lawsuit in four different states a mere eleven days after making her purchase. (Motion at 2:6-9 (citing Decl. of Steven Frankel).) The possibility that Plaintiff did not rely on the allegedly false advertising when making her purchase is thus more than purely theoretical.

Plaintiff does allege that the advertising resulted in the sale of goods, but does not allege that false statements or claims had anything to do with her decision to purchase the linens. (SAC, ¶ 56). Plaintiff also makes several allegations that " Plaintiff Cattie and members of the Class have been injured in their money or property as a result of Defendants' [false advertising] as set forth in this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 935582 (S.D.Cal.)
**(Cite as: Slip Copy)**

Complaint." *(Id.* at ¶¶ 48, 57, and 65.) These, however, are conclusory and do not adequately allege reliance. Therefore, the Court holds Plaintiff has not adequately alleged that either she or the putative class has standing to seek relief under the UCL or FAL. *See Laster,* 407 F.Supp.2d at 1194 (dismissing UCL and FAL claims for lack of standing, where plaintiff failed to allege she entered into transaction in reliance on false advertising).

### 2. FAL and UCL Claims

Defendants cite *Pfizer, Inc. v. Superior Court,* 45 Cal.Rptr.3d 840, 843 (Cal.App. 2 Dist.2006) in their Reply for the proposition that Plaintiff must both plead and prove she relied on the false advertising. Ordinarily, the Court will not consider arguments not raised in the opening brief. *Martinez-Serrano v. INS,* 94 F.3d 1256, 1259-60 (9th Cir.1996) (holding that issues not raised in a party's opening brief are waived). However, the Court must examine its own jurisdiction, including Plaintiff's standing, regardless of whether the issue is properly raised by the parties. *Plumas Unified School Dist.,* 192 F.3d at 1264. The Court therefore, *sua sponte,* raises and addresses the issue of whether Plaintiff has standing to bring FAL and UCL claims. As discussed above, to the extent Plaintiff has suffered no injury under state law, she also lacks standing under federal law.

*7 Although *Pfizer* has been vacated, the Court can look to other authority, such as *Laster* and Proposition 64 itself. There is, however, a split of authority. *Laster,* a decision of this District, holds that under the FAL and UCL as amended by Proposition 64, a plaintiff seeking to represent claims on behalf of others must show "(1) she has suffered actual injury in fact, and (2) such injury occurred as a result of the defendant's alleged unfair competition or false advertising." 407 F.Supp.2d at 1194 (construing Proposition 64). Where plaintiffs " [f]ail to allege they actually relied on false or misleading advertisements, they fail to adequately allege causation as required by Proposition 64." *Id.* For purposes of determining standing, failure to allege reliance leaves open the possibility that Plaintiff is attempting to sue on behalf of other

injured parties even though she herself was not injured. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324 (1984) (citing the "general prohibition on a litigant's raising another person's legal rights").

The Court is aware of contrary authority, however. *See Anunziato,* 402 F.Supp.2d at 1137 (holding that plaintiffs bringing claims under the FAL and UCL need not plead reliance.) Comparing the holdings of *Laster* and *Anunziato,* the Court finds the reasoning of *Laster* more persuasive.

The Court notes the *Anunziato* court had to distinguish analogous cases where California courts construed "as a result of" language in other statutes (such as the CLRA) as imposing a reliance requirement. 402 F.Supp.2d at 1137. The *Anunziato* court relied on the purposes of the FAL and UCL to conclude requiring reliance would not serve the statutes' consumer protection purposes as well. *Id.* at 1137-38. The *Anunziato* court refused to require a plaintiff to allege he saw or relied on the advertisement. *Id.* at 1137. Requiring a plaintiff merely to show that she bought a product and that the product was falsely advertised would not, in the Court's opinion, show harm occurred "as a result of" the false advertisement.

