1  CHIMICLES & TIKELLIS LLP
   Nicholas E. Chimicles (*pro hac vice*)
2  Denise Davis Schwartzman (*pro hac vice*)
   361 West Lancaster Avenue
3  Haverford, PA 19041

4  CUNEO GILBERT & LADUCA LLP
   Jonathan W. Cuneo (*pro hac vice*)
5  William H. Anderson (*pro hac vice*)
   507 C Street, NE
6  Washington, DC 20002

7  Attorneys for Plaintiffs

8

9

10                 **UNITED STATES DISTRICT COURT**

11                 **CENTRAL DISTRICT OF CALIFORNIA**

12                 **EASTERN DIVISION – RIVERSIDE**

13

14  ——————————————————————

15                                        )  CASE NO. ED 07-cv-287 VAP-OP
                                          )
16  JOHN TRUE, et al.,                    )
                                          )  **PLAINTIFFS' MEMORANDUM**
17            Plaintiffs,                 )  **IN SUPPORT OF MOTION FOR**
                                          )  **PRELIMINARY APPROVAL**
18            v.                          )  **OF SETTLEMENT**
                                          )
19  AMERICAN HONDA MOTOR CO.,             )
    INC.,                                 )  **DATE: MARCH 23, 2009**
20                                        )
             Defendant.                   )  **TIME: 10 a.m.**
21                                        )
                                          )  **COURTROOM 2**
22  ——————————————————————

23

24

25

26

27

28

1  I.    **INTRODUCTION**

2         Plaintiffs submit this memorandum in support of their "Motion for

3  Preliminary Approval of Settlement."[1] Under the terms of the "Class Action

4  Settlement Agreement and Release" ("Agreement," filed concurrently herewith)

5  between Plaintiffs and Defendant American Honda Motor Co., Inc.  ("AHM"),

6  AHM has agreed to provide valuable and substantial benefits to Settlement Class

7  Members to resolve this Lawsuit. The Agreement contains all of the material terms

8  of the settlement, including the manner and form of notice to be provided to the

9  Settlement Class, the conditions or contingencies pertaining to the settlement's

10 final approval, and other necessary and proper terms under Rule 23 of the Federal

11 Rules of Civil Procedure ("Rule 23"). The settlement meets the criteria for

12 preliminary approval, and is well within the range of what might be approved as

13 fair, reasonable, and adequate. As such, Plaintiffs respectfully move this Court to

14 enter the [proposed] Preliminary Approval Order, attached hereto as Exhibit A,

15 preliminarily approving the proposed settlement, conditionally certifying for

16 settlement purposes only a Settlement Class (described below), and providing for

17 notice to members of the Settlement Class.

18 II.   **PERTINENT PROCEDURAL HISTORY**

19        On March 9, 2007, Named Plaintiff John True ("True") filed an action

20 against AHM alleging, on behalf of a putative class of Honda Civic Hybrid

21 ("HCH") purchasers from March 1, 2003 through March 1, 2007, that AHM

22 disseminated false and misleading advertising concerning the fuel economy of the

23 HCH.  Plaintiff asserted claims under Cal. Bus. & Prof. Code § 17200 *et seq.* (the

24 "UCL"), Cal. Bus. & Prof. Code § 17500 *et seq.* (the "FAL"), Cal. Civ. Code §

25 1750 *et seq.* (the "CLRA"), and common law unjust enrichment.

26        On April 20, 2007, AHM moved to dismiss Plaintiff's claims asserting,

27

28 [1]    Capitalized terms not otherwise defined herein shall have the same meanings
   as ascribed to them in the Settlement Agreement and Release.

1   among other things, that state law claims concerning AHM's advertising of the

2   HCH's fuel economy were preempted by the federal Energy Policy and

3   Conservation Act ("EPCA"). [Doc. No. 15]. On June 25, 2007, the Court denied

4   AHM's motion to dismiss, holding, among other things, that Plaintiff's state law

5   claims were not preempted by federal law and that "allowing the States to regulate

6   false advertising and unfair business practices perhaps may further the goals of the

7   EPCA." [Doc. No. 23 at 11].

8       Following the Court's decision on the motion to dismiss, AHM filed an

9   answer to Plaintiff's complaint, denying the allegations made therein in all material

10   respects. [Doc. No. 27]. On November 16, 2007, Plaintiffs filed a first amended

11   complaint ("FAC"), adding Gonzalo Delgado ("Delgado") as a Named Plaintiff

12   and extending the class period through June 1, 2007. [Doc. No. 43].

13       After approximately 11 months of contentious discovery and motion

14   practice, as described more fully in the accompanying "Joint Declaration of Co-

15   Lead Counsel Jonathan W. Cuneo and Nicholas E. Chimicles" ("Joint

16   Declaration"), the Parties agreed to proceed to mediation, and on June 3, 2008,

17   subject to the completion of certain already-scheduled depositions, the litigation

18   schedule was suspended pending mediation. [Doc. No. 67]. After several joint and

19   *ex parte* teleconferences with the mediator, the completion of certain depositions

20   and document discovery, the exchange of several rounds of comprehensive

21   mediation statements, and two separate two-day in-person mediation sessions, the

22   Parties reported to the Court on December 8, 2008 that they had reached a

23   settlement in principle. [Doc. No. 88]; Joint Declaration, ¶¶ 48-66. Plaintiffs now

24   move for preliminary approval of the proposed settlement pursuant to Rule 23(e),

25   and for settlement purposes only, certification of a Settlement Class.

26 **III.   SUMMARY OF THE SETTLEMENT**

27       The proposed settlement contains the following material terms:

28   • Settlement Class: The Settlement Class is defined as:

All persons who purchased or leased a new Honda Civic Hybrid automobile model years 2003 through 2008 in the United States of America including the District of Columbia.

- Settlement Consideration: The settlement consideration consists of:

1. AHM's undertaking to produce for purposes of this settlement a DVD for all Settlement Class Members demonstrating how to operate and maintain their vehicles to maximize and optimize fuel economy. The DVD will be produced and disseminated by AHM to all Settlement Class Members at AHM's expense, and its content will be accessible on the HCH Fuel Economy Website.

