O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOHN TRUE, individually
and on behalf of all
others similarly
situated,

                    Plaintiff,

        v.

AMERICAN HONDA MOTOR
CO., INC.,

                    Defendants.
_____

Case No. EDCV 07-287-VAP
(OPx)

**[Motion filed on March 2, 2009]**

**ORDER DENYING PRELIMINARY APPROVAL WITH LEAVE TO SUBMIT ADDITIONAL MATERIALS NO LATER THAN APRIL 24, 2009**

    Plaintiffs John True ("True") and Gonzalo Delgado's ("Delgado") (collectively "Plaintiffs") Motion for Preliminary Approval of Settlement ("Motion") came before the Court for hearing on March 23, 2009.  After reviewing and considering all papers filed in support of, and in opposition to, the Motion the Court DENIES the Motion WITHOUT PREJUDICE and grants the parties leave to submit additional materials no later than April 24, 2009.

Plaintiffs allege they were exposed to advertising regarding the fuel efficiency of Honda Civic Hybrid ("HCH") automobiles and bought HCHs based on these representations during the class period, between 2003 and 2008. (First Amended Complaint ("FAC") ¶¶ 1-10; Class Action Settlement Agreement and Release ("Settlement Agreement") at 1, 9.)

## I. BACKGROUND

True named American Honda Motor Company ("Defendant") as Defendant in a Complaint filed on March 9, 2007, in which Delgado joined. Plaintiffs seek relief on the following claims: (1) California Business and Professions Code section 17200; (2) California Business and Professions Code section 17500; (3) California Civil Code section 1750; (4) common law unjust enrichment. (Motion for Preliminary Approval of Settlement ("Mot.") 1.)

Defendant brought a Motion to Dismiss, which the Court denied on June 25, 2007. The parties engaged in approximately 11 months of discovery and motion practice before proceeding to mediation. (Mot. 2.) By December 2008, the parties reached a settlement in principle. (Mot. 2.)

They now seek preliminary approval of the Settlement Agreement and move the Court to enter an order directing:

(1) Certification of a single class, solely for the purpose of settlement, under Rule 23 of the Federal Rules of Civil Procedure, consisting of "[a]ll persons who purchased or leased a new Honda Civic Hybrid automobile model years 2003 through 2008 in the United States of America including the District of Columbia" excluding Defendant and its subsidiaries and affiliates and their employees, officers, their family members, class counsel, and all persons who timely opt out of the proposed settlement (Settlement Agreement Ex. E ¶ 1);

(2) Preliminary approval of the Settlement Agreement;

(3) Approval of the proposed Class Notice, notice via the website, and Consumer Claim Form (Settlement Agreement Exs. B-D);

(4) Appointment of True and Delgado as class representatives (Settlement Agreement Ex. C ¶ 9);

(5) Appointment of Nicholas Chimicles ("Chimicles") and Jonathan Cuneo ("Cuneo") as class counsel;

(6) Appointment of Defendant as claims administrator; and

(7) Establishment of a date for a final fairness hearing on the settlement agreement. (<u>See</u> Settlement Agreement Ex. C.)

Plaintiffs also move for a finding that Defendant provided notice of proposed settlement to the Attorney

General of the United States and the attorneys general of the States as required by 28 U.S.C. § 1715(b).

**B.   Facts**

Pursuant to the Settlement Agreement, Defendant will review its fuel economy advertising for the HCH and will modify its disclaimer language for at least 24 months, including at least changing the language from "actual mileage may vary" to "actual mileage will vary."  (Mot. 4; Settlement Agreement 14.)  In addition, all class members will receive a DVD demonstrating methods for operating and maintaining HCHs to maximize fuel economy. (Mot. 3.)  Class members will also receive one of four kinds of payments or discounts, described below.  The parties do not explain the size of the total fund available for these monies, nor whether it is reversionary.  (See Mot. 2-4.)

**1.   Option A**

Option A is available to members of the proposed class who: (1) own (rather than lease) an HCH; (2) sell or trade in their HCH; and (3) buy an Eligible Vehicle from Defendant, defined as "a new model year 2009 or 2010 Honda or Acura, excluding the Honda Fit, Honda Insight, HCH or any Honda Certified Used Car or Acura Certified Pre-Owned Vehicle."  Those claiming relief under Option A must buy an Eligible Vehicle (4) before June 30, 2011.

