Michael E. Lindsey
Attorney at Law
State Bar No. 99044
4455 Morena Blvd., Ste. 207
San Diego, California 92117-4325
mlindsey@nethere.com
(858) 270-7000

Attorney for Plaintiff GAETANO PADUANO

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION - RIVERSIDE

| | |
|---|---|
| JOHN TRUE ET AL., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC., a business entity form unknown and DOES 1-30, inclusive,<br><br>Defendants. | Case No. GIC 852441<br><br>Case No. EDCV 07-cv-287 VAP (OPx)<br><br>CLASS ACTION<br><br>MEMORANDUM OF GAETANO PADUANO IN RESPONSE TO SUPPLEMENTAL MOTION FOR PRELIMINARY APPROVAL<br><br>TIME: n/a<br>COURTROOM: 2<br>JUDGE: Hon. Virginia A. Phillips |

Gaetano Paduano, plaintiff in the *Paduano v. American Honda*, GIC 852441, state court action referred to in footnote 28 of the most recent brief filed in support of the supplemental request for preliminary approval of class action settlement, hereby submits this Memorandum supporting the position of the State of Texas suggesting that this settlement should not be preliminarily approved based upon the record before this Court.[1] There are numerous reasons why this

[1]That footnote indicates that counsel have been in "direct correspondence" with us to ensure Mr. Paduano is well informed of the terms of the proposed settlement. However, we did not receive any information from counsel except in response to a direct and persistent inquiry, and were told to pull the papers off the PACER docket. Only after informing class counsel that PACER was down did they forward any documents. We have not been kept informed of the ongoing briefing, having to log onto PACER periodically to check status. We have only

settlement should not be preliminarily approved. However, this Memorandum will briefly identify what we believe are the four most significant reasons.

First, in identifying the potential weaknesses of this case, the parties do not tell the Court that the California Court of Appeal in *Paduano v. American Honda*, 169 Cal.App. 4th 1453 (2008), has already upheld these claims as against summary judgment and reversed the granting of a motion for summary judgment on the same advertising claims asserted in this case. In that case, Honda had prevailed on summary judgment that the representations of Honda regarding fuel efficiency were preempted and raised no disputed issues of material fact. The California Court of Appeal reversed that decision in part, finding that claims over Honda's misrepresentations of fuel efficiency under the Consumers Legal Remedies Act and the Unfair Competition Law should have survived summary judgment:

"There is thus evidence that 'getting terrific gas mileage' might not be accomplished as easily as Honda suggests to consumers in its brochure. In addition, Honda admitted that other customers had registered complaints similar to Paduano's about the fuel economy they were achieving with their Civic Hybrid vehicles. A call from Mr. Paduano to Honda's 800 Customer Service resulted in the following explanation from the Honda representative;

> "I can understand his complaint/concern that his actual mileage differs from the mileage estimate provided on the Monroney Label. Advised client the tests performed were developed over 30 years ago and do not reflect real driving situations, let alone driving habits of consumers in the modern day. advised additionally these tests do not take Hybrid vehicles into consideration, and Hybrid vehicle estimates are inflated based on the test

---

had one call from Mr. Cuneo, and Honda's counsel has only discussed this matter with us in opposing requests for relevant information produced in this case. If the intent of that footnote was to imply we have been involved or freely informed of the status of this process, that is the wrong impression to convey.

procedures. Advised client Hybrid vehicles are more dramatically affected by outside influences such as air conditioning, driving habits, windows up/down, and vehicle load than normal combustion engines. Advised Hybrids require a particular driving style in order to be fuel efficient, and short trips penalize hybrid efficiency more so than regular cars."

This explanation was a formulaic script, given verbatim to multiple customers who complained of poor mileage. See **Exhibit 1** hereto.

This constitutes additional evidence that Honda's advertising claims may be misleading, since a number of other drivers who presumably drove their vehicles as they would conventional vehicles were also apparently unable to achieve mileage close to the EPA estimates, and were frustrated with the mileage they were achieving. Based on this evidence, a reasonable trier of fact could find that some of Honda's advertising statements regarding the Civic Hybrid were false and/or misleading for purposes of Paduano's CLRA and UCL claims."

Id. at 1472-73 (emphasis added). The Court of Appeal also reversed the finding that such claims were preempted by federal law, based in part on this Court's previous ruling. Id. At 1473-75.

This ruling was issued before this proposed settlement was submitted to the Court for preliminary approval, but does not appear to have been cited in any of the moving papers. Thus, counsel did not provide the Court an accurate portrayal of the strengths and weaknesses of the parties' case, since the California Court of Appeal has already determined that these claims should survive summary judgment.

