1  CHIMICLES & TIKELLIS LLP
   Nicholas E. Chimicles (*pro hac vice*)
2  Denise Davis Schwartzman (*pro hac vice*)
   361 West Lancaster Avenue
3  Haverford, PA 19041

4  CUNEO GILBERT & LADUCA LLP
   Jonathan W. Cuneo (*pro hac vice*)
5  William H. Anderson (*pro hac vice*)
   507 C Street, NE
6  Washington, DC 20002

7  Attorneys for Plaintiffs

8

9

10                UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

                 EASTERN DIVISION – RIVERSIDE
12

13

14  _____

15                                   )  CASE NO. ED 07-cv-287 VAP-OP
                                     )
16  JOHN TRUE, *et al.*,             )
                                     )  **PLAINTIFFS' MEMORANDUM**
17          Plaintiffs,              )  **IN SUPPORT OF MOTION FOR**
                                     )  **FINAL APPROVAL**
18          v.                       )  **OF SETTLEMENT**
                                     )
19  AMERICAN HONDA MOTOR CO.,        )
    INC.,                            )
20                                   )  **DATE: FEBRUARY 22, 2010**
            Defendant.               )
21                                   )  **TIME: 10:00 a.m.**
                                     )
22  _____)  **COURTROOM 2**

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................... 1

II.  BACKGROUND ............................................................ 1

III.  SUMMARY OF THE SETTLEMENT ................................. 3

    A.  Fuel Economy DVD ............................................... 4

    B.  Cash or Cash Rebates ............................................ 4

    C.  Injunctive Relief ................................................... 5

    D.  Clarifications to the Settlement Agreement
        Subsequent to Preliminary Approval .................... 5

IV.  NOTICE AND ADMINISTRATION
    OF THE SETTLEMENT ............................................... 7

    A.  Notice Was Extremely Effective, and Satisfies
        the Requirements of Rule 23 and Due Process ...... 7

    B.  The Settlement Administration Plan is
        not Unduly Burdensome ......................................... 9

V.  STANDARD OF REVIEW .......................................... 9

VI.  THE PROPOSD SETTLEMENT SATISFIES
    THE REQUIREMENTS FOR FINAL APPROVAL ....... 11

    A.  The Strength of Plaintiffs' Case and the Risk,
        Complexity and Expense of Further Litigation ...... 11

    B.  The Risk of Maintaining Class Action Status
        Throughout Trial ................................................... 12

    C.  The Amount Offered in Settlement ....................... 13

    D.  The Extent of Discovery Completed
        and Stage of Proceedings ..................................... 14

    E.  The Experience and Views of Counsel .................. 15

    F.  The Reaction of Class Members to
        the Proposed Settlement ....................................... 16

        1.  The low ratio of objections in comparison to
            the size of the Settlement Class supports
            final approval of the Settlement ...................... 16

        2.  Feedback from Settlement Class Members
            received by Class Counsel during the notice
            period supports final approval of the Settlement ... 17

i

3. Analysis of the opt-outs received does not reveal a threat of numerous individual lawsuits, supporting final approval .......................................... 17

VII.  THE SETTLEMENT CLASS SOULD BE FINALLY CERTIFIED ........................................ 19

A.  The Settlement Class Satisfies the Requirements of Rule 23(a) ........................... 19

B.  The Settlement Class Satisfies the Requirements of Rule 23(b) ........................... 21

1. Common questions of law and fact Predominate ...... 21

2. A Class Action is the Superior Means for Resolving the Claims of Settlement Class Members ...... 24

VIII.  CONCLUSION ........................................................ 24

# TABLE OF AUTHORITIES

CASES

*Adams v. Inter-Con Sec. Sys.*,
2007 U.S. Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007).          10, 15

*Amchem Prods. v. Windsor*,
521 U.S. 591 (U.S. 1997).          12, 19

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001).          20

*Boyd v. Bechtel Corp.*, 485 F. Supp.
610, (N.D. Cal. 1979).          15

*Churchill Vill., LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004).          10

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992).          9, 10

*Clothesrigger, Inc. v. G.T.E. Corp.*,
191 Cal. App. 3d 605 (1987).          22

*Curtis-Bauer v. Morgan Stanley & Co.*,
2008 U.S. Dist. LEXIS 85028 (N.D. Cal. Oct. 22, 2008)          16

*Eisen v. Carlisle & Jacqueline*,
417 U.S. 156 (1974).          9

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980).          11

*Flinn v. FMC Corp.*,
528 F.2d 1169 (4th Cir. 1975).          11

*Glass v. UBS Fin. Servs. Inc.*,
2007 US Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007).          11, 16

*Hanlon v. Chrysler Corp.*,
150 F. 3d 1011 (9th Cir. 1998).          *passim*

*In re Cement and Concrete Antitrust Litigation*,
817 F.2d 1435 (9th Cir. 1987).          7

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. Pa. 1995).          10

*In re Heritage Bond Litig.*,
2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).          11, 12

*In re Immune Response Secs. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007).          10, 14, 16

iii

*In re Mego Fin. Cor. Sec. Litig.*,
213 F. 3d 454 (9th Cir. 2000).                                           13

*In re Pacific Enterprises Securities Litigation*,
47 F.3d 373 (9th Cir. 1995).                                            15

*In re Tobacco II Cases*,
46 Cal. 4th 298 (Cal. 2009).                                            12

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978).                                          21

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950).                                                     8

*Nat'l Rural Telcoms. Coop.*,
2003 U.S. Dist. LEXIS 25375.                                            15

*Officers for Justice v. Civil Serv. Comm'n of City and*
*County of San Francisco*, 688 F.2d 615 (9th Cir. 1982).           10, 14

*Oppenlander v. Standard Oil Company (Indiana)*,
64 F.R.D. 597 (D. Colo. 1974).                                         11

*Rosenburg v. IBM*,
2007 U.S. Dist. LEXIS 53138 (N.D. Cal. July 12, 2007).                 16

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
59 F. Supp. 2d 1021, 1027-1028 (N.D. Cal. 1999).                        8

*Trujillo v. City of Ontario*,
No. ED cv-04-1015 VAP at 7 (C.D. Cal., Apr. 14, 2005).                 24

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976).                                          10

*Washington Mut. Bank v. Superior Court*,
24 Cal. 4th 906, 919-20 (2001).                                        21

*Weinberber v. Kendrick*,
698 F.2d 61(2d Cir. 1982).                                             11

*Wershba v. Apple Computer*,
 91 Cal. App. 4th 224 (2001).                                          22

CALIFORNIA STATUTES

Cal. Bus. & Prof. Code § 17200 *et seq.*                                1

Cal. Bus. & Prof. Code § 17500 *et seq.*                                1

Cal. Civ. Code § 1750 *et seq.*                                         1

1  OTHER
2  *Manual for Complex Litigation*, (4th ed. 2004).                    9, 10
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  I.    **INTRODUCTION**

