CHIMICLES & TIKELLIS LLP
Nicholas E. Chimicles (*pro hac vice*)
Denise Davis Schwartzman (*pro hac vice*)
361 West Lancaster Avenue
Haverford, PA 19041

CUNEO GILBERT & LADUCA LLP
Jonathan W. Cuneo (*pro hac vice*)
William H. Anderson (*pro hac vice*)
507 C Street, NE
Washington, DC 20002

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION – RIVERSIDE

|  |  |
|---|---|
| JOHN TRUE, et al., | ) CASE NO. ED 07-cv-287 VAP-OP |
| Plaintiffs, | ) **PLAINTIFFS' CONSOLIDATED RESPONSE TO OBJECTIONS TO SETTLEMENT AGREEMENT** |
| v. | ) |
| AMERICAN HONDA MOTOR CO., INC., | ) |
| Defendant. | ) **DATE: FEBRUARY 22, 2010** |
|  | ) **TIME: 10:00 am** |
|  | ) **COURTROOM 2** |

1

**TABLE OF CONTENTS**

2  I.  INTRODUCTION ........................................................... 1

3  II.  THE DVD HAS A CLEAR VALUE TO
       SETTLEMENT CLASS MEMBERS AND
4       IS AN IMPORTANT COMPONENT OF
       THE SETTLEMENT ....................................................... 2

5
        A.  The Information on the DVD is Superior
6            to Publicly Available Information on Fuel Economy .... 2

7        B.  The DVD Provides Real Value to
             Settlement Class Members ..................................... 4

8
    III.  THE RELEASE IS NARROWLY TAILORED .................. 5
9
        A.  The Release Does Not Purport to
10           Restrict Class Member Participation in
             Administrative or Governmental Proceedings .......... 5
11
        B.  Warranty Claims are Not Released ........................ 6
12
    IV.  NO ADDITIONAL INJUNCTIVE RELIEF
13      IS NECESSARY DUE TO AMENDMENTS
       TO EPA TESTING GUIDELINES ............................... 7
14
    V.  THE CASH AND CASH REBATES HAVE
15     A CLEAR VALUE TO SETTLEMENT
       CLASS MEMBERS ..................................................... 8
16
        A. Coupon Settlements are Not Prohibited ................. 8
17
        B.  The Projected Claim Rates are Conservative .......... 10
18
        C.  The Claims Procedure is Designed to
19           Maximize Value of the Cash Rebates ..................... 12

20               i.   Dealership Involvement is
                      Expressly Omitted ................................ 12
21
                 ii.  Claim Procedures are Not Burdensome ...... 13
22
                 iii. Restrictions on Cash Rebates are Minimal ... 14
23
        D.  Option C Adds Additional Value to the Settlement ... 14
24
        E.  The Cash Rebates do not Benefit Honda ................ 15
25
    VI.  REMAINING OBJECTIONS TO THE
26      SETTLEMENT DO NOT WARRANT
       DENIAL OF FINAL APPROVAL .............................. 15
27
        A.  Arguments that do not Address the
28           Settlement's Terms Must be Ignored ..................... 15

B.  Professional Objectors do not Meaningfully
    Advance the Interests of the Settlement Class          17

C.  Dissatisfied Class Members May Opt-Out
    of the Settlement                                       18

VII.  CONCLUSION                                            18

# TABLE OF AUTHORITIES

**CASES**

*In re AT&T Corporation Securities Litigation*,
Case No. 00-5364 (D.C.N.J. 2006). ........................................ 17

*In re GM Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*,
55 F.3d 768 (3d Cir. 1995). ........................................ 10

*Ford Explorer Cases*, J.C.C.P. Nos. 4266 & 4270
(Cal. Sup. Ct., Sacramento). ........................................ 10

*Vaughn v. Am. Honda Motor Co.*,
No. 2-04CV-142 (E.D. Tex.). ........................................ 17

*Wilson v. Airborne*, Inc.,
2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008). ........................................ 16

**STATUTES**

28 U.S.C. §§ 1332(d), 1453, 1711-1715 ........................................ 9

**OTHER**

Regulatory announcement: EPA Issues New Test Method for
Fuel Economy Window Stickers, EPA420-F-06-069 ........................................ 7

1   **I.   INTRODUCTION**

2       Out of a total Settlement Class[1] size of 176,990, the Parties received 10

3   objections[2] to the settlement ("Objections" or "Objectors"), an *amicus* brief filed

4   by a group of state Attorneys General ("*Amici's* Brief")[3], and 5 letters from

5   unrepresented class members commenting upon the Settlement.[4] As more fully

6   described below, the arguments of the objectors, *Amici*, and commenting

7   Settlement Class Members do not provide a reasonable basis to deny final

8   approval.

9

---

10   [1] Capitalized terms not otherwise defined herein shall have the same meanings as
11   ascribed to them in the Settlement Agreement and Release and/or Plaintiffs'
     Memorandum in Support of Motion for Final Approval of Settlement

12   [2] Of the 10 Objections, only 4 appear on the docket, as they were filed by
     represented Settlement Class Members. The remaining Objections were sent
13   directly to Class Counsel by unrepresented Settlement Class Members, and are
     attached hereto as Exhibit A. The 10 Objections received are as follows:
14   Objection to Proposed Class Action Settlement filed by Steven Vise and
     Richard Vise ("Vise Objection")(Dkt # 124); Objections of Francine P.
15   Peterman ("Peterman Objection")(Dkt #123); Objection to Proposed Settlement
     filed by Center for Class Action Fairness ("CCAF Objection")(Dkt #117);
16   Objections of Class Members Joseph K. Goldberg, Valerie M. Nannery, and
     Katherine A. Burghardt ("Public Citizen Objection")(Dkt # 119); Letter
17   Objection of Daniel Bergman (Exh. A pg. 5-6); Letter Objection of Gerald
     Nicholson (Exh. A pg. 18-33); Letter Objection of Norman Whitton (Exh. A.
18   pg. 2-4); Letter Objection of Keith R. Cyrnek (Exh. A pg. 7-9 ); Letter
     Objection of Michael A. Belshe (Exh. A pg.10-15); and Letter Objection of
19   Robert A. Tighe (Exh. A pg. 16-17).

