Michael T. Kirkpatrick (admitted *pro hac vice*)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
Telephone: (202) 588-1000
Fax: (202) 588-7785
E-mail: mkirkpatrick@citizen.org

Stephen E. Webber (Cal. Bar. #60164)
Attorney at Law
3435 Wilshire Blvd., Suite 1800
Los Angeles, CA 90010
Telephone: (818) 484-8650
Fax: (818) 484-8651
E-mail: sewebberlaw@gmail.com

Attorneys for Objectors Goldberg, Nannery, and Burghardt

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION — RIVERSIDE**

| | |
|---|---|
| JOHN TRUE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN HONDA MOTOR CO., INC., <br><br> Defendant. | Case No. EDCV 07-287-VAP (OPx) <br><br> **MEMORANDUM OF OBJECTORS GOLDBERG, NANNERY, AND BURGHARDT IN RESPONSE TO PLAINTIFFS' MOTION FOR FINAL APPROVAL, PLAINTIFFS' MOTION FOR ATTORNEYS FEES, PLAINTIFFS' RESPONSE TO OBJECTIONS, AND DEFENDANT'S SUBMISSION REGARDING FINAL APPROVAL** <br><br> Date:   February 22, 2010 <br><br> Time:   2:00 p.m. <br><br> Courtroom 2 |

Case 5:07-cv-00287-VAP-OP   Document 154   Filed 02/17/10   Page 2 of 15   Page ID #:2574

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. The Court Should Not Approve a Settlement That, Even by Class Counsel's Estimate, Will Provide No Value to 88% of the Class.. . . . . . . . . . . 2

B. A Fair Settlement Would Require That Honda Settle for Cash and Guarantee a Minimum Payout... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C. Honda's Argument Concerning Manageability of the Class Action Has No Bearing on the Strength of Individual Claims and Does Not Justify a Global Settlement at the Expense of Class Members with Strong Claims.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

D. The Settling Parties Continue to Treat Subclasses Differently with Respect to Option C and Have Offered No Sound Basis for Doing So.. . . . . . . 7

E. The Settling Parties' Have Failed to Show That the Proposed DVD Will Provide Value.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

F. The Reaction to the Proposed Settlement by the States and the Class Militates Against Approval... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

G. Plaintiffs' Motion for Attorney Fees Lacks the Detailed Billing Records Required for the Court to Determine if the Requested Fee Is Reasonable... . . 10

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

**CASES**                                           **Pages**

*Ford Explorer Cases*,
   J.C.C.P. Nos. 4266 & 4270 (Cal. Sup. Ct., Sacramento Cty.).............. 3

*In re Ford Motor Co. Bronco II Product Liability Litigation*,
   981 F. Supp. 969 (E.D. La. 1997). ............................. 10

*In re General Motors Corp. Engine Interchange Litigation*,
   594 F.2d 1106 (7th Cir. 1979). .............................. 7

*In re GM Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*,
   55 F.3d 768 (3d Cir. 1995).................................. 10

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ................................... 6

*National Super Spuds v. New York Mercantile Exchange*,
   660 F.2d 9 (2d Cir. 1981)................................... 7

*Paduano v. American Honda Motor Co., Inc.*,
   169 Cal. App. 4th 1453 (2009) .............................. 6

*True v. American Honda Motor Co., Inc.*,
   520 F. Supp. 2d 1175 (C.D. Ca. 2007). .......................... 5

*Weinberger v. Great Northern Nekoosa Corp.*,
   925 F.2d 518 (1st Cir. 1991). ............................... 11

*White v. General Motors Corp.*,
   835 So. 2d 892 (La. App. 1 Cir. 2002). .......................... 4

**RULE**                                           **Pages**

Federal Rule of Civil Procedure 23(e)(2). ............................ 1

**OTHER**                                     **Pages**

Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*,
   59 Fla. L. Rev. 71 (2007)................................... 10

National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*,
   255 F.R.D. 215 (2009) ................................... 4, 5

