THEODORE H. FRANK (SBN 196332)
    tedfrank@gmail.com
M. FRANK BEDNARZ (*pro hac vice*)
    frank.bednarz@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 23-6
Washington, DC 20036
(703) 203-3848

Attorney for Objector Robyn Major

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION - RIVERSIDE

| | |
|---|---|
| John True, *et al.*, <br><br>    *Plaintiffs*, <br><br>  vs. <br><br>American Honda Motor Company, Inc., <br><br>    *Defendant*. <br><br>Robyn Major, <br><br>    *Objector*. | Case No. 07-cv-00287 VAP (OPx) <br><br>**CLASS ACTION** <br><br>**MEMORANDUM OF OBJECTOR ROBYN MAJOR IN RESPONSE TO PLAINTIFFS' MEMORANDA FOR FINAL APPROVAL, RESPONSE TO OBJECTORS, AND MOTION FOR ATTORNEYS FEES** <br><br>Judge:    Virginia A. Phillips <br>Date:     February 22, 2010 <br>Time:    2:00 p.m. <br>Courtroom: 2 |

# INTRODUCTION

In response to a number of objections and an *amicus* brief representing twenty-six states, each of which urge this Court to reject the proposed settlement, American Honda Motors Co., Inc. ("Honda") and plaintiffs' counsel agreed to five "clarifications and/or *de minimis* modifications to the Agreement." Dkt. No. 145-2 at 2-3. In particular, the parties agreed:

1. That the settlement does not preclude class members from participating in enforcement actions by regulatory agencies;
2. To expand the list of eligible vehicles so that the rebate coupons may be redeemed on *any* new Honda or Acura vehicle;
3. That the few class members eligible to submit a claim for $100 cash payment may now also redeem a coupon on a new Honda or Acura;
4. That the class is assured twelve months to redeem their coupon rebates;
5. That class members are no longer required to view a fuel economy video in order to submit a claim.[1]

Although these changes marginally improve the starkly unfair proposed settlement, they are every bit as "*de minimis*" as described by the parties, and they do not fully answer the issues raised by Objector Robyn Major. Ms. Major still objects. *First*, the proposed settlement is still worse than similar settlements in the past, and Ms. Major—like the majority of absent class members—would receive nothing of value. *Second*, the plaintiffs' counsel have breached their duty to the class by awarding themselves with fees that cannot revert to the class's benefit. *Third*, should this court approve the settlement, it must follow the requirements of the Class Action Fairness Act (CAFA), hold an

---

[1] The parties fashion this revision as a "clarification," but it is clear that class members were previously required to watch the fuel economy video. Indeed, the settlement agreement stipulated that class members who were *not* able to view the video online would have to call the settlement administrator and make alternate arrangements to "view the Fuel Economy Video in order to obtain a Preassigned Claim Number and Claim Form." Agreement, ¶ 5.

evidentiary hearing on the settlement's fairness, and defer attorney fee awards until this Court can quantify the actual benefits received by the class: after CAFA, predictions and estimates are simply not permitted in lieu of actual numbers. Finally, neither the objector's "status" nor the supposed dearth of objections weighs in favor of approving the proposed settlement.

Ms. Major also takes issue with the scurrilous *ad hominem* attacks on her counsel, which provide no legal basis for rejecting her objection.

## I.     The Proposed Settlement Remains Poor And Is Worse Than Comparable Settlements That Resulted In Dismal Class Recovery.

The plaintiffs continue to insist that the settlement should be approved because of their far-fetched value estimates. The DVD is still said to be worth "between $7,427,477 and $29,709,911" while the coupon portion of the settlement is supposed to result in "$16,183,172" of rebates to the class. Dkt. No. 145 at 13. These estimates are not credible, and the proposed settlement remains worse than prior settlements that have resulted in pitiful class recovery.