The *Anunziato* court also looked to the acknowledged purposes of Proposition 64, which included curbing abusive lawsuits by plaintiffs who had not suffered actual harm. 402 F.Supp.2d at 1137-39 (quoting § 1(a) and (b) of Proposition 64, stating the Proposition's the intent to foreclose the ability of an " 'unaffected plaintiff,' which was often the sham creation of attorneys," to bring frivolous lawsuits with no public benefit or accountability to the public). Accepting this as the purpose of Proposition 64, the Court concludes requiring nothing more than a token purchase would undermine Proposition 64's reform purposes. Two opinions, *Molski v. Mandarin Touch Restaurant,* 347 F.Supp.2d 860, 867-68 (C.D.Cal.2004) and *People ex rel. Lockyer v. Brar,* 115 Cal.App.4th 1315, 1316-17 (2004), both cited in *Anunziato,* 402 F.Supp.2d at 1139, outline "shakedown schemes" in which would-be litigants at the direction of attorneys deliberately seek out statutory violations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 7

Slip Copy, 2007 WL 935582 (S.D.Cal.)
(Cite as: Slip Copy)

An attorney who became aware of false advertising but who had no client who was harmed by it could easily "create" a client with standing to sue by directing a willing party who was not deceived by the advertising to make a purchase. Thus, omitting a "reliance" requirement would blunt Proposition 64's intended reforms.

*8 The *Anunziato* court relied heavily on the existence of a large body of consumers who do not or cannot read advertising but who are nevertheless entitled to be dealt with on equal terms with other consumers. 402 F.Supp.2d at 1137-38. While removing disparities between consumers might be a laudable goal, it is not clear that the FAL and UCL, are intended to address this potential disparity. While California courts recognize the "broad, sweeping" scope of the UCL, they are also wary of exceeding legislative intent: "Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has ... considered a situation and concluded no action should lie, courts may not override that determination." *CelTech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 182 (1999). This Court likewise defers to the intent of Proposition 64 to limit rights of action.

The California Court of Appeals has given some guidance on this point in *In re Firearm Cases,* 126 Cal.App.4th 959, 978-79 (Cal.App. 1 Dist.2005) (discussing the causation requirement for claims under the UCL). In this post-Proposition 64 case, the court cited an older case, *South Bay Chevrolet v. General Motors Acceptance Corp.,* 72 Cal.App.4th 861 (1999), for the principle that there was no unfairness where, in spite of what they were told, consumers knew the truth regarding the transaction they were entering into. *Firearm Cases,* 126 Cal.App.4th at 979 ("Because the acts of the lender did not deceive the borrowers, causation was absent and the practice could not be deemed unfair." )

While Defendants only raised this issue in their Reply, the parties addressed it in their briefing on the request for judicial notice. Thus, even though the Court considered this issue *sua sponte,* the parties have had both an adequate opportunity and every incentive to make their arguments. The Court therefore concludes Plaintiff's claims under the FAL and UCL must be dismissed without prejudice for failure to adequately allege standing.

### C. Whether Plaintiff, as a Non-California Resident, Lacks Standing

Defendants contend a plaintiff suing under the CLRA, unlike the UCL, must be a California resident. They cite *Nordberg v. Trilegiant Corp.,* 445 F.Supp.2d 1082 (N.D.Cal.2006) and *Discover Bank v. Superior Court,* 36 Cal.4th 148 (2005). Neither citation is apposite, however. *Nordberg* mentions only in passing, without discussion, that two California residents were the only plaintiffs with standing to sue under the CLRA. 445 F.Supp.2d at 1096. The reason for this lack of standing, however, appears to be that defendants were non-California companies and the transactions at issue took place outside of California. Therefore, only transactions with the two California residents had any connection with California. The requirement that a non-California plaintiff has no standing to sue under the CLRA for a transaction having no connection with California is unremarkable and does not help Defendants. In the instant case, where the allegedly misleading advertisement appears to have been sent from California by Wal-Mart.com, an entity with its principal place of business in California.

*9 In *Discover Bank,* the court clarified that plaintiff's counsel intended to have a national class certified and therefore did not plead a CLRA cause of action. 36 Cal.4th at 159 n. 2. The reason for this is not fully explained, but appears to relate to the CLRA's antiwaiver provision. In any case, *Discover Bank* dealt with a situation *not* involving the CLRA. Thus, even if the *Discover Bank* court had concluded a plaintiff suing on a CLRA cause of action must be a California resident, such a conclusion would be dicta.