**-AND-**

2. As applicable, a choice of one of three options:

Option A: $1000 Cash Rebate from AHM, available to Purchaser Settlement Class Members who sell or otherwise trade in their HCH and purchase an Eligible Honda Vehicle. Option A is non-transferable and expires June 30, 2011.

Option B: $500 Cash Rebate from AHM, available to Settlement Class Members who retain their HCH and purchase an Eligible Honda Vehicle. Option B is transferable to family members and expires June 30, 2011.

Option C: Cash Payment of $100, available to any Settlement Class Members who made a documented Complaint regarding the fuel economy of their HCH to: (1) AHM or an authorized Honda or Acura dealership who reported the Complaint to AHM; or (2) to Class Counsel.

1    • Injunctive Relief: On the Effective Date, AHM will promptly undertake to

2    review all of its fuel economy advertising for the HCH, no matter in what media,

3    to modify its disclaimer language, including, at a minimum, changing language

4    from "actual mileage may vary" to "actual mileage will vary."2 AHM agrees to

5    use the modified language for a period of no fewer than twenty-four (24) months

6    from the Effective Date.

7    • Releases: The Settlement Class will release AHM of all claims that were or

8    could have been made arising from the advertising or marketing of the fuel

9    economy of the HCH, including claims that could have been made under the

10   UCL, FAL, or CLRA or comparable laws of any of the 50 states or District of

11   Columbia.

12   • Fees and Incentive Awards: AHM will pay $2.95 million for attorneys' fees,

13   expenses, and incentive awards, to be paid separate and apart from any

14   consideration flowing to the Settlement Class. Class Counsel will apply for

15   incentive awards in the amounts of $12,500 and $10,000 for Named Plaintiffs

16   True and Delgado, respectively.

17   **IV.    STANDARD OF REVIEW**

18          It is well-settled in the Ninth Circuit that settlements are favored,

19   particularly in class actions and other complex cases where substantial resources

20   can be conserved by avoiding the time, cost, and rigor of prolonged litigation.

21   *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v.*

22   *Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976). These economic gains multiply in

23   pre-certification settlements since class certification undeniably represents a

24   serious risk for Plaintiffs. *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D.

25   Cal. 2007).

26

27   _____

     [2] In addition, as the result of a change in EPA fuel economy testing methodology,

28   AHM now advertises significantly lower (and more realistic) fuel economy
     figures for the HCH.

4

1    In determining whether preliminary approval is warranted, the Court must
2    determine: (1) whether a Settlement Class can be certified under Rule 23 for
3    settlement purposes, *Amchem Prods., Inc. v. Windsor,* 521 U. S. 591, 620 (1997)[3];
4    (2) whether the settlement is within the range of what might be found fair,
5    reasonable, and adequate, so that notice of the settlement may be given to
6    Settlement Class Members, and a hearing scheduled to consider final settlement
7    approval, *Acosta,*243 F.R.D. at 386; *Moore's Federal Practice* 23.83[1], at
8    23.336.2-23-339 (3d ed. 2002); and (3) whether the proposed form of notice
9    presents a fair recital of the subject matter and proposed terms and gives all class
10   members and opportunity to be heard. *Marshall v. Holiday Magic,* 550 F.2d 1173,
11   1178 (9th Cir. 1977) (citing *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156 (1974)
12   and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)).
13   This Court has also requested summaries of the proposed fee and expense
14   award and incentive awards at the preliminary approval stage, with the
15   understanding that such matters would not be approved until a hearing on final
16   approval of the proposed settlement.[4]
17   **V.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED**
18   Certification of a Settlement Class is appropriate where the class meets the
19   requirements of Rule 23(a) (numerosity, commonality, typicality and adequacy of
20   representation), *and* the requirements of Rule 23(b)(3) (common questions of law or
21   fact predominate and the class action is superior to other available methods of
22   adjudication). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In
23   this Lawsuit, the proposed Settlement Class can be properly certified under Rule 23.
24   **A.  The Requirements of Rule 23(a) are satisfied.**
25   **1.  Numerosity**
26
27   [3] *See also Manual for Complex Litigation* § 21.623 (4th ed. 2002).
28   [4] Tr. of 12/8/08 Status Conference, at 7:4-12.

5

1        With in excess of 120,000 members scattered around the country, the

2 Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1). *Hanlon*, 150

3 F.3d at 1019.

4                **2. Commonality**

5        There are clearly questions of law and fact common to the Settlement Class

6 sufficient to satisfy Rule 23(a)(2). The Rule 23(a)(2) commonality threshold is

7 easily met where, *as here*, the same common nucleus of facts will prove each class

8 member's claim. *See Parra v. Bashas's Inc.*, 2008 U. S. App. LEXIS 15985, *8

9 (9th Cir. July 29, 2008) (*citing Hanlon*, 150 F.3d at 1019) (Rule 23(a)(2)

10 commonality construed permissively, as not all questions of fact and law need be

11 common).

12        Common questions in this Lawsuit include: (1) whether AHM's advertising

13 was false and misleading; (2) whether fuel economy was material to HCH

14 purchasers; (3) whether Plaintiffs and Settlement Class Members suffered damages

15 as a result of AHM's conduct; (4) whether Plaintiffs and Settlement Class

16 Members parted with something of value that AHM took or received from them;

17 (5) whether AHM knew, or by the exercise of reasonable care should have known,

18 that the HCH's actual fuel economy under normal driving conditions was

19 significantly below the fuel economy AHM advertised; (6) whether AHM

20 concealed from or omitted to state material facts to the Plaintiffs and Settlement

21 Class Members concerning the actual fuel economy of the HCH under normal

22 driving conditions; and (7) whether AHM knew, or by the exercise of reasonable

23 care should have known, that its advertising of fuel economy and fuel cost savings

24 for the HCH had the capacity or tendency to confuse and mislead.

25                **3. Typicality**

26        The Rule 23(a)(3) requirement of typicality is also clearly satisfied here.

27 Typicality is satisfied when the representative's claims are reasonably co-extensive

28 with those of absent class members, when each class member's claim arises from

1  the same course of events and each class member makes similar legal arguments to

2  prove the defendant's liability.  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.