They will receive $1,000.  This benefit is non-transferrable.  (Mot. 3; Settlement Agreement 11-12.)

**2.   Option B**

Option B is available to those class members who retain ownership or a leasehold on their HCH and (1) purchase an Eligible Vehicle from Defendant (2) before June 30, 2011.  They will receive a $500 payment, transferrable to certain listed family members: spouses, parents, siblings, children, grandparents, or grandchildren.  (<u>See</u> Settlement Agreement 12-13.) Registered domestic partners, in states that recognize those unions, are not included, however.

**3.   Option C**

Option C is available to those class members who made a documented Complaint regarding the fuel economy of their HCH to Defendant, an authorized Honda or Acura dealership who reported the Complaint to Defendant, or to Plaintiffs' counsel.  They will receive a cash payment of $100.  The moving papers do not contain an estimate of the number of persons who made qualifying complaints. (Settlement Agreement 13-14.)

**4.   No additional relief**

Class members who do not want to, or are not able to, buy an Eligible Vehicle, and who did not make a

qualifying complaint, will be ineligible to receive any payments or discounts.

In exchange for receiving these benefits, class members will release Defendant of all claims that were or could have been made arising from Defendants' marketing regarding the fuel economy of the HCH. (Mot. 4; Settlement Agreement 6-7.)

The entire Settlement Agreement is subject to cancellation by Defendant "[i]f one hundred (100) or more Settlement Class Members properly and timely submit requests for exclusion from the Settlement Class." (Settlement Agreement 31.) Plaintiffs' counsel estimates the class consists of approximately 120,000 people. (Mot. 5-6.) The moving papers do not address the likelihood that more than 100 persons will opt out.

Plaintiffs request attorneys' fees, expenses, and named plaintiffs' incentive awards of no more than $2,950,000. (Mot. 4; Settlement Agreement 20-21.) Plaintiffs seek $12,500 for True and $10,000 for Delgado as incentive payments. (Mot. 4.)

## II. LEGAL STANDARD

Parties seeking class certification for settlement purposes must satisfy the requirements of Rule 23.

<u>Amchem Prods, Inc. v. Windsor</u>, 521 U.S. 591, 620 (1997).
A court considering such a request should give the Rule
23 certification factors "undiluted, even heightened,
attention in the settlement context."  <u>Id.</u>

Under Rule 23(a), in order to bring a class action, a
plaintiff must demonstrate: the class is so numerous that
joinder of all members is impracticable ["numerosity"],
(2) there are questions of law or fact common to the
class ["commonality"], (3) the claims or defenses of the
representative parties are typical of the claims or
defenses of the class ["typicality"], and (4) the
representative parties will fairly and adequately protect
the interests of the class ["adequacy of
representation"].

In addition to these prerequisites, a plaintiff must
satisfy one of the prongs of Rule 23(b) in order to
maintain a class action.  Where, as here, a plaintiff
moves for class certification under Rule 23(b)(3), the
plaintiff must prove that:

> the questions of law or fact common to
> the members of the class predominate over
> any questions affecting only individual
> members, and that a class action is
> superior to other available methods for
> the fair and efficient adjudication of
> the controversy.

The matters pertinent to the findings include: (A) the
interest  of  members  of  the  class  in  individually

controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the
controversy already commenced by or against members of the
class; (C) the desirability or undesirability of
concentrating the litigation of the claims in the
particular forum.[1]

Rule 23(e) requires the Court to approve any
settlement, voluntary dismissal, or compromise of the
claims, issues, or defenses of a certified class. Fed. R.
Civ. P. 23(e). The court must hold a hearing and find that
"the settlement . . . is fair, reasonable, and adequate."
Fed. R. Civ. P. 23(e)(2). Review of a proposed settlement
generally proceeds in two stages, a hearing on preliminary
approval followed by a final fairness hearing. See Federal
Judicial Center, Manual for Complex Litigation, § 21.632
(4th ed. 2004).