In addition, while counsel place heavy reliance on the Supreme Court's potential ruling in the *In Re Tobacco II Cases* as justifying their settlement, that decision was issued on May 18, 2009 (2009 Cal. LEXIS 4365). In that decision

the California Supreme Court made clear that for purposes of complying with the standing provisions of Proposition 64, only the class representative needs to establish that the misleading representations as a whole (not particular representations) were a "substantial factor" in deciding to engage in the transaction in question, and that a presumption of reliance arises when the representation is "material" and even then is only relevant to establish strict liability for committing a "fraudulent" business practice. See *In Re Tobacco II Cases*, supra, at *55-*60. Since here there is a non-hybrid and hybrid version of the same Honda vehicle, and one pays the estimated $7,000 premium for the hybrid version even though both cars use the same type of fuel, it is fair to assume that a reasonable number (if not all) of the 158,639 class members would have paid that premium in substantial part because there was allegedly a material difference in fuel mileage attributable to the use of a hybrid vehicle - which is what Honda represents and what plaintiffs claim is inaccurate. Put a different way, there is a substantial question if people would have paid $7,000 more for the same vehicle that provides essentially the same gas mileage.[2] Thus, combining these two decisions (neither of which the Court has had the benefit of considering), the claims at issue here are much stronger than the Court is lead to believe or that counsel apparently considered.

Second, the valuation of the DVD as providing value to the class equal to a minimum of $7.4 million is illusory. While they claim similar instructional videos sell for up to $99, much of what is likely the same information is available for free on-line at www.ucan.org/gas_autos/receive_a_free_guzzler_buster. This brochure was written with a former Road & Track magazine writer and offers 127 different tips for increased gas mileage. A simple reference to that website would provide equal "benefit" to the class members, for free. Googling "improve gas mileage" produces 203,000,000 hits. Thus, the value of this particular benefit is no different than what was offered class members and rejected on preliminary approval in *In Re Ford Motor Co. Bronco II Products Liability Litigation*, 981 F.Supp. 969, 971

[2]It also raises a material question as to whether the consumers would have purchased this vehicle at all.

(E.D. La. 1995), where one of the "values" provided was a video on safe driving techniques. The Court's primary concern was that the consideration did not equate with what was sought in the Complaint, which is the same question raised here.

Third, the Declaration of Xavier Dreze raises more questions than it answers and indicates the vast majority of class members will receive no benefit at all. While he did not value the DVD component of the settlement, he believes the DVD will have "significant value" due to the "operational cost savings" it could provide. As stated above, class members can obtain the same information for free without having to release any claims. In addition, while he summarizes his findings he provides no explanation of how they were derived other than to reference generally customer retention data and simply noting the not surprising proposition that redemption rates in class actions vary widely. The one erroneous assumption is that the coupon redemption program would begin in mid 2009, which it cannot. The declaration does not address those customers who no longer own the subject vehicles, having traded them or sold them out of frustration.

In addition, while various charts are attached to his analysis, he provides no explanation of what they mean, how they were derived or what were the key assumptions on which they were based. However, it appears he suggests that at most 13% of the class will take advantage of the primary benefit being offered in terms of the $500 or $1000 cash back - meaning 87% of the class will get no tangible benefit in exchange for releasing such claims, even though Honda admits to having over 2,600 complaints of the same issue. As this is the critical information the Court requested it is subject to particular scrutiny, and its lack of a detailed explanation as to the bases for his assumptions and conclusions is troublesome. Moreover, Mr. Paduano recently visited two Honda dealerships and asked how much he could get off the MSRP of a Honda vehicle. On the spot with no negotiation he was told he would get $2,200.00 to $2,415.00 off the price of a Civic Hybrid, without a trade in vehicle. See Declaration of Gaetano Paduano,

submitted herewith. Thus, it is not clear whether the $500 or $1,000 cash back offer is in reality of any appreciable value for the 13% of class members who might desire to claim it. Mr. Paduano certainly does not think so.

Finally, as a part of this settlement, Honda would be able to claim this case is over and destroy documents relevant to the Paduano case. Even though these cases involve similar issues and defendant claims it has produced over 20,000 pages of documents, had over 2,600 complaints that was referenced in the Court of Appeal decision and provided deposition testimony in this case, Honda is refusing to produce that evidence in the individual Paduano case, claiming it is not "relevant". While this issue will ultimately be resolved by the state court, it raises questions as to what information is actually there and whether it has been reviewed and considered. At this point we cannot verify these statements one way or the other. This is yet another problem with the settlement that may actually hurt the class members if approved - those who ultimately want to pursue individual claims may not be able to access the information produced here as it may be destroyed in the interim on the grounds it is "not relevant" to any other persons' claims.

Thus, for all these reasons and the reasons set forth by the Texas Attorney General, Mr. Paduano submits that the Court should critically review this settlement based on the additional information provided and the information provided in this Memorandum, and send the parties back to the bargaining table.

May 28, 2009

/s/Michael E. Lindsey
Michael E. Lindsey
Attorney for Plaintiff
Gaetano Paduano

PROOF OF SERVICE
(Sections 1013a, 2015.5 C.C.P.)

STATE OF CALIFORNIA )
) ss.
COUNTY OF SAN DIEGO )

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action. My business address is: 4455 Morena Blvd., Ste. 207, San Diego, California 92117-4325.

On the date shown below, I served the foregoing document described as:

PADUANO RESPONSE TO MOTION FOR PRELIMINARY APPROVAL
Paduano v. Honda, Case No. GIC 852441

[X] (**BY EFILE)** The above document was served on the interested parties by electronic means via Efile.

[] (**BY MAIL)** The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with this office's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] (**BY PERSONAL SERVICE**) I caused to be delivered such envelope by hand to the addressee.

[X] (**FEDERAL**] I declare that I am a member of the bar of this court.

Executed on May 28, 2009, at San Diego, California.

/s/Michael E. Lindsey
Michael E. Lindsey