2          On behalf of the 176,990 Settlement Class Members[1] who are eligible to

3  submit claims in this matter, Plaintiffs John True and Gonzalo Delgado now move

4  for Final Approval of the settlement preliminarily approved by this Court on

5  August 27, 2009 ("Settlement"), and for final certification of the Settlement Class

6  preliminarily certified by this Court on that same date. By separate Motion,

7  Plaintiffs also move for approval of the requested Attorneys' Fee Award and

8  Named Plaintiffs' Incentive Awards. As more fully described below and in

9  Plaintiffs' Consolidated Response to Objectors (filed concurrently herewith), the

10  Settlement meets all the criteria for Final Approval and provides real relief to the

11  Settlement Class. The Settlement Class satisfies the requisite elements of Rule 23.

12  As such, Plaintiffs respectfully move this Court to enter the [proposed] Final

13  Approval Order.[2]

14  II.    **BACKGROUND**

15          On March 9, 2007, Named Plaintiff John True ("True") filed this Lawsuit

16  against American Honda Motor Co. ("AHM") alleging, on behalf of a putative

17  class of Honda Civic Hybrid ("HCH") purchasers from March 1, 2003 through

18  March 1, 2007, that AHM disseminated false and misleading advertising

19  concerning the fuel economy of the HCH.  Plaintiff asserted claims under Cal. Bus.

20  & Prof. Code § 17200 *et seq.* (the "UCL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

21  (the "FAL"), Cal. Civ. Code § 1750 *et seq.* (the "CLRA"), and common law unjust

22

23  [1]  Capitalized terms not otherwise defined herein shall have the same meanings as
       ascribed to them in the Settlement Agreement and Release.

24      Plaintiffs' earlier estimate of a Settlement Class of approximately 120,000
25      Settlement Class Members was based on discovery provided to plaintiffs
       regarding the number of purchasers of model year 2003-2007 HCHs. The
26      inclusion of model year 2008 to the Settlement Class increased the total number
       of Settlement Class Members to 176,990.

27  [2] Plaintiffs' will in short order file with the Court a revised Claim Form and
       [Proposed] Final Approval Order, which reflect the clarifications and
28      modifications to the Agreement memorialized in the February 5, 2010 Letter
       Agreement with American Honda Motor Co., Inc. attached hereto as Exhibit A.

1

1   enrichment.

2       On April 20, 2007, AHM moved to dismiss Plaintiff's claims asserting,

3   among other things, that state law claims concerning AHM's advertising of the

4   HCH's fuel economy were preempted by the federal Energy Policy and

5   Conservation Act ("EPCA"). (Dkt. # 15). On June 25, 2007, the Court denied

6   AHM's motion to dismiss, holding, among other things, that Plaintiff's state law

7   claims were not preempted by federal law and that "allowing the States to regulate

8   false advertising and unfair business practices perhaps may further the goals of the

9   EPCA." (Dkt. # 23 at 11).

10      Following the Court's decision on the motion to dismiss, AHM filed an

11  answer to Plaintiff's complaint, denying the allegations made therein in all material

12  respects. (Dkt. # 27). On November 16, 2007, Plaintiffs filed a first amended

13  complaint ("FAC"), adding Gonzalo Delgado ("Delgado") as a Named Plaintiff

14  and extending the class period through June 1, 2007. (Dkt. # 43).

15      After approximately 11 months of discovery and contentious motion

16  practice[3], the Parties agreed to proceed to mediation, and on June 3, 2008, subject

17  to the completion of certain already-scheduled depositions, the litigation schedule

18  was suspended pending mediation. (Dkt. # 67). After several joint and *ex parte*

19  teleconferences with a highly respected mediator[4], the completion of certain

20  depositions and document discovery, the exchange of several rounds of

21  comprehensive mediation statements, and two separate two-day in-person

22  mediation sessions, the Parties reported to the Court on December 8, 2008 that they

23  had reached a settlement in principle. (Dkt. # 88).

24      On March 2, 2009, Plaintiffs filed a motion seeking preliminary approval of

25  _____

26  [3] *See* Joint Declaration of Class Counsel (Dkt # 94); Supplemental Joint
    Declaration of Class Counsel (Dkt # 104, Exhibit B); Second Supplemental
27  Joint Declaration of Class Counsel (filed concurrently herewith as Exhibit B)

28  [4] *See* Declaration of Jonathan Marks (Dkt #95)

2

1   the Settlement, appointment of Named Plaintiffs as class representatives, their

2   Counsel as Class Counsel, Defendant as Settlement Administrator, and for

3   preliminary approval of a Settlement Class ("Preliminary Approval Motion") (Dkt

4   # 92). On March 25, 2009, the Court entered an order denying Plaintiffs'

5   Preliminary Approval Motion without prejudice and with leave for the Parties to

6   submit additional materials in support of the Settlement ("March 25 Order") (Dkt #

7   100). On May 5, 2009, Plaintiffs filed a renewed motion for preliminary approval

8   of the Settlement ("Supplemental Motion for Preliminary Approval") (Dkt #104)

9   along with supplemental materials including a memorandum addressing the

10  Court's March 25 Order, declarations from Named Plaintiffs True and Delgado, a

11  declaration from professor Xavier Drèze concerning the value of the Settlement,

12  two supplemental declarations from Class Counsel, an outline for the Fuel

13  Economy DVD contemplated by the Settlement, and certain revised exhibits to the

14  Agreement. (Dkt # 104, Exhibits A-G). A second hearing on preliminary approval

15  was held on June 29, 2009. (Dkt # 107). On August 27, 2009, the Court entered an

16  order preliminarily approving the Settlement ("Preliminary Approval Order") (Dkt

17  # 114).

18      On December 22, 2009, the Parties filed a Joint Stipulation to push back the

19  Final Approval Hearing so that the Parties could adequately analyze the nature and

20  scope of the opt out forms received by the Settlement Administrator. (Dkt # 133).

21  On December 29, 2009, the Court entered an Order rescheduling the Final

22  Approval Hearing for February 22, 2010 (Dkt # 136).

23  **III.    SUMMARY OF THE SETTLEMENT**

24      This Settlement applies to all persons who purchased or leased a new HCH

25  model years 2003 through 2008 in the United States, and offers valuable benefits

26  to each member of this Settlement Class. The Settlement consists of the following

27  components:

28

## A. Fuel Economy DVD

All Settlement Class Members will automatically receive a DVD produced by Honda specifically for purposes of this Settlement, demonstrating how to operate and maintain their vehicles to maximize and optimize fuel economy. The DVD will be produced and disseminated by AHM to all Settlement Class Members at AHM's expense, and its content, which is directly related to the allegations in this Lawsuit, will also be accessible on the HCH Fuel Economy Website.