20   [3] Brief *Amicus Curiae* of the Attorneys General of California, Tennessee, Texas,
     Alabama, Alaska, Arizona, Colorado, Florida, Georgia, Idaho, Illinois, Iowa,
21   Maine, Michigan, Mississippi, Nevada, New Hampshire, New Jersey, South
     Dakota, Vermont, and West Virginia in Opposition to the Proposed Settlement
22   Agreement ("*Amici's* Brief") (Dkt # 120).

23   [4] "Letters of comment" refer to correspondence mailed to Class Counsel and/or
     the Court that do not meet the requirement for objections as outlined in the
     Mailed Notice as well as arguments advanced by Settlement Class Members
24   who are ineligible to object to the Settlement based on their opt-out status.
     Agreement IX.M. For the Court's convenience, these letters are attached hereto
25   as Exhibit B. The following letters of comment fall into this category: Comment
     of Eric Strickland (Exh. B pg. 39-43) (ineligible to object based on opt-out
26   status); Comment of David V. Sherwood (Exh. B pg. 37-38) (ineligible to
     object based on opt-out status); Comment of Jason Novak (Exh. B. pg. 44)
27   (ineligible to object based on opt-out status); Comment of Debbie Smith (Exh.
     B pg 36)(objection does not meet requirements outlined in Class Notice);
28   Comment of Elizabeth Eyre Seltzer (Exh B pg. 35) (objection does not meet
     requirements outlined in Class Notice).

## II.   THE DVD HAS A CLEAR VALUE TO SETTLEMENT CLASS MEMBERS AND IS AN IMPORTANT COMPONENT OF THE SETTLEMENT

Certain Objectors and the *Amici* mistakenly claim that the DVD being produced exclusively for the Settlement is without value because the information is publicly available for free or has already been provided by Honda.[5]  Certain other Objectors make mistaken assumptions on how the DVD is to be valued, and question the necessity of undertaking to mail the DVD to each and every Settlement Class Member.[6] As explained below, these Objections must be rejected, as the DVD provides significant value to Settlement Class Members and cannot be ignored when evaluating the benefits to be offered under this Settlement.

### A.   The Information on the DVD is Superior to Publicly Available Information on Fuel Economy

Objections that the DVD is without value because the information to be contained on the DVD is already available for free elsewhere fail for several reasons. First and most importantly, these objections ignore the questionable quality, dependability, safety and specificity of publicly-available information regarding fuel economy on the internet and elsewhere. A significant amount of publicly-available information on fuel economy, particularly as it relates to "hypermiling," a term often used to describe driving techniques designed to achieve fuel economy in excess of a vehicle's EPA rating, can be incredibly dangerous or even illegal.[7] A small subset of articles explaining the dangers of

---

[5] *Amici's* Brief at 8-9 (Dkt #120); CCAF Objection at 2, 9 (Dkt. #117); Public Citizen Objection at 1, 7 (Dkt. # 119). The Vise Objection also includes an unsupported conclusory allegation that the DVD has "no value." Vise Objection at 3 (Dkt. #124).

[6] See, e.g. Public Citizen Objection at 9-10 (Dkt. # 119).

[7] *See, e.g.* "Cops: "hypermiling" Often Risky, Illegal," available at http://www.cbsnews.com/stories/2008/06/30/earlyshow/main4218439.shtml (noting that AAA and Connecticut police have issued warnings regarding hypermiling); "Hypermilng: Quest for Ultimate Fuel Economy," available at http://www.edmunds.com/advice/fueleconomy/articles/120880/article.html, (describing dangerous hypermiling practices of placing cardboard over the

1  certain fuel-saving driving techniques is attached hereto as Exhibit C.  Even

2  articles cited by Objectors in support of their objections contain certain of these

3  dangerous and illegal driving techniques. For example, an internet news article

4  cited by CCAF in support of its Objection urges drivers to " . . . overinflate their

5  tires to cut rolling resistance, seize every chance to coast with their gasoline

6  engines off, and sometimes 'draft' like race cars behind larger vehicles."[8]

7  Additionally, a news article cited by Public Citizen in support of its Objection

8  encourages drivers to "consider turning the engine off during prolonged stays in

9  one place such as ferry or railroad crossings,[9]" which could be a safety concern.

10  Furthermore, publicly-available information on fuel economy often comes from

11  questionable sources, with car manufacturers urging drivers to be wary of such

12  advice.[10] In contrast to these questionable sources of information, the information

13  contained in the DVD will come straight from the manufacturer of the car – Honda

14

---

15  radiator, which can cause overheating, and "ridge riding" with one set of tires
on a painted lane divider to reduce friction, which can lead to accidents); "The
Dangers of Hypermiling, available at
16  http://www.aaany.com/CarandTravel/Web_Only_Stories/The_Dangers_of_Hyp
ermiling.asp (describing the dangers of hypermiling); "Motorists risking their
17  lives to save on petrol," available at
http://www.smh.com.au/news/national/motorists-risking-their-
18  lives/2008/08/23/1219262622708.html (same); "Extreme Hypermiling to Save
Fuel not the Answer," available at http://www.bizcentral.org/american-
19  trucking-association/2009/02/hypermiling-to-save-fuel-not-t.php (describing the
American Trucking Association's position that hypermiling is dangerous).
20  [8] "Hypermilers wring out every last bit of mpg," available at
21  http://www.msnbc.msn.com/id/18923454/. (cited by CCAF brief at 9). Notably,
"coasting" is illegal in most states, including the two states represented by the
22  authors of the *Amici*'s brief. *See*, e.g. Calif. Vehicle Code § 21710; Tenn. Code
§ 55-8-167.