MEMORANDUM OF OBJECTORS GOLDBERG, NANNERY, AND BURGHARDT
IN RESPONSE TO PLAINTIFFS' MOTION FOR FINAL APPROVAL

# INTRODUCTION

After more than a dozen class members objected to the proposed settlement and twenty-six states submitted an amicus brief urging the Court to reject it, and after Honda agreed to pay $50,000 to a single plaintiff in a case involving the same claims at issue here,[1] the settling parties returned to the negotiating table to revise their agreement. Apparently realizing that their earlier proposal was not "fair, reasonable, and adequate[,]" Fed. R. Civ. P. 23(e)(2), the settling parties have made five changes to their proposed settlement in an attempt to secure this Court's approval. Under the recent revisions:

- The settlement would no longer bar class members from participating in enforcement actions brought by regulatory agencies;
- Class members would no longer have to view the fuel economy video to obtain a claim form;
- Class members would have twelve months to buy an eligible vehicle and submit the documentation required to claim a rebate;
- The list of eligible vehicles would be expanded to include any new 2010 or 2011 model-year Honda or Acura; and
- The 2,671 class members (1.5% of the class) eligible to submit a claim for a $100 payment would also be permitted to seek a rebate.

Doc. 145-2, Exh. A.

None of these changes addresses the most fundamental problem with the proposed settlement—that it would leave the vast majority of class members with no meaningful relief. Because most class members would receive nothing of value, the settlement is not fair, reasonable, and adequate, and the Court should deny final approval.

---

[1] *See* Settlement Agreement in *Paduano v. American Honda Motor Co.*, Case No. GIC 852441 (Cal. Sup. Ct., San Diego Cty.) (agreeing to pay plaintiff $50,000 and submit the issue of attorney fees and costs to the trial court), attached as Exhibit 1.
1

MEMORANDUM OF OBJECTORS GOLDBERG, NANNERY, AND BURGHARDT
IN RESPONSE TO PLAINTIFFS' MOTION FOR FINAL APPROVAL

Before reaching the merits, we wish to bring two procedural irregularities to the Court's attention. *First*, Honda filed its entire submission regarding final approval (Doc. 149) under seal pursuant to a protective order (Doc. 50), but without following the procedure set out in Local Rule 79-5.1. Because class members and the public at large are entitled to see Honda's arguments concerning the settlement, Honda's brief and attached exhibits should be filed in the public record. At a minimum, Honda should file a version of its brief in the public record, redacting only the small amount of material that is purportedly confidential.

*Second*, the eleventh-hour changes to the proposed agreement, after notice had already been provided to the class, present a potentially serious procedural problem. Class members need to know what the settlement contains to meaningfully exercise their options, and some class members might have exercised their options differently had they known of the changes.[2] Thus, because the class has not been informed of the changes to the proposed settlement agreement, if the Court grants final approval the class must be provided with a new notice and those who opted out must be given an opportunity to change their decision.

## ARGUMENT

**A. The Court Should Not Approve a Settlement That, Even by Class Counsel's Estimate, Will Provide No Value to 88% of the Class.**

Class counsel continues to rely on a declaration by Xavier Dreze, originally submitted in support of their supplemental motion for preliminary approval and resubmitted in support of their motion for final approval (Doc. 104-2, Exh. C and Doc. 145-2, Exh. C), in which Dreze predicts that 11,339 class members will claim the

---

[2] For example, class members interested in purchasing one of the vehicles previously excluded from Options A and B may have discarded the notice and will not check the settlement website to obtain a claim form because they do not know that the vehicle they want is now included in the settlement. Similarly, some class members opted out of the settlement because they thought that it offered nothing for them, because they did not want one of the rebate-eligible vehicles. *See, e.g.,* Doc. 137-2, Opt-Out No. 67 ("If I were to buy a new car during the time frame specified, I would want one of the excluded cars"); Opt-Out No. 566 ("The proposed settlement offers me no real benefit as I am not interested in purchasing one of the eligible vehicles.")