The inexpertly estimated value for the DVD should be zeroed out when evaluating the fairness of the settlement. Plaintiffs' counsel appraised the value of the DVD using back-of-the-envelope calculations inserted into their Memorandum for Preliminary Approval. *See* Dkt. No. 105 at 10-12. Instead of estimating the DVD's actual value to members of the class (the only appropriate measure of class recovery), plaintiffs' counsel computed what they imagine the class might save if they follow mileage-enhancing tips that might be contained on the DVD.[2] Plaintiffs counsel did not identify any source for the magnitude of mileage savings, nor did plaintiffs explain why 100% of the class would diligently follow advice of the DVD when their primitive estimate suggests that 0% of the

---

[2] Plaintiffs have disclaimed the estimates as "for illustrative purposes only," although they use the figures as part of the proposed settlement's "estimated total value." Dkt. No. 105 at 11 note 23; Dkt. No. 145 at 13.

class is currently doing anything to improve their mileage.[3]  Plaintiffs' generous estimates suggest that the class would value the DVD at $46.82 to $187.28 per copy, *id.*, but Objector Robyn Major finds it difficult to imagine that class members would prefer the DVD over a check for $40 dollars, much less $187.  Ms. Major, for one, says the DVD is "worthless to me."  Exhibit 1, Declaration of Robyn Major at ¶ 11.  "Precisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund."  *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).

The estimated value for coupon recovery is similarly unrealistic in the face of non-CAFA automotive settlements that have resulted in dismal class redemption of less than 2% cited by objectors.  *See* Dkt. No. 117 at 5, 119 at 13-14.  In *White v. Gen. Motors Corp.*, 835 So. 2d 892 (La. App. 1 Cir. 2002), only 1.7% of class members redeemed the superior $1000 coupon offered by that settlement.[4]  A more recent settlement with similar terms occurred in *Ford Explorer Cases*, J.C.C.P. Nos. 4266 & 4270 (Cal. Sup. Ct., Sacramento).  **Only 75 coupons** in a 1 million member class had been used halfway through the redemption period.   A redemption rate between 0.2% and 1.7% is likely in this case.  *See* Dkt. No. 119-10 at 5.  Plaintiffs' expert Xavier Dreze does not explain why he expects so many more class members to participate in this settlement than in comparable settlements, because Dr. Dreze does not discuss comparable automotive coupon settlements at all.  *See* Dkt. No. 104, Exh. C.  Plaintiffs' counsel has taken it upon

---

[3] Plaintiffs multiply the unsupportable savings estimate by 158,639 class members imagining that each and every one of them would reap benefits.  *See* Dkt. No. 105 at 12.

[4] The details on redemption in this settlement are found in the Declaration of Clarence Ditlow, Dkt. No. 119-10.  Mr. Ditlow, Executive Director of Public Citizen's Center for Auto Safety, has participated in many automotive coupon settlements.  From these cases, he estimates the redemption rates here as no higher than "2% to 4%."  *See id.* at 3-4, 8.  The Declaration Xavier Dreze, in contrast, evinces no awareness of other automotive coupon settlements, let alone any basis for estimating 20-40% response rates.  Dkt. No. 104-1 at 40-55. Part of the problem is that Dr. Dreze assumes a two-year window for coupon availability, rather than the actual twelve month window. *Id.* at 43.

themselves to distinguish the indistinguishable relief offered by the proposed settlement.