In any case, California law provides that conduct emanating from California may give rise to a CLRA cause of action. *Clothesrigger, Inc. v. GTE Corp.,* 191 Cal.App.3d 605, 614-15 (Cal.App.4.Dist.1987)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

. As the *Clothesrigger* court noted, it was still possible the law of a foreign jurisdiction might be the more appropriate rule of decision, *id.;* however, Defendants have neither raised nor briefed this point.

Therefore, the Court concludes Plaintiff does not lack standing merely because she is not a California resident.

### D. Whether Plaintiff's CLRA Claim Should Be Dismissed Because She Failed to Comply with the CARA's Notice Provisions

Under Cal. Civ.Code § 1782(a), a consumer must give notice at least thirty days before commencing an action for damages under the CARA, although under § 1782(d) a consumer may bring an action for injunctive relief without giving notice. Under § 1782(d), a consumer who brings an action for injunctive relief may give notice *after* filing suit, and at least thirty days after giving notice may amend her complaint to add a request for damages.

The CLRA's notice requirement is not jurisdictional, but compliance with this requirement is necessary to state a claim. *See Outboard Marine Corp. v. Superior Court,* 52 Cal.App.3d 30, 40-41 (1975) (addressing failure to give notice under demurrer standard); *Laster,* 407 F.Supp.2d at 1195-96 (dismissing CLRA damages claim with prejudice under Rule 12(b)(6) for failing to comply with notice requirements). *Accord Von Grabe v. Sprint,* 312 F.Supp.2d 1285, 1304 (S.D.Cal.2003) (dismissing premature claims for damages with prejudice). While this argument should have been brought as part of a Rule 12(b)(6) motion, Plaintiff raised no objection, but responded with full briefing to the argument as set forth in the Motion. The Court will therefore consider the motion as raised and briefed.

Defendants cite *Laster,* 407 F.Supp.2d at 1195-96. There, plaintiffs brought suit without giving notice, and sought both injunctive relief and damages. The court denied this request and dismissed plaintiffs' claim for damages with prejudice. *Id.* at 1196. The court relied on two precedents, *Outboard Marine,*

52 Cal.App.3d at 40-41 (requiring strict application of the notice requirement), and *Von Grabe,* 312 F.Supp.2d at 1304 (dismissing premature claims for damages with prejudice).

Here, there is no dispute Plaintiff first claimed for damages, then gave notice, then amended her complaint, more than thirty days after giving notice. *(See* Decl. of Bryan L. Crawford in Supp. of Opp'n to Mot. to Dismiss SAC, July 14, 2006, at ¶ 2; Decl. of Mark S. Goldman in Supp. of Opp'n to Mot. to Dismiss SAC, July 14, 2006, at ¶ 2; Decl. of Blake Muir Harper in Supp. of Opp'n to Mot. to Dismiss SAC, July 14, 2006, at ¶ 2.) The only dispute is whether this is permissible or whether failure to meet the notice requirement necessitates dismissal.

*10 Under *Laster* and *Von Grabe,* failure to give notice before seeking damages necessitates dismissal with prejudice, even if a plaintiff later gives notice and amends. This result has been criticized as inconsistent with § 1782(d)'s provision permitting an amendment to add a claim for damages after giving notice. *Deitz v. Comcast Corp.,* 2006 WL 3782902, slip op. at *6 (N.D.Cal.2006) (permitting amendment where plaintiff had first sought damages and only later given notice).

The holding of *Laster* and *Von Grabe* is, however, consistent with the holding of *Outboard Marine* that "[t]he clear intent of the [CLRA] is to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." 52 Cal.App.3d at 41. The *Outboard Marine* court was adamant: insisting on a "literal application of the notice provisions" was the only way to accomplish the CLRA's purposes. *Id. See Von Grabe,* 312 F.Supp.2d at 1304 (interpreting *Outboard Marine* as requiring absolutely strict application of the notice requirement, and noting the absence of contrary cases). Permitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 9

Slip Copy, 2007 WL 935582 (S.D.Cal.)
**(Cite as: Slip Copy)**

Here, Plaintiff claimed damages without giving Defendants the statutorily required opportunity for settlement. On the basis of conceded facts, it is clear Plaintiff cannot cure this deficiency by amendment. The Court follows *Laster* and *Von Grabe* in concluding Plaintiff's claim for damages under the CLRA must be dismissed with prejudice.