3  2001); *Hanlon*, 150 F.3d at 1019.  In this Lawsuit, the claims of the Named

4  Plaintiffs and the Settlement Class Members arise from the same alleged course of

5  events: (1) that AHM made misrepresentations in its national, uniform advertising

6  concerning the fuel economy of the HCH; and (2) that the HCH did not under

7  normal, real-world driving conditions, achieve the fuel economy for use as

8  transportation advertised by AHM.   Both Named Plaintiffs testified at their

9  depositions that fuel economy was a material consideration in the decision to

10  purchase an HCH and that the car did not achieve the fuel economy advertised.

11      Named Plaintiff True purchased a 2006 HCH.  True testified that the car

12  never achieved the 49-51 mpg as advertised[5] and in fact, generally averaged 33.4

13  mpg[6] in driving he described as "normal."[7]   True further testified that he

14  purchased the HCH, because he was looking for fuel economy,[8] and by purchasing

15  the HCH could limit his driving of his 1998 Mercedes, a much less fuel efficient

16  car he also drove;[9]   no matter what he tried, however, he could not get 50 mpg in

17  his HCH.[10]

18      Similarly, Named Plaintiff Delgado testified that in regular driving[11] he only

19  achieved 32-36 mpg in his 2007 HCH no matter how he drove.[12]  The car never

20  ────────────────

21  [5] Transcript, Deposition of John True, July 24, 2008, p. 17, l. 12. (hereafter "Tr.
    True ____:____").

22  [6] Tr. True, 17:14.

23  [7] Tr. True 27:1; 163:12-13.

24  [8] Tr. True 82:8-12; 105:1-3; 154:13-15.

25  [9] Tr. True 100:2-5.

26  [10] Tr. True 95:10-20.

27  [11] Transcript Deposition of Gonzalo Delgado, July 21, 2009 p. 61, line 4, (hereafter
    Tr. Delgado ____:____).

28  [12] Tr. Delgado 132:17-25; 133:1-2.

1    met or exceeded 49-51 mpg[13] as advertised.[14]  He purchased the HCH because of

2    rising fuel costs[15] trading in a much less fuel efficient truck for the car.[16]

3    ### 4. Adequacy

4            The adequacy prong of Rule 23(a)(4) is satisfied where the attorney

5    representing the class is qualified and competent and the class representatives have

6    no interests antagonistic to those of the Settlement Class Members.  *Lerwill v.*

7    *Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978) (two criteria for

8    determining adequacy, the named representatives must appear able to prosecute the

9    lawsuit vigorously through competent counsel and representatives must not have

10   antagonistic or conflicting interests with absent class members).

11           Here Class Counsel is well qualified and competent.  The resumes for the

12   law firms of Cuneo Gilbert & LaDuca, LLP and Chimicles & Tikellis, LLP are

13   attached to the Joint Declaration, amply demonstrating Class Counsel's experience

14   and competence.  These are counsel who are "prepared to try a case." See *Hanlon,*

15   150 F.3d at 1021.  Additionally, the Named Plaintiffs are not subject to any unique

16   defenses that might render them antagonistic to those of the Settlement Class

17   Members.  Each testified that he purchased the HCH with fuel economy as the

18   major consideration in the purchase decision and each testified on deposition to his

19   willingness to represent a class and be present for trial.[17]

20   ### B. The Requirements of Rule 23(b)(3) are satisfied

21           **1. Predominance**

22                   **a.  All Claims in the Lawsuit will be Governed by California**

23

24   _____

25   [13] Tr. Delgado 164:5-7.

     [14] Tr. Delgado 23:20-23; 41:8-12; 48:5-19.

26   [15] Tr. Delgado 74:8-13.

27   [16] Tr. Delgado 65:24-5; 66:1-3.

28   [17] Tr. Delgado, 21:15-19, Tr. True, 41:3-11; 45:6-10.

### Law Making it Unnecessary to Apply the Consumer
### Protection Laws of the 50 States

In this case, the California consumer laws will apply to a national class eliminating any "structural difficulties" arising from applying the consumer protection laws of the 50 states, a circumstance that could defeat a finding of predominance. *Hanlon*, 150 F.3d at 1021.

Under the choice of law principles of the forum, California law will apply to this Lawsuit unless (1) California law conflicts with the law of another state, (2) the state whose law conflicts with California law has an interest in applying its own law, and (3) the foreign state's interest in applying its own law would be more impaired than California's interest if the law of such state were not applied. *Washington Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001) ("California law may be used on a class wide basis so long as its application is not arbitrary or unfair with respect to nonresident class members"). Applying these principles to class actions asserting violations of California consumer protection laws (UCL, FAL, and CLRA), federal and state courts in California have held that a national class can be certified applying California laws exterritorialy where the defendant's conduct, *as here*, has a significant nexus with California.

In this Lawsuit, in particular, Plaintiffs allege that there are several factors establishing a close nexus between the claims of the entire class and the State of California:

- AHM's headquarters are located in Torrance, California;
- AHM's primary advertising agency, RPA, is located in Santa Monica, California;
- RPA created and placed all or substantially all of the advertising and promotional materials at issue in this Lawsuit for AHM from its offices in California;
- AHM and RPA coordinated Honda's national and regional advertising, and AHM regulated or reviewed dealer advertising from its headquarters in Southern California; and

9

1
2
• All of AHM's advertisements are reviewed by AHM's legal and
regulatory departments in California;[18]

3  *Compare Clothesrigger, Inc. v. G.T.E. Corp.*, 191 Cal. App. 3d 605, 613 (1987)

4  (in class action against a long distance telephone carrier, the court found sufficient

5  contacts with California to justify application of California law to the claims of a

6  nationwide class where (1) defendant did business in California; (2) defendant's

7  primary offices were located in California; (3) a significant number of class

8  members were located in California; and (4) defendant's agents who prepared the

9  advertising materials at issue were located in California); *See also Wershba v.*

10  *Apple Computer*, 91 Cal. App. 4th 224, 242 (2001) (affirming the certification of a

11  national class in an FAL action against California computer manufacturer,

12  reasoning that "there were significant contacts with California in this case to

13  satisfy constitutional concerns and support certification of a nationwide

14  class...").[19] This Lawsuit is virtually indistinguishable from the foregoing cases in

15  which courts have certified national classes under California's various consumer

16  protection laws.