At the preliminary approval stage, a court determines
whether a proposed settlement is "within the range of
possible approval" and that notice should be sent to class
members. In re Corrugated Container Antitrust Litig., 643
F.2d 195, 205 (5th Cir. 1981); see also Gautreaux v.
Pierce, 690 F.2d 616, 621 n.3 (stating that the purpose of
a preliminary approval hearing is "to ascertain whether

_____

[1]A fourth factor, "the difficulties likely to be
encountered in the management of a class action," need
not be considered when class certification is only for
settlement purposes. Fed. R. Civ. P. 23(b)(3)(D); Amchem
Prods., 521 U.S. at 620.

8

there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing"); Manual for Complex Litigation § 21.632.

### III. DISCUSSION

For the reasons explained below, the Court lacks sufficient information to determine whether the proposed class satisfies the requirements of Rule 23 and whether the proposed settlement is fair, adequate, and reasonable.

**A.    Certification of the Class**

Plaintiffs seek certification under Rule 23 of a single class of buyers of HCHS, based on Defendant's advertising which allegedly violates: (1) California Business and Professions Code section 17200; (2) California Business and Professions Code section 17500; (3) California Civil Code section 1750; and resulted in (4) common law unjust enrichment.  (Mot. 1; FAC ¶ 6.)

**1.    Numerosity**

To establish, under Rule 23(a)(1), that joinder of all members is "impracticable," the plaintiff need not show that it would be "impossible" to join every class member.  Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996).  There is no specific number requirement, as the court may examine the specific facts

of each case.  <u>Ballard v. Equifax Check Servs., Inc.</u>, 186
F.R.D. 589, 594 (E.D. Cal. 1999).

Here, Plaintiffs' counsel estimates the proposed
class consists of over 120,000 persons.  (Mot. 5-6.)
This satisfies the numerosity requirement of Rule 23(a).

## 2. Commonality

Courts have construed Rule 23(a)(2)'s commonality
requirement permissively.  <u>Hanlon v. Chrysler Corp.</u>, 150
F.3d 1011, 1019 (9th Cir. 1998).  As the Ninth Circuit
explained:

> All questions of fact and law need not be
> common to satisfy the rule.  The
> existence of shared legal issues with
> divergent factual predicates is
> sufficient, as is a common core of
> salient facts coupled with disparate
> legal remedies within the class.

<u>Id.</u>

Additionally, this Court, Pfaelzer, J., has stated
that "the commonality requirement is interpreted to
require very little," <u>In re Paxil Litigation</u>, 212 F.R.D.
539, 549 (C.D. Cal. 2003), and that "for the commonality
requirement to be met, there must only be one single
issue common to the proposed class."  <u>Haley</u>, 169 F.R.D.
at 648.

Here, Plaintiffs' FAC alleges several common

questions of fact and law: (1) whether Defendant's advertising was false and misleading; (2) whether Defendant knew or should have known it was misleading; (3) whether Defendant's claims about fuel economy were material to the class; (4) whether the class suffered damages; (5) whether Defendant knew or should have known the class members would experience significantly less fuel economy than advertised; (6) whether Defendant concealed or failed to tell the class about material facts regarding fuel economy.  (Mot. 6; FAC ¶¶ 26-32.) Accordingly, Plaintiffs satisfy the commonality requirement.

### 3.  Typicality

To gauge typicality, a "court does not need to find that the claims of the purported class representative[s] are identical to the claims of the other class members." Haley, 169 F.R.D. at 649.  The Ninth Circuit in Hanlon further wrote that "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  150 F.3d at 1020.  Additionally, the class representatives "must be able to pursue [their] claims under the same legal or remedial theories as the unrepresented class members."  Paxil, 21 F.R.D. at 549.