## B. Cash or Cash Rebates

In addition to the DVD, as applicable, Settlement Class Members may select from the following Options by submitting a Claim Form:

Option A: $1000 Cash Rebate from AHM, available to Purchaser Settlement Class Members who sell or otherwise trade in their HCH and purchase an Eligible Honda Vehicle. Option A is non-transferable and expires twelve (12) months after the Effective Date of the Settlement or October 31, 2011, whichever is later.

Option B: $500 Cash Rebate from AHM, available to Purchaser Settlement Class Members who retain their HCH and purchase an Eligible Honda Vehicle. Option B is transferable to family members and expires 12 months after the Effective Date of the Settlement or October 31, 2011, whichever is later.

Option C: Cash Payment of $100, available to any Settlement Class Members who made a documented Complaint regarding the fuel economy of their HCH to: (1) AHM or an authorized Honda or Acura dealership who reported the Complaint to AHM; or (2) to Class Counsel. Option C Claimants are also eligible to select Option A or B.

## C. Injunctive Relief

As part of the Settlement, on the Effective Date, AHM will promptly undertake to review all of its fuel economy advertising for the HCH, no matter in what media, to modify its disclaimer language, including, at a minimum, changing language from "actual mileage may vary" to "actual mileage will vary." AHM will use the modified language for a period of no fewer than twenty-four (24) months from the Effective Date. In reaching this compromise, the Parties took into account the fact that beginning in 2008, the EPA amended its fuel economy testing standards, resulting in lowered fuel economy estimates for almost all vehicles, but particularly for hybrid vehicles. As a result of this change in EPA fuel economy testing methodology, AHM now advertises significantly lower (and more realistic) fuel economy figures for the HCH. A recent review of Honda's website showed that Honda has already begun using the language "actual mileage will vary."

## D. Clarifications to the Settlement Agreement Subsequent to Preliminary Approval

Subsequent to the entry of the Preliminary Approval Order, the Parties entered into discussions to clarify certain areas of the Agreement that had become ambiguous, unclear, impractical, or otherwise unworkable due to the passage of time, technical limitations, or other aspects of settlement administration. On February 5, 2010 the Parties entered into a Letter Agreement to clarify certain aspects of the Agreement, attached hereto as Exhibit A.

First, the Parties clarified that the Agreement does not preclude Settlement Class Members from participating in regulatory actions (if any) initiated by a state or federal agency. Letter Agreement at 1 (Exhibit A). While the Parties do not believe the language of the Released Claims as originally written restricted the ability of Settlement Class Members to participate in administrative proceedings, nor did the Parties intend to restrict such activity, the Parties nonetheless determined that a clarification of the Released Claims would ease concerns raised

1    by the *Amici* regarding the scope of the Release. *See* Plaintiffs' Consolidated
2    Response to Objections, filed concurrently herewith ("Plaintiffs' Response to
3    Objections") at pgs 6-9.

4      Second, the Parties recognized that due to the passage of time between
5    negotiating the Agreement and moving this Court for final approval of the
6    Settlement, the use of a date certain to reflect the negotiated effective period for the
7    Cash Rebate Options had become impractical. As such, the Parties clarified that
8    the time period for claiming a Cash Rebate under Options A and B run 12 months
9    from the Effective Date of the Settlement or October 31, 2011, whichever is
10   earlier, as opposed to being tied to a date certain. Letter Agreement at 2 (Exhibit
11   A).

12     Third, the Parties clarified that due to technical limitations of the HCH Fuel
13   Economy Website, certain of the procedures described as Qualifying Preconditions
14   in the Agreement are not, in fact, "preconditions" to submitting a Claim Form for
15   the Cash and Cash Rebate benefits offered under the Settlement. As such, the
16   Parties clarified that while the Fuel Economy Video will be posted on the HCH
17   Fuel Economy Website, Settlement Class Members need not watch the Fuel
18   Economy Video order to fill out a Claim Form, as no Preassigned Claim Number
19   will be required. Letter Agreement at 2 (Exhibit A), *See* Plaintiffs' Response to
20   Objections at pgs 14-15.

21     Fourth, the Parties clarified that Option C is not an exclusive remedy, and
22   that individuals eligible for Option C will also be eligible to Claim Option A or B.
23   Letter Agreement at 2 (Exhibit A). In negotiating this aspect of the original
24   Agreement, the Parties had assumed that Settlement Class Members who were
25   dissatisfied enough with their HCH to take what Honda considers to be the first
26   step towards litigation would not be interested in purchasing another Honda
27   vehicle. However, feedback from Settlement Class Members received by the
28   Settlement Administrator and Class Counsel on the toll-free settlement hotline

1  during the notice period revealed that this assumption was untrue. *See* Plaintiffs'
2  Response to Objections at pgs 15-16.

3       Finally, the Parties removed all excluded vehicles for Options A and B.
4  Letter Agreement at 1-2 (Exhibit A). In negotiating the Agreement, the Parties had
5  assumed that Settlement Class Members dissatisfied with the fuel economy of their
6  HCH would not be interested in purchasing another hybrid Honda vehicle, and
7  instead would be interested in purchasing a traditional gasoline engine vehicle such
8  as the standard Civic. However, feedback from Settlement Class Members
9  received by the Settlement Administrator and Class Counsel by e-mail and on the
10 toll-free settlement hotline during the notice period revealed that this assumption
11 too was faulty. As such, Options A and B may be used towards *any* new model
12 year 2010 or 2011 Honda or Acura vehicle. *See* Plaintiffs' Response to Objections
13 at pg. 15.

14 **IV.    NOTICE AND ADMINISTRATION OF THE SETTLEMENT**

15      This Court, in preliminarily approving the Settlement, found that the Mailed
16 Notice and Website Notice were reasonable. (Dkt. # 114 at 6:3). As indicated
17 below, the notice provided to the Settlement Class pursuant to the Notice Plan
18 easily satisfies Rule 23 and the requirements of due process. The proposed plan for
19 administering the Settlement's benefits is also reasonable under Rule 23 and
20 satisfies the requirements of due process.

21      **A. Notice Was Extremely Effective, and Satisfies the Requirements of**
22 **Rule 23 and Due Process.**

23      A Rule 23(e) class notice is sufficient if it informs the class members of the
24 nature of the pending action, the general terms of the settlement, the options
25 available to class members (*e.g.* submitting a claim form, opting out, and/or
26 objecting), the time and place of the fairness hearing, and ways to obtain more
27 detailed information. *In re Cement and Concrete Antitrust Litigation,* 817 F.2d
28 1435, 1440 (9th Cir. 1987), *rev'd on other grounds,* 490 U.S. 93 (1989); *Manual*

1   *for Complex Litigation*, § 21.312 (4th ed. 2004). The distribution of class notice is

2   sufficient if it is given in a form and manner that does not systematically leave an

3   identifiable group without notice. *San Francisco NAACP v. San Francisco Unified*

4   *Sch. Dist.*, 59 F. Supp. 2d 1021, 1027-1028 (N.D. Cal. 1999), *quoting Officers for*

5   *Justice*, 688 F.2d at 624 (*citing Mandujano v. Basic Vegetable Prod., Inc.*, 541

6   F.2d 832, 835-836 (9th Cir. 1976)). Due process requires only a procedure

7   reasonably calculated to reach class members. *Mullane v. Central Hanover Bank &*

8   *Trust Co.*, 339 U.S. 306 (1950).