23  [9]

24  http://www.caranddriver.com/features/08q3/battle_high_gas_prices_tips_to_bo
ost_your_fuel_economy-feature/driving_habits_continued_page_3 (cited by
25  declaration of Julian Helisek, Exhibit 7 to Public Citizen Objection)

26  [10] *See, e.g. http://www.dailyfueleconomytip.com/about* , a website cited by Public
Citizen in support of its objection, identifying its author as a guy who is "frugal
and really enjoy[s] saving money"; "Hypermilers wring out every last bit of
27  mpg," available at http://www.msnbc.msn.com/id/18923454/. (cited by CCAF
brief at 9) (quoting a spokesman for Honda Motor Co. who explains that "the
28  company shares hypermilers' enthusiasm for high mileage but cannot endorse
some of their techniques").

1  – most intimately familiar with the HCH.

2  Second, this Objection ignores the reality that no single publicly available

3  source contains all of the information to be presented in the DVD in one place, in a

4  convenient medium. Tellingly, the declaration of Julian Helisek (submitted by

5  Public Citizen to bolster the position that information in the DVD is already

6  publicly available) acknowledges this fact by listing no fewer than 13 websites as

7  well as hundreds of pages of government publications and vehicle owners'

8  manuals as sources for the information on various individual subtopics of the DVD

9  outline.[11] Likewise, the HCH owners' manual, which contains some information

10  regarding fuel economy and the features of the HCH, is disjointed and fuel

11  economy information is buried within the technical specs and auto jargon filling

12  the 200-plus-page manual. [12] In contrast, the fuel economy information on the

13  DVD will be concisely provided in a user-friendly fashion that is easy for the lay

14  driver to understand and will be presented in a manner that is focused on

15  maximizing fuel economy.

16  **B.    The DVD provides Real Value to Settlement Class Members**

17

18  Other Objections addressing the value of the DVD also fall short, as they

19  mischaracterize the Settlement or are otherwise unsupported. As acknowledged by

20  the *Amici*, the value of the DVD lies in the "information it contains and the manner

21  in which that information is communicated."[13] Plaintiffs have provided illustrations

22  of how the information on the video on fuel economy can translate into real dollars

23  in anticipated fuel savings for Settlement Class Members. (Supplemental

24  Memorandum in Support of Preliminary Approval, Dkt. 105 # at 10-12). Hundreds

25  _____

26  [11] Declaration of Julian Helisek, Exhibit 8, Public Citizen Objection (Dkt # 119)

27  [12] *See, e.g.,* Public Citizen Objection Exhibit 2B (Dkt. #117)(excerpts from 2004 HCH Owners' Manual and Quick Start guide) citing the disjointed page ranges of 52-63; 89; 130-138

28  [13] *Amici's* Brief at 7 (Dkt #120).

1 of dollars in savings on fuel efficiency as the result of knowledge gained by the

2 DVD, while not a check, is still a material benefit to disgruntled Settlement Class

3 Members with the desire to take advantage of the opportunity to apply this

4 enhanced knowledge of fuel economy.

5 Objections that Plaintiffs are attempting to value the DVD based on the cost

6 of production or commercially available alternatives are just wrong. [14] In moving

7 for preliminary approval, Plaintiffs provided anecdotal facts about fuel economy

8 videos available in the marketplace purely as a reference point for the Court.

9 Another Objector notes that the costs of producing and individually mailing the

10 DVD to each Settlement Class Member can be avoided and passed on to class

11 members because the video will be posted on the internet.[15] This argument is

12 misguided and circular, as it ignores that (a) absent this Settlement, no video would

13 exist to be distributed in any media; (b) not all class members will have the

14 technical capabilities to view a streaming video online; and (c) that class members

15 will be able to reference the DVD even after the fuel economy video has gone off-

16 line.

17 **III.   THE RELEASE IS NARROWLY TAILORED**

18

19 **A.   The Release does Not Purport to Restrict Class Member Participation in Administrative or Governmental Proceedings**

20 The *Amici* argue that certain language in the Release seeks "to prohibit class

21 members from participating in subsequent regulatory actions."[16]   While the Parties

22 do not believe the language of the Released Claims, as initially drafted, restricted

23 the ability of Settlement Class Members to participate in administrative

24 proceedings, nor did the Parties intend to restrict such activity, the Parties

25

26 [14] CCAF Objection at 2, 9 (Dkt. #117); Public Citizen Objection at 7 (Dkt. #119).

27 [15] Public Citizen Objection at 9-10 (Dkt. #119).

28 [16] *Amici*'s Brief at 20, 27 (Dkt. #120).

5

1  nonetheless determined that a clarification of the Released Claims would ease

2  concerns raised by the *Amici* regarding the scope of the Released Claims. As such,

3  the Parties clarified this language by Letter Agreement, making clear that the

4  Released Claims do not purport to encompass class member participation in

5  administrative or governmental proceedings. Letter Agreement (Exh. A to

6  Plaintiffs' Memo in Support of Final Approval ("Plaintiffs' Final Approval

7  Memorandum"), filed concurrently herewith). This Objection is moot.

8      **2. Warranty Claims are Not Released**

9      Objections stating that warranty, manufacturing, design or other claims

10  concerning the HCH will be released as a result of the Settlement misread the plain

11  language of the Agreement.[17] The Release specifically excludes warranty claims

12  from coverage.[18] The Released Claims are narrowly tailored to cover only

13  *Settlement Class Members'* claims related to the *advertising* of the *fuel economy* of

14  the HCH. Contrary to the *Amici's* and class member Belshe's Objections, warranty

15  claims, manufacturing claims, and design claims are preserved.[19] The Release as

16  currently written does not cover claims unrelated to the advertising of the fuel

17  economy of the HCH.[20] As such, arguments that the Release and/or Released

18  ───────────────────────────

19  [17] *See Amici's* Brief at 19 (Dkt. #120); Letter objection of Michael A. Belshe (Exh.
    A pg.10-15).