1  Option A rebate, 9,572 will claim the Option B rebate, and 580 will claim the $100
2  under Option C.  Even if his estimates were well-supported, Dreze predicts that only
3  21,491 of 176,990 class members (12%) will receive any rebate or cash payment if the
4  settlement is approved.  The Court should not approve as fair, adequate, and reasonable
5  a settlement that results in no relief at all to 88% of the class.

6       In any event, Dreze's estimates are not well-supported.  Our objections, together
7  with the supporting declaration of Clarence Ditlow, identified multiple independent
8  errors in Dreze's methodology and underlying assumptions (Doc. 119 and Exh. 8),
9  which class counsel has not even acknowledged, much less addressed.  For example,
10 we explained that Dreze erred by using a two-year window for the rebate program.
11 This error has become even more plain by the settling parties' recent agreement that
12 the claims period for Options A and B will run "for twelve (12) months from the
13 Effective Date . . . ."  Doc. 145-2, Exh. A.  Similarly, we explained that Dreze used
14 estimated response factors of 40% and 20% without explaining why he chose those
15 figures and without citing any sources for them.  Class counsel has made no effort to
16 identify or explain the source or derivation of those figures.  Finally, we showed that
17 Dreze's predicted redemption rates were wildly optimistic in comparison to the less-
18 than-2% redemption rates actually experienced in two class actions settled on terms
19 similar to those proposed here, and which Dreze does not mention and apparently did
20 not consider. Doc. 119, 13:8-14:28.  Again, class counsel does not explain why Dreze
21 ignored the most relevant cases.

22      As we explained in our opening brief, the GM Truck and Ford Explorer
23 settlements provide the best evidence of likely redemption rates for the rebate coupons
24 proposed here, and in each of those cases the redemption rate was less than 2%.  *See*
25 Doc. 119, 13:8-14:17.  In *Ford Explorer Cases*, J.C.C.P. Nos. 4266 & 4270 (Cal. Sup.
26 Ct., Sacramento Cty.), out of a class of approximately one million, less than 1,700 class
27 members claimed and received a discount coupon, and after six months of the twelve-
28

month redemption period, only 75 coupons had been used.[3] Doc. 119, Exh. 8, 5:1-14, & Exh. 8A. The redemption rate in *White v. Gen. Motors Corp.*, 835 So. 2d 892, 896-97 (La. App. 1 Cir. 2002), reached only 1.7% even though the coupons there were fully transferable and could be aggregated, the settlement provided for a secondary market-maker, and the coupons were valid for three years. Doc. 119, 13:8-14:4, Exh. 8, 4:14-19. In contrast, the rebate coupons proposed here have limits on transferability, cannot be aggregated, cannot be sold in a secondary market, and will be valid for only 12 months. Class counsel attempts to distinguish the GM Trucks and Ford Explorer settlements by speculating that consumers are less likely to purchase another vehicle from a company that previously manufactured a defective vehicle than from a company that induced consumers to over-pay by using deceptive advertising, but class counsel offers no citation or evidence to support this theory. Doc. 148, 11:4-7.

**B.   A Fair Settlement Would Require That Honda Settle for Cash and Guarantee a Minimum Payout.**

Our opening brief explained that coupon settlements are disfavored for at least four reasons, all of which apply with full force here: (1) there is generally no principled reason why cash settlements cannot be achieved; (2) most of the class may not have the means or desire to make the required purchase of a new car; (3) the defendant may be able to recover the cost of the coupon; and (4) the wrongdoing defendant should not be rewarded with new sales from the victims of its illegal practices. Doc. 119, 11:4-16 (citing National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, 255 F.R.D. 215, 235 (2009) ("NACA Guidelines")). But rather than explain why a cash settlement could not be achieved in this case, class counsel argues that coupon settlements, although concededly disfavored, are not entirely prohibited by law, and that "the lack of a ban on coupon-

---

[3] The coupon redemption period in the Ford Explorer cases has ended, but class counsel has not yet filed a final report setting forth the total number of coupons redeemed. But even if every coupon claimed and issued **were** redeemed, the redemption rate would not exceed 0.17%.

type relief in CAFA suggests that coupon-type relief has a place in settlements and can provide valuable relief to a class." Doc. 148, 9:19-21. The issue, however, is not whether coupon settlements are barred by statute, but whether the coupon settlement proposed here is fair, reasonable, and adequate. Because the vast majority of the class will not benefit from the rebates or be eligible for the cash option, the settlement should not be approved.