First, plaintiffs' counsel argues—without evidentiary support—that the prior settlements are incomparable because they involve "defective or dangerous vehicles." Dkt. No. 148 at 10.  Plaintiffs' counsel furthermore argues that Honda's superior brand loyalty will lead to higher coupon redemption. *Id.* at 11.  Plaintiffs' counsel apparently imagines that consumers harmed by alleged fraud will be exuberant repeat customers. This is not so with Objector Robyn Major: "I feel betrayed by Honda, and I will not be buying from them again." Exhibit 1, Declaration of Robyn Major.  Moreover, in other contexts, plaintiffs' counsel realizes that class members may be reluctant to buy new Honda vehicles.  For example, plaintiffs have self-servingly claimed that several vehicles were previously excluded from the settlement because they assumed that unhappy class members "would not be interested in purchasing another hybrid Honda vehicle." Dkt. No. 145 at 7.  This statement, while dubious in its causal reasoning,[5] shows that plaintiffs' counsel recognizes that aggrieved class members wishing to buy another hybrid might instead turn to another manufacturer.  While it's true Honda has higher brand loyalty than Ford or General Motors, this difference is a matter of percentage points and cannot explain why redemption in this settlement should be an *order of magnitude* higher than previous cases.

In any event, the GMC settlement did not rely upon customer loyalty because the coupons involved in that settlement were fully transferable.  These coupons could be sold to family, friends, and even a coupon market maker, providing the class with recovery that could be converted into cash.  Even with this significant advantage over the proposed settlement, only 1.7% of the GMC class used their coupon recovery.

---

[5] In addition to hybrid vehicles, the settlement originally excluded the Honda Fit, an economy car that is clearly a non-hybrid—as plaintiffs' counsel should have realized in one of the 8129.3 hours they reportedly devoted to this case.  While not a hybrid, the Honda Fit was in high demand when the settlement agreement was signed, suggesting that the exclusion was a benefit to Honda rather than the class.

In fact, the proposed settlement remains significantly *worse* than *White v. GMC*, and comparable to *Ford Explorer Cases*, which has a shockingly-low redemption rate:

|  | *White v. GMC* | *Ford Explorer* | Proposed Settlement |
|---|---|---|---|
| **Relief granted** | **$1000** coupon on most GM vehicles, may be combined with other coupons | $300-500 on any new Ford, Lincoln, or Mercury | $500-1000 on any new Honda or Acura |
| **Coupons transferable?** | **Yes**—transferable to anyone as a $500 coupon | Only to family members | Only the $500 coupon, and only to family members |
| **Redemption period** | **15 months** | 12 months | 12 months |
| **Redemption rate** | **1.7%** | **0.17%** (at most) | ? |

Given that the proposed settlement still has materially worse terms than a settlement that resulted in 1.7% class redemption, the plaintiffs' settlement value is closer to $2 million, rather than $16 million, and should not be approved, even as amended.

## II. Class Counsel Have Breached Their Fiduciary Duty To The Class.

In moving for final approval of the settlement, the plaintiffs fail to address a significant term of the Settlement Agreement—the clear sailing agreement for plaintiffs' attorney fee request of $2.95 million. Agreement ¶¶ 31-32. This provision must be considered when evaluating the fairness of the proposed settlement.

In this settlement, the plaintiffs have negotiated $2.95 million for their counsel—whether or not the class secured proportional relief from this coupon settlement. This provision cannot possibly benefit the class. When defendant Honda determined that it would settle this action, it was indifferent about how their checks would be distributed, so every dollar negotiated on behalf of plaintiffs' counsel is a dollar that could have as easily been awarded to the class. In a typical common fund settlement, the district court may use its discretion to award smaller fees than requested by plaintiffs' counsel—when it does so, the class benefits from the surplus. Under the proposed settlement, should the Court award less than the $2.95 million that defendant Honda has already agreed to pay,

the only beneficiary is Honda. The form of proposed settlement is therefore strictly worse for the class than a common fund, yet plaintiffs feel no comment is necessary to approve this inferior settlement structure.

"Separate" attorneys' fees should be treated as bargained recovery from Honda that parties have earmarked exclusively for the benefit of plaintiffs' counsel.

"There is no exception in Rule 23(e) for fee provisions contained in proposed class action settlement agreements. Thus, to avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). There is good reason for this: "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Id.* at 964.