### E. Request for Judicial Notice

Under Fed.R.Evid. 201, the Court may take judicial notice of the records of an inferior court in other cases. *United States v. Wilson,* 631 F.2d 118, 119 (9th Cir.1980). Plaintiff asks that the Court take notice of certain judgments of California state courts, namely, *Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal.4th 223 (2006) ("*CDR*"), and *Branick v. Downey Savings & Loan Ass'n,* 39 Cal.4th 235 (2006). Plaintiff cites these cases as supporting her view of California standing requirements after amendment of the UCL and FAL by Proposition 64, adopted in November, 2004. She contends these two opinions show, even after *Pfizer,* a plaintiff need not show actual reliance on false advertising in order to have standing to bring a FAL or UCL claim. The Court finds the cited opinions relevant, although not to the extent Plaintiff contends. The Court will therefore grant the request for judicial notice.

Neither *CDR* nor *Branick* stand for the proposition Plaintiff cites them for. Both hold that the amendments to the UCL and FAL added under Proposition 64 applied to pending claims, and that plaintiffs who had not suffered any "injury in fact" [FN3] could no longer continue prosecuting actions. The California Supreme Court therefore permitted plaintiffs who had suffered injuries in fact to be substituted in place of those who had not. The Court does not rely on *Pfizer,* which the California Supreme Court vacated pending review, *see* 51 Cal.Rptr.3d 707. However, both *CDR* and *Branick* generally require injury in fact as a standing requirement.

> FN3. "Injury in fact," as used here, refers to injury defined under state law.

Nevertheless, because the Court finds Plaintiff has no legally protected interest under state law, Plaintiff cannot show standing under the first prong of the standing analysis of *Lujan,* 504 U.S. at 560-61 (requiring intrusion on a legally protected interest).

### F. Plaintiff's Standing to Seek Injunctive Relief

*11 Plaintiff has asked the Court to enjoin Defendants from "engaging in the false advertising and marketing campaign described [in the SAC]." (SAC at 13:1-5.) Plaintiff also seeks a declaration that Defendants have violated Cal. Bus. & Prof.Code §§ 17200, *et seq.* and 17500. (SAC at 12:26-28.) Although the issue was not raised or briefed by any party, the Court is concerned that Plaintiff may lack standing to seek injunctive or declaratory relief under the CLRA or any other statute. While she might have standing to seek injunctive relief under California law, this Court's power to act is limited by Article III's standing requirements. *Lee,* 260 F.3d at 999-1000, 1001-02.

In this case, Plaintiff may not have been injured at all by the alleged false advertising. Even if she was, however, it is unclear how prospective relief will redress her injury, since she is now fully aware of the linens' thread count. Furthermore, the SAC contains no allegations suggesting she intends to buy linens from Wal-Mart.com in the future. One of Article III's jurisdictional requirements is that it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.,* 528 U.S. 167, 180-81 (2000). In addition, a plaintiff seeking declaratory or injunctive relief must show she is "realistically threatened by a *repetition* of the violation." *Gest v. Bradbury,* 443 F.3d 1177, 1181 (9th Cir.2006) (citation omitted).

Furthermore, if Plaintiff may not seek injunctive relief, the standing of unnamed class members will not suffice to give the Court jurisdiction to grant it. *See Hodgers-Durgin v. de la Vina,* 199 F.3d 1037, 1045 (9th Cir.1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 10

Slip Copy, 2007 WL 935582 (S.D.Cal.)
**(Cite as: Slip Copy)**

they may not represent a class seeking that relief. Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek.")