17  **b.  Common Questions of Fact and Law Predominate**

18  A common nucleus of facts and potential legal remedies "dominate this

19  litigation." *See Hanlon*, 150 F.3d at 1022. Plaintiffs would establish AHM's

20  liability by demonstrating facts sufficient for the trier of fact to conclude that (1)

21  AHM made misrepresentations or omissions with a likelihood or tendency to

22  deceive or confuse the public; and (2) that those misrepresentations or omissions

---

24  [18] Transcript, Deposition of Jennifer Shannon Howell, May 16, 2008, p. 101, l.10; p. 102, l. 9 and p. 156 l. 1-19.

25  [19] *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 223-224 (1999) (a national class may be certified when conduct violative of the UCL emanates from California); *Diamond Multimedia Systems, Inc. v. Superior Court* 19 Cal. 4th 1036, 1064 (1999) ("California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices and recognized the importance of extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California.").

10

1    were material.  In this Lawsuit, the proof required at trial will be common to the

2    entire Settlement Class, as Plaintiffs allege that the advertisements and promotional

3    materials at issue were uniform and were generated by AHM and/or RPA in

4    California and distributed nationally.

5         Each Settlement Class Member purchased an identical vehicle, the HCH.

6    And, as this Court has already held, reliance may be presumed under the applicable

7    law because the misrepresentations regarding fuel economy at issue are "material."

8    Docket Entry # 23 ("UCL/FAL plaintiffs may avail themselves of the inferred

9    reliance principle where the misrepresentation is 'material'") (*citing McAdams v*

10   *Monier, Inc.*, 151 Cal. App. 4th 667, 671 (Cal. App. 3d Dist. 2007).

11        Plaintiffs would be prepared to demonstrate through expert testimony that

12   the difference between the two functionally identical automobiles AHM offered for

13   sale (the Honda Civic EX and the HCH), was cost.  For example, Plaintiffs would

14   demonstrate that the HCH cost at least $2500 more because it was represented in

15   AHM's advertising to achieve 50 mpg fuel economy.  Each Settlement Class

16   Member paid a "hybrid premium" at time of purchase, attaching damages at point

17   of purchase.

18        Additionally, where restitution is a remedy, determining the proper amount

19   of restitution will depend principally on an expert analysis of what price AHM

20   could have sold the HCH for if it had not made material misrepresentations

21   concerning fuel economy, and will be identical for all class members.

22        Some individual proof might be relevant to determining the alternative

23   measure of damages, the additional unanticipated fuel expenses of Plaintiffs and

24   the Class, but that does not preclude class certification.  The amount of damages is

25   invariably an individual question and does not defeat class action treatment.

26   *Trujillo v. City of Ontario*, No. ED cv-04-1015 VAP at 7 (C.D. Cal., Apr. 14,

27   2005) (Phillips, J.) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

28              **2. Superiority**

11

1       A class action would be the vastly superior means, and likely the only

2  practical means, of adjudicating the claims of 120,000+ class members scattered all

3  over the country.  Comparing the available mechanisms for dispute resolution, and

4  where as here the individual claims are for relatively small amounts of money

5  particularly when compared to the complexity of the litigation, the class action is

6  clearly superior.  See *Hanlon*, 150 F.3d at 1023.

7  **VI.**    **THE PROPOSED SETTLEMENT SATISFIES THE**

8         **REQUIREMENTS FOR PRELIMINARY APPROVAL**

9       A presumption of fairness for a proposed settlement arises where: (1) the

10  settlement was reached through arm's length negotiations; (2) investigation and

11  discovery are sufficient to allow counsel and the court to act intelligently; and (3)

12  counsel is experienced in similar litigation. *In re Heritage Bond Litig.*, 2005 U.S.

13  Dist. LEXIS 13555, 11-12 (C.D. Cal. June 10, 2005); *Ellis v. Naval Air Rework*

14  *Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

15  Preliminary approval should be granted where a settlement has no obvious

16  deficiencies and falls within the range of possible approval. *Alaniz v. California*

17  *Processing, Inc.* 73 F.R.D. 296, 273 (C.D. Cal. 1976).

18

19  **A. The Settlement Negotiations Occurred at Arm's Length and Were Assisted by an Experienced Mediator**

20       Courts accord "considerable weight" to settlements that are the product of

21  hard-fought negotiations by experienced counsel. *Ellis,* 87 F.R.D. at 18; *M.*

22  *Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass.

23  1987).  Settlements that follow sufficient discovery and genuine arms-length

24  negotiation are presumed fair. *Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 2003

25  U.S. Dist. LEXIS 25375, *13 (C.D. Cal. 2004). When a settlement is achieved

26  through arms-length negotiations between experienced counsel, the Court should

27  be hesitant to substitute its own judgment for that of counsel absent a showing of

28  fraud, collusion or other forms of bad faith. *Weinberber v. Kendrick*, 698 F.2d 61,

74 (2d Cir. 1982); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *Oppenlander v. Standard Oil Company (Indiana),* 64 F.R.D. 597, 624 (D. Colo. 1974).

 As detailed above and in the accompanying Joint Declaration, the settlement is the product of hard-fought arms-length negotiations. The Parties were aided in this process by a highly respected mediator, who assisted the negotiations during two separate two-day in-person mediation sessions, as well as several joint and *ex parte* telephone conference calls. Joint Declaration, ¶¶ 48-66; Declaration of Jonathan Marks, filed concurrently herewith.  The process pursuant to which the proposed settlement was achieved is a factor weighing in favor of preliminary approval. *Adams v. Inter-Con Sec. Sys.*, 2007 U.S. Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007) (the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive); see also *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (fact that a settlement was reached through negotiations with an experienced mediator is highly indicative of fairness).

**B. Class Counsel Engaged in Sufficient Discovery To Make An Informed Judgment Concerning the Merits of Their Claims**

 The Court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Approval of a class action settlement does not require that discovery be exhaustive. *See, e.g., In re Immune Response Securities Litigation,* 497 F. Supp. 2d at 1174 (settlement approved where informal discovery gave parties a clear view of the strengths and weaknesses of their case).