Here, Plaintiffs assert their claims are typical because they bought HCHs seeking fuel efficiency but were never able to achieve the advertised mileage per gallon. (Mot. 7-8.) **They rely on excerpts from deposition transcripts but fail to attach these to the Motion.** Even assuming for the sake of this Motion the excerpts are accurately cited, however, the Court cannot assess whether Plaintiffs' claims are typical because, although the FAC asserts Plaintiffs were exposed to advertising and relied on it, **Plaintiffs do not so state in their Motion.** (See FAC ¶¶ 4-5 (all class members exposed to advertising and all relied on it), 29 (named Plaintiffs' claims typical).) **Plaintiffs are directed to amend their pleading with pertinent excerpts from the deposition transcripts, bracketed according to Local Rules 32-1 and 16-2.7.**

### 4.   Adequacy of Representation

Traditionally, courts have engaged in a two-part analysis to determine if the plaintiff has met the requirements of Rule 23(a)(4): (1) the class representative must not have interests antagonistic to the unnamed class members, and (2) the representative must be able to prosecute the action "vigorously through qualified counsel." Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

Adequate representation "'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" Paxil, 212 F.R.D. at 550. Courts now determine the adequacy of counsel under Rule 23(g). See, e.g., Hill v. Merrill Gardens, L.L.C., 2005 WL 2465250, *3 (N.D. Ind. 2005); F.R.C.P. 23 Advisory Committee Notes.

### a. Named Plaintiffs

The Court cannot assess whether named Plaintiffs are adequate representatives because Plaintiffs' counsel failed to submit declarations from named Plaintiffs regarding any possible conflicts of interest between them and the proposed class. **The Court will permit Plaintiffs leave to supplement their Motion to support the absence of antagonism between named Plaintiffs and the class. Such materials should address whether named Plaintiffs owned or leased their HCHs and the type of relief they intend to claim under the Settlement Agreement.**

### b. Counsel

Plaintiffs' counsel submitted substantial evidence of their experience with class action, complex, and other large-scale litigation, including substantial trial experience. (Joint Declaration of Co-Lead Counsel

Jonathan W. Cuneo and Nicholas E. Chimicles ("Cuneo & Chimicles Decl.") ¶¶ 2, 3, Exs. 1-2.) Plaintiffs' counsel have made an adequate showing of their qualifications. See Fed. R. Civ. P. 23(g).

### 5. Predominance of Common Questions of Law or Fact and Superiority of a Class Action

Plaintiffs satisfy the requirements of Rule 23(b). Common questions of fact predominate, common questions of law may predominate, and a class action is clearly the superior way to resolve this controversy.

First, this action concerns claims based on nationwide advertising created and distributed on behalf of a single company regarding a single product; all class members allegedly wrongly paid a hybrid premium, or additional cost to obtain a hybrid rather than conventional vehicle.[2] The Court has already determined it can infer reliance on the advertising because the alleged misrepresentations were material. (Mot. 11; June 22, 2007 Order Denying Defendant's Motion to Dismiss 12-

---

[2]The record is ambiguous about the amount of the hybrid premium. Plaintiffs plead a hybrid premium of "nearly $7000" in their FAC and original Complaint, based on comparing the prices of hybrid and non-hybrid Honda Civic models. (FAC ¶ 15; Compl. ¶ 15.) Although Plaintiffs' counsel states they consulted with experts about how to "calculate the difference in value between a similarly equipped Honda Civic and Honda Civic Hybrids" they do not explain why they now estimate the hybrid premium at $2500, less than half the original estimate. (See Cuneo & Chimicles Decl. ¶ 44.)

14

13.)  Although individual damages, including restitution for unanticipated fuel expenses, would vary, common issues of fact predominate over individualized inquiries. (See Mot. 11.)

Second, Plaintiffs assert common legal issues predominate because California law applies to all members of the nationwide class because all of the following are located in California: (1) Defendant's headquarters, where it "coordinated" Defendant's "national and regional advertising" and "regulated or reviewed dealer advertising"; (2) Defendant's primary advertising agency, where it "created and placed all or substantially all of the advertising and promotional materials at issue;" and (3) the offices of Defendant's legal and regulatory departments, which reviewed Defendant's advertising. (Mot. 9-10 citing Clothesrigger, Inc. v. GTE Corp., 191 Cal. App. 3d 605, 613 (1987).)

Third, Plaintiffs also show a class action is the superior method of resolving this controversy as each class member has a relatively small and uniform injury. (Mot. 12.)