9        Here, the Mailed Notice was comprehensive and contained all information

10  necessary to alert the Settlement Class to the terms of the Settlement and to allow

11  such Settlement Class Members to make a neutral evaluation of the Settlement and

12  come forward to be heard if they so desired. *See* Mailed Notice (Dkt # 112, Exhibit

13  A-4). Additionally, the Mailed Notice reached nearly all Settlement Class

14  Members. *See* Declaration of Settlement Administrator; *and* Submission of

15  American Honda Motor Co, Inc. Pursuant to Paragraph 22 of the Settlement

16  Agreement ("AHM Notice Submission"), filed concurrently herewith. Moreover,

17  many Settlement Class Members had provided email addresses in connection with

18  the purchase or lease of their Class Vehicles, providing an additional medium for

19  distribution of notice to the Settlement Class in addition to the Mailed Notice. *Id.*

20  Furthermore, the Website Notice has remained posted on the settlement website at

21  www.HCHsettlement.com throughout the notice period.

22       The Mailed Notice was comprehensive and contained a thorough description

23  of the Settlement and the underlying Lawsuit, as well as instructions on how to

24  comment, object, or opt out of the Settlement. The Settlement Class was readily

25  ascertainable from AHM's records, and the Settlement Administrator estimates

26  that the Mailed Notice successfully reached the vast majority of the Settlement

27  Class Members. *See* Declaration of Settlement Administrator; AHM Notice

28  Submission, filed concurrently herewith. This is more than sufficient to satisfy the

1    requirements of Rule 23 and due process. *Eisen v. Carlisle & Jacqueline*, 417 U.S.

2    156, 173 (1974) (individual mailed notice is the best practicable notice with respect

3    to those class members whose names and addresses are easily identifiable).

4            **B. The Settlement Administration Plan is not Unduly Burdensome**

5            The plan for administration of the Settlement is fair and reasonable and does

6    not place an undue burden on Settlement Class Members. The DVD will be

7    automatically mailed to all Settlement Class Members who did not opt out of the

8    Settlement once the Settlement becomes effective – no Claim Form is required to

9    receive the DVD.

10           While a Claim Form must be filled out to claim a benefit under Options A, B

11   or C, the Claim Form is very straightforward. To claim a benefit under Option A,

12   B or C, all a Class Member is required to do is check a box for the Option they

13   intend to select, provide contact information, provide the model year and VIN of

14   the Class Vehicle, sign the form, and submit it to the Settlement Administrator.

15   Furthermore, each Mailed Notice that was sent to the Settlement Class Members

16   specifically included the unique VIN of the Settlement Class Member's Class

17   Vehicle, easing any perceived burden in providing this information on the Claim

18   Form. *See* Declaration of Settlement Administrator; AHM Notice Submission,

19   filed concurrently herewith. The Claim Form is easily accessible on the settlement

20   website at www.HCHsettlement.com. These Settlement Administration procedures

21   are reasonable and do not place an undue burden upon Settlement Class Members.

22   *Manual for Complex Litigation* §21.61(4th ed. 2004) (noting that requiring a

23   claimant to submit a claim form is standard procedure in class action settlements).

24   **V.     STANDARD OF REVIEW**

25           The Ninth Circuit has a strong judicial policy favoring settlements,

26   particularly in class actions and other complex cases where substantial resources

27   can be conserved by avoiding the time, cost, and rigor of prolonged litigation.

28   *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v.*

1  *Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). These economic gains multiply

2  when settlement also avoids the costs of litigating class status. *In re GMC Pick-Up*

3  *Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. Pa. 1995).

4       In determining whether final approval of a settlement is warranted, the Court

5  must examine whether the settlement is fair, adequate, and reasonable. Fed. R. Civ.

6  P. 23(e)(1)(C). This involves the balancing of many factors, including: (1) the

7  strength of Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of

8  further litigation; (3) the risk of maintaining class action status throughout the trial;

9  (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the

10  experience and views of counsel; and (7) the reaction of class members to the

11  proposed settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

12  2004); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992).[5] The court

13  may also consider the absence of collusion in the settlement process. *Churchill,*

14  361 F.3d at 575. The assistance of an experienced mediator in negotiating the

15  settlement is highly indicative of fairness. *In re Immune Response Secs. Litig.*, 497

16  F. Supp. 2d 1166, 1171 (S.D. Cal. 2007); *Adams v. Inter-Con Sec. Sys.*, 2007 U.S.

17  Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007).

18       The degree and importance to be assigned to each of these factors is dictated

19  by the nature of the claim and relief sought, and varies with the circumstances of

20  each case. *See Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998);

21  *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco,*

22  688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217, 75 L. Ed. 2d 456,

23  103 S. Ct. 1219 (1983). When reviewing these factors, a settlement agreement

24  negotiated at arm's length by experienced counsel after discovery sufficient to

25
26
27
28

[5] The presence of a governmental participant is also a factor that the Court may consider in determining whether the Settlement is fair, adequate, and reasonable, however this factor is not relevant in this litigation as there are no governmental participants. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992). Here, the Attorneys General who elected to participate chose to do so through an amicus brief, rather than by intervening – an option which was certainly available to them.

1  allow counsel and the court to act intelligently is entitled to a presumption of

2  fairness. *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, 11-12 (C.D.

3  Cal. June 10, 2005); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D.

4  Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981). The Court should be hesitant to

5  substitute its own judgment for that of counsel absent a showing of fraud, collusion

6  or other forms of bad faith. *Weinberber v. Kendrick*, 698 F.2d 61, 74 (2d Cir.

7  1982); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975); *Oppenlander v.*

8  *Standard Oil Company (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974).

9  **VI.    THE PROPOSED SETTLEMENT SATISFIES THE**
   **REQUIREMENTS FOR FINAL APPROVAL**
10

11     Analysis of each of the above-enumerated factors to be considered by the

12  Court in determining whether the settlement is fair, adequate, and reasonable

13  weighs in favor of granting Final Approval of this Settlement.

14     **A.    The Strength of Plaintiffs' Case and the Risk, Complexity, and**
   **Expense of Further Litigation**
15

16     Legal uncertainties at the time of settlement favor approval of a settlement,

17  particularly where the uncertainties relate to fundamental legal issues in the case.

18  *Glass v. UBS Fin. Servs. Inc.*, 2007 US Dist. LEXIS 8476 (N.D. Cal. Jan. 26,

19  2007). Plaintiffs and AHM recognize the substantial amount of time and expense

20  involved in continuing to litigate the complex issues involved in this case. While

21  Plaintiffs prevailed on AHM's motion to dismiss, and the Parties were able to

22  reach the Settlement through meaningful discovery and mediation, Plaintiffs would

23  face significant risks in continuing to litigate this case through the critically

24  important stages of class certification, summary judgment, trial, and appeal.