20  [18] Agreement at I.HH (Dkt. #91) ("Nothing in this Agreement shall be interpreted
    to modify or diminish the manufacturer's limited warranty with respect to a
21  Class Vehicle; provided, however, that any such claim of breach of any
    warranty or any extended warranty based on the advertising or representations
22  made by AHM with respect to fuel economy, mileage or m.p.g. are in fact
    released.")

23  [19] *See Amici's* Brief at 19 (Dkt. #120)(mistakenly claiming that the proposed
    settlement would broadly require the class to waive all claims related to the
24  advertising, manufacture, design, or sale of the HCH); Letter Objection of
    Michael A. Belshe (Exh. A pg.10-15)(implying that warranty claims concerning
25  the IMA battery will be released).

26  [20] Under the Agreement, Released Claims are narrowly defined as including only
    those relating to " . . . the *advertising* of the *fuel economy or m.p.g of the HCH*,
27  AHM's *representations concerning the fuel economy or m.p.g. of the HCH*, and
    any claims that could have been or should have been brought in the Lawsuit by
28  the Named Plaintiffs and/or Settlement class . . ." Agreement I.HH (Dkt #91)
    (emphasis added).

1 | Claims are overbroad are unfounded.

2
3

## IV. NO ADDITIONAL INJUNCTIVE RELIEF IS NECESSARY DUE TO AMENDMENTS TO EPA TESTING GUIDELINES

4 | Certain Objectors and the *Amici* posit that the injunctive relief afforded by

5 | the Settlement is insufficient, arguing that a change in advertising language from

6 | "may" to "will" is nominal, and that the 24-month duration of the injunction does

7 | not ensure future compliance.[21] These Objections are insufficient to challenge final

8 | approval of the Settlement. More importantly, they ignore the recent amendments

9 | to the EPA's fuel economy testing guidelines, which, beginning with model year

10 | 2008, resulted in lowered fuel economy testing estimates for almost all vehicles,

11 | but particularly for hybrid vehicles.[22] Notably, the EPA's release regarding this

12 | rule change states that "in vehicles that achieve generally better fuel economy,

13 | such as gasoline-electric hybrid vehicles, new city estimates will be about 20-30

14 | percent <u>lower</u> than [previous] labels, and new highway estimates will be 10 to 20

15 | percent <u>lower</u>. The nature of current hybrid technology . . . makes a hybrid's fuel

16 | economy system more sensitive to certain factors such as colder weather and air

17 | conditioning use"(emphasis added).[23] Additionally, nearly all vehicles are updated

18 | each model year, rendering pre-existing advertisements stale.[24] Finally, a recent

19 | visit to Honda's website revealed that "actual mileage will vary" disclaimer

20 | language is already being employed.

21
22
23

---

24 | [21] *See Amici's* Brief at 19 (Dkt. #120); CCAF Objection 10 (Dkt. #117).

25 | [22] *See* Regulatory announcement: EPA Issues New Test Method for Fuel Economy
      Window Stickers, EPA420-F-06-069, available at

26 | http://www.epa.gov/fueleconomy/420f06069.htm, attached hereto as Exhibit D.

27 | [23] *Id.*

28 | [24] *See, e.g.,* Vise Objection at 3 (Dkt # 124) (noting that the advertised mileage for
      the HCH changed each year).

## V.   THE CASH AND CASH REBATES HAVE A CLEAR VALUE TO SETTLEMENT CLASS MEMBERS

Certain Objectors and the *Amici* contend that Options A and B do not provide substantial value to the Class, contending, in fact, that these options are effectively "worthless" because of their coupon nature. [25] Others argue that the value of these options are diminished because of a low expected claims rate[26], a burdensome claims procedure[27], and restrictions on use. [28] Still others claim that Options A and B provide a benefit to Honda, as opposed to Settlement Class Members. [29] As explained below, this criticism is without merit, and does not provide a reasonable basis for denying final approval of the Settlement.

### A.   Coupon Settlements are Not Prohibited

Certain Objectors mischaracterize the Settlement as a pure coupon settlement and claim that because coupon settlements are subject to heightened scrutiny under the Class Action Fairness Act ("CAFA"), final approval of this Settlement should be denied.[30] These Objectors latch on to language in the Senate Judiciary Committee's Report on CAFA Legislation suggesting that coupon

---

[25] *Amici's* Brief at 16 (Dkt #120); CCAF Objection at 4 (Dkt #117); Public Citizen Objection at 1, 12-13 (Dkt #119).

[26] *Amici's* Brief at 16 (Dkt. #120); CCAF Objection at 4 (Dkt#117); Public Citizen Objection at 1, 12-13 (Dkt. #119).

[27] CCAF Objection at 1, 4, 10, 14 (Dkt. #117); Public Citizen Objection at 1, 16 (Dkt. #119); Vise Objection at 4 (Dkt. #124).

[28] *Amici's* Brief at 16-17 (Dkt #120); Public Citizen Objection at 15 (Dkt #119); CCAF Objection at 5-6, 15 (Dkt #117).

[29] *Amici's* Brief at 17-19 (Dkt # 120); CCAF Objection at 8; Public Citizen Objection at 1(Dkt. #117); Peterman Objection at 3 (Dkt. #123).

[30] *See* CCAF Objection at 14 (arguing that coupon nature of the relief weighs against final approval); *Amici's* Brief at 11-13 (Dkt. #120) (suggesting that CAFA placed limits on coupon settlements); Public Citizen Objection at 10-11(Dkt. #119) (arguing that coupon settlements have been criticized and must be avoided); Vise Objection at 3 (Dkt. #124)(making a conclusory, unsupported argument that coupon settlements are disfavored and should not be approved); Peterman Objection at 4-5 (Dkt. #123)(arguing that coupon settlements cannot be adequately valued, and as such cannot be approved).

1  settlements should be disfavored.[31] These Objections lack merit, as CAFA does not
2  prohibit coupon settlements nor does CAFA impose requirements for final
3  approval above or beyond what was already required by Fed. R. Civ. P. 23.