Class counsel argues that because the rebate coupons are expected to be used only by class members who would have bought a new Honda during the twelve-month redemption period regardless of any settlement in this case, "the cash rebates paid under this settlement are coming directly out of Honda's pocket." Doc. 148, 15:12-13. If that is true, there is no reason why Honda should not be willing to pay in cash the value of the rebate coupons expected to be used—which, according to class counsel, is $16,183,172. If Honda simply paid that amount into a settlement fund, it could be distributed equally to the 176,990 class members, with each receiving a payment of at least $90. Such a result would be far more fair than leaving most class members with no recovery at all. Honda's unwillingness to agree to a cash settlement or guarantee a minimum number of rebates indicates that Honda expects the redemption rate to be far lower than predicted by class counsel. *See* NACA Guidelines, 255 F.R.D. at 236-37 ("[D]efendants will usually be in a superior position to predict the ultimate redemption rate[.]"). Indeed, although Honda argues that brand loyalty and satisfaction among Honda owners makes it "likely that many Settlement Class Members would choose to purchase Honda vehicles in the near future[,]" (Doc. 149, 16:5-7), Honda does not endorse the Dreze estimate and steadfastly refuses to offer its own estimate of the likely redemption rate. Honda's silence speaks volumes.

In our opening brief, we explained that the plaintiffs' case is strong, given that (1) plaintiffs have already survived a motion to dismiss on grounds of preemption and sufficiency of the pleadings, *True v. American Honda Motor Co., Inc.*, 520 F. Supp. 2d 1175, 1181-83 (C.D. Cal. 2007); (2) a California appellate court has found that two

of the same state-law claims presented here survive summary judgment, *Paduano v. American Honda Motor Co., Inc.*, Cal. App. 4th 1453, 1472-73 (2009); and (3) the California Supreme Court's decision in *In re Tobacco II Cases*, 207 P.3d 20, 40-41 (Cal. 2009), does not impede plaintiffs' ability to maintain this case as a class action. Doc. 119, 18:14-19:8. In contrast, class counsel's memorandum initially asserts without explanation that plaintiffs would face "significant risks" in litigating this case and, in particular, that there are "risks inherent in obtaining, and maintaining, class certification in a nationwide consumer class action applying California law." Doc. 145, 11:22-12:22. But the memorandum is much more convincing ten pages later, where class counsel explains that common questions of law and fact predominate, and cites numerous "virtually indistinguishable . . . cases in which courts have certified national classes under California's various consumer protection laws." *Id.*, 22:27-23:2.

If plaintiffs prevail in this case, Honda will have to return the approximately $2,500 "hybrid premium" paid by each of the 176,990 class members. Thus, Honda's liability to the class could easily exceed $442 million, not counting interest, costs, and attorneys fees. Given Honda's tremendous exposure, there is no reason why the class should have to settle for coupons that, even if redeemed at the rates that class counsel predicts, would benefit only 12% of the class and represent a recovery of less than 4% of the damages sought by the class. Under the circumstances here, a settlement that is fair, reasonable, and adequate should require Honda to guarantee a cash payment to every member of the class. Indeed, Honda settled a single-plaintiff case involving the same claims made here by paying the plaintiff $50,000 and agreeing to submit the issue of attorneys fees and costs to the trial court. *See* Settlement Agreement in *Paduano v. American Honda Motor Co.*, Case No. GIC 852441 (Cal. Sup. Ct., San Diego Cty.), attached as Exhibit 1. If Honda is willing to pay a single plaintiff $50,000, Honda should be willing to settle this class action by paying cash rather than offering rebates.