"That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." *Id.* A "defendant is interested only in disposing of the total claim asserted against it." *Id.* "The rationale behind the percentage of recovery method also applies in situations where, although the parties claim that the fee and settlement are independent, they actually come from the same source." *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820-21 (3rd Cir. 1995). "[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case." *Id.* at 821. "[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal." *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996).

Because the class counsel, by failing to negotiate for reversion to the class of any denied fee request, have put their own interests ahead of the class's, the settlement should

not be deemed fair or adequate.

### III. The Uncertainty of Class Recovery and CAFA Require This Court to Award Fees Based on Actual Realized Recovery.

"Coupon settlements are not prohibited," plaintiffs correctly state in response to the objectors and *amici*. Dkt. No. 148 at 8. But this misses the point. *This* coupon settlement will provide little or no value to the class. Such low-value settlements where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value" were a key concern that Congress expressed when enacting the Class Action Fairness Act ("CAFA"). Pub.L. 109-2, § 2(a)(3)(A).

For this reason, CAFA imposes special requirements on coupon settlements:

> If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

28 U.S.C. §1712(a). Plaintiffs have claimed that their requested fees award is reasonable in light of the coupon relief. Plaintiffs' counsel has argued that "15% percent [sic] of the estimated value of the Settlement" is a fair fee award. Dkt. No. 105 at 18. Indeed, a 15% fee award *would* be a presumptively reasonable fee if the class were to actually recover $16 million in rebates. Therefore, if this Court approves the settlement as fair based on plaintiffs' counsel's representations of expected recovery, attorneys' fees should become contingent on these estimates. This Court should defer the fee determination so that fees can be calculated as a reasonable fraction of actual class recovery.

Ms. Major maintains, however, that the proposed settlement should be rejected outright given the poor terms of relief available to the class, especially in contrast to the fees that class counsel have secured for themselves.

### IV. Plaintiffs' "Professional Objector" Argument is Baseless.

Rather than address Ms. Major's objection, Plaintiffs attempt to denigrate it by casting aspersions on the "status and intentions" of one of her attorneys, who they claim is

a "professional objector."[6] Dkt. No. 148 at 17-18. This *ad hominem* attack is baseless on both the facts and the law, and provides no reason to ignore Mr. Major's objection.

### A. Ms. Major Is The Objector, Not Her Attorney.

Ms. Major is a member of the class aggrieved by a settlement that grants millions of dollars to the putative class attorneys, but absolutely no benefit to her. Ms. Major sought out the Center for Class Action Fairness because of its expertise in objecting to unfair class action settlements. *See* Exhibit 1, Declaration of Robyn Major, ¶ 15-17. It is hardly unreasonable for Ms. Major to choose an attorney who specializes in class action settlement objections when she wishes to bring an objection to a class action settlement— is she supposed to retain a family-law attorney? Yet Plaintiffs denigrate this class member because of her choice of attorney.

Ms. Major has brought this objection because she believes that she has been "defrauded out of thousands of dollars" and finds it unfair that she will obtain "absolutely nothing of value" from the proposed settlement. *Id.* at ¶ 9. Her attorney's alleged views on these or any other subject are not relevant because he is not the objector.[7]

### B. The Center For Class Action Fairness Is A Public Interest Law Firm.

A number of "professional objectors" are for-profit attorneys that attempt to or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. But this is not the business model of The Center for Class Action Fairness. *See* Exhibit 2, Declaration of Theodore H. Frank.

The Center for Class Action Fairness, founded by legal academic and attorney Theodore H. Frank in 2009, is a non-profit public-interest law firm that represents

---

[6] Plaintiffs similarly smear several other objectors' counsel. Apparently objectors may only seek lawyers inexperienced in class action settlements or risk having their objections dismissed as the handiwork of a "professional objector."