Thus, it is questionable whether this Court can grant Plaintiff's requests for injunctive and declaratory relief. If this Court lacks jurisdiction to enjoin Defendants or give declaratory relief, consumers in Plaintiff's position may yet be able to split their claim and seek injunctive relief in state court. *See Deitz*, 2006 WL 3782902, slip op. at *4.

### G. Class Claims

Defendants have sought dismissal of class claims on the same bases as they sought dismissal of Plaintiff's claims. Except for the issue of CLRA notice, and Plaintiff's standing as a non-California resident, the class claims track Plaintiff's claims and are supported by the same evidence and allegations; thus, the class claims must be dealt with in the same fashion as Plaintiff's claims.

### IV. Conclusion and Order

For these reasons, Plaintiff's request for judicial notice is **GRANTED**. Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims and the class claims against Defendant Wal-Mart Stores are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiff's claims for damages under the CLRA are hereby **DISMISSED WITH PREJUDICE**. The class claims for damages under the CLRA are hereby **DISMISSED WITHOUT PREJUDICE**. Plaintiff's claims and the class claims under the UCL and FAL are **DISMISSED WITHOUT PREJUDICE**. Plaintiff has not made a showing that she can cure the defects in the SAC by adding allegations; therefore, her request for leave to amend is **DENIED** at this time.

*12 In view of the Court's concerns regarding its jurisdiction to grant Plaintiff's requests for injunctive and declaratory relief, Plaintiff is

**ORDERED TO SHOW CAUSE** why these claims should not be dismissed. Plaintiff may do so by serving and filing a memorandum of points and authorities, no more than five pages in length, not counting any appended or lodged material, no later than the close of business on Friday, April 6, 2007. Should Plaintiff fail to do so, the Court may dismiss these claims without further notice to Plaintiff. Defendants may, if they wish, file a reply no more than five pages in length, not counting any appended or lodged material, no later than the close of business on Friday, April 20, 2007.

**IT IS SO ORDERED.**

S.D.Cal.,2007.
Cattie v. Wal-Mart Stores, Inc.
Slip Copy, 2007 WL 935582 (S.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**PROOF OF SERVICE**
*True v. American Honda*
U.S. District Court Case No. ED CV 07-287 VAP (ORx)
File No. 20159-178

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 221 North Figueroa Street, Suite 1200, Los Angeles, California 90012.

    On June 11, 2007, I served the following document described as:

**DEFENDANT AMERICAN HONDA COMPANY, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

on all interested parties in this action by placing [X] a true copy · [ ] the original thereof enclosed in sealed envelopes addressed as follows:

SEE ATTACHED SERVICE LIST

[X]    (BY MAIL, 1013a, 2015.5 C.C.P.)

    [ ]    I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

    [X]    I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    (FEDERAL) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    Executed on June 11, 2007, at Los Angeles, California.

                                                       KIRK D. GILE

*LEWIS BRISBOIS BISGAARD & SMITH LLP*
*221 NORTH FIGUEROA STREET, SUITE 1200*
*LOS ANGELES, CALIFORNIA 90012-2601*
*TELEPHONE (213) 250-1800*

**SERVICE LIST**
*True v. American Honda*
U.S. District Court Case No. ED CV 07-287 VAP (ORx)
File No. 20159-178

Maxwell M. Blecher, Esq.
BLECHER & COLLINS
515 South Figueroa Street
17th Floor
Los Angeles, CA 90071
Attorneys for Plaintiff

Jon Tostrud, Esq.
CUNEO GILBERT & LADUCA, LLP
1801 Century Park East
Suite 2400
Los Angeles, CA 90067
Attorneys for Plaintiffs

Jonathan W. Cuneo, Esq.
William H. Anderson, Esq.
CUNEO GILBERT & LUDACA, LLP
507 "C" Street NE
Washington, DC 20002
Attorneys for Plaintiff

Nicholas E. Chimicles, Esq.
Michael D. Gottsch, Esq.
Denise Davis Schwartzman, Esq.
CHIMCLES & TIKELLIS, LLP
361 West Lancaster Avenue
Haverford, PA 19041
Attorneys for Plaintiff

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

PROOF OF SERVICE - REPLY TO OPPOSITION TO DISMISS