 Class Counsel firmly believe that the claims in this action have merit and are

1    supported by ample evidence. Class Counsel has been actively engaged in this
2    litigation for approximately two years. Class Counsel thoroughly researched the
3    contested issues prior to and during the Litigation. *See, e.g.*,  Joint Declaration,  ¶¶
4    6, 7, 9, 11, 13, 14, 18, 19, 23).  As the Court is aware, the parties engaged in
5    extensive discovery and discovery-related motion practice. *See, e.g.*, Joint
6    Declaration, ¶¶ 23-43. Class Counsel reviewed thousands of pages of relevant
7    documents produced by AHM and third parties and took four depositions of AHM
8    executives and third parties including AHM's advertising agency, RPA. Joint
9    Declaration, ¶¶ 28, 31 - 39, 41, 51. AHM took discovery from and deposed the
10   Named Plaintiffs. Joint Declaration ¶¶ 42, 43, 51. Class Counsel engaged experts
11   knowledgeable about the subject matter of the Lawsuit to assist them in the review
12   and analysis of information obtained through discovery. Joint Declaration,  ¶¶ 44-
13   47.  All of this helped solidify Class Counsel's belief in the merits of the claims.
14   This factor weighs in favor of granting preliminary approval. *Nat'l Rural Telcoms.*
15   *Coop.*, 2003 U.S. Dist. LEXIS 25375 at*13.

16        **C. The Proponents of the Settlement are Highly Experienced Class**
17        **Action Litigators**

18        Parties represented by competent counsel are better positioned than courts to
19   produce a settlement that fairly reflects each party's expected outcome in litigation.
20   *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).
21   The recommendations of plaintiffs' counsel should be given a presumption of
22   reasonableness. *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979).
23   As the docket in this case reflects, Class Counsel has vigorously prosecuted this
24   case from the beginning, and are willing, able, and prepared to litigate this case
25   through trial and beyond. Class Counsel has considerable experience in handling
26   complex class actions in general, and consumer class actions in particular. *See*
27   Firm Resumes, Exhibits A and B to Joint Declaration. This factor weighs in favor
28   of granting preliminary approval.

**D. The Settlement is Within the Range of Possible Approval**

1         The Parties worked long and hard to come up with a settlement that provides

2 a meaningful benefit to all Settlement Class Members, that is tailored to remedy to

3 the specific issues raised by Plaintiffs' allegations, and that is user-friendly and

4 accessible to Settlement Class Members. Settlements have been considered

5 reasonable when they are tailored to the contested issues and provide real benefits

6 to all class members. *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 960

7 (E.D. Tex. 2000) (settlement found reasonable where the benefits were of real,

8 economic value to the class members, even where settlement had an in-kind

9 component); *Manners v. American General Life Ins. Co.*, 1999 U.S. Dist. LEXIS

10 22880, *16 (M.D. Tenn. Aug. 10, 1999) (approving settlement that offered

11 "substantial and innovative package of relief responsive to the allegations raised in

12 the complaint");

13         **1. The Settlement Specifically Addresses the Issues Raised by**
                 **Plaintiffs' Allegations**

14         This settlement is tailored towards resolving Class Members' complaints

15 concerning fuel economy for the HCH. This case concerns the Settlement Class

16 Members' complaints that their HCHs did not achieving the fuel economy

17 advertised by AHM.  Plaintiffs do not allege that AHM does not make good cars,

18 nor do Plaintiffs allege that they are dissatisfied with their HCHs for reasons other

19 than fuel economy.[20] As such, the proposed settlement consideration is specifically

20 tailored towards remedying the harm Plaintiffs allege was caused by AHM's

21 advertising concerning fuel economy by (a) offering guidance to Settlement Class

22 Members on how to achieve optimal fuel economy with their vehicle; (b)

23 compensating Complaining Settlement Class Members; (c) offering cash rebates to

24 Settlement Class Members who remain dissatisfied and wish to sell or otherwise

---

[20] *See, e.g.* Tr. Delgado 31:4-9.

1    trade-in their HCH and purchase an Eligible Honda Vehicle; (d) offering cash

2    rebates to Settlement Class Members who elect to keep their HCH but wish to

3    purchase an Eligible Honda Vehicle; and (e) providing injunctive relief to, at a

4    minimum, modify any disclaimer language from "actual mileage may vary" to

5    "actual mileage will vary." Settlements that are specifically tailored to the

6    contested issues have been found reasonable. *See, e.g., DeHoyos v. Allstate Corp.,*

7    240 F.R.D. 269 (W.D. Tex. 2007) (approving settlement that included specifically

8    tailored credit education program and new credit scoring formula to address

9    alleged discrimination); *Manners v. American General Life Ins. Co.*, 1999 U.S.

10   Dist. LEXIS 22880, *16 (M.D. Tenn. Aug. 10, 1999) (approving settlement that

11   offered "substantial and innovative package of relief responsive to the allegations

12   raised in the complaint"); *Garst v. Franklin Life Ins. Co.,* 1999 U.S. Dist. LEXIS

13   22666 (N.D. Ala. June 25, 1999) (same).

14            **2.  The Settlement Provides Substantial Benefits to the Settlement**

15                **Class**

16        All Settlement Class Members will receive a benefit. All Settlement Class

17   Members will have the opportunity to receive (1) a $1000 rebate upon (a) selling

18   or trading in their HCH, and (b) purchasing an Eligible Honda Vehicle, or (2) $500

19   upon rebate upon purchasing any Eligible Honda Vehicle.  This is a particularly

20   meaningful benefit, since it will help those Settlement Class Members who are not

21   satisfied with the fuel economy of their vehicles to obtain a new vehicle at a

22   substantial discount. *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 960 (E.D.

23   Tex. 2000) (a settlement should not be disapproved simply because it contains an

24   in-kind benefit component if the benefits are of real, economic value to the class

25   members). It should also be noted that, in light of the historically high brand

26   loyalty exhibited by Honda owners, there is a likelihood that many Settlement

27   Class Members would be purchasing Honda vehicles in the near future.[21]

28   [21] *See, e.g.* Tr. Delgado 31:7-9.

1    Additionally, Settlement Class Members who have made a documented

2 Complaint about the fuel economy they have achieved with their HCH will be

3 eligible for a cash payment of $100 upon the timely submission of a Claim Form.