For the reasons above, Plaintiffs have carried their burden and satisfied the requirements of Rule 23(b)(3).

**B.   Fairness and Adequacy of Settlement Agreement**

We now turn to the factors of Rule 23(e) to determine whether the settlement is adequate and reasonable, balancing several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Class Plaintiffs v. City of Seattle, 955 F.2d 1268 (9th Cir. 1992).


Here, the Settlement Agreement calls for a total settlement amount which is undisclosed, $2.95 million in attorneys' fees, expenses and costs, including a total of $22,500 in class representative incentive payments for the two named Plaintiffs. (Mot. 4.)  The declarations of Plaintiffs' counsel and the third-party mediator, as well as other materials on the record, demonstrate the parties engaged in substantial and arms-length negotiations over several sessions, in person and through various electronic media.  (Mot. 12-13; Cuneo & Chimicles Decl. ¶¶ 48-66.)  **Although the Court is satisfied the settlement was reached through arms-length negotiation, it lacks sufficient information to grant or deny preliminary approval to the settlement.  The Court**

**directs the parties to submit the information requested below.**

**1. The strength of Plaintiffs' case**

   **The Court lacks sufficient information to assess the strength of Plaintiffs' case and the risk and duration of further litigation.** Plaintiffs assert the application of California law to all members of the proposed class is a contested legal issue. (See Mot. 19-20.) The parties believe two cases pending before the California Supreme Court, In re Tobacco II Cases, No. S147345 and Pfizer v. Superior Court, No. 2145775 "may affect core legal issues in this Lawsuit." The parties fail to explain how or why these cases will affect this suit. (See Mot. 18 n.24.) **The parties are invited to address the Court on this issue at the hearing.**

   Plaintiffs also assert preparation for trial will require additional discovery, work with experts, and preparation of a motion for summary judgment. (Mot. 18-19.) While discovery, pretrial motion practice, and trial preparation in a complex case normally entail significant expense, their anticipated occurrence does not alone inform the Court about which disputed legal or factual issues Plaintiffs' counsel unearthed when "review[ing] thousands of pages of relevant documents produced by [Defendant] and third parties and tak[ing]

four depositions of [Defendant's] executives . . . ."
(Mot. 14.)  Nor does the Motion explain what Plaintiffs
learned from their experts which led them to reduce the
estimate of the hybrid premium from $7000 to $2500.
(Compare FAC ¶ 15 with Mot. 11.)  **The Court directs the
parties to submit further information on these issues.**

**2.  The amount offered in settlement**

Plaintiffs assert the settlement is within the range
of possible approval because it "provides a meaningful
benefit to all Settlement Class Members," is "tailored to
remedy . . . the specific issues raised by Plaintiffs'
allegations," and is "user-friendly and accessible."
(Mot. 15.)  In particular, Defendants assert the in-kind
benefits, the Option A and B discounts on certain of
Defendant's vehicles, are reasonable because they are of
real economic value to members of the proposed class.
(Mot. 15.)

Based on the record here, the Court cannot determine
the extent to which the proposed relief, including DVDs,
changes to advertising, the different types of payments
to those qualifying for Options A, B, and C, and the lack
of monetary payment for some class members is adequate
and reasonable for the proposed class of over 120,000
persons.  (See Mot. 2-4, 12.)

First, Plaintiffs assert the DVD is of real value to the class, drawing parallels to cases such as <u>Shaw v. Toshiba America Information Systems, Inc.</u>, 91 F. Supp. 2d 942, 946 (E.D. Texas 2000), in which settlement consideration included a specially-designed software patch. (Mot. 17.) **There is insufficient information in the record here about the proposed content of the DVD, which remains to be developed, to assess the extent to which it may be valuable consideration. (<u>See</u> Settlement Agreement 14-15.)** For example, the record does not reveal the extent of the fuel efficiency gains estimated to be garnered if members of the proposed class follow its instructions.