25  Furthermore, a lack of binding authority on point creates substantial uncertainty for

26  Plaintiffs' claims.[6]

27

28  ---
   [6] In Plaintiffs' preliminary approval memoranda, Plaintiffs singled out the then-
   pending California Supreme Court cases *In re Tobacco II Cases*, No. S14735
   ("Tobacco II Case") and *Pfizer v Superior Court*, No. S2145775 as decisions

1      **B.    The Risk of Maintaining Class Action Status Throughout Trial**

2          The risks associated with maintaining a class action through trial are a

3   relevant criterion in evaluating the reasonableness of a class action settlement.

4   *Amchem Prods. v. Windsor*, 521 U.S. 591 (U.S. 1997); *See also In re Heritage*

5   *Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005).[7]

6          Plaintiffs anticipate that AHM would vigorously contest class certification if

7   this Lawsuit were to proceed.  AHM engaged in sufficient class discovery (*i.e.*,

8   depositions and document discovery of Named Plaintiffs), to make evident that

9   AHM carefully considered its possible defenses against class certification.  While

10  Plaintiffs believe the criteria of Rule 23 are well satisfied here, Plaintiffs recognize

11  the risks inherent in obtaining, and maintaining, class certification in a nationwide

12  consumer class action applying California law.

13         If this action were to continue, AHM would likely contend that this case

14  would present case management problems, including, *inter alia*, the possible

15  applicability of the conflicting laws of multiple states to the claims of the class.

16  Although Plaintiffs believe that California law should be applied to the claims of

17  all Settlement Class Members (or, alternatively, that the applicability of multiple

18  states' laws would not present intractable management problems), the outcome of

19  such a challenge to class certification is always uncertain.

20         Finally, even if Plaintiffs were successful in obtaining class certification,

21  AHM would likely pursue an interlocutory appeal pursuant to Rule 23(f).  The

22

23  that may affect core legal issues in this case. Plaintiffs' Supplemental
    Memorandum, 6-7. The California Supreme Court subsequently issued its
24  opinion on the Tobacco II Case, reversing the Appeals Court's decertification
    decision and remanding for further proceedings. *In re Tobacco II Cases*, 46 Cal.
25  4th 298 (Cal. 2009). While Plaintiffs believe the Court's decision in the Tobacco
    II Cases provides support to Plaintiffs' allegations, particularly Plaintiff's
26  allegations of reliance on exposure to AHM's long-term ad campaigns,
    Defendant is likely to challenge the significance and applicability of the
27  Tobacco II cases to the present facts. As such, uncertainty remains.

    [7] It should be noted that the requirement of Rule 23 that the class action be
28  "manageable" need not be met in the context of certification of a settlement
    class. *Amchem*, 521 U.S. at 591.

1   outcome of such an appeal would also be uncertain, and, at a minimum, would
2   delay and add complexity and additional risk and cost to the proceedings.

3       In summary, the risks associated with class certification support final
4   approval of the Settlement.

5       **C.    The Amount Offered in Settlement**

6       Despite the arguments of certain Objectors, which are discussed more fully
7   in Plaintiffs Response to Objectors filed concurrently herewith, all Settlement
8   Class Members will receive a benefit from this Settlement. While the total value of
9   the Settlement is difficult to quantify, as it involves both cash and non-cash
10  benefits, Plaintiffs consulted Professor Xavier Drèze ("Dr. Drèze"), then of the
11  University of Pennsylvania's Wharton School, an economic expert experienced in
12  settlement valuation, who was able to provide a reasonable (albeit conservative)
13  estimate for the cash and cash rebate portions of the Settlement of $16,183,172.
14  Plaintiffs reattach Drèze's declaration originally submitted with Plaintiffs'
15  Supplemental Motion for Preliminary Approval to this Motion for Final Approval
16  for the Court's convenience ("Drèze Declaration") as Exhibit C.  Plaintiffs were
17  also able to estimate, for illustrative purposes, the benefits offered by the DVD by
18  examining publicly available data on driving habits and fuel prices, estimated at
19  between $7,427,477 and $29,709,911 depending on actual fuel savings realized.
20  *See* Plaintiffs Response to Objectors at pgs. 3-6. The combined cash and non-cash
21  benefits offered to the Settlement Class in this Settlement have an estimated total
22  value between $23,610,649 and $45,893,083. Honda will pay all claims as
23  submitted and approved, with no ceiling.

24      In considering the amount offered in settlement, the Court may also look at
25  the difficulties facing Plaintiffs if litigation were to proceed. *In re Mego Fin. Cor.*
26  *Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000). As previously discussed, Plaintiffs
27  would face real risk if Plaintiffs' claims were to proceed in litigation. When
28  balanced with the risk of continued litigation, the Settlement presents favorable

1  and fair compensation for Plaintiffs' claims.

2      **D.**    **The Extent of Discovery Completed and Stage of Proceedings**

3      Approval of a class action settlement does not require that discovery be

4  exhaustive, *In re Immune Response Securities Litigation,* 497 F. Supp. 2d at 1166,

5  1174 (S.D. Ca. 2007), but discovery must be sufficient to inform the decision to

6  resolve the litigation. *Id.* The Court need not reach any ultimate conclusions on

7  the contested issues of fact and law that underlie the merits of the dispute, for it is

8  the very uncertainty of outcome in litigation and avoidance of wasteful and

9  expensive litigation that induce consensual settlements. *Officers for Justice v. Civil*

10  *Serv. Comm'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir.

11  1982).

12      In connection with Plaintiffs' Motions for Preliminary Approval, Class

13  Counsel submitted detailed declarations describing the amount of discovery

14  conducted. Joint Declaration of Class Counsel ("Joint Declaration") (Dkt. # 94),

15  Supplemental Joint Declaration of Co-Lead Counsel ("Supplemental Joint

16  Declaration") (Exh. B to Plaintiffs' Supplemental Motion for Preliminary

17  Approval, Dkt #104). As outlined in these declarations, Class Counsel had been

18  actively engaged in this litigation for approximately two years at the point

19  mediation led to Settlement discussions. As the Court is aware, the Parties engaged

20  in extensive discovery and discovery-related motion practice and Class Counsel

21  reviewed thousands of pages of relevant documents produced by AHM and third

22  parties. Class Counsel took four depositions of AHM executives and third parties

23  including AHM's advertising agency, RPA. Additionally, Class Counsel engaged

24  experts knowledgeable about the subject matter of the Lawsuit to assist them in the

25  review and analysis of information obtained through discovery.  One such expert

26  was an automotive engineer who advised Plaintiffs on the question of quantifying

27  the "hybrid premium," which is the measure of damages Plaintiffs would seek if

28  this litigation were to proceed to trial. Furthermore, the Parties received detailed

1   assessments of the merits of the case from experienced mediator Jonathan Marks,

2   clarifying the risks of further litigation for Plaintiffs and Defendant.