4      First and foremost, it must be emphasized that this Settlement cannot be
5  properly characterized as a pure "coupon settlement," as the elements of this
6  Settlement must be evaluated as a whole, and not in isolation. The DVD
7  component of the Settlement provides prospective relief to Settlement Class
8  Members in the form of education to achieve real dollar savings on fuel. Option C
9  provides cash relief to those Settlement Class Members aggrieved enough to take
10  what AHM would consider to be the first step towards litigation in lodging a
11  Complaint with AHM. Options A and B complement the DVD and Option C by
12  providing substantial cash rebates on the purchase of a new vehicle. While this
13  Settlement contains elements of a coupon-type nature, it may not properly be
14  characterized as a "coupon settlement," since the value of the Settlement may only
15  be determined by examining the Settlement's benefits in their entirety, and not by
16  cherry-picking certain components of the Settlement in isolation.

17      Second, and notably, while the pros and cons of coupon settlements were
18  carefully considered by Congress in enacting CAFA (as reflected in the Senate
19  Judiciary Committee's Report), the lack of a ban on coupon-type relief in CAFA
20  suggests that coupon-type relief has a place in settlements and can provide
21  valuable relief to a class. Instead of banning coupon-type relief, Congress narrowly
22  focused CAFA's coupon provisions on the interplay between coupon settlements
23  and attorneys' fees, imposing limits on fees *only where such fees are based on the*
24  *value of the noncash benefits being offered to the settlement class.* [32] Here,
25  attorneys' fees are based entirely on lodestar, and in fact, are appreciably less than
26  lodestar, so CAFA's fee limitations are not implicated.

---

27  [31] *Amici's* Brief at 9-11 (Dkt #120).
28  [32] *See* 28 U.S.C. §§ 1332(d), 1453, 1711-1715.

1    No additional requirements for final approval of settlements were imposed
2 by CAFA that were not already encompassed by Fed. R. Civ. P. 23.[33] As such,
3 Objections urging the Court to reject the Settlement based solely on the inclusion
4 of coupon-type relief are meritless.

5    **B.    The Projected Claim Rates are Conservative**

6    Objectors and *Amici* contend that Plaintiffs' expert's conservative claim
7 rates of 6% and 7% for the cash rebates are overstated, and should be much lower
8 based on "comparable" claims data in other coupon settlements and on the
9 infrequency with which consumers purchase automobiles. [34] These Objections fail
10 for several reasons.

11    First, the relevant "comparable" claims rates in vehicle cases cited by
12 Objectors reference settlements based on defective or dangerous vehicles or
13 products.[35] These cases are not comparable to the instant case. Unlike the GM
14 Trucks case[36] (wherein plaintiffs alleged that side-mounted fuel tanks in certain
15 GM models have a dangerous tendency to catch fire or explode during a side
16 collision) or the Ford Rollover case[37] (wherein plaintiffs alleged that Ford
17 Explorers contained a faulty design that resulted in the vehicle being more prone to
18 dangerous rollovers in emergency situations), Plaintiffs have not alleged that the

19

20    [33] These include Section 1712's requirement that the Court hold a fairness hearing
and make written findings on fairness, as well as the Court's ability to require a
21 valuation of the settlement and direct alternative distribution of unclaimed
settlement funds, all of which were already encompassed by Fed. R. Civ. P. 23
22 and impose no additional requirements for review of coupon settlements. *See
Amici's* Brief at 9-13 (Dkt. #120).

23    [34] *Amici's* Brief at 16 (Dkt. #120); CCAF Objection at 4 (Dkt. #117); Public
24 Citizen Objection at 1, 12-13 (Dkt. #119).

25    [35] CCAF Objection at 5, 11 (Dkt. #117); Public Citizen Objection 13-14 (Dkt.
#119)(discussing Ford Rollover settlement and GM Trucks Fuel Tank Liability
26 settlement); *Amici's* Brief at 18 (discussing coupons in unsafe crib class action
settlement).

27    [36] *In re GM Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d
768 (3d Cir. 1995).
28    [37] *Ford Explorer Cases*, J.C.C.P. Nos. 4266 & 4270 (Cal. Sup. Ct., Sacramento).

1   HCH is defective or dangerous – rather, Plaintiffs complaint is that the HCH was

2   *advertised* in a false and misleading manner. The HCH's failure to achieve the

3   advertised gas mileage has no bearing on whether it is a safe, sound, or dependable

4   car. While a Settlement Class Member may be unwilling to purchase another

5   vehicle from a manufacturer that is dangerous or otherwise unsafe, leading to

6   lower redemption rates, the same does not ring true for a vehicle that, while

7   deceptively advertised, is otherwise functioning properly. Notably, named Plaintiff

8   Delgado has indicated that would purchase another Honda, despite the misleading

9   way in which the HCH was advertised. Supplemental Delgado Declaration at 6:4-7

10  (Plaintiffs' Final Approval Memorandum, Exhibit D). As such, redemption rates

11  from defective or dangerous product cases cannot be used to predict redemption

12  rates in the instant case.

13      Second, Plaintiffs' expert's conservative claim rates are based on actual

14  industry data: (1) a brand loyalty rate of approximately 63%, the highest in the

15  industry, as reported by J.D. Power in 2008; and (2) the actual rates at which

16  Americans tend to replace their vehicles.[38] Based on this data, Plaintiffs' expert

17  estimated the number of class members *who would be purchasing a Honda in the*

18  *next two years regardless of the existence of any settlement*, and, even then,

19  assumed that only a minority of those class members would be claiming the

20  payments that they are entitled to with no preconditions. Plaintiffs' expert did not

21  assume that *anyone* would be incented by the cash payment to purchase a vehicle

22  that would not otherwise have been purchased, likely rendering his projections

23  low. Dreze Declaration at 3:11-19; Exhibit C-2 (Plaintiffs' Final Approval

24  Memorandum, Exhibit C). Plaintiffs' expert's projected claims rates are rendered

25  even more conservative in light of certain of the clarifications set forth in the Letter

26  Agreement of February 5, 2010 attached to Plaintiffs' Motion for Final Approval

27

28  [38] *See* Dreze Declaration at 3:11-19 (Plaintiffs' Final Approval Memorandum, Exhibit C).