**C. Honda's Argument Concerning Manageability of the Class Action Has No Bearing on the Strength of Individual Claims and Does Not Justify a Global Settlement at the Expense of Class Members with Strong Claims.**

Honda argues that the settlement should be approved because of manageability problems posed by the lack of uniform experiences among class members and the potential need for individualized determinations of certain issues. Doc. 149, 19:2-25:18. But to the extent Honda argues that the case is not appropriate for class treatment because some class members' claims are stronger than others, Honda's argument militates *against* approval of a settlement in which everyone's claims are lumped together and where the vast majority of class members receive no meaningful relief. A settlement under which the comparatively stronger claims of some class members have been "throw[n] to the winds" in this fashion cannot be approved, *National Super Spuds v. New York Mercantile Exchange*, 660 F.2d 9, 17 n.6 (2d Cir. 1981), because "convenience and expediency cannot justify disregard of the individual rights of even a fraction of the class." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1133 (7th Cir. 1979). Indeed, under this settlement, class members with very strong individual claims (like those that Honda recently settled for $50,000) may receive nothing more than eligibility for a rebate they cannot use, whereas those with relatively weaker claims, but who by chance had their complaints reduced to writing and maintained by Honda, are eligible for $100 in cash. Such a settlement is the very opposite of a fair and rationale regime. "An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of [other] members[.]" *National Super Spuds*, 660 F.2d at 19.

**D. The Settling Parties Continue to Treat Subclasses Differently with Respect to Option C and Have Offered No Sound Basis for Doing So.**

Our opening brief explained that the settling parties had offered no principled reason for restricting eligibility for Option C to a subclass of 2,671 individuals who, before March 2, 2009, complained about their gas mileage and had their complaints reduced to writing and maintained by Honda. Doc. 119, 17:1-13. In response, the

settling parties modified their agreement "to make Option A and Option B available to Option C claimants, such that Option C claimants can elect Option A or Option B <u>in addition to</u> electing Option C." Doc. 145-2, Exh. A (emphasis in original). The settling parties claim that this change will "make all Settlement Class Members similarly situated <u>vis-a-vis</u> the benefits available under the Settlement Agreement[.]" *Id.* However, the change does not do so because 98.5% of the class members remain ineligible for Option C based on a factor outside the class member's control—whether Honda has a written record of a complaint. All class members would be similarly situated under the agreement only if the settling parties agreed to allow any class member to choose Option C.

**E.   The Settling Parties' Have Failed to Show That the Proposed DVD Will Provide Value.**

Class counsel does not dispute that all of the proposed content for the yet-to-be-produced DVD is already widely available free. Rather, class counsel argues that the DVD will provide value because (1) class members who watch the DVD will not risk being exposed to "hypermiler" techniques that might be dangerous or illegal, and (2) the DVD will gather fuel-saving tips in one convenient place. Doc. 148, 2:13-4:15. These arguments are red herrings. The declaration submitted by objectors to show that the information is already publicly available tracked the topics on the settling parties' "Preliminary Outline for Fuel Economy DVD" and did not discuss hypermiling techniques. *Compare* Doc. 104-2, Exh. F-16 *with* Doc. 119, Exh. 7. And objectors' declaration listed multiple websites where the information proposed for the DVD is available to show that the information is ubiquitous, not to suggest that it must be collected from sources that are widely dispersed. Indeed, most of the information on the settling parties' outline is collected in a single, comprehensive and authoritative website maintained by the federal government, *see* "Gas Mileage Tips" at www.fueleconomy.gov, which is listed as the primary source of the information on the settling parties' outline. Doc. 104-2, Exh. F-16 at 4.

Class counsel also claims that the DVD will provide value to those class members who watch it because the information that is proposed for inclusion on the video "can translate into real dollars in anticipated fuel savings[.]" Doc. 148, 4:21-23. But as we discussed in our opening brief, class counsel has not presented any evidence that watching the proposed video will actually improve class members' fuel economy or in what amounts. Doc. 119, 9:14-21. Indeed, class counsel offers estimates of the economic value of different levels of increased gas mileage, but disclaims any evidentiary support for the estimates, noting that they are "for illustrative purposes[.]" Doc. 145, 13:17.