[7] Plaintiffs make a number of strikingly false assertions about Theodore H. Frank. These are rebutted in his Declaration. *See* Exhibit 2.

consumers *pro bono* as part of the 501(c)(3), DonorsTrust. While the Center specializes in the law of objections to class action settlements, it makes no effort to engage in *quid pro quo* settlements to extort attorneys, and has never settled an objection. The Center does not "indiscriminately" bring objections, but analyzes complaints from consumers aggrieved by class action settlement notices to determine whether a settlement is objectionable under the law because it favors attorneys over class members. The Center's litigation on behalf of consumers has been favorably covered by *Forbes* magazine, the *National Law Journal*, and in the March 2010 issue of the *ABA Journal*, among others.

The Center's president, Theodore H. Frank, is a graduate of the University of Chicago Law School, which he attended on a Public Service Scholarship. Mr. Frank is an elected member of the American Law Institute, and has written and spoken across the country about class action law and the principal-agent problems in class action settlements, including being quoted in the *New York Times*, *Wall Street Journal*, *Chicago Tribune*, and a number of legal journals on the subject.

There is no factual or legal basis for disfavoring the Center's objections simply because it is a public-interest law firm that specializes in bringing *pro bono* objections to class-action settlements on behalf of consumers.

## V.    The Silence of Class Members Does Not Imply Support.

The Settling Parties contend that the ten formal objections to the proposed settlement imply that 176,990 silent class members support the settlement.

In fact, this Court has received significant objections to the settlement. Most tellingly, **twenty-six states** filed an *amicus* brief with this Court urging that the settlement be denied. *See* Dkt. No. 120. Additionally, four groups of objectors represented by counsel have submitted substantive legal memorandum objecting to settlement. *See* Dkt. Nos. 117, 119, 123 & 129. Many other class members have objected *pro se* or opted out; many opt outs were critical of the settlement. Parties have made no effort to poll a representative sample of the putative class members, and they have no basis to claim the class has reacted positively.

The silence of the majority should not be confused for approval. "Acquiescence to a bad deal is something quite different than affirmative support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1137 (7th Cir. 1979) (reversing approval of settlement).

The absence or silence of class members "does not relieve the judge of his duty and, in fact, adds to his responsibility." *Norman v. McKee*, 290 F. Supp. 29, 32 (N.D. Cal. 1968) (denying approval of inadequate securities settlement), *aff'd* 431 F.2d 769 (9th Cir. 1970). The settlement's proponents have the burden to show the proposed settlement is fundamentally fair, adequate, and reasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Putative Class Attorneys have simply not carried this burden, so final approval of settlement should be denied.

## CONCLUSION

The Court should not be snowed by the parties' linguistic hoop-jumping, the parties' last-minute deletion of the least supportable provisions of the settlement, or the parties' *ad hominem* attacks on objectors. This is an "[a]busive class action settlement[] in which plaintiffs receive promotional coupons … while class counsel receive large fees,"[8] and if Rule 23(e) is to mean anything, this settlement should be rejected. If the settlement is approved, CAFA requires that any attorneys' fees—be they that of the class attorneys or the objectors—be based upon the final redemption rate of the coupons.

Dated: February 18, 2010

Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank
**CENTER FOR CLASS ACTION FAIRNESS**
Attorneys for Objector Robyn Major

---

[8] S. Rep. 109-14 at 32, U.S. Code Cong. & Admin. News 2005, pp. 3, 32.

## PROOF OF SERVICE

I hereby certify that this document was filed through the CM/ECF system which will automatically generate a Notice of Electronic Filing (NEF) and send it by e-mail to all attorneys in the case who are registered as CM/ECF users and have consented to electronic service. In addition, I caused service by first-class mail to be performed on

Matthew Wiener
Cuneo Gilbert & LaDuca LLP
507 C Street N.E.
Washington, DC 20002

Matthew P Kelly
Winston & Strawn LLP
333 South Grand Avenue
38th Fl
Los Angeles, CA 90071

this 18th day of February, 2010.

                                                /s/ Theodore H. Frank
                                                Theodore H. Frank