4 No purchase is necessary to receive this benefit.

5    Finally, all Settlement Class Members will receive a DVD produced

6 specifically for this settlement and distributed at AHM's expense containing use

7 and care tips for maximizing the fuel economy of their vehicles, providing a

8 benefit of value to the class. *DeHoyos*, 240 F.R.D. at 269 (W.D. Tex. 2007)

9 (specially designed credit scoring formula and credit education program provided

10 valuable relief to settlement class members); *Shaw*, 91 F. Supp. 2d at 983 (E.D.

11 Tex. 2000) (settlement consideration included specially designed software patch

12 that would not have been created but for the lawsuit). AHM will disseminate this

13 DVD directly to all Settlement Class Members for whom it has addresses after the

14 Effective Date. No Claim Form is necessary to receive this DVD, supporting a

15 finding of reasonableness. *See Muhammad v. Nat'l City Mortg., Inc.,* 2008 U.S.

16 Dist. LEXIS 103534, *5 (S.D. W. Va. Dec. 19, 2008) (mailing settlement

17 consideration directly to class members who do not opt out without requiring such

18 class members to submit a claim form ensures that a vast majority, if not all, of the

19 settlement class members will receive settlement benefits).

20    **E. Additional Factors Weighing in Favor of Preliminary Approval**

21    Although not required to be demonstrated at the preliminary approval stage,

22 the proposed settlement also satisfies many of the other criteria for final approval

23 as being fair, reasonable, and adequate.

24    Courts in the Ninth Circuit have examined some or all of the following

25 factors in making such a determination: (1) the strength of the plaintiff's case; (2)

26 the risk, expense, complexity, and likely duration of further litigation; (3) the risk

27 of maintaining class action status throughout the trial; (4) the amount offered in

28 settlement; (5) the extent of discovery completed and the stage of the proceedings;

1  (6) the experience and view of counsel; (7) the presence of a governmental

2  participant; and (8) the reaction of the class members to the proposed settlement.

3  *Hanlon,* 150 F.3d at 1026.[22]  Factors (1), (4) (5), and (6) are largely discussed

4  above, and factor (8), the reaction of the class to the settlement, can only be

5  determined after notice has been accomplished.[23]   An analysis of factors (2) and

6  (3), discussed below, further favors preliminary approval of the proposed

7  settlement.

8  **1. The Complexity, Expense, and Likely Duration of the Litigation**

9  **Favors Settlement**

10  Significantly, despite having a factually well-developed case, the Parties still

11  face significant uncertainty due to the novelty of the factual and legal issues

12  presented and the lack of binding authority on point.[24] AHM denies and continues

13  to deny the factual allegations in the FAC and any legal liability arising from those

14  claims.  Plaintiffs and AHM recognize the substantial amount of time and expense

15  that would be involved with taking this case to trial and through appeal, and the

16  circumstances and attendant risks favor settlement. *See Hanlon,* 150 F. 3d at 1026.

17  While Plaintiffs prevailed on AHM's motion to dismiss, and the Parties were

18  able to reach the proposed settlement through meaningful discovery and mediation,

19  the continued litigation of contested issues would involve significant time and

20

21  [22] The Ninth Circuit has stressed that this is not an exhaustive list of relevant

22  considerations, nor even necessarily the most significant factors. *Officers For Justice,* 688 F.2d at 625. Moreover, the relative degree of importance to be

23  attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and

24  circumstances presented by each individual case. *Officers For Justice,* 688 F.2d at 625. The issue is not whether the settlement could be better, but whether it is fair,

25  reasonable, and adequate and free from collusion. *Hanlon,* 150 F.3d at 1027.

[23] Factor (7) does not appear to be pertinent, as no government agency is or was a

26  party to this action.

27  [24] In particular, the parties acknowledge that decisions in at least two cases currently pending before the California Supreme Court (*In re Tobacco II Cases,*

28  No. S147345, and *Pfizer v. Superior Court,* No. S145775) may affect core legal issues in this Lawsuit.

18

1    expense. Additional discovery would be needed to prepare for class certification,

2    trial, and beyond. *See* Joint Declaration at ¶¶ 36, 37, 43. The parties would require

3    additional depositions and motion practice to brief and argue class certification.

4    Expert reports would be prepared and exchanged. Summary judgment briefings

5    would likely be exchanged and argued, and further time and expense would be

6    endured in preparation for and through the duration of any trial and future appeal.

7    As such, the proposed settlement offers a compromise that meaningfully addresses

8    the claims at issue in light of the substantial amount of time and expense that

9    would be involved with litigating the claims through trial and appeal. This factor

10   weighs in favor of granting preliminary approval.

11            **2. The Risk of Maintaining Class Action Status Through Trial**

12                **Favors Settlement**

13           The risks associated with maintaining a class action through trial are a

14   relevant criterion in evaluating the reasonableness of a proposed class action

15   settlement. *Amchem*, 521 U.S. at 591; *See also In re Heritage Bond Litig.*, 2005 WL

16   1594403 (C.D. Cal. June 10, 2005).

17           Plaintiffs anticipate that AHM would vigorously contest class certification.

18   AHM engaged in sufficient class discovery (i.e., depositions and document

19   discovery of Named Plaintiffs), to make evident that AHM carefully considered its

20   possible defenses against class certification.  While Plaintiffs believe the criteria of

21   Rule 23 are satisfied here, Plaintiffs recognize the risks inherent in obtaining, and

22   maintaining, class certification in a nationwide consumer class action applying

23   California law.

24           It should be noted that the requirement of Rule 23 that the class action be

25   "manageable" need not be met in the context of certification of a settlement class.

26   *Amchem*, 521 U.S. at 591. If this action were to continue, AHM would likely

27   contend that this case would present case management problems, including, *inter*

28   *alia*, the possible applicability of the conflicting laws of multiple states to the

1  claims of the class.  Although Plaintiffs believe that California law could be

2  applied to the claims of all Class Members (or, alternatively, that the applicability

3  of multiple states' laws would not present intractable management problems), the

4  outcome of such a challenge to class certification is always uncertain.