Second, as to the value of in-kind payments, Plaintiffs rely on <u>Shaw</u>, 91 F. Supp. 2d at 960, although it undermines Plaintiffs' position in several important respects. On the one hand, <u>Shaw</u> approves of settlements including in-kind payments so long as they are of "real, economic value to class members." <u>Shaw</u>, 91 F. Supp. 2d at 960. Payment of $1,000, $500, or $100 is no doubt of some economic value. On the other hand, <u>Shaw</u> supported its conclusion that the benefits at issue in the case before it, "Toshiba Bucks," were of real value because they were "designed to be as much like cash as possible – specifically, they're assignable, aggregational, and transferrable." <u>Shaw</u>, 91 F. Supp. at 961.

By contrast, the payments proposed here do not bear these attributes. They are either not assignable at all, or only to a limited degree, and for a limited time. For these reasons, the proposed payments here are distinguishable from "Toshiba Bucks": they are not "designed to be as much like cash as possible." <u>See Shaw</u>, 91 F. Supp. at 961.[3]

Third, the Court lacks two vital pieces of information about the adequacy of the settlement: the size of the total fund and the likely claims on the fund. Useful information on this subject might include:

- **an estimated total number of persons in the proposed class who intend to purchase an Eligible Vehicle within the proposed time period, qualifying for Options A or B;[4]**

- **an estimated total number of relatives or other persons eligible for transfer of the $500 Option B payments intend to purchase an Eligible Vehicle within the proposed time period;**

---

[3]Plaintiffs also rely on <u>Manners v. American General Life Insurance Company</u>, 1999 WL 33581944 (M.D. Tenn. 1999) but the Court's review of this case does not reveal discussion of in-kind benefits.

[4]Plaintiffs assert that "the historically high brand loyalty exhibited by Honda owners" increase "the likelihood that many Settlement Class Members would be purchasing Honda vehicles in the near future." (Mot. 16.) Plaintiffs' only support is the deposition transcript of Delgado, which was not provided with this Motion.

- an estimated total number of persons within the
  proposed class who made complaints to Defendant or to
  authorized dealers regarding HCH fuel efficiency,
  allowing them to recover under Option C; whether
  Defendant or Plaintiffs' counsel solicited such
  complaints; and whether there is reason to believe
  members of the proposed class made complaints that
  were never relayed to Defendant, barring them from
  relief under Option C; and

- an estimated total number of persons who are likely
  to recover no compensation save the DVDs from the
  proposed settlement.

The Court also directs the parties to brief the following issue: the reasons the parties, in seeking certification of Rule 23(b)(3) opt-out class, require those seeking relief under Option C to have "opted-in" some time ago by filing a written Complaint with Defendant or a Honda or Acura dealer.

### 3. The extent of discovery completed, and the stage of the proceedings

Plaintiffs filed this action on March 9, 2007. Over a two-year time span, Defendant produced approximately 17,000 pages of documents of an undisclosed nature,

tailored to discovery of Defendant's "development, manufacturing, research, testing, advertising and handling of complaints" regarding the HCH as well as Defendant's corporate structure. (Mot. 14; <u>see</u> Cuneo & Chimicles Decl. ¶¶ 28, 30.) Plaintiffs deposed representatives of Defendant regarding: advertising by independent Honda dealerships and Defendant's agreements with them regarding advertising; advertising of HCH through various media; "[t]he origins, background, questions asked, preparation and factual support for the Early Buyer Study[5] produced by" Defendant and any other relevant buyer studies. (Cuneo & Chimicles Decl. ¶¶ 33-35.) The Court concludes discovery has been sufficient to permit the parties to enter into a well-informed settlement.

### 4. The experience and views of counsel

As explained above, Plaintiffs' counsel demonstrates experience with class action and complex litigation and provides a helpful description of the steps counsel undertook in the litigation of this action. (<u>See</u> Mot. 14; Cuneo & Chimicles Decl. ¶¶ 48-68.) The Court does not doubt the experience of Plaintiffs' counsel but requires their views on the fairness, reasonableness, and adequacy of the settlement. **Plaintiffs' counsel should submit a statement regarding their views of the settlement.**

---

[5]Plaintiffs do not explain what this study is.