3       Taken together, at the point at which discovery was suspended and

4   mediation began, Plaintiffs had taken sufficient discovery to make an informed

5   assessment of the strengths of the case. This factor weighs in favor of granting

6   final approval of the Settlement. *Nat'l Rural Telcoms. Coop.*, 2003 U.S. Dist.

7   LEXIS 25375 at*13.

8       **E.    The Experience and Views of Counsel**

9       Parties represented by competent counsel are better positioned than courts to

10   produce a settlement that fairly reflects each party's expected outcome in litigation.

11   *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).

12   The recommendations of plaintiffs' counsel should be given a presumption of

13   reasonableness. *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979).

14       As detailed in the Joint Declaration, Class Counsel has decades of combined

15   experience litigating complex class action cases. *See* Joint Declaration of Class

16   Counsel at 1-4; Exhibits A and B to Joint Declaration of Class Counsel (Firm

17   Profiles of Cuneo, Gilbert & LaDuca LLP and Chimicles & Tikellis LLP) (Dkt. #

18   94). Attorneys involved in this case included seasoned, veteran founding partners

19   as well as younger associates, effectively blending experience and managing

20   litigation costs. The Parties were also aided in the settlement process by a highly

21   respected mediator, who assisted the negotiations during two separate two-day in-

22   person mediation sessions, as well as several joint and *ex parte* telephone

23   conference calls. Joint Declaration of Class Counsel (Dkt # 94); Declaration of

24   Jonathan Marks (Dkt # 95).  The process pursuant to which the proposed

25   settlement was achieved is a factor weighing in favor of final approval. *Adams v.*

26   *Inter-Con Sec. Sys.*, 2007 U.S. Dist. LEXIS 83147 (N.D. Cal. Oct. 29, 2007) (the

27   assistance of an experienced mediator in the settlement process confirms that the

28   settlement is non-collusive); see also *In re Immune Response Secs. Litig.*, 497 F.

1   Supp. 2d 1166, 1171 (S.D. Cal. 2007) (fact that a settlement was reached through

2   negotiations with an experienced mediator is highly indicative of fairness).

3       **F.    The Reaction of Class Members to the Proposed Settlement**

4       Out of a total Settlement Class size of 176,990, Class Counsel received ten

5   (10) objections to the Settlement ("Objections" or "Objectors"), one *amicus* brief

6   opposing the Settlement, and five (5) letters of comment regarding the Settlement.

7   The arguments of the Objectors and the *Amici* are more fully addressed in

8   Plaintiffs' Response to Objectors, filed concurrently herewith. Only one Settlement

9   Class Member has expressed an intention to commence an individual action.

10  Additionally, many of the telephone and email inquiries received by Class Counsel

11  offered positive support for the underlying claims in this Lawsuit by either

12  requesting information on how to submit a claim, requesting address updates, or

13  expressing dissatisfaction with the fuel economy of the HCH.[8] As a whole, the

14  reaction of the Settlement Class Members to the Settlement supports final

15  approval.

16          **1.    The low ratio of objections in comparison to the size of the
    Settlement Class supports final approval of the Settlement**

17

18      A low percentage of objectors and opt-outs in comparison to the overall

19  class size weighs in favor of final approval of a settlement. *See Curtis-Bauer v.*

20  *Morgan Stanley & Co.*, 2008 U.S. Dist. LEXIS 85028 (N.D. Cal. Oct. 22, 2008)

21  (granting final approval where 9 out of 1,300 class members objected and 24 opted

22  out); *Rosenburg v. IBM*, 2007 U.S. Dist. LEXIS 53138 (N.D. Cal. July 12, 2007)

23  (granting final approval of settlement where 7 out 37,000 class members

24  objected);; *Glass v. UBS Fin. Servs. Inc.*, 2007 U.S Dist. LEXIS 8746 (N.D. Cal.

25  2007) (approving settlement with only 8 objectors out of a class of almost 14,000).

26  Here, out of a total Settlement Class of approximately 177,000, only 10 Settlement

27  Class Members objected. This equates to a ratio of approximately 1 in 17,700

28  _____

[8] Second Supplemental Declaration of Class Counsel at ¶¶ 19-20 (Exhibit B).

16

1 which is an incredibly low percentage, and supports final approval.

2  **2.  Feedback from Settlement Class Members received by**
3 **Class Counsel during the notice period supports final approval of the**
4 **Settlement**

5 During the Opt-Out period, Class Counsel and Class Counsel's trained
6 assistants received telephone calls from approximately 668 Settlement Class
7 Members, representing approximately one-third of one percent of the Settlement
8 Class, and approximately 105 emails from Settlement Class Members, representing
9 less than one-tenth of one percent of the Settlement Class. Second Supplemental
10 Declaration of Class Counsel at ¶¶19-20, Exhibit B. The low volume of Settlement
11 inquiries and the feedback from Settlement Class Members suggests that the
12 information contained in the Notice was sufficient to inform Settlement Class
13 Members of the pending Settlement and that the Settlement Class is generally
14 satisfied with the terms of the Settlement. *Id.* Furthermore, many Settlement Class
15 Members expressed a desire to participate in the Settlement, dissatisfaction with
16 the fuel economy of the HCH, and/or gratitude and support for bringing the
17 Lawsuit, while very few Settlement Class Members expressed dissatisfaction with
18 the Settlement. *Id.* This factor weighs in favor of final approval.

19  **3.  Analysis of the opt-outs received does not reveal a threat of**
**numerous individual lawsuits, supporting final approval.**

20

21 The number of opt-outs received in connection with a settlement is relevant
22 to the superiority inquiry under Rule 23(b)(3)(A) in that the opt-out process seeks
23 to discover the likelihood that settlement class members would choose to remove
24 themselves from the settlement class in order to prosecute their own individual
25 actions. *See* Moore's Federal Practice § 23.46 (Matthew Bender 3d ed) (noting that
26 one inquiry in a Rule 23(b)(3)(A) analysis is the likelihood that unnamed class
27 members will opt out of the litigation, frustrating the judicial economies of class
28 treatment). As such, the number of opt-outs received in connection to a settlement

1    is relevant to the extent it reveals a likelihood that defendants would face an

2    onslaught of separately filed lawsuits concerning the same or similar claims that

3    are the subject of the settlement.

4       As noted by the Court in its March 25 Order, The Agreement contained a

5    provision allowing Defendant to walk away from the Agreement if one hundred

6    (100) or more Settlement Class Members properly and timely submit requests for

7    exclusion from the Settlement Class. March 25 Order at 6:10-16 (Dkt # 100);

8    Agreement at XI.37. Because over 100 opt-out forms were received, the Parties

9    requested, and were granted, an extension of the Final Approval Hearing in order

10    to analyze the opt-out forms received and allow AHM adequate time to exercise

11    the walk-away provision.  (Dkt # 135). As explained below, analysis of the opt-out

12    forms received by the Settlement Administrator does not indicate a threat of

13    individual lawsuits against AHM based on the same claims in this Lawsuit. AHM

14    did not exercise the walk-away provision within the proscribed period of time, and

15    as such, the provision is now waived.