1   of the Settlement as Exhibit A.[39] For example, removing exclusivity from Option C

2   would increase the number of Settlement Class Members likely to exercise Options

3   A and B. Letter Agreement (Plaintiffs' Final Approval Memorandum, Exhibit A).

4        Third, while it is correct that consumers do not purchase automobiles every

5   month or every year, the actual frequency at which consumers purchase

6   automobiles is already factored into Plaintiffs' claim projections. Plaintiffs'

7   expert's valuations already take into account the frequency with which American

8   consumers tend to replace their cars, estimated approximately 4.72 years based on

9   industry data, dispelling criticisms that the infrequency of car purchases will

10  diminish these valuations. Dreze Declaration at Exhibit C-2 (Plaintiffs' Final

11  Approval Memorandum, Exhibit C).

12
13  **C . The Claims Procedure is Designed to Maximize Value of the Cash Rebates**

14        **i. Dealership Involvement is Expressly Omitted**

15        Objectors and the *Amici* claim that dealerships will raise prices in response

16  to the availability of the Cash Rebates, eliminating their value.[40] These Objections

17  must be rejected, as they are based solely on unfounded speculation inconsistent

18  with the current state of the automotive market, and ignore the deliberate design of

19  the claims process. The cash rebate claim procedures were expressly negotiated by

20  Class Counsel to be processed directly by AHM, such that Settlement Class

21  _____

22  [39] Since Plaintiffs' expert's analysis as presented did not take into account the
    excluded vehicles, the clarification to remove excluded vehicles has no effect
    on Plaintiffs' expert's valuation of Options A and B.

23  [40] *Amici's* Brief at 15 (Dkt. #120) (arguing that the cash rebates are somehow
    worth less than their face value because dealers will be aware of the coupon,
24  that the class notice does not specifically state that the consumer does not have
    to inform the dealer of the coupon upon purchase, that the settlement ignores
25  premiums over dealer invoice price, and that consumers have been
    "conditioned to present coupons at the point of sale"); CCAF Objection at 6-7
26  (Dkt. #117) (making an unsupported argument that coupons are worth less than
    face value simply because they take time to fill out, noting that Honda already
27  provides discounts on its cars, and arguing  that coupons are worth less than
    face value because they would be induce class members to purchase an item
28  they otherwise wouldn't have purchased)

1  Members need not inform the dealership of their eligibility for a rebate at point of

2  purchase. Additionally, the Cash Rebates were specifically negotiated to be above

3  and beyond (as well as separate and apart from) any incentive pricing or financing

4  offered by a dealership or AHM. Finally, these speculative objections ignore that

5  the U.S. auto industry is currently experiencing an unprecedented decline in sales,

6  leaving dealerships flooded with excess inventory they cannot afford to keep.[41] If

7  anything, these economic conditions render dealerships *less* likely to raise the price

8  of automobiles, and *more* likely to cut consumers a better deal. As such, these

9  Objections do not form a valid basis for denying final approval.

10              **ii. Claim Procedures are Not Burdensome**

11            Objectors complain that the Qualifying Preconditions of logging on to the

12  Fuel Economy Website, entering a VIN, viewing the Fuel Economy Video,

13  obtaining a pre-assigned claim number, and downloading a Claim Form in order to

14  participate in the Settlement present an onerous and unnecessary barrier to

15  obtaining the benefits offered under the Settlement.[42] These Objections do not

16  warrant denial of final approval. First, many of these Objections are mooted by the

17  clarification in the Letter Agreement of February 5, 2010 that Settlement Class

18  Members need not watch the Fuel Economy Video prior to submitting a Claim

19  Form. Letter Agreement at 2 (Plaintiffs' Final Approval Memorandum, Exhibit

20  A).Second, requiring Settlement Class Members to submit a simple Claim Form is

21  a common practice in class action settlements, and does not pose an undue burden.

22

23  [41] *See, e.g.* Chris Woodyard (USA Today), *Car dealers struggle, cut staff, pay,
    dividends*, available at http://www.usatoday.com/money/autos/2009-02-23-car-

24  dealers-stuggle_N.htm (noting that car dealerships are operating on razor thin
    margins); Reuters, *State of the U.S. auto industry: bleak*, available at

25  http://www.reuters.com/article/idUSTRE51A53J20090211?feedType=RSS&fe
    edName=businessNews&utm_source=feedburner&utm_medium=feed&utm_ca

26  mpaign=Feed%253A+reuters%252FbusinessNews+%2528News+%252F+US+
    %252F+Business+News%2529 (noting that the auto industry is experiencing a

27  period of unprecedented decline).

28  [42] CCAF Objection at 1, 4, 10, 14 (Dkt. #117); Public Citizen Objection at 1, 16
    (Dkt. #119); Vise Objection at 4 (Dkt. #120).

1   *Manual for Complex Litigation* §21.61(4th ed. 2004) (noting that requiring a

2   claimant to submit a claim form is standard procedure in class action settlements).

3   Finally, the VIN of nearly all Settlement Class Members' Class Vehicles was

4   included with their Mailed Notice, easing any perceived burden in filling out the

5   claim form. As such, these Objections do not present valid arguments against final

6   approval.