In contrast to class counsel's admission that the information proposed for the DVD is already available to the public, Honda claims in its submission that "[t]he Fuel Economy DVD will . . . include information that is not readily obtainable on the Internet or in the public domain." Doc. 149, 12:26-13:13. Tellingly, Honda does not mention in its brief the "Preliminary Outline for Fuel Economy DVD" or objectors' declaration identifying multiple publicly-available sources for the information on the outline.

**F.  The Reaction to the Proposed Settlement by the States and the Class Militates Against Approval**.

Despite an amicus brief from twenty-six State Attorneys General urging the Court to reject the settlement (Doc. 120) and objections from seven class members represented by counsel (Doc. 117, 119, 123, & 129), six class members who objected *pro se* (Doc. 148-2, Exh. A), and several other class members who opted-out specifically because they object to the terms of the settlement (*see, e.g.,* Doc. 148-2 at 37 and 44; Doc. 137-2 Opt-Out Nos. 535, 536, 544, 551, 552, 566, 572, 577, and 582), class counsel asserts that the number of objectors relative to the total size of the class favors final approval of the settlement. Class counsel is wrong.

More than 99% of the class members did not respond to the notice. Class counsel, however, speaks as if silence is tantamount to acceptance. In fact, "[t]he vast majority

of class members have no ability to evaluate the fairness of the proposed settlement. The court must thus rely upon its own investigation and the input of the few objecting class members who do have the resources to provide the court with pertinent information." *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1994 WL 593998, at *5 (E.D. La. 1994). "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re GM Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995).

As Christopher R. Leslie explains in *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 119-20 (2007):

> If silence were acceptance, then we would expect the silent class members to actually participate in the settlement after it is approved. We do not see this . . . . There are so many examples of shockingly low participation rates that what used to be extreme is becoming ordinary . . . . Response rates are particularly low in coupon-based settlements, where settlement coupon redemption rates are as low as 0.002%. In most coupon settlements, the vast majority of class members received absolutely nothing from the class action settlement. It would simply be irrational to infer that these class members embraced the settlement.

**G. Plaintiffs' Motion for Attorney Fees Lacks the Detailed Billing Records Required for the Court to Determine if the Requested Fee Is Reasonable.**

Although the motion for attorneys fees will be moot if, for the reasons explained above, the Court denies final approval to the settlement, we note that class counsel has not submitted detailed billing records to support the requested fee. The need for such records is particularly acute here, because under the "clear sailing" provision, class counsel will face no objections from Honda as to the amount of fees, and class counsel has a strong incentive to accept a settlement that provides less for the class "in

exchange for red carpet treatment on fees." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991). Thus, for the Court to act as a guardian of absent class members who will be bound by the settlement, the Court must review detailed billing records to determine if the hours claimed were necessary, reasonable, and non-duplicative.

## CONCLUSION

The Court should deny final approval of the proposed class action settlement.

Respectfully submitted,

*/s/ Michael T. Kirkpatrick*
Michael T. Kirkpatrick (admitted *pro hac vice*)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
Telephone: (202) 588-1000
Fax: (202) 588-7785
E-mail: mkirkpatrick@citizen.org

Stephen E. Webber (Cal. Bar. #60164)
Attorney at Law
3435 Wilshire Blvd., Suite 1800
Los Angeles, CA 90010
Telephone: (818) 484-8650
Fax: (818) 484-8651
E-mail: sewebberlaw@gmail.com

Attorneys for Objectors Goldberg, Nannery, and Burghardt

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the CM/ECF system which will automatically generate a Notice of Electronic Filing (NEF) and send it by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service.

*/s/ Michael T. Kirkpatrick*

Michael T. Kirkpatrick

MEMORANDUM OF OBJECTORS GOLDBERG, NANNERY, AND BURGHARDT
IN RESPONSE TO PLAINTIFFS' MOTION FOR FINAL APPROVAL