5  Finally, even if Plaintiffs were successful in obtaining class certification,

6  AHM would likely pursue an interlocutory appeal pursuant to Rule 23(f).  The

7  outcome of such an appeal would also be uncertain, and, at a minimum, would

8  delay and add complexity and additional risk and cost to the proceedings.

9  In summary, the risks associated with class certification support approval of

10  the proposed settlement.

11  **VII.   THE FORM AND METHOD OF CLASS NOTICE SHOULD BE**

12  **APPROVED**

13  The contents of a Rule 23(e) class notice are sufficient if it informs the class

14  members of the nature of the pending action, the general terms of the settlement,

15  the options available to class members (e.g. submitting a claim form, opting out,

16  and/or objecting), the time and place of the fairness hearing, and ways to obtain

17  more detailed information. *Manual for Complex Litigation*, § 21.312 (4th ed. 2004).

18  The distribution of class notice is sufficient if it is given in a form and manner that

19  does not systematically leave an identifiable group without notice. *San Francisco*

20  *NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1027-1028

21  (N.D. Cal. 1999), *quoting Officers for Justice*, 688 F.2d at 624 (*citing Mandujano*

22  *v. Basic Vegetable Prod., Inc.*, 541 F.2d 832, 835-836 (9th Cir. 1976)). Due process

23  requires only a procedure reasonably calculated to reach class members. *Mullane v.*

24  *Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

25  **A.   Content of the Proposed Class Notice**

26  The notice proposed here informs Settlement Class Members that a

27  Settlement Class has been conditionally certified and provides a description of the

28  Settlement Class in a manner that allows potential class members to easily

1    determine whether they are a member of the Settlement Class. The notice describes

2    the terms of the proposed settlement, details proposed attorneys' fees and

3    plaintiffs' incentive awards, and describes the procedure for filing claims, noting

4    that such benefits will be distributed to Settlement Class Members only if the Court

5    approves the settlement after the fairness hearing.  The notice clearly apprises

6    Settlement Class Members of their rights to participate in, object to, or request

7    exclusion from the proposed settlement, and to attend the fairness hearing,

8    providing sufficient descriptions of the process by which to exercise such rights,

9    deadlines associated with exercising such rights, and the time and place of the

10   fairness hearing. The notice prominently displays the names and addresses of Class

11   Counsel and the procedures for making inquiries through the claims center or by

12   contacting Class Counsel; additionally directing the Settlement Class Member to

13   the HCH Fuel Economy Website from which the Settlement Class Member can

14   download a Claim Form with Preassigned Claim Number. For those Settlement

15   Class Members who do not have access to a computer or to the internet, or for

16   those Settlement Class Members who have additional questions, the notice also

17   contains all information necessary to contact the Settlement Administrator.[25]

18        Such notices that contain a summary of the nature of the pending action, the

19   general terms of the settlement, the options available to class members (e.g.

20   submitting a claim form, opting out, and/or objecting), the time and place of the

21   fairness hearing, and ways to obtain more detailed information are consistent with

22   due process and satisfy the requirements of Fed. R. Civ. P. 23. *In re Cement and*

23   *Concrete Antitrust Litigation,* 817 F.2d 1435, 1440 (9th Cir. 1987), *rev'd on other*

24   *grounds,* 490 U.S. 93 (1989) (notice is satisfactory if it generally describes the

25   terms of the settlement in sufficient detail to alert those with adverse viewpoints to

26   investigate and to come forward and be heard); *Manual for Complex Litigation,* §

27   

28   [25] Non-English speakers may request a translator when contacting the Honda Claims Center.

1 | 21.312 (4th ed. 2002).

2 | **B.      Distribution of Class Notice**

3 |      The proposed method of disseminating notice clearly satisfies due process.

4 | AHM has agreed to mail, at its expense, by first class-mail, the notice to all

5 | Settlement Class Members that AHM can reasonably identify from its records. The

6 | names and addresses of nearly all potential class members are ascertainable from

7 | electronic records in AHM's possession, making direct mail notice a sufficient

8 | method of notice. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974)

9 | (individual mailed notice is the best practicable notice with respect to those class

10 | members whose names and addresses are easily identifiable); *Boggess v Hogan*

11 | 410 F Supp 433, 442 (N.D. Ill. 1975) (Rule 23(e) is not violated where notice of

12 | settlement is individually mailed but never published). While the Parties believe

13 | that most members of the Settlement Class will receive the direct mail notice,

14 | AHM has also agreed to post the notice on the HCH Fuel Economy Website.

15 | Posting the notice on the Internet is a useful supplement to individual notice, and

16 | can be provided at relatively low cost. *Manual for Complex Litigation* § 21.311 (4th

17 | ed. 2004); *See also* Brian Walters, *"Best Notice Practicable" in the Twenty-First*

18 | *Century*, 2003 UCLA J. L. Tech. 4 (2003) (noting that in securities and consumer

19 | class actions, the defendant company's website offers a particularly targeted

20 | location to post notice of the pending lawsuit, as it provides a more focused

21 | opportunity for actual notice than nearly any newspaper or journal can offer).

22 | **C.      Settlement Administration**

23 |      The settlement will be administered in a way that easily satisfies due

24 | process. AHM will serve as the Settlement Administrator subject to the oversight

25 | of Class Counsel.  As Settlement Administrator, AHM will (a) receive and respond

26 | to communications from Settlement Class Members (including requests for

27 | exclusion, Claim Forms, and questions); (b) maintain a dedicated toll-free

28 | telephone number that Settlement Class Members may contact; (c) maintain a

1   dedicated P.O. Box to which Settlement Class Members can send requests for

2   exclusion and Claim Forms; (d) provide reasonable translation services to

3   Settlement Class Members upon request; (e) process Claim Forms and distribute

4   benefits to Settlement Class Members; and (f) allow Settlement Class Members a

5   reasonable opportunity to cure deficient Claim Forms. AHM will also establish the

6   HCH Fuel Economy Website where Settlement Class Members can: (a) view the

7   Website Notice; (b) view the HCH Fuel Economy Video and download a Claim

8   Form; (c) determine eligibility for Option C benefits by entering their HCH VIN;

9   and (d) submit completed Claim Forms. This proposed settlement administration

10  plan satisfies due process. *Mullane,* 339 U.S. 306 (due process requires only a

11  process reasonably calculated to reach class members); *See also* Robert H.