22

**5.  The reaction of the class members to the proposed settlement**

Plaintiffs provide no evidence regarding class members' reaction to the proposed settlement.  Plaintiffs counsel fail to provide any declarations, including those of the named Plaintiffs, regarding their reactions to the proposed settlement.  Indeed, the Motion does not mention this factor at all.  **The Plaintiffs shall submit the declarations of True and Delgado regarding their view of the proposed settlement.**

For the above reasons, Plaintiffs have not borne their burden under Rule 23(e).  Accordingly, the Court cannot conclude the settlement is fair, reasonable, or adequate.

## C.  Notice

Plaintiffs must provide notice to potential opt-in class members that is "timely, accurate, and informative."  See Hoffmann-La Rouche Inc. v. Sperling, 493 U.S. 165, 172 (1989) (emphasis added).  The claims administration process and the claims forms are deficient in several respects.

**1.  Claims administration process**

Defendant will act as the Claims Administrator. (Settlement Agreement 15-19; Notice Plan).  It will send

the notice and claims forms to class members, attempt to
locate class members no longer at their original
addresses, provide notice via a website, and assist class
members with the claims process through a telephone
Helpline. (Notice Plan 1-6.) This process is adequate.

**2. Consumer Claim Form**

Claim forms must be informative and accurate.
Hoffman-LaRouche, 493 U.S. at 172.

The Consumer Claim Form is generally acceptable,
although the Court notes some areas of concern:

• **Registered domestic partners,** and members of civil
   unions, are **not among the list of transferees for
   Option B.**

• **The Consumer Claim Form lacks a clear statement that
   if the potential class member does not qualify for
   payment under Options A, B, or C he will receive no
   money.** The Consumer Claim Form should include a
   clear statement to this effect: "IF YOU DO NOT SIGN
   AND RETURN THIS FORM, OR IF YOU DO NOT QUALIFY FOR
   OPTION A, B, OR C, YOU WILL RECEIVE NO MONEY FROM THE
   SETTLEMENT."

1  •  **The Consumer Claim Form lacks a convenient way for**
2     **class members to opt out.**  The Court notes that the
3     Settlement Agreement creates serious consequences if
4     more than 100 persons opt out of the class: Defendant
5     has the option of voiding the Settlement Agreement,
6     exposing both sides to continuing litigation and
7     depriving Plaintiffs' counsel of their attorneys'
8     fees.  (<u>See</u> Settlement Agreement 31.)  Nevertheless,
9     the Court must safeguard the interests of all class
10    members.  Opting out should be as convenient as
11    remaining a part of the class.

12
13    **3.  Class Notice**
14    The Class Notice, like the Consumer Claim form, must
15    be accurate.  Like the Consumer Claim Form, the Class
16    Notice should include registered domestic partners and
17    civil unions among the transferees for Option B relief on
18    page 5.  (Settlement Agreement Ex. D at 5.)

19
20    Like the Consumer Claim Form, the Class Notice should
21    include a clear statement regarding the consequences of
22    failure to file a Consumer Claim Form or to qualify for
23    relief under Options A, B, or C.  This is very important
24    information and should appear on the chart of questions
25    and answers located on page 2.  (Settlement Agreement Ex.
26    D at 2.)

27
28

In addition, the Class Notice, at page 6, should provide reference to a form through which class members may exclude themselves, rather than detailed instructions about how to compose their request for exclusion. (Settlement Agreement Ex. D at 6.)

The parties should also clarify the statement at page 6 of the Class Notice which states:  "If you do not object to the proposed settlement and/or wish to participate in the settlement, you need not do anything. If the Court approves the settlement, you will automatically become eligible to receive all the benefits to which you are entitled."  This may lead class members to believe they need not file Consumer Claim Form to later claim benefits.  (Settlement Agreement Ex. D at 6.)

**D.  Attorneys' Fees and Incentive Payment for Named Plaintiff**

The Motion indicates Plaintiffs will seek allocation of settlement funds for attorneys' fees and for incentive payments for the named Plaintiffs.

**1.  Attorneys' fees**

Plaintiffs assert claims under California law, and California law governs the award of attorneys' fees.