16       Based on the analysis performed by Plaintiffs' counsel, of the 584 completed

17    opt-out forms received by the Settlement Administrator in connection with this

18    Settlement, only one of the timely-received opt-out forms clearly expressed a

19    desire to commence an individual lawsuit. In contrast, many of the opt-out forms

20    express views of the HCH and/or the Settlement that are wholly inconsistent with

21    any potential threat of individual action against AHM. Additionally, certain of the

22    opt out forms received may not even be properly classified as opt-outs, including,

23    but not limited to, those overtly trying to make a claim using the opt-out form, or

24    those using the opt-out form to notify the Settlement Administrator of a change of

25    address. As such, Plaintiffs' analysis of the opt-out forms received do not reveal a

26    threat that AHM would face numerous individual lawsuits if the Settlement were

27    finally approved. This factor weighs in favor of final approval of the Settlement.

28

1   **VII.  THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED**

2       In order to grant final certification of a Settlement Class, the requirements of

3   Rule 23 must generally be satisfied. Fed. R. Civ. P. 23; *Hanlon v. Chrysler Corp.*,

4   150 F.3d 1011, 1019 (9th Cir. 1998). As this Court found in connection with

5   preliminary approval of the Settlement Class[9], certification of a settlement class is

6   warranted where, as here, the class meets the requirements of Rule 23(a)

7   (numerosity, commonality, typicality and adequacy of representation) and the

8   requirements of Rule 23(b) (common questions of law or fact predominate and the

9   class action is superior to other available methods of adjudication).[10] In this

10   Lawsuit, the proposed Settlement Class consists of:

11
12         All persons who purchased or leased a new Honda Civic Hybrid automobile model years 2003 through 2008 in the United States of America including the District of Columbia.

13   As examined below, this Settlement Class should be finally certified as meeting the

14   requirements of Rule 23.

15       **A. The Settlement Class Satisfies the Requirements of Rule 23(a)**

16       With approximately 177,000 Settlement Class Members scattered around the

17   country, the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1).

18   *Hanlon*, 150 F.3d at 1019.  There are clearly questions of law and fact common to

19   the Settlement Class sufficient to satisfy Rule 23(a)(2). The Rule 23(a)(2)

20   commonality threshold is easily met where, as here, the same common nucleus of

21   facts will prove each class member's claim.  *See Parra v. Bashas's Inc.*, 2008 U. S.

22   App. LEXIS 15985, *8 (9th Cir. July 29, 2008) (*citing Hanlon*, 150 F.3d at 1019)

23   (Rule 23(a)(2) commonality construed permissively, as not all questions of fact

24   and law need be common). Common questions in this Lawsuit include: (1) whether

25   AHM's advertising was false and misleading; (2) whether fuel economy was

26

---

27   [9] Prelim. Approval Order (Dkt. # 114)

28   [10] Again, the requirement of Rule 23 that the class action be "manageable" need not be met in the context of certification of a settlement class. *Amchem*, 521 U.S. at 591.

1   material to HCH purchasers; (3) whether Plaintiffs and Settlement Class Members

2   suffered damages as a result of AHM's conduct; (4) whether Plaintiffs and

3   Settlement Class Members parted with something of value that AHM took or

4   received from them; (5) whether AHM knew, or by the exercise of reasonable care

5   should have known, that the HCH's actual fuel economy under normal driving

6   conditions was significantly below the fuel economy AHM advertised; (6) whether

7   AHM concealed from or omitted to state material facts to the Plaintiffs and

8   Settlement Class Members concerning the actual fuel economy of the HCH under

9   normal driving conditions; and (7) whether AHM knew, or by the exercise of

10  reasonable care should have known, that its advertising of fuel economy and fuel

11  cost savings for the HCH had the capacity or tendency to confuse and mislead.

12      The Rule 23(a)(3) requirement of typicality is also clearly satisfied here.

13  Typicality is satisfied when the representative's claims are reasonably co-extensive

14  with those of absent class members, when each class member's claim arises from

15  the same course of events and each class member makes similar legal arguments to

16  prove the defendant's liability. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.

17  2001); *Hanlon*, 150 F.3d at 1019.  In this Lawsuit, the claims of the Named

18  Plaintiffs and the Settlement Class Members arise from the same alleged course of

19  events: (1) that AHM made misrepresentations in its national, uniform advertising

20  concerning the fuel economy of the HCH; and (2) that the HCH did not under

21  normal, real-world driving conditions, achieve the fuel economy advertised by

22  AHM. Both Named Plaintiffs have declared that fuel economy was a material

23  consideration in the decision to purchase an HCH and that the car did not achieve

24  the fuel economy advertised. Supplemental Declaration of John True at ¶¶ 5-8

25  (Exhibit E); Supplemental Declaration of Gonzalo Delgado at ¶¶ 6, 9, 12 (Exhibit

26  D).

27      The adequacy prong of Rule 23(a)(4) is satisfied where the attorney

28  representing the class is qualified and competent and the class representatives have

20

1  no interests antagonistic to those of the Settlement Class Members. *Lerwill v.*

2  *Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978) (two criteria for

3  determining adequacy, the named representatives must appear able to prosecute the

4  lawsuit vigorously through competent counsel and representatives must not have

5  antagonistic or conflicting interests with absent class members).

6       Here Class Counsel is well qualified and competent. These are counsel who

7  are "prepared to try a case." See *Hanlon,* 150 F.3d at 1021. Additionally, the

8  Named Plaintiffs are not subject to any unique defenses that might render their

9  interests antagonistic to those of the Settlement Class Members. Each have

10 submitted declarations detailing their reasons for purchasing the HCH, the

11 advertisements they saw, and their experiences with their HCHs. Supplemental

12 Declaration of John True at ¶¶ 5-10 (Exhibit E); Supplemental Declaration of

13 Gonzalo Delgado at ¶¶ 6-10 (Exhibit D). As can be seen from these declarations,

14 the interests of Named Plaintiffs are not antagonistic to the Settlement Class. As

15 such, the adequacy prong of Rule 23(a)(4) is satisfied.