7                    **iii. Restrictions on Cash Rebates are Minimal**

8          The *Amici* and certain of the Objectors complain about the very modest

9   restrictions as to which universe of vehicles the cash rebates apply.[43]  This

10  criticisms is moot, as the Letter Agreement of February 5, 2010 clarifies that the

11  cash rebates may be claimed on *all* new model year 2010 and 2011 Hondas and

12  Acuras. Letter Agreement (Plaintiffs' Final Approval Memorandum, Exhibit A).

13         **D.     Option C Adds Additional Value to the Settlement**

14         Next, the Objectors criticize Option C as being substantially "worthless."

15  While this Objection is mooted by the clarification in the Letter Agreement of

16  February 5, 2010 that Option C is not an exclusive remedy, Objectors have largely

17  missed the point here. Letter Agreement (Plaintiffs' Final Approval Memorandum,

18  Exhibit A). The Parties emphasize that the value of the Settlement must be

19  considered in its entirety, instead of through isolation of its component parts. The

20  purpose of Option C is to provide a benefit class members aggrieved enough to

21  have taken the first step towards litigation in complaining to AHM.[44]  Option C

22  makes up a very small percentage of the value of the settlement (approximately

23  one third of 1% of the $16 million value of Options A and B, and a similarly small

24  percentage of the value of the DVD).  Dreze Declaration at 4:6-10 (Plaintiffs' Final

25  

26  [43] *Amici's* Brief at 16-17 (Dkt. #120); Public Citizen Objection at 15 (Dkt. #119);
         CCAF Objection at 5-6, 15 (Dkt. #117).

27  
28  [44] Furthermore, obtaining the benefits offered under Option C is as simple as filling
         out a Claim form, which is made even easier in that Settlement Class Members'
         VIN number was provided to them with the Mailed Notice.

1   Approval Memorandum, Exhibit C). As such, the dollar value of Option C

2   considered in isolation is not a reasonable means of evaluating the settlement, and

3   cannot form the basis for denying final approval.

4          **E.      The Cash Rebates do not Benefit Honda.**

5          Certain Objectors and the *Amici* argue that the Cash Rebates will benefit

6   Honda instead of forcing it to disgorge ill-gotten gains, and as such, lack value.[45]

7   These Objections fail to take into account that Honda has the highest customer

8   loyalty rate in the auto industry at 63%, and that Plaintiffs' expert's valuations of

9   the settlement were based on the number of Settlement Class Members who would

10  have purchased a new vehicle during the redemption period of the cash rebates

11  (before the recent additional passage of time), regardless of any settlement in this

12  action.[46] Since these are sales that would have happened anyway, the cash rebates

13  paid out under this settlement are coming directly out of Honda's pocket. As such,

14  these objections lack merit.

15  **VI.    REMAINING OBJECTIONS TO THE SETTLEMENT DO NOT**
16  **WARRANT DENIAL OF FINAL APPROVAL**

17      **A. Arguments that do not Address the Settlement's Terms Must Be**
18  **Ignored**

19         Certain of the arguments advanced by the Objectors and commenting

20  Settlement Class Members are wholly unrelated to the Settlement and its terms.

21  These arguments include: (1) expressions of satisfaction with AHM or the HCH

22  and the belief that the Lawsuit is unwarranted; (2) expressions of dissatisfaction

23  with class actions and/or attorneys in general; and (3) proclamations that the

24  Settlement would somehow frustrate societal ideals. Those in the first two

25  categories would likely oppose ANY settlement of the action, no matter how fair,

26  ───────────────
    [45] *Amici's* Brief at 17-19 (Dkt. #120); CCAF Objection at 8 (Dkt. #117); Public
27  Citizen Objection at 1 (Dkt. #119); Peterman Objection at 3 (Dkt. #123).

28  [46] *See* Dreze Declaration at Exhibit C-2 (Plaintiffs' Final Approval Memorandum,
    Exhibit C).

1    reasonable, or adequate the terms.[47] Additionally, certain statements falling into

2    these categories *support*, rather than oppose, the argument that the settlement

3    provides valuable relief to the Settlement Class (particularly with respect to the

4    DVD component of the settlement).[48] Arguments falling in the third category are

5    wholly unrelated to the merits of the underlying Lawsuit, and cannot reasonably be

6    considered when evaluating the proposed Settlement.[49] Only arguments that

7    address the settlement terms may be considered when evaluating whether a

8    proposed settlement is fair and reasonable. *Wilson v. Airborne*, Inc., 2008 U.S.

9    Dist. LEXIS 110411 at *22-23 (C.D. Cal. Aug. 13, 2008) (rejecting all objections

10   addressing the filing of the lawsuit or offering support for defendants on the

11   grounds that they do not address the settlement terms). As such, Objectors

12   opposing the Settlement on grounds unrelated to the Settlement's terms must be

13   ignored.[50]

14

15   [47] *See, e.g.*, Letter Objection of Daniel Bergman (Exh. A pg. 5-6)(noting that "I
16   object to the settlement on the grounds that the case is frivolous."); Letter
     Objection of Norman Whitton (Exh. A. pg. 2-4) (noting that "this lawsuit and
17   resulting settlement continues a trend of frivolous legal maneuvers that result in
     enrichment of the attorneys with no societal benefit")

18   [48] *See, e.g.*, Letter Objection of Daniel Bergman (Exh. A pg. 5-6)(noting that "I
19   get 45-50 mpg with my car and the only way I could possibly get 32 mpg (as
     the plaintiffs claim) would be **to drive the car in a manner in which it was**
20   **not intended**.") (emphasis added); *see also* Comment of Debbie Smith (Exh. B
     pg 36)(stating that "[t]here is an art to driving a Hybrid Civic . . . You have to
     learn how to drive this vehicle in order to make it fuel efficient . . .").