12  Klonoff, Mark Herman, and Bradley W. Harrison, *Making Class Actions Work:*

13  *The Untapped Potential of the Internet*, 69 U. Pitt. L. Rev. 727, 742 (2008) (noting

14  that web-based claims-administration programs foster class members' participation

15  in settlements and are cost-effective).

16  **VIII. ATTORNEYS' FEES AND COSTS**

17       Class Counsel is entitled to compensation and reimbursement of expenses

18  for bringing the case and obtaining a fair settlement. *Mills v. Elec. Auto-Lite Co.,*

19  396 U.S. 375, 392 (1997)(attorneys' fees are recoverable where plaintiff has

20  maintained a suit that confers a common benefit). The Agreement provides that

21  AHM will not oppose Class Counsel's application for a fee and expense award in

22  the amount of $2.95 million, separate and apart from the settlement consideration

23  flowing to the Settlement Class.  The Agreement also provides that Class Counsel

24  will submit applications for, and AHM will not oppose, incentive awards for

25  Plaintiffs True and Delgado in the amounts of $12,500 and $10,000, respectively,

26  to be paid from the Attorneys' Fee Award, separate and apart from the settlement

27  consideration flowing to the Settlement Class.

28       The Attorneys' Fee Award of $2.95 million is reasonable. First, the

1  requested fee is not appreciably greater than Class Counsel's collective lodestar at

2  the time the Class Counsel reached a settlement-in-principle, and Class Counsel

3  anticipates that by the time the settlement process is complete, Class Counsel's

4  collective lodestar will substantially exceed the requested fee amount. See *In re*

5  *Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, 2005 U.S. Dist. LEXIS 13627

6  (C.D. Cal. June 10, 2005) (noting that courts often compare an attorney's lodestar

7  as a "cross-check" on the reasonableness of a requested fee.); *Manual for Complex*

8  *Litigation*, § 21.71 (4th ed. 2004) (if value of relief cannot be reliably determined or

9  estimated, lodestar method can be used to calculate fee). Second, the requested fee

10 is separate and apart from the consideration flowing to the settlement class, and

11 will not reduce the benefits available to the settlement class. Third, the current

12 proposal bundles expenses with fees, which is consistent with the preferences of

13 other courts in this circuit. *See Wenderhold v. Cylink Corp*, 189 F.R.D. 570, 573

14 (N.D. Cal 1999) (rejecting law firm's bid to be appointed class counsel where firm

15 would seek reimbursement of expenses above and beyond its fee percentage out of

16 any fund created as a result of the litigation.). As such, the proposed Attorneys'

17 Fee Award is reasonable.

18        The proposed Named Plaintiffs' Incentive Awards are also reasonable.

19 Courts recognize that a class representative is entitled to compensation for the

20 expense he or she incurred on behalf of the class lest individuals find insufficient

21 inducement to lend their names and services to the class action. *In re Oracle Sec.*

22 *Litig.*, No. 90-0931, 1994 U.S. Dist. LEXIS 21593, 1994 WL 502054, at *1 (N.D.

23 Cal. June 18, 1994) (citing In re Continental Ill. Sec. Litig., 962 F.2d 566, 571 (7th

24 Cir. 1992)). Such payments are routinely approved when, as here, they are

25 reasonable in light of applicable circumstances, and not unfair to other class

26 members. *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss.

27 2003). To assess whether an incentive award is excessive, the Court must balance

28 the number of named plaintiffs receiving incentive payments, the proportion of the

1  payments relative to the settlement amount, and the size of each payment. *Staton v.*
2  *Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003).
3       Here, the Named Plaintiffs provided meaningful representation to the class
4  by reviewing court filings, answering interrogatories, responding to document
5  requests, preparing for depositions with their attorneys, and sitting for depositions.
6  Joint Declaration, ¶¶ 42, 43, 51. Furthermore, Plaintiff True appeared in court on
7  two occasions to address his participation. Joint Declaration, ¶¶ 21, 66. The
8  proposed Named Plaintiffs' Incentive Awards are appropriate considering the time
9  and effort involved in representing the interests of the class, and represent less than
10  half of what Plaintiffs paid to purchase their HCH's. Furthermore, and perhaps
11  most importantly, the incentive awards will be paid by Class Counsel directly to
12  the Plaintiffs out of the fee and expense award, and will not reduce the settlement
13  benefits available to Settlement Class Members. As such, the proposed incentive
14  awards are within a reasonable range.

15  **IX. CONCLUSION**

16       As the above analysis and supporting documents demonstrate, the proposed
17  settlement clearly meets the standards for preliminary approval, and the
18  undersigned firmly believe (and expect to demonstrate at a hearing on final
19  approval) that it satisfies the criteria for final approval. Therefore, Plaintiffs
20  respectfully request that this Honorable Court enter an order (a) certifying, for
21  settlement purposes, a class consisting of all persons who purchased or leased a
22  new HCH model years 2003 through 2008 in the United States of America
23  including the District of Columbia ; (b) preliminarily approving the proposed
24  settlement described in the Agreement filed concurrently herewith; (c) authorizing
25  the form and method of class notice described herein and filed concurrently
26  herewith; (d) setting a date for the Final Approval Hearing to consider final
27  approval of the settlement; and (e) granting such other and additional relief as the
28  Court may deem just and appropriate.

1
2   Date: March 2, 2009          FOR PLAINTIFFS
3                                CHIMICLES & TIKELLIS LLP
4
5   By: _____
                                 Nicholas E. Chimicles
6                                Denise Davis Schwartzman
                                 One Haverford Centre
7                                361 West Lancaster Avenue
                                 Haverford, Pennsylvania 19041
8                                Telephone: (610) 642-8500
                                 Facsimile: (610) 649-3633
9   Date: March 2, 2009          CUNEO GILBERT & LaDUCA LLP
10
11  By: _____
                                 Jonathan W. Cuneo
12                               William H. Anderson
                                 507 C Street, N.E.
13                               Washington, D.C. 20002
                                 Telephone: (202) 789-3960
14                               Facsimile: (202) 789-1813
15
16
17
18
19
20
21
22
23
24
25
26
27
28

26