<u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).  California recognizes the common fund doctrine for the award of attorneys' fees to prevailing plaintiffs whose efforts result in creation of a fund benefitting others.  <u>Serrano v. Priest</u>, 20 Cal. 3d 25, 35 (1977).  Under both California and Ninth Circuit precedent, a court may exercise its discretion to award attorneys' fees from a common fund by applying either the lodestar method or the percentage-of-the-fund method. <u>Wershba v. Apple Computer, Inc.</u>, 91 Cal. App. 4th 224, 253 (2001); <u>Fischel v. Equitable Life Assur. Soc'y of U.S.</u>, 307 F.3d 997, 1006 (9th Cir. 2002) (citing <u>Vizcaino</u>, 290 F.3d at 1047).

Plaintiff's counsel, Cuneo and Chimicles, will seek up to 2.95 million in attorneys' fees, costs, expenses, and incentive payments for Plaintiffs.  (Stipulation 20:24-28; 21:1-2.)

Plaintiffs' counsel reviewed documents, deposed several experts, and engaged in extensive negotiations. (Cuneo & Chimicles Decl. ¶¶ 48-66.)  They do not state the hours they have spent on this case although they state their fees incurred thus far, calculated pursuant to the lodestar method, would be approximately the same amount as the fees they seek; by the time the settlement reaches final approval, their fees calculated through the

lodestar method will exceed the fee they seek. (Cuneo & Chimicles Decl. ¶ 68; Mot. 24.) As noted above, **Plaintiffs' counsel provide insufficient information about the value of the benefits that will be provided to the proposed class and the estimated liability of Defendant.** On the basis of the information submitted in support of the Motion, the Court cannot assess the results Plaintiffs' counsel have provided for the class. **Plaintiffs' counsel have not met their burden regarding an award of attorneys' fees.**

### 2. Incentive payments for Plaintiffs

The Motion indicates named Plaintiffs will seek a total of $22,500 in incentive awards: $12,500 for True and $10,000 for Delgado. (Settlement Agreement 21.) The criteria courts may consider in determining whether to make an incentive award include:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The declaration of Chimicles and Cuneo gives some general information about the tasks Plaintiffs performed – including communicating with their counsel regarding interrogatories, requests to admit, and document requests, and preparing for and testifying at depositions. (See Mot. 25 citing Cuneo & Chimicles Decl. ¶¶ 42, 43, 55, 66.) In addition, True attended a hearing and a status conference. (Cuneo & Chimicles Decl. ¶¶ 21, 66.) Nevertheless, Plaintiffs' counsel provides little detail relevant to the factors listed in the preceding paragraph, including the risks shouldered, notoriety experienced, time required, and personal benefits derived by Plaintiffs from the litigation. (See Mot. 25 citing Cuneo & Chimicles Decl. ¶¶ 42, 43, 55, 66.) Accordingly, the Court cannot assess whether these awards are fair or reasonable. **Plaintiffs have not carried their burden as to incentive awards. The Court directs Plaintiffs' counsel to submit additional information, including declarations from the Plaintiffs themselves.**

**E. Notice Pursuant to 28 U.S.C. section 1715**

Plaintiffs move the Court to find that Defendant provided proper notice of proposed settlement pursuant to the Class Action Fairness Act ("CAFA"), in particular 28 U.S.C. § 1715(b). Plaintiffs attach a form letter providing notice as Exhibit A to the Settlement Agreement. Section 1715(b) requires Defendant to serve

the notice on certain officials ten days after filing the
proposed settlement.  This made it difficult to file,
concurrently with the Motion, proof the letters had been
sent.  **Nevertheless, the Court requires proof the letters**
**were timely sent before it can make the finding requested**
**by Plaintiffs.**

### IV. CONCLUSION

As explained above, Plaintiffs have failed to
establish that their proposed class is entitled to
certification under Federal Rule of Civil Procedure
23(a).  Moreover, they have failed to establish that the
proposed settlement is fair, reasonable, and adequate as
required by Rule 23(e).  Accordingly, the Court DENIES
the Motion.  **The Court will permit Plaintiffs to submit**
**additional information in support of the Motion.**
**Plaintiffs shall file any such materials no later than**
**April 24, 2009.**

Dated: March 25, 2009

_____
VIRGINIA A. PHILLIPS
United States District Judge