16      **B. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)**

17           **1. Common questions of law and fact Predominate**

18      Common questions of law and fact predominate in this Lawsuit. In this case,

19 the California consumer laws will apply to a national class eliminating any

20 "structural difficulties" arising from applying the consumer protection laws of the

21 50 states, a circumstance that could defeat a finding of predominance. *Hanlon,*

22 150 F.3d at 1021. Under the choice of law principles of the forum, California law

23 will apply to this Lawsuit unless (1) California law conflicts with the law of

24 another state, (2) the state whose law conflicts with California law has an interest

25 in applying its own law, and (3) the foreign state's interest in applying its own law

26 would be more impaired than California's interest if the law of such state were not

27 applied. *Washington Mut. Bank v. Superior Court,* 24 Cal. 4th 906, 919-20 (2001)

28 ("California law may be used on a class wide basis so long as its application is not

1   arbitrary or unfair with respect to nonresident class members"). Applying these

2   principles to class actions asserting violations of California consumer protection

3   laws (UCL, FAL, and CLRA), federal and state courts in California have held that

4   a national class can be certified applying California laws exterritorialy where the

5   defendant's conduct, *as here*, has a significant nexus with California.

6       Plaintiffs allege that there are multiple factors establishing a close nexus

7   between the claims of the entire class and the State of California: (1) AHM's

8   headquarters are located in Torrance, California; (2) AHM's primary advertising

9   agency, RPA, is located in Santa Monica, California; (3) RPA created and placed

10  all or substantially all of the advertising and promotional materials at issue in this

11  Lawsuit for AHM from its offices in California (4) AHM and RPA coordinated

12  Honda's national and regional advertising, and AHM regulated or reviewed dealer

13  advertising from its headquarters in Southern California; (5) All of AHM's

14  advertisements are reviewed by AHM's legal and regulatory departments in

15  California; and (6) substantially more HCHs were sold in California than in any

16  other single state. *Compare Clothesrigger, Inc. v. G.T.E. Corp.*,  191 Cal. App. 3d

17  605, 613 (1987) (in class action against a long distance telephone carrier, the court

18  found sufficient contacts with California to justify application of California law to

19  the claims of a nationwide class where (1) defendant did business in California; (2)

20  defendant's primary offices were located in California; (3) a significant number of

21  class members were located in California; and (4) defendant's agents who prepared

22  the advertising materials at issue were located in California); *See also Wershba v.*

23  *Apple Computer*, 91 Cal. App. 4th 224, 242 (2001) (affirming the certification of a

24  national class in an FAL action against California computer manufacturer,

25  reasoning that "there were significant contacts with California in this case to

26  satisfy constitutional concerns and support certification of a nationwide class…").

27  This Lawsuit is virtually indistinguishable from the foregoing cases in which

28

1   courts have certified national classes under California's various consumer
2   protection laws.

3       Furthermore, a common nucleus of facts and potential legal remedies
4   "dominate this litigation." *See Hanlon*, 150 F.3d at 1022. Plaintiffs would establish
5   AHM's liability by demonstrating facts sufficient for the trier of fact to conclude
6   that (1) AHM made misrepresentations or omissions with a likelihood or tendency
7   to deceive or confuse the public; and (2) that those misrepresentations or omissions
8   were material. In this Lawsuit, the proof required at trial will be common to the
9   entire Settlement Class, as Plaintiffs allege that the advertisements and promotional
10  materials at issue were uniform and were generated by AHM and/or RPA in
11  California and distributed nationally.

12      Each Settlement Class Member purchased an identical vehicle, the HCH.
13  And, as this Court has already held, reliance may be presumed under the applicable
14  law because the misrepresentations regarding fuel economy at issue are "material."
15  *See* Order Denying Motion to Dismiss at 14:8-12 (Dkt # 23) ("UCL/FAL plaintiffs
16  may avail themselves of the inferred reliance principle where the misrepresentation
17  is 'material'") (*citing McAdams v Monier, Inc.*, 151 Cal. App. 4th 667, 671 (Cal.
18  App. 3d Dist. 2007).

19      Plaintiffs would be prepared to demonstrate through expert testimony that
20  the difference between the two functionally identical automobiles AHM offered for
21  sale (the Honda Civic EX and the HCH), was cost. Each Settlement Class Member
22  paid a "hybrid premium" at time of purchase, attaching damages at point of
23  purchase. Additionally, where restitution is a remedy, determining the proper
24  amount of restitution will depend principally on an expert analysis of what price
25  AHM could have sold the HCH for if it had not made material misrepresentations
26  concerning fuel economy, and will be identical for all Settlement Class Members.
27  Some individual proof might be relevant to determining the alternative measure of
28  damages, the additional unanticipated fuel expenses of Plaintiffs and the

1    Settlement Class, but that does not preclude class certification.  The amount of

2    damages is invariably an individual question and does not defeat class action

3    treatment.  *Trujillo v. City of Ontario*, No. ED cv-04-1015 VAP at 7 (C.D. Cal.,

4    Apr. 14, 2005) (Phillips, J.) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th

5    Cir. 1975)).

6         **2. A Class Action is the Superior Means for Resolving the Claims**

7    **of Settlement Class Members**

8         A class action would be the vastly superior means, and likely the only

9    practical means, of adjudicating the claims of approximately 177,000 Settlement

10   Class Members scattered all over the country.  Comparing the available

11   mechanisms for dispute resolution, and where as here the individual claims are for

12   relatively small amounts of money, particularly when compared to the complexity

13   of the litigation, the class action is clearly superior.  See *Hanlon*, 150 F.3d at 1023.

14   The analysis of opt-outs received in connection with the Settlement by Class

15   Counsel reveals that only one Settlement Class Member has expressly indicated an

16   intention to pursue an individual action based on the claims in this Lawsuit. *See*

17   Moore's Federal Practice § 23.46 (Matthew Bender 3d ed.) (noting that the

18   likelihood that unnamed class members will opt out of the litigation, frustrating the

19   judicial economies of class treatment, bears upon the Rule 23(b)(3) superiority

20   analysis); *See also* Section VI.F, *supra.* As such, the superiority prong of Rule

21   23(b)(3) is satisfied, supporting final approval of the Settlement Class.

22   **VIII. CONCLUSION**

23        Based on the foregoing arguments, Plaintiffs request that this Court enter the

24   [proposed] Order granting final approval to the Settlement, finally certifying the

25   Settlement Class, approving the method of Settlement administration, and

26   authorizing distribution of the Settlement benefits.

27

28

                                24

1  Respectfully Submitted,

2

3  Date: February 8, 2010                    FOR PLAINTIFFS

4                                            CHIMICLES & TIKELLIS LLP

5

6  By: _____
                                            Nicholas E. Chimicles
7                                           Denise Davis Schwartzman
                                            One Haverford Centre
8                                           361 West Lancaster Avenue
                                            Haverford, Pennsylvania 19041
9                                           Telephone:  (610) 642-8500
                                            Facsimile:  (610) 649-3633

10  Date: February 8, 2010                  CUNEO GILBERT & LaDUCA LLP

11

12  By: _____
                                            Jonathan W. Cuneo
13                                          William H. Anderson
                                            507 C Street, N.E.
14                                          Washington, D.C. 20002
                                            Telephone:  (202) 789-3960
15                                          Facsimile:  (202) 789-1813

16

17

18

19

20

21

22

23

24

25

26

27

28

25