21   [49] *See, e.g.*, Letter Objection of Norman Whitton (Exh. A. pg. 2-4)(noting that
22   "this lawsuit and settlement will cause a chilling effect in our society, with
     regard to the implementation of new energy efficient technology . . . Further,
23   this effect is likely to be transferred to innovations and technologies outside of
     the specific realm of motor vehicles. Our society is highly dependent on fossil
24   fuels . . . Inefficient use of these fossil fuels also contributes to global warming,
     with major future societal consequences. In sum, THIS LAWSUIT DRIVES
25   OUR SOCIETY IN THE WRONG DIRECTION.")(emphasis in original);

     [50] The following five Objectors fall into this category: Objection of Norman
26   Whitton (Exh. A. pg. 2-4); Objection of Daniel Bergman (Exh. A pg. 5-6);
     Objection of Gerald Nicholson (Exh. A pg. 18-33); Objection of Keith R.
27   Cyrnek (Exh. A pg. 7-9); Objection of Robert A. Tighe (Exh. A pg. 16-17). The
     following commenting Settlement Class Members also advanced arguments
28   unrelated to the settlement terms: Comment of Eric Strickland (Exh. B pg. 39-
     43) (ineligible to object based on opt-out status); Comment of David V.

**B. Professional Objectors Do Not Meaningfully Advance the Interests of the Settlement Class**

The status and intentions of Objectors cannot be ignored when evaluating the merits of their objections. It must be emphasized that the four objections filed by represented Settlement Class Members were quite clearly filed by "professional objectors." The Public Citizen Litigation Group may have three clients, but they are all lawyers themselves and can hardly be deemed typical class members. Lawyer Edward F. Siegel, who filed the Peterman Objection, is a frequent serial objector, and he represents a client whom he previously represented as an objector in the earlier Honda defective odometer litigation.[51]  Mr. Siegel has referred to his work as an objector as a "nice side source of income."[52]  Courts have repeatedly questioned the motives and assistance rendered by Mr. Siegel.  For example, in *In re AT&T Corporation Securities Litigation*, Case No. 00-5364 (D.C.N.J. 2006), Chief Judge Brown of the United States District Court for the District of New Jersey said of Mr. Siegel, "[t]he objections and the subsequent appeal were without merit and failed to improve the Class's recovery in any manner … the Objectors' actions appear to have impeded the Class's recovery – their objections and subsequent appeal resulted in wasteful litigation and delayed the distribution of funds to the Class."  Lawyer Marianne P. Borselle, Esq., who filed the Vise Objection, apparently aspires to emulate Mr. Siegel, having filed a boilerplate bare-bones objection in which she made reference to an "Airborne" settlement, and referred to her client (named Richard Vise) as "Objector Blakely."  Lawyer Theodore H. Frank, Esq., of the so-called "Center for Class Action Fairness," who

---

Sherwood (Exh. B pg. 37-38) (ineligible to object based on opt-out status); Comment of Jason Novak (Exh. B. pg. 44) (ineligible to object based on opt-out status); Comment of Debbie Smith (Exh. B pg 36).

[51] *Vaughn v. Am. Honda Motor Co.*, No. 2-04CV-142 (E.D. Tex.)

[52] *See* http://www.clevescene.com/cleveland/edward-siegel-is-on-a-quest-to-either-stop-exorbitant-lawyer-payouts-151-or-score-some-easy-money/Content?oid=1506021

17

1  filed the CCAF Objection, is an avowed anti-litigation activist, and would likely be

2  against virtually *any* consumer litigation. In testimony before the Senate

3  Republican Conference on March 16, 2009, Mr. Frank indicated his belief that

4  class actions cost the United States economy over $900 billion per year, or $12,000

5  for an average family of four.[53] In the later part of 2009 Mr. Frank established the

6  Center for Class Action Fairness, which he refers to as a "guerilla operation"

7  dedicated almost exclusively to challenging class actions.[54]

8  Notably, while these professional objectors are quick to identify perceived

9  flaws in the Settlement, none purport to offer solutions that would benefit the

10  Settlement Class. Instead, these professional objectors ostensibly seek only fees for

11  their "contributions" to the settlement process. Equally notably, none of the

12  Objectors or *Amici* have deemed the matter at bar sufficiently important for them

13  to investigate Honda's deceptive advertising themselves or, even less, actually do

14  anything about it.

15  **C.    Dissatisfied Class Members May Opt Out of the Settlement**

16  The opt-out remedy is designed to provide dissatisfied Settlement Class

17  Members with the opportunity to remove themselves from the Lawsuit and

18  preserve their claims. To the extent that Objectors do not feel that the Settlement is

19  adequate to address their claims, they may request permission to opt-out of the

20  Settlement. Given the availability of the opt-out remedy, the dissatisfaction of a

21  handful of Settlement Class Members over the terms of the Settlement should not

22  constitute grounds for denying final approval of the Settlement.

23  **VI.    CONCLUSION**

24  As set forth in Plaintiffs' Memorandum in Support of Final Approval of the

25  Settlement, filed concurrently herewith, the Settlement meets all the criteria for

26

27  [53] *See* http://www.aei.org/docLib/Frank%20testimony.pdf

28  [54] *See* http://legalpad.typepad.com/my_weblog/2009/09/class-action-avenger-discusses-coupon-crusades.html

18

1  Final Approval and provides real relief to the Settlement Class. The arguments of

2  the Objectors, *Amici*, and commenting Settlement Class Members do not provide a

3  reasonable basis to deny final approval. As such, Plaintiffs request that this Court

4  ignore the Objections and grant final approval to the Settlement.

5

6  Respectfully Submitted,

7

8
9  Date: February 8, 2010                    FOR PLAINTIFFS

10                                            CHIMICLES & TIKELLIS LLP

11                                            By: _____
12                                                Nicholas E. Chimicles
13                                                Denise Davis Schwartzman
                                                  One Haverford Centre
                                                  361 West Lancaster Avenue
14                                                Haverford, Pennsylvania 19041
15                                                Telephone: (610) 642-8500
                                                  Facsimile: (610) 649-3633

16  Date: February 8, 2010                    CUNEO GILBERT & LaDUCA LLP

17                                            By: _____
18                                                Jonathan W. Cuneo
19                                                William H. Anderson
                                                  507 C Street, N.E.
20                                                Washington, D.C. 20002
                                                  Telephone: (202) 789-3960
21                                                Facsimile: (202) 789-1813

22

23

24

25

26

27

28