THE CONSUMER LAW GROUP
Alan M. Mansfield (SBN 125998)
alan@clgca.com
9466 Black Mountain Road, Suite 225
San Diego, CA 92126
Tel: (619) 308-5034
Fax: (888) 341-5048

Michael E. Lindsey (SBN 99044)
mlindsey@nethere.com
4455 Morena Blvd., Ste. 207
San Diego, CA 92117-4325
Tel: (858) 270-7000

DOYLE LOWTHER LLP
William J. Doyle II (SBN 188069)
bill@doylelowther.com
John A. Lowther IV (SBN 207000)
john@doylelowther.com
James R. Hail (SBN 202439)
jim@doylelowther.com
9466 Black Mountain Road, Suite 210
San Diego, CA 92126
Tel: (619) 573-1700

Attorneys for Plaintiffs

[Additional Counsel Appear On Signature Page]

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| LOGAN AND ANITA LOCKABEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 37-2010-00087755-CU-BT-CTL<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND DIRECTING DISSEMINATION OF CLASS NOTICE**<br><br>Hearing Date Set at 7/22/11 Case Management Conference<br><br>Date:            **September 30, 2011**<br>Time:            **1:30 p.m.**<br>Courtroom:  **C-72**<br>I/C Judge:    **Hon. Timothy Taylor**<br><br>**Complaint Filed:  March 15, 2010** |

TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 30, 2011, at 1:30 p.m., or as soon thereafter as the parties may be heard, in Department C-72 of the above-entitled Court, located at 330 West Broadway, San Diego, California 92101, Plaintiffs' will move this Court for entry of an Order Preliminarily Approving Settlement and Directing Dissemination of Class Notice.

This Motion shall be made under Cal. Rule of Court 3.769(g) and (h), which requires this Court conduct a preliminary inquiry into the fairness of the proposed settlement. For the reasons detailed in the accompanying papers, the settlement negotiated by the parties is fair, reasonable and adequate, and should be preliminarily approved. The Plaintiffs, therefore, request this Court grant the following:

a)   preliminary approval of Plaintiffs' proposed settlement with Defendant;

b)   conditional certification of a class for settlement purposes and approval of the form and program of class notice as described more fully in the parties' Settlement Agreement and supporting papers; and

c)   approval of a schedule of various deadlines, leading up to a hearing before the Court in March 2012 to determine whether the proposed settlement should be finally approved and judgment entered pursuant to Cal. R. of Ct. 3.769(g).

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in Support of Motion for Entry of Order Preliminarily Approving Settlement and Directing Dissemination of Class Notice, the Joint Declaration of Alan M. Mansfield and Nicholas E. Chimicles, the pleadings on file and the information referenced in these papers, and any argument or evidence that may be presented at the hearing on this matter.

Dated: September 2, 2011                    THE CONSUMER LAW GROUP

By: _____
        Alan M. Mansfield (SBN 125998)
        alan@clgca.com
        9466 Black Mountain Road, Suite 225
        San Diego, CA 92126
        Tel: (619) 308-5034
        Fax: (888) 341-5048

2

1  
2  
3  

MICHAEL E. LINDSEY
mlindsey@nethere.com
4455 Morena Blvd., Ste. 207
San Diego, CA 92117-4325
Tel: (858) 270-7000

4  
5  
6  
7  
8  

DOYLE LOWTHER LLP
William J. Doyle II (SBN 188069)
bill@doylelowther.com
John A. Lowther IV (SBN 207000)
john@doylelowther.com
James R. Hail (SBN 202439)
jim@doylelowther.com
9466 Black Mountain Road, Suite 210
San Diego, CA 92126
Tel: (619) 573-1700

9  
10  

Attorneys for Plaintiffs Lockabey and Castrejon

11  
12  
13  
14  

CUNEO GILBERT & LADUCA, LLP
Jon Tostrud (SBN 199502)
tostrud@yahoo.com
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Tel: (310) 418-8262
Fax: (310) 556-9622

15  
16  
17  
18  

CUNEO GILBERT & LADUCA, LLP
Jonathan W. Cuneo (*Pro Hac Vice*)
William H. Anderson (*Pro Hac Vice*)
507 C Street, NE
Washington, DC 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

19  
20  
21  
22  

CHIMICLES & TIKELLIS, LLP
Nicholas E. Chimicles (*Pro Hac Vice pending*)
Alison G. Gushue (*Pro Hac Vice pending*)
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: (610) 649-3633

23  
24  

Attorneys for Plaintiffs John True, Gonzalo M.
Delgado, Kevin Thieben, Ronda Gibble, Gary
Stouch, Roy D. Sherrid and Branka Krsul

25  
26  
27  
28  

3

NOTICE OF MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT

THE CONSUMER LAW GROUP
Alan M. Mansfield (SBN 125998)
alan@clgca.com
9466 Black Mountain Road, Suite 225
San Diego, CA 92126
Tel: (619) 308-5034
Fax: (888) 341-5048

Michael E. Lindsey (SBN 99044)
mlindsey@nethere.com
4455 Morena Blvd., Ste. 207
San Diego, CA 92117-4325
Tel: (858) 270-7000

DOYLE LOWTHER LLP
William J. Doyle II (SBN 188069)
bill@doylelowther.com
John A. Lowther IV (SBN 207000)
john@doylelowther.com
James R. Hail (SBN 202439)
jim@doylelowther.com
9466 Black Mountain Road, Suite 210
San Diego, CA 92126
Tel: (619) 573-1700

Attorneys for Plaintiffs
[Additional Counsel Appear On Signature Page]

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| LOGAN AND ANITA LOCKABEY, et al., | Case No. 37-2010-00087755-CU-BT-CTL |
| Plaintiffs, | **CLASS ACTION** |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND DISSEMINATION OF CLASS NOTICE** |
| AMERICAN HONDA MOTOR CO., INC., and DOES 1 through 50, inclusive, | |
| Defendants. | Date:          September 30, 2011 |
| | Time:          1:30 p.m. |
| | Courtroom:   C-72 |
| | I/C Judge:    Hon. Timothy Taylor |
| | Complaint Filed: March 15, 2010 |

# **TABLE OF CONTENTS**

**Page**

A.   BACKGROUND OF RELATED ACTIONS..................................................... 1

B.   STANDARDS GOVERNING PRELIMINARY SETTLEMENT
       APPROVAL .............................................................................................. 3

C.   DESCRIPTION OF SETTLEMENT AND FACTORS CONSIDERED............. 6

D.   CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES
       AND THE FORM OF CLASS NOTICE IS APPROPRIATE ........................... 10

       1.   Certification of the Settlement Class is Appropriate.................................. 10

       2.   The Form of Class Notice is Appropriate................................................... 12

E.   DATES FOR THE PRELIMINARY APPROVAL ORDER .............................. 14

F.   CONCLUSION................................................................................................ 15

P&As ISO JT. MOTION FOR ORDER PRELIMINARILY APPROVING SETTLEMENT

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES**

*Grunin v. Int'l House of Pancakes* (8th Cir. 1975) 513 F.2d 114..................................14

*In re BankAmerica Corp. Secs. Litig.* (E.D. Mo. 2002) 210 F.R.D. 694.........................14

*In re M.L. Stern Overtime Litig.* (S.D. Cal. 2009, Adler, J.) 2009 U.S. Dist. LEXIS 31650............................................................................................................4

*In re Salomon Inc. Sec. Litig.* (S.D.N.Y. June 15, 1994) 1994 U.S. Dist. LEXIS 8038...............5

*In re Tableware Antitr. Litig.* (N.D. Cal. 2007) 484 F.Supp.2d 1078 ............................5

*Miller v. Republic Nat'l Life Ins. Co.* (5th Cir. 1977) 559 F.2d 426 ...........................14

*Officers for Justice v. Civil Serv. Comm'n* (9th Cir. 1982) 688 F.2d 615, *cert. den.* (1983) 459 U.S. 1217 ...........................................................................................3

*Torrisi v. Tuscon Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370....................................12

*United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.* (7th Cir. 1971) 471 F.2d 647 ...........................................................................................................14

**STATE CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135 ...........12

*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43 ..............................................5, 13

*Daniels v. Centennial Group, Inc.* (1992) 16 Cal.App.4th 467 ...................................11

*Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794 ..........................................4, 5

*In re Vitamin Cases* (2003) 107 Cal.App.4th 820....................................................12

*McGhee v. Bank of America* (1976) 60 Cal.App.3d 442 ...........................................3

*Richmond v. Dart Indus., Inc.* (1981) 29 Cal.3d 462...............................................2, 3

*Trotsy v. Los Angeles Fed. Sav. & Loan Ass'n* (1975) 48 Cal.App.3d 134 ..................12

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224 ............................6, 11, 13

**STATE STATUTES AND REGULATIONS**

California Civil Code

    Section 1781...........................................................................................2, 11, 13

- ii -

1

**TABLE OF AUTHORITIES**

2
**Page**

3

**STATE STATUTES AND REGULATIONS (CONT'D)**

4

California Code of Civil Procedure

5

    Section 382.................................................................................. 11

6

**STATE RULES**

7

California Rules of Court

8

    Rule 3.766 ........................................................................... 12, 13
    Rule 3.769 ................................................................. 2, 3, 4, 12, 13

9

**OTHER**

10

Best Notice Practicable in the Twenty-First Century, 2003 UCLA J.L. Tech 4 ......................... 13

11

*Manual for Complex Litigation, 4ᵗʰ*

12

    §13.14 at 173 (Fed. Jud. Ctr. 2004) ..................................................... 4
    §21.632-633 at 321 ...................................................................... 4, 5

13

14

*Newberg on Class Actions* (3d ed. 1992)

15

    §11.41 at 11-88 .......................................................................... 5

16

17

18

19

20

21

22

23

24

25

26

27

28

A.     **BACKGROUND OF RELATED ACTIONS**

On March 9, 2007, plaintiff John True filed a lawsuit in the United States District Court for the Central District of California against American Honda Motor Co., Inc. ("AHM") on behalf of himself and a proposed class of purchasers and lessees of Honda Civic Hybrid ("HCH") vehicles during the period of March 1, 2003 through March 1, 2007 ("*True* Lawsuit"). The *True* Lawsuit charged that the fuel economy estimates AHM advertised for the HCH could not be achieved in typical normal driving conditions ("False Advertising Claims"). After denial of a motion to dismiss the action, an Amended Complaint was filed adding plaintiff Gonzalo Delgado and extending the class period to June 1, 2007.

On August 27, 2009, the United States District Court for the Central District of California granted preliminary approval of a settlement of the *True* Lawsuit and authorized notice of that settlement to be sent to the proposed settlement class ("*True* Settlement"). However, on February 26, 2010, that Court denied, without prejudice, a motion seeking final approval of the *True* Settlement.

On March 15, 2010, Logan and Anita Lockabey filed a lawsuit in the California Superior Court for the County of San Diego against AHM on behalf of themselves and a California Class of model year 2005-2009 HCH purchasers and lessees, alleging similar False Advertising Claims ("*Lockabey* Lawsuit"). On July 13, 2010, plaintiff Kevin Thieben filed a lawsuit in Los Angeles County Superior Court against AHM on behalf of himself and a California Class of model year 2003-2008 HCH purchasers, which also asserted False Advertising Claims ("*Thieben* Lawsuit").

In August 2010, Defendant AHM notified owners of model year 2006-2008 HCHs of a software update to the Integrated Motor Assist battery system ("Software Update"). On August 17, the *Thieben* Lawsuit was amended to add claims that the Software Update negatively impacted the fuel economy and performance of model year 2006-2008 HCHs ("Software Update Claims"). On August 18 and August 20, 2010, Plaintiffs Gary Stouch, Branka Krsul, Roy Sherrid, and Ronda Gibble filed two lawsuits against AHM on behalf of themselves, a proposed class of model year 2003-2008 HCH owners, and a subclass of model year 2006-2008 HCH owners ("*Stouch* and *Gibble* Lawsuits") alleging False Advertising Claims and Software Update

1

Claims.  In *Lockabey*, an Amended Complaint was subsequently filed adding plaintiff Tomas Castrejon and claims on behalf of a Subclass of model year 2006-2008 HCH owners and lessees, asserting the Software Update Claims on their behalf.

On September 2, 2011, a Stipulation for Leave to File Second Amended Complaint was filed in the *Lockabey* Lawsuit to include the plaintiffs and their counsel in the related actions set forth above, including the *True*, *Thieben*, *Stouch* and *Gibble* Actions, as well as to assert claims on behalf of a multi-state class ("Second Amended Complaint").  AHM denies the allegations in all of the above identified lawsuits as well as in the Second Amended Complaint, denies that it has engaged in any wrongdoing, and specifically denies the False Advertising Claims and Software Update Claims described above and asserted in the Lawsuits and the Second Amended Complaint.

After completion of both formal and informal discovery and after many months of extensive negotiations overseen by the Hon. Howard B. Wiener (Ret.), the parties have reached a settlement.[1] Since that time, counsel have drafted and revised settlement papers and these moving papers.  The settlement papers have been signed by all party representatives.  All the Plaintiffs submit this Joint Motion for Order Preliminarily Approving Settlement and Dissemination of Class Notice pursuant to California Rule of Court 3.769(c).

Good cause exists to grant this Motion and enter the proposed Preliminary Approval Order that is submitted with this Motion ("Preliminary Approval Order").  The proposed settlement meets the criteria for granting both preliminary and final settlement approval, as it is well within the range of what would ultimately be approved as fair, reasonable, and adequate.  The proposed settlement was negotiated at arms'-length by experienced counsel and with the assistance of a mediator with substantial experience is mediating complex matters.

Under California Civil Code §1781(f), which courts have looked to for guidance for procedures applicable to consumer class actions generally, *Richmond v. Dart Indus., Inc.* (1981)

---

[1] After denial of final approval in *True*, the *True* parties also engaged in additional in-person mediation with the Hon. William A. Cahill (Ret.). Class Counsel Decl. at ¶ 7.

29 Cal.3d 462, 468 n.7, and California Rule of Court 3.769(c), the settlement described in the Settlement Agreement and Release dated as of May 24, 2011 ("Agreement"),[2] submitted as Exhibit 1 to the Declaration of Class Counsel in Support of Motion for Entry of Order Preliminarily Approving Settlement and Dissemination of Class Notice filed concurrently herewith, is subject to Court approval after a preliminary and final approval hearing and notice to the proposed Settlement Class. The Plaintiffs request that the Court take the first step in this process and preliminarily approve this settlement by entering the proposed Preliminary Approval Order and approving the form of notice to be sent to the Settlement Class. That Order directs dissemination of class notice to more than 200,000 HCH owner and lessees, and accomplishes the following:

    a)      preliminarily approves Plaintiffs' proposed settlement with Defendant;

    b)      certifies a class for settlement purposes and approves the form and program of class notice described in the Agreement; and

    c)      schedules various deadlines (set forth below) leading up to a hearing before the Court in March 2012 to determine whether the proposed settlement should be finally approved and judgment entered under Cal. R. of Ct. 3.769(g).

**B.      STANDARDS GOVERNING PRELIMINARY SETTLEMENT APPROVAL**

Settlements of disputed claims, particularly class actions, are favored by the courts. *Officers for Justice v. Civil Serv. Comm'n* (9th Cir. 1982) 688 F.2d 615, 625 *cert. denied* (1983) 459 U.S. 1217 ("voluntary conciliation and settlement are the preferred means of dispute resolution."). A class action may not be dismissed without both a preliminary and final approval hearing. Cal. R. of Ct. 3.769(a), (c) and (g). This Court, therefore, should review a settlement with the goal of protecting the interests of the other members of the class when it considers any request by the parties representing the class to settle a class action. *McGhee v. Bank of America* (1976) 60 Cal.App.3d 442. This Court has broad discretion to determine if a class action

/ / /

---

[2]  All capitalized terms in this Memorandum shall have the same meaning as their definition in the Agreement, if they are defined terms.

3

1  settlement is fair, reasonable and adequate.  *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794,

2  1801.

3       Preliminary approval is the first of a two-step process required to resolve a class action.

4  Cal. R. of Ct. 3.769(a), (c) and (g); see also *In re M.L. Stern Overtime Litig.*, (S.D. Cal. 2009,

5  Adler, J.) 2009 U.S. Dist. LEXIS 31650, *8-9.   First, the court preliminarily reviews the

6  settlement to determine whether it is sufficient to warrant notice and a hearing. *Manual for*

7  *Complex Litigation, 4th* §13.14 at 173 (Fed. Jud. Ctr. 2004) ("MCL 4th").  This initial assessment

8  is generally made on the basis of information already known to the Court that may be

9  supplemented by briefs, motions, and an informal presentation from the settling parties, if

10  requested.  At the preliminary approval juncture, the Court "will simply consider whether the

11  settlement is within the range of possible approval, such that there 'is any reason to notify the

12  class members of the proposed settlement and to proceed with a fairness hearing.'"  *In re M.L.*

13  *Stern Overtime Litig.,* 2009 U.S. Dist. LEXIS 31650 at *10.

14       Preliminary approval of a class action settlement permits notice of a hearing on final

15  settlement approval to be given to the members of the proposed Settlement Class, at which time

16  the court reviews the merits of the settlement.  *Id*.  In addition, both the settling parties and

17  members of the Settlement Class may be heard regarding whether to enter an order granting final

18  approval of the settlement. *Id*.

19       To determine whether preliminary approval is warranted, this Court considers whether the

20  proposed settlement is within the range of what, in a broad sense, is sufficiently fair, reasonable,

21  and adequate for notice of the proposed settlement to be given to class members and a hearing

22  scheduled to consider final settlement approval.  The MCL 4th defines the court's duty in this

23  regard as follows:

24      The judge must make a preliminary determination on the fairness, reasonableness,
   and adequacy of the settlement terms and must direct the preparation of notice of

25  the certification, proposed settlement, and date of the final fairness hearing. . . .

26                 * * *

27      Once the judge is satisfied as to the certifiability of the class and the results of the
   initial inquiry into the fairness, reasonableness, and adequacy of the settlement,

28  notice of a formal Rule 23(e) fairness hearing is given to the class members.

4

1   MCL 4th §21.632-633 at 321.

2       If a proposed settlement appears to be the product of serious, informed, non-collusive

3   negotiations overseen in part by a well-respected mediator; has no obvious deficiencies; and does

4   not improperly grant preferential treatment to class representatives or segments of the class and

5   falls within the range of possible approval, then preliminary approval is appropriate.  *In re*

6   *Tableware Antitr. Litig.* (N.D. Cal. 2007) 484 F.Supp.2d 1078, 1079.  There is a presumption that

7   a proposed settlement is fair and reasonable when it is the result of arms'-length negotiations.

8   *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 56; *Newberg on Class Actions* (3d ed. 1992)

9   §11.41 at 11-88.  As the court stated in *Dunk*, "[s]o long as the record . . . is adequate to reach an

10   intelligent and objective opinion of the probability of success should the claim be litigated and

11   form an educated estimate of the complexity, expense and likely duration of such litigation . . .

12   and all other factors relevant to a full and fair assessment of the wisdom of the proposed

13   compromise, it is sufficient." *Dunk,* 48 Cal.App.4th at 1802 (citations omitted, emphasis added).

14       The accompanying Joint Declaration of Nicholas E. Chimicles and Alan M. Mansfield

15   ("Class Counsel Decl.") sets forth the reasoning for why this settlement is fair, reasonable, and

16   adequate. This settlement is the result of lengthy and hard fought  negotiations that were non-

17   collusive and entered into after the extensive review of relevant information.  Class Counsel Decl.

18   ¶¶ 4-7. Counsel on both sides are experienced practitioners in class action litigation and were both

19   thoroughly familiar with the factual and legal issues raised by this litigation.  With the assistance

20   of Justice Wiener, a well-respected mediator who is well-versed in the field of consumer class

21   actions, the parties engaged in substantial negotiations regarding the terms of the Agreement

22   before agreeing to the final settlement terms. *Id.,* ¶ 7.  Parties in the related actions also engaged

23   in additional mediation with the Hon. William A. Cahill (Ret.) and Jonathan Marks of Marks

24   ADR prior to the mediation with Justice Wiener. The parties considered numerous relevant

25   factors before agreeing to this Settlement.  *Id.*  Courts recognize that the opinion of experienced

26   and informed counsel supporting settlement is entitled to considerable weight.  *In re Salomon Inc.*

27   *Sec. Litig.* (S.D.N.Y. June 15, 1994) 1994 U.S. Dist. LEXIS 8038, *42.

28   / / /

5

**C.**    **DESCRIPTION OF SETTLEMENT AND FACTORS CONSIDERED**

"In the context of a settlement agreement, the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 250 (citations omitted).

Plaintiffs believe this settlement is well within the range of approval, because the settlement terms are tailored to address the concerns raised by this litigation and offer substantial benefits to the Settlement Class.    Class Counsel Decl. ¶¶ 8-9, 21-22; *see also, Wershba*, 91 Cal.App.4th at 250 ("a settlement need not obtain 100 percent of the damages sought in order to be fair and reasonable").    Plaintiffs also believe that they have achieved relief that addresses the concerns expressed by the federal District Court in reviewing the *True* settlement.    Class Counsel Decl. ¶ 21.    If the Court approves the proposed settlement at the Final Approval Hearing and the settlement becomes final (i.e., no longer subject to appeal), AHM will provide the following benefits to Settlement Class and Subclass Members:

a.    **Cash Payments.**    All members of the Settlement Class who express dissatisfaction with the fuel economy they achieved in their HCHs will be entitled to receive a cash payment of $100.    Subclass members who (a) received the Software Updates and (b) are dissatisfied with the post-Software Update performance of their HCH will be eligible to receive an additional $100.    Subclass Members who did not receive the Software Updates or who are satisfied with the post-Software Update performance of their HCH will not be eligible to receive the additional $100.    To obtain a Cash Payment, the Settlement Class Member must submit a completed Claim Form to the Settlement Administrator within six (6) months of the Effective Date.    Claim Forms will be available on the Settlement Website within two (2) weeks of preliminary approval. Claim Forms received prior to the Effective Date will be processed after the Effective Date.

b.    **Rebate Certificates.**    In addition to the Cash Payment, all Settlement Class Members will be entitled to claim **ONE** of the following Rebate Certificate Options:

///

6

OPTION A:  A $1000 Rebate Certificate on the purchase or lease of a new Honda or Acura vehicle from an authorized Honda dealer, redeemable through the Settlement Administrator after purchase.  The Settlement Class Member must sell or trade his or her HCH and purchase or lease a new Honda or Acura vehicle from an authorized Honda dealer to redeem an Option A Rebate Certificate.  The Option A Rebate Certificate is nontransferable and may only be redeemed by the claiming Settlement Class Member. The Option A Rebate Certificate may be used in conjunction with all other offers from Honda or any authorized Honda or Acura dealer.  Subclass Members who do not elect to participate in the Alternative Dispute Resolution ("ADR") program and who select Option A will also receive an additional, fully-transferable $500 Rebate Certificate ("Option B", discussed in further detail below) on the purchase or lease of a new Honda or Acura vehicle from an authorized Honda dealership, for a total of $1500 in rebates.  Option A Rebate Certificates must be redeemed within 12 months of the date of issuance of the certificate.

In order to obtain the Option A Rebate Certificate, the Settlement Class Member must submit a completed Claim Form to the Settlement Administrator within six (6) months of the Effective Date.  To redeem this Rebate Certificate, the Settlement Class Member must submit the Rebate Certificate, along with  proof of purchase or lease of a new Honda or Acura Vehicle from an authorized Honda dealer and proof of sale or trade of their HCH to the Settlement Administrator between the Effective Date through the end of the Redemption Period.

OPTION B:  A $500 fully-transferable Rebate Certificate on the purchase or lease of a new Honda or Acura vehicle from an authorized Honda dealership, redeemable through the Settlement Administrator after purchase.  *The Settlement Class Member need not sell or trade their HCH to claim an Option B Rebate Certificate.*  Option B Rebate Certificates are fully transferable, saleable and may be used in conjunction with all other offers.  As noted above, Subclass Members who do not elect ADR and who select Option B will receive two (2) fully-transferable $500 Rebate Certificates, for a total of $1000 in

7

fully-transferable Rebate Certificates.  Option B Rebate Certificates must be redeemed by the Settlement Class Member or their transferee(s)[3] on or before the date that will be set forth on the Rebate Certificate.

In order to obtain the Option B Rebate Certificate, the Settlement Class Member must submit a completed Claim Form to the Settlement Administrator within six(6) months of the Effective Date.   To redeem the Option B Rebate Certificate, the Settlement Class Member (or his or her transferee) must submit the Rebate Certificate and proof of and purchase or lease of a new Honda or Acura Vehicle from an authorized Honda dealer to the Settlement Administrator between the Effective Date through the end of the Redemption Period to receive a check for the rebate certificate amount in the mail.

Where the Rebate Certificate is "non-transferable," it means it must be redeemed by the Settlement Class Member.  However, if a Rebate Certificate is "fully transferable" it means it can be given or sold by a Class Member to any other person, who may then redeem it (up to a total of one (1) Rebate Certificate per transferee).

c.    **Warranty Extension.**  Upon the Settlement's Effective Date, Settlement Class Members with MY 2003-2008 HCHs will automatically receive a warranty extension to the existing operative warranty for the IMA battery system of their MY 2003-2008 HCH.  The length of the warranty extension will be 12,000 miles or 12 months, whichever expires first ("Extended Warranty Period").  If a Settlement Class Member's IMA battery has already failed during the 12 months or 12,000 miles after the original warranty expired, and paid out-of-pocket for a repair or replacement that would have been covered by the original written warranty had it still been in effect, the Settlement Class Member will be entitled to reimbursement for the full cost of parts and labor as if the Extended Warranty had been in effect when the failure took place.   To claim reimbursement for an IMA battery repair or replacement that occurred during what would

/ / /

---

[3] Each transferee may redeem a total of one (1) Rebate Certificate.

8

have been the Extended Warranty Period, the Settlement Class Member must submit a

Claim Form along with a copy of the repair invoice within the Claim Period.

d.      **Fuel Economy Video**.  AHM will produce a video on how Settlement

Class Members can drive and maintain their HCHs in order to maximize and optimize

their fuel economy.  This video will be available online at the Honda settlement website.

Settlement Class Members may also request a mailed DVD copy of the Fuel Economy

Video using the Claim Form.

e.      **Alternative Dispute Resolution Program (for Subclass Members Only)**.

Subclass members who (a) received the Software Updates; and (b) remain dissatisfied

with the post-Software Update performance of their HCH, are eligible to participate in a

binding dispute resolution program administered by Judicial Arbitration and Mediation

Services ("JAMS") rather than obtain the additional $100 Cash Payment and additional

$500 Option B Rebate Certificate.  Subclass Members selecting this option may still claim

the Cash Payment and Cash Rebates described in subsections (a) and (b) above, available

to Settlement Class Members.  Subclass Members choosing this option will be required to

pay $250 towards JAMS mediation fees, but all other costs and fees due to JAMS will be

paid by Honda.

In addition to the above consideration to the Class members, as an additional term of this

settlement and subject to Court approval, Class Counsel will apply for an award of attorneys' fees

and expenses not to exceed $8.474 million in connection with their efforts to resolve these claims

successfully, to be distributed amongst all the attorneys for Plaintiffs in the actions to be resolved

by this settlement.  By time this settlement is fully effectuated, this amount will approximate

Class Counsel's combined lodestar and is appropriate in comparison to the value of the

settlement. Class Counsel Decl. ¶ 23.  Class Counsel will also submit an application for the seven

class representatives to collectively receive $47,500 in incentive awards for their efforts expended

to litigate and settle these claims successfully.  These amounts were finally agreed to after the

other material terms of the settlement had been agreed to in principle, were negotiated with the

active assistance of Justice Wiener, and reflects the work of Plaintiffs' counsel to prosecute and

9

resolve the Lawsuits successfully, one of which has been pending since 2007. *Id.* These amounts will not reduce the compensation provided to Class members in any way.

In return for this consideration, if final settlement approval is granted, a judgment will be entered approving this settlement. This Court will retain continuing jurisdiction to enforce the Settlement, and all members of the Settlement Class will release and be barred from thereafter pursuing claims arising from the claims asserted in the Second Amended Complaint.

The level of risk involved for the Plaintiffs and the Settlement Class Members makes the Settlement even more reasonable. Absent a settlement, the Settlement Class Members faced risks of no recovery. Even under the best-case analysis of Plaintiffs' counsel, there could be long delays before a Settlement Class Member would receive recovery. *Id.* ¶10. This Settlement is designed to ensure the underlying issues are resolved, and obtain significant relief for the Settlement Class tailored to the claims in the Lawsuits. *Id.* ¶ 9. In addition, the proposed class notice program fully advises Settlement Class Members regarding all their alternatives, so that they can make an informed choice either to accept the Settlement or to opt out to pursue their own claims. *Id.* ¶18.

**D.    CERTIFICATION OF A CLASS FOR SETTLEMENT PURPOSES AND THE FORM OF CLASS NOTICE IS APPROPRIATE**

**1.    Certification of the Settlement Class is Appropriate**

As part of the Preliminary Approval Order, the parties request that this Court certify a class for settlement purposes, to be defined as follows:

> All persons who purchased or leased other than for purposes of resale or distribution a Honda Civic Hybrid (HCH) model years 2003 through 2009 (HCH Vehicle Class).

> A Sub-Class defined as all persons who purchased or leased other than for purposes of resale or distribution a HCH model year 2006, 2007 or 2008 (HCH Vehicle Sub-Class).

> The Settlement Class shall include all original purchasers and lessees as well as any subsequent purchasers or lessees who purchased or leased a Class Vehicle on or before the Preliminary Approval Date.

> The Settlement Class definition excludes the following persons: AHM and its subsidiaries and affiliates, employees, officers, directors, agents, and representatives and their family members; Class Counsel; and all persons who

10

have timely elected to opt out of or exclude themselves from the Settlement Class in accordance with this Court's Orders.

Certification of a multi-state class involving a company that is based in California is appropriate for settlement purposes based upon the stipulation of the parties and relevant facts. *Wershba*, 91 Cal.App.4th at 237-40; Class Counsel Decl., ¶¶ 5, 15. Notably, a California State Court has recently granted preliminary approval to a nationwide settlement of claims concerning the sun visor in certain models of Honda vehicles, including some Civic Hybrid models. Cooper, et al. v. American Honda Motor Co., Inc., Case No. BC448670 (Los Angeles Super. Ct.) (entered April 22, 2011). As set forth in the accompanying Declaration of Class Counsel, which provide the appropriate evidentiary support for such a determination under *Daniels v. Centennial Group, Inc.* (1992) 16 Cal.App.4th 467, 471, all of the requirements for certification of the Settlement Class on a nationwide basis, as set forth in Cal. Civ. Code §1781(b) and C.C.P. §382, are satisfied:

(a)     The class is sufficiently numerous, as there are in excess of 200,000 HCH purchasers or lessees falling within the Settlement Class definition. Class Counsel Decl. ¶11.

(b)     Named Plaintiffs have paid all the premiums charged for HCH vehicles and experienced the claims described in the Second Amended Complaint during the relevant time period, and thus Named Plaintiffs assert claims that are typical of other Settlement Class Members. *Id.* at ¶13.

(c)     Common questions of fact and law predominate over individual issues in terms of the False Advertising Claims and the Software Update Claims and whether this settlement is fair and reasonable. These primary factual issues that underlie these common legal issues are common to all of the Settlement Class Members. *Id.* at ¶¶ 12, 15.

(d)     Named Plaintiffs do not have any irreconcilable conflicts of interest with absent Settlement Class Members since they have the same basic claims as those of the Settlement Class Members and their claims arise from the same core set of operative facts. The Named Plaintiffs have been diligent in prosecuting this case, and have spent time helping to investigate the facts of this case, participating in settlement discussions, approving the settlement and otherwise keeping

11

1    apprised of the case developments.  Class Counsel Decl. ¶14.  The firms representing Plaintiffs

2    and the Settlement Class from both the *True* and *Lockabey* actions have substantial experience in

3    consumer class actions, as shown by their firm resumes, and have put Class Members' interests at

4    the forefront of this litigation through protracted and tense litigation and settlement discussions.

5    *Id.* at ¶¶ 4-7, 17, Ex 2.

6           (e)     Finally, due to the nature and complexity of the claims at issue, few persons would

7    have an interest in individually controlling the prosecution of separate actions.  Class Counsel

8    Decl. ¶ 16.  There is a desire on both sides to maintain and resolve this action in a single forum

9    generally and in this forum in particular.  Based on this Settlement, there are no difficulties likely

10   to be encountered in the management of this action, nor any superior method of proceeding on a

11   group-wide basis. *Id.*

12          **2.      The Form of Class Notice is Appropriate**

13          The trial court "has virtually complete discretion as to the manner of giving notice to class

14   members." *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th

15   1135, 1164.  The purpose of class notice in the context of a settlement is to give class members

16   sufficient information to decide whether to accept the benefits offered, opt out and pursue their

17   own remedies, or object to the settlement. *Trotsky v. Los Angeles Fed. Sav. & Loan Ass'n* (1975)

18   48 Cal.App.3d 134, 151-52; *Torrisi v. Tuscon Elec. Power Co.* (9th Cir. 1993) 8 F.3d 1370, 1374-

19   75.  The notice program must be "reasonably calculated to apprise interested parties of the

20   pendency of the action affecting their property interest and an opportunity to present their

21   objections." *In re Vitamin Cases* (2003) 107 Cal.App.4th 820, 829.

22          The form of the notice is attached to the Agreement as Exhibit C.  The class notice

23   describes in detail the settlement consideration, scope of the release, relative positions of the

24   parties, timing of the settlement, the Court's preliminary assessment of the settlement, and the

25   options to which Settlement Class Members are entitled.  It does so in clear and understandable

26   language, consistent with the requirements of California Rules of Court 3.766(d) and 3.769(d)

27   through (f), and contains all of the language required by those Rules in a manner designed to

28   provide consumers the most information practicable.  It will be mailed, using updated addresses,

12

to all members of the Settlement Class.  Class Counsel Decl. ¶ 18.  In addition, the Settlement Administrator is establishing a settlement website and a toll-free telephone number for Settlement Class Members to contact if they have any questions in order to obtain more information about the terms of the settlement. *Id.* ¶¶ 18-19.

The notice addresses each subject required by Civil Code §1781(e) and California Rules of Court 3.766 and 3.769 and is proper.   A notice that directs a class member who wants more information to a website that alerts the reader to the significant issues and advises them where to go to learn more about the settlement and their options has been held to be a "perfectly acceptable" manner of giving notice of a proposed settlement.  *Chavez*, 162 Cal.App.4th at 58. Creativity is often needed in devising an effective means of notifying class members. *Wershba*, 91 Cal.App.4th at 351; *see also* Note: "'Best Notice Practicable' in the Twenty-First Century", 2003 UCLA J.L. Tech 4 (discussing advantages of using Internet notice actions to provide class notice under Rule 23 in consumer class).   The form and substance of the notice program is appropriate for Court approval since the Settlement Administrator will be using data sources that should capture nearly every possible Settlement Class Member and provide them direct mailed notice of the Agreement.  Class Counsel Decl. ¶ 18.  Furthermore, the nature of the Settlement Class as automobile purchasers and lessees (which are subject to vehicle registration requirements and which often carry detailed warranty registrations) makes the class more readily identifiable than other consumer classes may be. *Id.*

In addition, to ensure all relevant persons receive notice of this settlement, within 10 days of the Court's Preliminary Approval Order Rust will send a notice to the U.S. Attorney General and Attorneys General (or chief regulator) in all 50 states and the District of Columbia containing the following: (a) a copy of the Second Amended Complaint and all exhibits; (b) notice of any scheduled hearings concerning the settlement; (c) a copy of the Agreement and all exhibits; (d) the proposed Final Order and Judgment; (e) a reasonable estimate of the number of class members residing in each state and the estimated proportionate share of the claims); and (f) this Court's Preliminary Approval Order.

/ / /

13

**E.      DATES FOR THE PRELIMINARY APPROVAL ORDER**

Under the schedule being proposed to this Court, the final approval date will occur on or about March 16, 2012, which is at least 161 days after the preliminary approval hearing.[4]  Such a schedule is appropriate and consistent with case law.  *See, e.g., In re BankAmerica Corp. Secs. Litig.* (E.D. Mo. 2002) 210 F.R.D. 694, 708 (28-day notice period adequate for objections in nationwide class action); *Miller v. Republic Nat'l Life Ins. Co.* (5th Cir. 1977) 559 F.2d 426, 430 ("almost four weeks between the mailing of the notices and the settlement hearing" was adequate for nationwide class action); *Grunin v. Int'l House of Pancakes* (8th Cir. 1975) 513 F.2d 114, 120-121 (19 days' notice adequate time to object); *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.* (7th Cir. 1971) 447 F.2d 647, 652 (notice mailed on May 28 and fairness hearing held on June 22 in nationwide class action; time was sufficient).  In accordance with the terms of the Preliminary Approval Order, notice and information concerning the Settlement is also being provided to various state and federal administrative agencies and Attorneys General.

If the Court signs the Preliminary Approval Order and the Order is entered on September 30, 2011, the following dates (which are consistent with the Settlement Agreement) should be approved by the Court:

| | |
|---|---|
| *Last Date To Complete Mailing of Notice to the Class:* | *December 23, 2011* |
| *Submit Papers in Support of the Settlement and Fee Request:* | *January 23, 2012* |
| *Deadline for filing Objections and Submitting Requests for Exclusion:* | *February 9, 2012* |
| *Reply to any Objections:* | *March 1, 2012* |
| *Final Approval Hearing:* | *March 16, 2012 at 10:00 a.m.* |

*/ / /*

*/ / /*

---

[4]  Under the Settlement Agreement, Mailed Notice will be completed within 86 days of Preliminary Approval ("Mailed Notice Date"); Opt-Outs and Objections are due 45 days after Mailed Notice Date; and the Final Approval Hearing is to occur at least 30 days after the Opt-Out and Objection Deadline, for a total of at least 161 days between preliminary approval and the final approval hearing.

14

**F.    CONCLUSION**

Based on the foregoing. Plaintiffs request the Court preliminarily approve this settlement and enter a schedule for final approval by executing the Preliminary Approval Order.

Dated:  September 6, 2011                              THE CONSUMER LAW GROUP

By: _____
        Alan M. Mansfield (SBN 125998)
        alan@clgca.com
        9466 Black Mountain Road, Suite 225
        San Diego, CA 92126
        Tel: (619) 308-5034
        Fax: (888) 341-5048

MICHAEL E. LINDSEY
mlindsey@nethere.com
4455 Morena Blvd., Ste. 207
San Diego, CA 92117-4325
Tel: (858) 270-7000

DOYLE LOWTHER LLP
William J. Doyle II (SBN 188069)
bill@doylelowther.com
John A. Lowther IV (SBN 207000)
john@doylelowther.com
James R. Hail (SBN 202439)
jim@doylelowther.com
9466 Black Mountain Road, Suite 210
San Diego, CA 92126
Tel: (619) 573-1700
Fax: (888) 710-6866

Attorneys for the Lockabey Plaintiffs Logan and Anita Lockabey and Tomas Castrejon

CUNEO GILBERT & LADUCA, LLP
Jon Tostrud (SBN 199502)
tostrud@yahoo.com
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Tel: (310) 418-8262
Fax: (310) 556-9622

CUNEO GILBERT & LADUCA, LLP
Jonathan W. Cuneo (*Pro Hac Vice pending*)
William H. Anderson (*Pro Hac Vice pending*)
507 C Street, NE
Washington, DC 20002
Tel: (202) 789-3960
Fax: (202) 789-1813

15

CHIMICLES & TIKELLIS, LLP
Nicholas E. Chimicles (*Pro Hac Vice pending*)
Alison G. Gushue (*Pro Hac Vice pending*)
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: (610) 649-3633

Attorneys for Plaintiffs John True, Gonzalo M. Delgado, Kevin Thieben, Ronda Gibble, Gary Stouch, Roy D. Sherrid and Branka Krsul

16

1

2

3

4

5

6

7

8 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 **IN AND FOR THE COUNTY OF SAN DIEGO**

|  |  |
|---|---|
| 10 **LOGAN and ANITA LOCKABEY;** **TOMAS CASTREJON; JOHN TRUE;** **GONZALO DELGADO; KEVIN** **THIEBEN; RONDA GIBBLE; GARY** **STOUCH; ROY D. SHERRID; and** **BRANKA KRSUL, as individuals and on** **behalf of all others similarly situated,** | Case No. 37-2010-00087755-CU-BT-CTL **CLASS ACTION** **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTING DISSEMINATION OF CLASS NOTICE** |
|    **Plaintiffs,** | I/C Judge:     Hon. Timothy B. Taylor Dept.:         72 |
|    **v.** | |
| **AMERICAN HONDA MOTOR CO., INC., and DOES 1 through 50, inclusive,** | Complaint Filed:   March 15, 2010 Hearing Date:    September 30, 2011 |
|    **Defendants.** | |

THIS MATTER having been brought before the Court on the joint motion of LOGAN and

ANITA LOCKABEY, TOMAS CASTREJON, JOHN TRUE, GONZALO M. DELGADO,

KEVIN THIEBEN, RONDA GIBBLE, GARY STOUCH, ROY D. SHERRID and BRANKA

KRSUL (collectively "Plaintiffs" or "Named Plaintiffs"), through their attorneys, pursuant to

California Rule of Court 3.769 and other applicable rules and laws, to request an order granting

preliminary approval of a class action settlement and directing the dissemination of notice to the

class (the "Order"); the Court having reviewed the Plaintiffs' submissions, having held a hearing

on September 30, 2011, and having found that Plaintiffs are entitled to the relief they seek, and

for good cause shown:

-1-

ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
& DIRECTING DISSEMINATION OF CLASS NOTICE

1       IT IS HEREBY ORDERED that Plaintiffs' motion is GRANTED, and it is further

2   ORDERED as follows:

3       1.    This matter is referred to herein as the "Consolidated Proceeding" as a result of

4   Plaintiffs having filed a stipulation to file a Second Amended Complaint for Equitable and

5   Monetary Relief ("Second Amended Complaint") that combines the parties and causes of action

6   into this lawsuit. The claims in the following cases are covered by the proposed settlement: *True,*

7   *et al. v. American Honda Motor Co.,* Inc., Case No. 5:07-cv-287-VAP-OP (C.D. Cal.); *Lockabey,*

8   *et al. v. American Honda Motor Co., Inc.,* Case No. 37-2010-887755-CU-BT-CTL (San Diego

9   Cty. Sup. Ct.); *Gibble v. American Honda Motor Co., Inc.,* Case No. 2:10-cv-6148-VAP-OP

10   (C.D. Cal.); *Stouch v. American Honda Motor Co., Inc.,* Case No. 2:10-cv-6236-VAP-OP (C.D.

11   Cal.); *Thieben v. American Honda Motor Co., Inc., Case No.* BC 441424 (Los Angeles Cty. Sup.

12   Ct.) (collectively, the "Lawsuits").

13       2.    The proposed Class Settlement Agreement and Release dated September 2, 2011

14   (the "Agreement"), submitted with the motion and filed with the Court, is preliminarily approved

15   as being within the range of potential final approval.[1]

16       3.    Based upon the submissions to the Court and attachments and exhibits thereto, the

17   Court conditionally makes the following findings solely for settlement purposes only, subject to

18   final approval at the Final Approval Hearing:

19       a.   The members of the Settlement Class and MY 2006-2008 Subclass (collectively

20       "Settlement Class Members") are so numerous as to make joinder impracticable;

21       b.   There are questions of law and fact common to the Settlement Class, and such

22       questions predominate over any questions affecting only individual Settlement

23       Class Members;

24       c.   Named Plaintiffs' claims and the defenses thereto are typical of the claims of

25       Settlement Class Members and the defenses thereto;

---

26   [1]    Unless otherwise specified, all defined terms in this Order have the same meaning as the

27   meaning described in the Agreement, and those terms are incorporated here by this reference. To the extent there is any conflict between the definitions of those terms, the definitions in the

28   Agreement will control.

1       d.   Named Plaintiffs and Class Counsel can protect and have fairly and adequately

2            protected the interests of the Settlement Class Members in the Lawsuits and the

3            Consolidated Proceeding; and

4       e.   A class action is superior to all other available methods for fairly and efficiently

5            resolving the Lawsuits and the Consolidated Proceeding and provides substantial

6            benefits to the Settlement Class Members.

7       4.   Accordingly, solely for purposes of this settlement only, the Court preliminarily

8   approves the Named Plaintiffs as representatives of the Settlement Class, and conditionally

9   certifies a Settlement Class defined as follows:

10  All persons in the United States and/or the District of Columbia who purchased or
    leased other than for purposes of resale or distribution a Honda Civic Hybrid
11  (HCH) model years 2003 through 2009 (MY 2003-2009 Class).

12  A Subclass defined as all persons in the United States and/or the District of
    Columbia who purchased or leased other than for purposes of resale or distribution
13  an HCH model year 2006, 2007 or 2008 (MY 2006-2008 Subclass).

14  The Settlement Class shall include all original purchasers and lessees as well as any subsequent

15  purchaser or lessees who purchased or leased a Class Vehicle on or before the Preliminary

16  Approval Date.

17      Specifically excluded from the Settlement Class are the following persons:

18      (i)   American Honda Motor Co., Inc. ("AHM") and its subsidiaries and
    affiliates, employees, officers, directors, agents, and representatives and their
19  family members;

20      (ii)   Class Counsel;

21      (iii)   The judges who have presided over the Lawsuits; and

22      (iv)   All persons who have timely elected to opt out of or exclude
    themselves from the Settlement Class in accordance with this Court's Orders.

23

24      5.   This matter is conditionally certified as a class action solely for settlement purposes

25  only under California Code of Civil Procedure Section 382, California Civil Code Section 1781,

26  and California Rules of Court, Chapter 6, Rules 3.767 *et seq.*, and/or other laws as applicable.  If

27  the settlement does not receive final approval, AHM retains the right to assert that this action may

28  not be certified as a class action for liability purposes.

ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
& DIRECTING DISSEMINATION OF CLASS NOTICE

6.      Solely for purposes of implementing the Agreement and for purposes of this settlement, the Court preliminarily appoints as Class Counsel Cuneo, Gilbert & LaDuca, LLP, Chimicles & Tikellis LLP, The Consumer Law Group of California, Doyle Lowther, LLP, and Law Offices of Michael E. Lindsey.

7.      The Court finds that the Settlement Agreement falls within the range of possible approval such that it warrants notice thereof and further orders notice of the settlement to be disseminated to the Settlement Class Members in the manner set forth herein and in the Agreement.

8.      A final hearing (the "Final Approval Hearing") shall be held before this Court on _____, 2012 at ___:___ a.m./p.m., to determine whether:  (a) for final approval, the claims in the Second Amended Complaint meet each of the prerequisites for class certification for settlement purposes and may properly be maintained as a class action on behalf of the Settlement Class for settlement purposes; (b) the Court should finally approve the Agreement and all terms contained therein as fair, reasonable, adequate, and in the best interests of the Settlement Class; (c) the Court should enter final judgment dismissing with prejudice the Second Amended Complaint in the Consolidated Proceeding in accordance and consistent with the terms of the Agreement by entering an Order substantially in the form of Exhibit B to the Agreement ("Final Order and Judgment"); and (d) to approve the application for the Attorneys' Fee Award to Class Counsel and Named Plaintiffs' Incentive Awards in a manner consistent with the Agreement. The Final Approval Hearing may be postponed, adjourned or continued by further order of this Court, without further notice to the Settlement Class.

9.      At the Final Approval Hearing, the Court will consider and determine whether the Agreement should be finally approved as fair, adequate and reasonable in light of any timely and valid objections presented by Settlement Class Members and the parties' responses to any such objections that have been submitted to the Court in accordance with the provisions set forth below.

10.     The Court hereby approves the appointment of Rust Consulting, Inc. ("Rust") as the Settlement Administrator for the purposes of disseminating the Class/Website Notice and

-4-

Claim Form (substantially in the form of Exhibits C and A of the Agreement and as submitted to the Court), which are hereby approved, and for purposes of administering the terms of the settlement as set forth in the Agreement.

11.     Any Settlement Class Member may object to the fairness, reasonableness or adequacy of the proposed settlement.  Each Settlement Class Member who wishes to object to any term of this settlement must do so in writing. .   Any such objection must be signed by the Settlement Class Member and filed with the Court no later than forty-five (45) days after the Mailed Notice Date, and also served on Class Counsel listed in the Class/Website Notice and Defense Counsel   Any such objection must include all of the information set forth in the Class/Website Notice including:   (a) the Settlement Class Member's full name, address and telephone number, and if represented by counsel, their counsel's name, address and telephone number so that counsel may be contacted by Class Counsel, the Court, or the Settlement Administrator, as necessary; (b) the model year and vehicle identification number(s) (VIN(s)) of the vehicle(s) he/she purchased or leased; (c) copies of any materials that will be submitted to the Court or presented at the Final Approval Hearing; (d)  a written statement of all grounds for the objection accompanied by any legal support for such an objection; (e) a statement of whether the Settlement Class Member or his or her counsel intends to appear at the Final Approval Hearing; and (f) if the Settlement Class Member intends to appear at the Final Approval Hearing through counsel, such counsel's name, address and telephone number.  Any attorney hired by a Settlement Class Member for the purpose of objecting to any aspect of the settlement will be at the Settlement Class Member's sole expense.   Any objection that fails to satisfy the above requirements, or that is not properly and timely submitted, shall be deemed ineffective, will be disregarded by the Court (absent further order), shall be deemed to have been waived, and the Settlement Class Member asserting such objection shall be bound by the final determination of the Court and shall be foreclosed from seeking any adjudication or review of this settlement by appeal or otherwise.

12.     Any person included within the definition of the Settlement Class who wishes to be excluded from the Settlement Class must do so in writing by mailing a written request for

exclusion from the settlement to Rust at the address set forth in the Class/Website Notice. Such requests must be postmarked no later than forty-five (45) days after the Mailed Notice Date. The request must: (a) be signed by the Settlement Class Member; (b) include the Settlement Class Member's full name, address and telephone number; (c) list the model year and vehicle identification number(s) (VIN(s)) of the vehicle(s) he/she purchased or leased; (d) clearly express the Settlement Class Member's desire to be excluded (or to "opt out") from the Settlement Class; and (e) if represented by counsel, also include counsel's name, address and telephone number so that counsel may be contacted by Class Counsel, the Court, or the Settlement Administrator, as necessary. Any person within the Settlement Class who wishes to be excluded from the Settlement Class can opt out only for him/herself. No person may opt out for any other person or group of persons, nor can any person within the Settlement Class authorize any other person to opt out on his or her behalf. Any request for exclusion that fails to satisfy the above requirements, or that has not been timely sent, will be deemed ineffective, and any person included within the Settlement Class who does not properly and timely submit a request for exclusion shall be deemed to have waived all rights to opt out and shall be deemed a Settlement Class Member for all purposes.

13.    The Court finds that the manner of dissemination and content of the Class/Website Notice as specified in detail in the Agreement and this Order (i) is the best notice practicable, (ii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Lawsuits and of their right to object to or to exclude themselves from the proposed settlement, (iii) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (iv) meets all applicable requirements of applicable law. In accordance with the terms of the Agreement, costs incurred in connection with the preparation and dissemination of notices to the Settlement Class shall be paid by AHM.

14.    The Claim Form substantially in the form of Exhibit A to the Agreement and the Class/Website Notice substantially in the form of Exhibit C to the Agreement shall be posted on the HCH Settlement Website at www.HCHsettlement.com or such other domain that has been agreed to by the parties, no later than fourteen (14) days after the Preliminary Approval Date. A

-6-

copy of the Agreement shall be made available to the public through the HCH Settlement Website, or by calling a toll-free number to be established by the Settlement Administrator.

15.    The Court hereby directs the Settlement Administrator to perform the following tasks no later than fourteen (14) days after the Preliminary Approval Date:  (a) make the HCH Settlement Website operational, and in the event the settlement becomes "Final" (as defined in Paragraph 19 below), to have the HCH Settlement Website remain in operation until the end of the Redemption Period; (b) promptly establish and staff a dedicated, toll-free telephone number that Settlement Class Members can call to obtain information regarding the settlement, and in the event the settlement becomes Final, to have the toll-free number remain in operation until the end of the Redemption Period; (c) establish a post office box in the name of the Settlement Administrator to be used for receiving requests for exclusions, objections, notices of intention to appear and any other communications in accordance with the Agreement to remain in effect in the event the settlement becomes Final until the end of the Redemption Period.

16.    The Court hereby directs AHM or the Settlement Administrator to send, within 10 days of the Preliminary Approval Date, a notice to the U.S. Attorney General and Attorneys General (or chief regulator) in all 50 states and the District of Columbia containing the following: (a) a copy of the Second Amended Complaint and all exhibits; (b) notice of any scheduled hearings concerning the settlement; (c) a copy of the Agreement and all exhibits; (d) the proposed Final Order and Judgment; (e) a reasonable estimate of the number of class members residing in each state and the estimated proportionate share of the claims; and (f) a copy of this Order.

17.    The Court hereby directs Rust to promptly furnish Class Counsel, Defense Counsel and AHM with copies of any and all written requests for exclusion, objections, notices of intention to appear or other written communications received from Settlement Class Members. The Court further orders Rust to provide the Opt-Out List to Class Counsel and Defense Counsel no later than seven (7) business days after the completion of the forty-five (45) day period in which Settlement Class Members may exclude themselves from the Settlement Class, and then file with the Court the Opt-Out List with an affidavit attesting to the completeness and accuracy

/ / /

-7-

1   thereof no later than three (3) business days thereafter or on such other date as the parties may

2   direct.

3          18.    By no later than eighty-six (86) days after the Preliminary Approval Date, the

4   Claim Form and the Class Notice shall be disseminated by the Settlement Administrator to the

5   persons identified on the Class List, and shall refer Settlement Class Members to the HCH

6   Settlement Website for purposes of obtaining detailed information or answers to questions

7   relating to the terms of the settlement, and including any relevant deadlines for the Final

8   Approval Hearing.  To the extent an order from this Court is required to obtain names and

9   addresses of Settlement Class Members from any private entity or state or local regulatory body,

10  by this Order the Court hereby directs such entities to provide such information to AHM or the

11  Settlement Administrator, to the fullest extent permitted by law.

12         19.    Class Counsel shall file and serve papers in support of final approval of the

13  settlement, including the provision for payment of the Attorneys' Fee Award and Named

14  Plaintiffs' Incentive Awards no later than twenty-eight (28) days in advance of the Final

15  Approval Hearing.  Any responses by the parties to any objections that may be timely and validly

16  filed shall be filed no later than seven (7) days in advance of the Final Approval Hearing.

17         20.    If the Court ultimately grants final approval of the settlement, the Court shall enter

18  a Final Order and Judgment, substantially in the form of Exhibit B to the Agreement that will:

19         a.    Release the Released Parties of and from all further liability to the Plaintiffs and

20               Settlement Class Members with respect to the Released Claims as set forth in the

21               Agreement.  "Released Claims" shall mean any and all claims, actions, causes of

22               action, rights, demands, suits, debts, liens, contracts, agreements, offsets or

23               liabilities, including but not limited to tort claims, claims for breach of contract,

24               breach of the duty of good faith and fair dealing, breach of statutory duties, actual

25               or constructive fraud, misrepresentations, fraudulent inducement, statutory and

26               consumer fraud, breach of fiduciary duty, unfair business or trade practices,

27               restitution, rescission, compensatory and punitive damages, injunctive or

28               declaratory relief, attorneys' fees, interests, costs, penalties and any other claims,

-8-

whether known or unknown, alleged or not alleged in the Lawsuits, suspected or unsuspected, contingent or matured, under federal, state or local law, which the Named Plaintiffs and/or any Settlement Class Member had, now have or may in the future have with respect to any conduct, act, omissions, facts, matters, transactions or oral or written statements or occurrences prior to the Effective Date of the Agreement relating to or arising out of the advertising of the fuel economy or miles per gallon ("MPG") of MY 2003-2009 HCHs, and additionally as to members of the MY 2006-2008 Subclass, claims relating to or arising out of the Integrated Motor Assist ("IMA") battery system in MY 2006-2008 HCHs, including that it did not perform as expected and/or that the IMA battery system is somehow defective, and AHM's installation of the PUD adversely affected the performance and fuel efficiency of the MY 2006-2008 HCH, as asserted in the Lawsuits by the Named Plaintiffs and/or the Settlement Class Members including, without limitation, causes of action for violations of Cal. Bus. & Prof. Code § 17200, *et seq.*, Cal Bus. & Prof. Code § 17500, *et seq.*, Cal. Civ. Code § 1750, *et seq.* and similar claims under the statutes and common law of other states as well as claims for unjust enrichment, but excluding claims for Personal Injury or Bodily Injury;

b.  Finally approve the terms of the settlement as set forth in the Agreement as fair, reasonable and adequate;

c.  Provide for an Attorneys' Fee Award and the Named Plaintiffs' Incentive Awards consistent with the terms of the Agreement;

d.  Enter a Judgment of Dismissal with prejudice and without costs except as provided for under the terms of the Agreement and the Judgment and retaining jurisdiction pursuant to Cal. Code Civ. Proc. Sec. 664.6;

e.  Direct Class Counsel to dismiss the other Lawsuits by filing stipulations of dismissal within seven (7) days of the Final Order and Judgment becoming Final without fees or costs being awarded to any party except as provided for under the

-9-

terms of the Agreement.  For purposes of the Final Order and Judgment, "Final" shall mean that (i) no appeal has been taken from it as of the date on which all times to appeal therefrom have expired, or (ii) an appeal or other review proceeding of the Final Order and Judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions or rehearing or re-argument, petitions for rehearing *en banc*, petitions for writ of *certiorari*, or otherwise, and such appeal or other review has been finally resolved in a such manner that affirms the Final Order and Judgment in all material respects.

f.  Bars and permanently enjoins all Settlement Class Members who have not been properly excluded from the Settlement Class from (i) filing, commencing, prosecuting, intervening in or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to these Lawsuits or the Released Claims, and (ii) organizing Settlement Class Members who have not been excluded from the class into a separate class for purposes of pursuing as a purported class action any lawsuit or arbitration or other proceeding (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Lawsuits and/or the Released Claims, except that Settlement Class Members are not precluded from participating in any investigation or suit initiated by a state or federal agency;

21.   In the event that the proposed settlement provided for in the Settlement Agreement is not approved by this Court, or entry of the Final Order and Judgment does not occur for any reason, or any approval is successfully appealed, then the Agreement, all drafts,

-10-

negotiations, discussions, and documentation relating thereto, and all orders entered by this Court in connection therewith shall become null and void without further order.  In such event, the Agreement and all negotiations and proceedings relating thereto shall be withdrawn and of no further force and effect without prejudice to the rights of the parties, who shall be restored to their respective positions as of the date of the execution of the Agreement.

22.    The Final Approval Hearing shall be held before this Court on _____,2012 at ___:___ a.m./p.m.

23.    The Settlement Administrator is hereby ordered no later than twenty-eight (28) days before the Final Approval Hearing to file the following documents and information with the Court, with an affidavit attesting to completeness and accuracy thereof:  (a) proof of mailing of the Class Notice and Claim Form; and (b) proof of posting of the Website Notice and Claim Form on the HCH Settlement Website.

24.    By this Order, all Settlement Class Members, unless and until they have timely excluded themselves from the Settlement Class in accordance with the procedures set forth in this Order, are hereby preliminarily enjoined (i) from filing, commencing, prosecuting, intervening in or participating as plaintiff, claimant or class member in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Lawsuits and/or the Released Claims; (ii) from filing, commencing or prosecuting a lawsuit or administrative, regulatory, arbitration or other proceeding as a class action on behalf of any Settlement Class Members who have not timely excluded themselves (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Lawsuits and/or the Released Claims; and (iii) from attempting to effect Opt-Outs of a class of individuals in any lawsuit or administrative, regulatory, arbitration or other proceeding based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Lawsuits and/or the Released Claims, except that Settlement

///

ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
& DIRECTING DISSEMINATION OF CLASS NOTICE

1   Class Members are not precluded from participating in any investigation or suit initiated by a

2   state or federal agency.

3

4   IT IS SO ORDERED.

5

6   DATED: _____, 2011         _____

7                                              Hon. Timothy B. Taylor
                                              Judge of the Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
& DIRECTING DISSEMINATION OF CLASS NOTICE

1   THE CONSUMER LAW GROUP
    Alan M. Mansfield, Esq. (SBN: 125998)
2   alan@clgca.com
    9466 Black Mountain Rd., Suite 225
3   San Diego, CA  92126
    Tel: (619) 308-5034
4   Fax: (888) 341-5048

5   CHIMICLES & TIKELLIS LLP
    Nicholas E. Chimicles, Esq. (*pro hac vice pending*)
6   nick@chimicles.com
    Alison G. Gushue, Esq. (*pro hac vice pending*)
7   agg@chimicles.com
    361 W. Lancaster Ave.
8   Haverford, PA 19041
    Tel: (610) 642-8500
9   Fax: (610) 642-3633

10  CUNEO, GILBERT & LaDUCA, LLP
    Jonathan W. Cuneo, Esq.  (*pro hac vice pending*)
11  jonc@cuneolaw.com
    William H. Anderson, Esq. (*pro hac vice pending*)
12  wanderson@cuneolaw.com
    507 C Street NE
13  Washington, D.C. 20002
    Tel: (202) 789-3960
14  Fax: (202) 789-1813

15  Attorneys for Plaintiffs

16  [Additional Counsel Appear on Signature Page]

17          **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

18              **IN AND FOR THE COUNTY OF SAN DIEGO**

| | |
|---|---|
| 19  LOGAN AND ANITA LOCKABEY, et al., | Case No. 7-37-2010-00087755-CU-BT-CTL |
| 20           Plaintiffs, | **CLASS ACTION** |
| 21      v. | **JOINT DECLARATION OF NICHOLAS E. CHIMICLES AND ALAN M. MANSFIELD IN SUPPORT OF MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND CLASS NOTICE PROGRAM** |
| 22  AMERICAN HONDA MOTOR CO., INC., and DOES 1 through 50, inclusive, | |
| 23           Defendants. | |
| 24 | Date:          September 30, 2011 |
| 25 | Time:          1:30 p.m. |
| 26 | Courtroom:     C-72 |
| | Judge:         Hon. Timothy Taylor |
| 27 | Complaint Filed: March 15, 2010 |
| 28 | |

1

Nicholas E. Chimicles and Alan M. Mansfield, declare as follows:

1.     We are attorneys of record for Plaintiffs in this action.  Alan M. Mansfield is an attorney at law admitted to practice before this Court, and Nicholas E. Chimicles is an attorney at law admitted to practice in Pennsylvania with a *pro hac vice* application pending to practice before this Court.

2.     We have personal knowledge of the matters set forth in this Declaration, which is filed in support of the Joint Motion for Entry of Order Preliminarily Approving Settlement and Class Notice Program.   If called to testify, we could and would competently testify to the following facts stated herein.

3.     Attached as Exhibit 1 to this Declaration is a true and correct copy of the Settlement Agreement that has been approved by the parties and their counsel.

4.     The issues implicated by this case have been actively litigated since March 2007, when *True v. American Honda Motor Co., Inc.*, Case No. 5:07-cv-287-VAP-OP (C.D. Cal) ("*True*") in the United States District Court for the Central District of California ("Federal Court") was first filed.  In August 2009, the Federal Court preliminarily approved a settlement of *True* on behalf of the purchasers of Honda Civic Hybrid (MY 2003-2008) arising from false advertising claims with respect to the fuel economy of the HCH vehicles ("False Advertising Claims").   In February 2010, however, the Federal Court denied, without prejudice, a motion seeking final approval of the settlement.   Subsequent to the Federal Court's denial of final approval in *True*, a case on behalf of California purchasers of HCH vehicles was filed in San Diego County asserting claims similar to *True* – *Lockabey, et al. v. American Honda Motor Co., Inc. et al.*, Case No. 37-2010-00087755-CU-BT-CTL (San Diego County Superior Court) ("*Lockabey*").   Thereafter, three additional lawsuits were filed alleging claims concerning the hybrid battery and that a July 2010 software update to the Integrated Motor Assist, *i.e.* hybrid propulsion, ("IMA") system in MY 2006 – 2008 HCHs negatively impacted the fuel economy and performance of the HCH ("Software Update Claims"):   *Gibble v. American Honda Motor Co., Inc.*, Case No. 2:10-cv-6148-VAP-OP (C.D. Cal.) ("*Gibble*"); *Stouch et al. v. American Honda Motor Co., Inc.*, Case No. 2:10-cv-6236-VAP-OP (C.D. Cal.) ("*Stouch*"); and *Thieben v.*

2

1    *American Honda Motor Co., Inc.*, Case No. Case No. BC 441454 (Los Angeles County Superior

2    Court) ("*Thieben*").  Subsequently, *Lockabey* was amended to add the Software Update Claims.

3    Together *True, Lockabey, Gibble, Stouch, and Thieben,* are referred to as the "Lawsuits" and all

4    Plaintiffs, Defendant and their counsel are referred to as the "Parties."  The Settlement proposed

5    here is a global settlement that will resolve the claims in all of the Lawsuits.  As such, filed

6    concurrently herewith is a Stipulation for Leave to File Second Amended Complaint adding all

7    Named Plaintiffs and claims alleged in the Lawsuits.  Motions to stay the *True, Gibble, Stouch,*

8    and *Thieben* actions are also being concurrently filed in their respective courts.  If and when this

9    Settlement becomes final in all respects, *True, Gibble, Stouch* and *Thieben* will promptly be

10   dismissed with prejudice.  A copy of the Settlement Agreement has been provided to each Court

11   in which these matters are pending.

12        5.      The Parties desire to maintain and resolve the pending litigation in a single forum

13   and this forum in particular. The Parties are mindful that final approval of a prior settlement of

14   the False Advertising Claims in these Lawsuits was denied without prejudice by the Hon.

15   Virginia A. Phillips of the United States District Court for the Central District of California.

16   Judge Phillips' order denying Final Approval of the *True* settlement was a major focus of

17   subsequent mediation sessions, and the Parties are confident that this new Settlement addresses

18   each and every concern raised by Judge Phillips, as well as the concerns raised by objectors to the

19   *True* settlement.  Throughout the settlement negotiation process, the Parties regularly reported to

20   Judge Phillips on the status of global settlement negotiations.  Prior to filing the Preliminary

21   Approval of Settlement papers in this Court, mediator Hon. Howard B. Wiener (ret), who assisted

22   the Parties in reaching this Settlement, communicated with Judge Phillips to report on the Parties'

23   progress in reaching a global settlement of all cases and to inform Judge Phillips of the Parties'

24   intent to file Settlement Approval Papers in this Court that would resolve all pending cases

25   concerning the HCH.   The Parties further addressed these plans with Judge Phillips at a

26   scheduling conference on June 20, 2011.  The Parties filed their Motion for Preliminary Approval

27   of the Settlement in this Court because (a) during the over year-long pendency of the *Lockabey*

28   case, this Court has become familiar with the facts and legal arguments of the case, and in

3

particular the IMA Battery allegations that were not present in the *True* case; (b) California state courts routinely review settlements certifying nationwide classes where the company is based in California; (c) the majority of the claims alleged in the lawsuits concern California laws, which California state courts have an interest in interpreting; (d) a substantial portion of the class (25% or more) resides in California; and (e) the Parties believed that this Court will offer expeditious review of the Settlement so that, if approved, benefits could be distributed to the Settlement Class as quickly as possible.

6.      Class Counsel has engaged in extensive discovery to make an informed judgment concerning the merits of the false advertising and Software Update Claims alleged in the Lawsuits. Written discovery and depositions have taken place concerning the allegations in the Amended Complaint, and significant information and documents were exchanged between the Parties prior to negotiating and agreeing to the terms of this Settlement. In the *True* case, the Parties engaged in approximately 11 months of contentious discovery and motion practice (including the denial of Defendant's Motion to Dismiss) before agreeing to proceed to mediation, which ultimately led to the proposed *True* settlement. After the Court's denial of final approval of the proposed *True* settlement without prejudice, the *Lockabey, Thieben, Gibble* and *Stouch* actions were filed, and the parties engaged in additional discovery concerning the new IMA system allegations prior to reaching this settlement. This additional discovery included the exchange of thousands of pages of documents from AHM, AHM's Japanese affiliates, and Named Plaintiffs; consultation with experts concerning the IMA system; and the inspection of several HCH vehicles. In addition, Class Counsel communicated with and interviewed hundreds of Class Members to gather thousands of pieces of performance-related data that greatly assisted Class Counsel in their negotiations with Honda and Honda's counsel.

7.      As part of the settlement negotiation process, which took place on and off during the course of the litigation, the Parties negotiated directly with each other and also used the services of three separate independent mediators. In connection with the proposed *True* settlement, the *True* parties engaged in extensive mediation with Washington DC-based mediator Jonathan Marks of Marks ADR, which included two face-to-face mediation sessions of two days

4

each, numerous joint and *ex parte* telephone sessions and the exchange of several rounds of comprehensive mediation statements. After final approval of the *True* settlement was denied without prejudice, the *True* parties engaged in additional in-person mediation with the Hon. William A. Cahill (Ret.) in San Francisco to address the *True* court's concerns as expressed in the order denying final approval of the settlement without prejudice. Meanwhile, the *Lockabey* parties engaged in an initial mediation session with Justice Howard B. Wiener (Ret.) in San Diego to explore settlement possibilities. After the Parties concluded that a global settlement of the Lawsuits was within the realm of possibility, counsel for the Parties participated in four additional mediation sessions with Justice Wiener in San Diego over the course of six months, before finally reaching an agreement-in-principle on April 28, 2011 for a global settlement of the Lawsuits. During this process, the Parties continued to exchange documents and additional discovery, and consult with experts. Through feedback from these three well-qualified mediators, the Parties were able to make thorough assessments of the strengths and weaknesses of the claims and defenses of both sides. These negotiations were protracted, well-informed, and at times contentious—indeed on several occasions it appeared that a settlement might not be achieved.

8.     As described in greater detail in the accompanying Joint Motion, Settlement Agreement, and exhibits thereto, the Settlement Class will consist of all persons who purchased or leased, other than for purposes of resale or distribution, an HCH model year 2003 through 2009. This class includes both original and subsequent purchasers of the vehicles. While the exact class size cannot be determined at this time, it is expected that the Settlement Class numbers more than 200,000 members, as there are approximately 200,000 original purchasers of these vehicles.[1] Settlement Class Members will receive the following benefits in exchange for the Release of the claims in the Lawsuits:

/ / /

---

[1] While the identities of nearly all original purchasers are within Honda's records, subsequent purchasers are not, and Parties must appeal to other sources such as state motor vehicle registration agencies for such identities. Because some of these agencies require a court order (such as a preliminary approval order) before disclosing this information, the exact class size (including subsequent purchasers) will not be known until after preliminary approval.

(a)   Cash Payments:   All members of the Settlement Class who are dissatisfied with the fuel economy of their HCH will be entitled to receive a cash payment of $100 upon completing and returning a simple claim form.   Additionally, all purchasers or lessees of model year 2006 through 2008 HCHs ("Subclass") who received the July 2010 Software Update and are dissatisfied with the post-update performance of their HCH are entitled to receive an additional $100 cash payment for a total of $200.

(b)   Rebate Certificates:   In addition to the Cash Payment, all Settlement Class Members will be entitled to request a rebate certificate in connection with the purchase of a new Honda or Acura vehicle from an Authorized Honda Dealer under "Option A" or "Option B." The "Option A" Rebate certificate is a $1000 rebate on the purchase or lease of a new Honda or Acura vehicle from an Authorized Honda Dealer.   To be eligible to redeem the $1000 rebate certificate, the Settlement Class Member must (1) sell or trade his or her HCH; and (2) purchase a new Honda or Acura vehicle from an Authorized Honda Dealer. The "Option A" Rebate Certificate is nontransferable and may only be redeemed by the Settlement Class Member.   The "Option B" Rebate Certificate is a $500 rebate on the purchase or lease of a new Honda or Acura vehicle from an Authorized Honda Dealer.   Settlement Class Members need not sell or trade their HCH in order to claim or redeem the "Option B" Rebate certificate. "Option B" rebate certificates are fully transferable and saleable by Settlement Class Members and can be redeemed by any transferee subject to the same terms as the Settlement Class Member. In addition, Subclass Members are eligible for an additional "Option B" Rebate certificate, which can be combined with either an "Option A" Rebate Certificate or another "Option B" Rebate Certificate pursuant to the same terms set forth above  (transferees may redeem a total of one (1) certificate).   "Option A" and "Option B" rebate certificates must be redeemed on or before the expiration date on the face of the Rebate Certificate, which will be 12 months from the date the certificate was issued.

(c)   Warranty Extension/Repair Reimbursement:   Settlement Class Members with MY2003–2008 HCHs will automatically receive an extension of the written warranty for the IMA battery system in their vehicle for an additional 12,000 miles or 12 months after the expiration of the original written warranty.   If a Settlement Class Member's IMA battery was replaced in his or

6

1   her MY2003–2008 HCH at the Settlement Class Member's expense after the initial written

2   warranty had expired, but within the first 12 months or 12,000 miles after its expiration, the

3   Settlement Class Member will be entitled to submit a claim form for reimbursement for the full

4   costs of parts and labor as if the Extended Warranty period had been in effect when the

5   replacement took place.

6        (d)    Fuel Economy Video:  AHM will produce a video on how Settlement Class

7   Members can drive and maintain their HCHs in order to maximize and optimize their fuel

8   economy.  This video will be available online for viewing, and Settlement Class Members may

9   also request a DVD copy of the Fuel Economy Video to be mailed to them by submitting a Claim

10  Form.

11       (e)    Dispute Resolution Program for Subclass Members:  In lieu of obtaining the

12  additional $100 cash payment and additional $500 Option B Rebate Certificate described above,

13  Subclass Members who (a) received the July 2010 Software Update, and (b) remain dissatisfied

14  with the post-update performance of their HCH may elect to participate in a binding dispute

15  resolution program ("ADR") administered by Judicial Arbitration and Mediation Services

16  ("JAMS").  Subclass Members choosing this option will be required to pay $250 towards JAMS

17  mediation fees, but all other fees due to JAMS will be paid by AHM.  Subclass Members

18  selecting this option may still claim one $100 Cash Payment and one Rebate Certificate (either an

19  Option A Rebate Certificate or an Option B Rebate Certificate).  Subclass Members who select

20  the ADR will be contacted by AHM to initiate informal discussions that may lead to resolution of

21  the Subclass member's complaints.  If the Subclass Member remains dissatisfied after 75 days, he

22  or she may begin the formal ADR process with JAMS.

23       9.     The Settlement benefits described above are specifically tailored to address the

24  concerns raised by the Lawsuits.  The Cash Payments offer a substantial benefit to each member

25  of the Settlement Class, and address the Lawsuits' claims that HCH owners and lessees paid a

26  premium for the HCH over the conventional gasoline Civic, and have paid more in fuel costs

27  because the HCH did not achieve the advertised fuel economy under normal driving conditions.

28  The enhanced Cash Payment for Subclass Members who received the Software Update addresses

7

the Lawsuits' claims that the Software Update decreased the fuel economy and performance of the HCH.    The Cash Rebate components of the Settlement offer additional benefits to those Settlement Class Members who remain dissatisfied and wish to sell or trade their HCH for a new Honda or Acura vehicle, while at the same time providing a source of potential cash value to those Settlement Class Members who do not wish to purchase a new vehicle, as the Option B certificates are freely transferable.    The Warranty Extension addresses the Lawsuits' claim that the Software Update was released to address premature deterioration of the IMA Battery and prolong the IMA Battery's failure until outside the warranty period.    The Fuel Economy Video offers guidance to Settlement Class Members on how to achieve optimal fuel economy with their vehicle, addressing the Lawsuits' claims that the HCH's fuel economy was less than advertised. And the Dispute Resolution Process allows Subclass Members to resolve or litigate their individual complaints at minimal cost to them and in an alternative dispute resolution framework that will assure both AHM and the Subclass Members an independent and objective forum in which to address the complaints.    As a whole, the Settlement offers a significant monetary benefit to the Settlement Class.

10.    The Settlement is fair and reasonable considering the complexity, expense, and likely duration of the litigation, as well as the risks of further litigation.    This Settlement is unique in that the Parties received feedback from three separate and independent mediators concerning the relative strengths and weaknesses of their claims and defenses going forward, giving the Parties a significant amount of independent inputs concerning the merits of their positions in the Lawsuits prior to entering into the Settlement Agreement.    Despite having a factually well-developed case, should litigation continue, the Parties will face significant uncertainty due to the novelty of the factual and legal issues presented and the lack of binding authority on point.  AHM denies and continues to deny the factual allegations in the Lawsuits and any legal liability arising from those claims.    While the *True* Plaintiffs prevailed on AHM's motion to dismiss, and the Parties were able to reach the proposed global settlement through meaningful discovery and mediation, the continued litigation of contested issues would involve significant time and expense.    Additional discovery would be needed to prepare for class certification, trial, and

8

beyond.  The Parties would require additional depositions and motion practice to brief and argue class certification, and Plaintiffs anticipate that AHM would vigorously contest class certification, and would likely pursue an interlocutory appeal if class certification were granted.  Expert reports would be prepared and exchanged.  Summary judgment briefings would likely be exchanged and argued, and further time and expense would be endured by both sides in preparation for and through the duration of any trial and future appeal.  In the meantime, tens of thousands of Class Members, including many hundreds who have contacted AHM or Class Counsel to voice their dissatisfaction with their HCH performance, would be waiting for final resolution of claims that were first filed four years ago.

11.    The class is sufficiently numerous, including both original and subsequent purchasers of MY 2003-2009 HCHs. There are approximately 200,000 original purchasers of these vehicles, and the total class size is expected to be much larger with the inclusion of subsequent purchasers (the exact number of which cannot be finalized until after preliminary approval, as certain state department of motor vehicles require a court order before disclosing this information).  The Settlement Class includes all 176,990 purchasers and lessees who would have been covered by the *True* settlement, as well as additional purchasers and lessees due to the addition of MY 2009 to the Settlement Class, and the expansion of the Settlement Class to include subsequent resale purchasers of the affected HCHs.

12.    A common nucleus of facts and potential legal remedies dominate this litigation. Common questions in this Lawsuit include: (1) whether AHM's advertising was false and misleading; (2) whether the Software Update negatively affected the fuel economy and performance of the HCH; (3) whether fuel economy was material to HCH purchasers; (4) whether Plaintiffs and Settlement Class Members suffered damages as a result of AHM's conduct; (5) whether AHM knew, or by the exercise of reasonable care should have known, that the HCH's actual fuel economy under normal driving conditions was significantly below the fuel economy AHM advertised; (6) whether AHM concealed from or omitted to state material facts to the Plaintiffs and Settlement Class Members concerning the actual fuel economy of the HCH under normal driving conditions; (7) whether the IMA Battery in MY 2006-2008 HCHs was prone to

9

premature deterioration; and (8) whether AHM knew, or by the exercise of reasonable care should have known, that its advertising of fuel economy and fuel cost savings for the HCH had the capacity or tendency to confuse or mislead. These primary factual and legal issues that underlie the Lawsuits are common to Plaintiffs and all of the Settlement Class Members.

13.    Named Plaintiffs in the Lawsuits are typical of Settlement Class Members. Each purchased a HCH based on representations that it would achieve the advertised gas mileage. Each Plaintiff paid a premium price for their HCH compared to a conventional gasoline Civic. Each Plaintiff achieved markedly lower fuel economy under normal driving conditions in their HCHs than was advertised for the vehicle. Furthermore, those Named Plaintiffs who received the Software Update remain dissatisfied with the post-update fuel economy of their HCHs. Thus, Plaintiffs' claims are co-extensive with those of absent Settlement Class Members.

14.    Each Named Plaintiff has been diligent in prosecuting this case, and has spent time and effort reviewing documents in the case and helping to develop the facts of this case on behalf of the Class. Plaintiffs Delgado and True produced documents, responded to interrogatories and requests for admission, and sat for deposition. Plaintiffs Gibble, Stouch, and Sherrid produced documents, reviewed court filings, and made their vehicles available to Class Counsel for testing. Plaintiffs Krsul, Thieben, Lockabey, and Castrejon produced documents, reviewed court filings, and had numerous communications with their attorneys to develop the case and stay informed of the progress of the litigation. None of these Named Plaintiffs have interests that are adverse to the interests of the Settlement Class.

15.    Common questions of law predominate in this litigation. All claims in the Lawsuits will be covered by California law, and under choice of law principles, California law will apply to the national class, eliminating any structural difficulties arising from applying the consumer protection laws of the 50 states. There is a close nexus between the claims of the entire class and the State of California, as (a) AHM's headquarters are located in Torrance, California; (b) AHM's primary advertising agency, RPA, is located in Santa Monica, California; (c) RPA created and placed all or substantially all of the advertising and promotional materials at issue in this Lawsuit for AHM from its offices in California; (d) AHM and RPA coordinated Honda's

10

national and regional advertising, and AHM regulated or reviewed dealer advertising from its headquarters in Southern California; and (e) all of AHM's advertisements are reviewed by AHM's legal and regulatory departments in California.

16. A class action is the vastly superior means, and the only practical means, of adjudicating the claims of the more than 200,000 Settlement Class Members scattered all over the country. This is particularly true in cases such as this, where each individual Settlement Class Member's claim is for a relatively small amount of money when compared to the expense of individual litigation. Due to the nature and complexity of the claims at issue, few persons would have an interest in individually controlling the prosecution of separate actions, and the Parties are not aware of any currently pending individual lawsuits concerning the claims at issue.

17. Class Counsel is well-qualified to represent the Settlement Class, with significant experience in consumer class action litigation. Resumes for each law firm are attached hereto as Exhibit 2.

18. The proposed Class Notice and Notice program satisfy due process, and fully advises Settlement Class Members of the nature of the pending litigation, the general terms of the settlement, the options available to Class Members, the time and place of the fairness hearing, and ways to obtain more detailed information. Additionally, the proposed method of disseminating Class Notice satisfies due process. The notice will be mailed to all Settlement Class Members by the Settlement Administrator via first class mail, at AHM's expense. The names and addresses of nearly all original purchaser or lessee Settlement Class Members are ascertainable from electronic records in AHM's possession. The names and addresses of the majority of subsequent purchaser or lessee Settlement Class Members are ascertainable from other records databases such as states' Department of Motor Vehicle registrations. Furthermore, the Settlement Administrator will take reasonable efforts to ensure that addresses are current, such as running the Class List through the National Change of Address registry. While the Parties believe that most Settlement Class Members will receive the direct mail notice, the notice will also be posted on the Settlement Website to supplement the direct mail notice.

///

11

19.     The settlement will be administered in a way that satisfies due process. Rust Consulting, Inc. ("Rust"), a neutral class action notification and settlement administration company with significant experience in designing, implementing, and managing complex litigation settlements such as this one, will serve as the Settlement Administer.  As Settlement Administrator, Rust will (a) receive and respond to communications from Settlement Class Members (including requests for exclusion, Claim Forms, and questions); (b) maintain a dedicated toll-free telephone number that Settlement Class Members may contact; (c) maintain a dedicated P.O. Box to which Settlement Class Members can send request for exclusion and Claim Forms; (d) provide reasonable translation services to Settlement Class Members upon request; (e) process Claim Forms and distribute benefits to Settlement Class Members; (f) allow Settlement Class Members a reasonable opportunity to cure a deficient claim form; (g) process or assist AHM in processing Certificate redemptions; and (h) assist with the ADR program.  Additionally, Rust will maintain a Settlement Website where Settlement Class Members can view important court documents, view the Notice, view frequently asked questions concerning the Settlement, and download Claim Forms.

20.     As a result, we believe the requirements for certification of a settlement class on a multi-state basis for settlement purposes—numerosity, typicality, predominant questions of law and fact, adequacy of both the representative plaintiffs and their counsel, manageability and superiority of proceeding on a class-wide basis as compared to other group-wide methods for adjudication of this controversy—are all satisfied in this action, making certification of the Class for settlement purposes appropriate.

21.     This Settlement in the Context of the Earlier Settlement in *True*.     This proposed Settlement is not a recasting of the earlier settlement in *True* that was not approved by Federal Judge Virginia A. Phillips.  It is a more valuable and more expansive settlement because the settlement claims, Class Members covered and benefits conferred have changed materially.  For example:

a.   The proposed settlement resolves the original false advertising claims raised in *True* plus the Software Update claims that were filed in this Action and the related cases

12

beginning in August 2010.  The Software Update claims raised the stakes considerably for AHM.

b.  The proposed Settlement Class increased significantly by adding subsequent purchasers.  The Parties will not know until the state motor vehicle departments provide vehicle owner data how many Class Members will be added to the class member list that initially comprised only original purchasers, but it may increase the number between 25% and 75% of the 200,000 original purchaser Class Members.

c.  The proposed Settlement Class has added MY 2009 purchasers and, because of the IMA battery claims, has yielded a Subclass comprised of MY 2006-08 purchasers. This Subclass will receive additional significant benefits under the proposed Settlement.

d.  Whereas cash payments in the *True* settlement were available only to those Class Members who had previously lodged a complaint with American Honda, in the instant settlement, cash payments are available to any and all Settlement Class Members who timely submit a claim form indicating they are dissatisfied with their fuel economy. This significantly increases the monetary value of the settlement, ensures that each and every dissatisfied Settlement Class Member can claim a cash benefit, and moots concerns that similarly situated Class Members are treated differently under the settlement.   Furthermore, the MY 2006-2008 who received the software update (recommended by Honda for all MY 2006-2008 vehicles, or about 45% of the class based on original purchaser numbers) and remain dissatisfied are eligible for an additional $100 cash payment, further increasing the cash value of the settlement.

22.  Valuing the Proposed Settlement.  This is a claims-made settlement so it is useful to measure the funds available to be claimed by Settlement Class Members.  Using only the estimated number of original purchaser Settlement Class Members, AHM would need cash available to pay out in excess of $29 million just for the cash payment elements of this

/ / /

/ / /

13

settlement.[2]  Additionally, other elements of the *True* settlement have been enhanced to provide additional value to Settlement Class Members. Whereas the Option B Rebate Certificates in the *True* settlement had limited transferability to direct family members only, the Option B Rebate Certificates in the instant settlement are freely transferable and saleable, increasing their utility and providing another source of cash value to those Settlement Class Members who do not wish to purchase a new Honda vehicle.   Furthermore, the MY 2006-2008 sub-class members are entitled to claim an additional fully-transferable Option B Rebate Certificate, further enhancing that value.   While the Parties are aware that not all Settlement Class Members will claim certificates, and that not all claimed certificates will be redeemed, based on the number of Settlement Class Members, AHM would need cash available to pay out in excess of $145 million on Option B Rebate Certificates alone.[3]  While the value of the Warranty Extension for MY 2006-2008 class members' IMA batteries (which was not present in the *True* settlement) or JAMS process may be difficult to monetize, this element provides a significant benefit to the sub-class on a vehicle part that can exceed $3000 in parts and labor to repair.[4]

23.   As reflected in the Settlement Agreement, Class Counsel will be requesting fees and costs not to exceed $8,474,000, separate and apart from the benefits offered to the Settlement Class, to be distributed in an already-agreed-upon proportion between Counsel in *True, Lockabey, Gibble, Stouch,* and *Thieben.* AHM has agreed not to contest an award of that sum.   Additionally, Class Counsel will file an application for Named Plaintiffs' Incentive awards in the

---

[2] All 200,000+ Settlement Class Members can claim a $100 cash payment, which would exceed $20 million. Additionally, the approximately 90,000 MY2006-2008 Subclass Members can claim an additional $100 cash payment, which would add $9 million to the cash component.

[3] All 200,000+ Settlement Class Members can claim one rebate certificate with a face value of $500, which would exceed $100 million in checks to be paid by Honda if all were redeemed.  Additionally, the approximately 90,000 MY 2006-2008 Subclass Members can claim an additional $500 rebate certificate, which would add an additional $45 million (approximate) if all were redeemed. Since certificates are redeemed through the Settlement Administrator separate and apart from the purchase transaction with no dealership involvement, and paid out by AHM directly (not the dealership) there is no concern that dealerships will inflate prices to offset the certificate's value.

[4] Based on dealer estimates posted online by consumers in HCH forums – *see, e.g.,* http://answers.edmunds.com/question-How-much-does-a-Honda-Civic-Hybrid-Battery-pack-cost-to-replace-24170.aspx.  In addition, while it covered other parts of the vehicle as well, Plaintiff Gibble purchased the only coverage available to her that would extend the IMA battery warranty, and that extended warranty cost over $1,300.

14

1  amount of $12,500 for John True, $10,000 for Gonzalo Delgado, and $5,000 for each of the
2  remaining Named Plaintiffs, subject to the approval of the Court. No Named Plaintiff shall be
3  eligible for an incentive award if he or she elects to exclude him/herself from the Settlement.
4  AHM will pay up to $26,000 of Named Plaintiffs' Incentive Awards, the balance of which shall
5  be paid from Class Counsel's fee and expense award. As such, neither the requested fee amount
6  nor the Named Plaintiffs' Incentive Awards will reduce the level of the Settlement Class
7  Members' recovery (a further benefit of this Settlement for them). While Class Counsel will
8  provide additional information on their lodestar as part of the final approval hearing and fee
9  applications, the total fee amount is expected to approximate Class Counsel's collective lodestar
10  in the *True*, *Lockabey*, *Gibble*, *Stouch*, and *Thieben* cases at the time of the Final Approval
11  hearing, and is also appropriate in comparison as a percentage of the overall value of the
12  settlement as discussed in Paragraph 22 above.

13      I declare under penalty of perjury under the laws of the United States that the foregoing is
14  true and correct. Executed this 2nd day of September, 2011 at Philadelphia, Pennsylvania.

16  _____
    Nicholas E. Chimicles

18      I declare under penalty of perjury under the laws of the United States that the foregoing is
19  true and correct. Executed this 2nd day of September, 2011 at San Diego, California.

21  _____
    Alan M. Mansfield

23                  Attorneys for Plaintiffs

15

EXHIBIT 1

**EXECUTION COPY**

THE CONSUMER LAW GROUP
Alan M. Mansfield (SBN 125998)
alan@clgca.com
9466 Black Mountain Road, Suite 225
San Diego, CA  92126
Tel:  (619) 308-5034
Fax:  (888) 341-5048

Michael E. Lindsey (SBN 99044)
Attorney at Law
4455 Morena Blvd., Suite 207
San Diego, CA  92117-4325
(858) 270-7000

Attorneys for Plaintiffs Lockabey, et al.

[Additional Counsel appear on Signature Page]

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

### IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| LOGAN and ANITA LOCKABEY; TOMAS CASTREJON; JOHN TRUE; GONZALO M. DELGADO; KEVIN THIEBEN; RONDA GIBBLE; GARY STOUCH; ROY D. SHERRID; and BRANKA KRSUL, as Individuals and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.:  37-2010-00087755-CU-BT-CTL<br><br>**CLASS ACTION**<br><br><br><br>**I/C Judge:   Hon. Timothy Taylor** |

### CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

EXECUTION COPY

## TABLE OF CONTENTS

I.      DEFINITIONS.................................................................................................4

II.     PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS...................................12

III.    BENEFITS TO SETTLEMENT CLASS MEMBERS......................................................13

IV.     OTHER RELIEF TO SETTLEMENT CLASS MEMBERS............................................19

V.      SETTLEMENT ADMINISTRATION PROCEDURES ..................................................21

VI.     CLASS NOTICE PROCEDURES .....................................................................23

VII.    CONFIDENTIALITY OF INFORMATION ...............................................................24

VIII.   ATTORNEYS' FEE AWARD AND INCENTIVE AWARDS ........................................25

IX.     SETTLEMENT APPROVAL PROCESS ......................................................................27

X.      FINAL ORDER AND JUDGMENT AND RELEASES...................................................32

XI.     WITHDRAWAL FROM OR TERMINATION OF SETTLEMENT ...............................37

XII.    EFFECTIVE DATE...........................................................................................39

XIII.   ADDITIONAL PROVISIONS .......................................................................40

i

**EXECUTION COPY**

This Class Action Settlement Agreement and Release ("Agreement") is entered into between and among (1) John True, Gonzalo Delgado, Logan and Anita Lockabey, Tomas Castrejon, Ronda Gibble, Gary Stouch, Roy Sherrid, Branka Krsul and Kevin Thieben (collectively, "Named Plaintiffs"), on behalf of themselves and as representatives of the Settlement Class defined in Paragraphs I.RR and II.1 below (the members of the Settlement Class and Named Plaintiffs collectively referred to herein as "Settlement Class Members"); and (2) American Honda Motor Co., Inc. ("AHM") (together with Settlement Class Members, the "Parties"), in order to effect a full and final settlement and dismissal with prejudice of all claims against AHM, and the "Releasees," (as defined in Paragraph I.PP below) as alleged in the following lawsuits: (1) *Gibble v. American Honda Motor Co., Inc.*, Case No. 2:10-cv-06148-VAP-OP (C.D. Cal.) ("*Gibble*"); (2) *Lockabey v. American Honda Motor Co., Inc.*, Case No. 37-2010-00087755-CU-BT-CTL (San Diego County Superior Court) ("*Lockabey*"); (3) *Stouch v. American Honda Motor Co., Inc.*, Case No. 2:10-cv-06236-VAP-OP (C.D. Cal.) ("*Stouch*"); (4) *Thieben v. American Honda Motor Co., Inc.*, Case No. BC 441454 (Los Angeles County Superior Court) ("*Thieben*"); and (5) *True v. American Honda Motor Co., Inc.*, Case No. 5:07-cv-00287-VAP-OP (C.D. Cal.) ("*True*") (*Gibble*, *Lockabey*, *Stouch*, *Thieben* and *True* referred to collectively herein as the "Lawsuits") on the terms set forth below and to the full extent reflected herein, subject to the approval of this Court.

## RECITALS

WHEREAS, on March 9, 2007, Named Plaintiff John True filed *True* on behalf of himself and a proposed class of purchasers and lessees of new Honda Civic Hybrid vehicles (each an "HCH") during the time period of March 1, 2003 through March 1, 2007, and on November 16, 2007, a First Amended Complaint was filed adding Named Plaintiff Gonzalo Delgado and extending the proposed class period to June 1, 2007;

1

**EXECUTION COPY**

WHEREAS, on March 15, 2010, Named Plaintiffs Logan and Anita Lockabey filed *Lockabey* on behalf of themselves and a proposed class of purchasers and lessees of model year ("MY") 2005-2009 HCHs in the Superior Court of San Diego, and on January 14, 2011 a First Amended Complaint was filed adding Tomas Castrejon as an additional Named Plaintiff as well as claims for a proposed subclass of purchasers and lessees of MY 2006-2008 HCHs, and a stipulation to file a second amended complaint was filed on September 2, 2011 to amend the class definition and add additional plaintiffs from the other Lawsuits;

WHEREAS, on July 13, 2010, Named Plaintiff Kevin Thieben filed *Thieben* on behalf of himself and a proposed class of purchasers and lessees of new MY 2003-2008 HCHs in the Superior Court of Los Angeles County, and on August 17, 2010 an amended and corrected complaint was filed which includes a proposed subclass of purchasers and lessees of new MY 2006-2008 HCHs;

WHEREAS, on August 18, 2010, Named Plaintiff Ronda Gibble filed *Gibble* on behalf of herself and a proposed class of purchasers and lessees of new MY 2003-2008 HCHs and a proposed subclass consisting of purchasers and lessees of new MY 2006-2008 HCHs and on October 27, 2010, the *Gibble* action was transferred to the same court before whom the *True* action is pending;

WHEREAS, on August 20, 2010, Named Plaintiffs Gary Stouch, Roy D. Sherrid and Branka Krsul filed *Stouch* on behalf of themselves and a proposed class of purchasers and lessees of new MY 2003-2008 HCHs and a proposed subclass consisting of purchasers and lessees of new MY2006-2008 HCHs and on October 27, 2010, the *Stouch* action was transferred to the same court before whom the *True* action is pending;

2

WHEREAS, the Lawsuits allege generally, among other things, that (1) fuel economy estimates AHM advertised for MY 2003-2008 HCHs purportedly could not be achieved under "normal driving conditions" using conventional driving techniques, and (2) that the Integrated Motor Assist ("IMA") battery system in MY 2006-2008 HCHs is purportedly defective and a software product update issued by AHM in or around July 2010 (the "PUD") purportedly adversely affects the performance and fuel efficiency of MY 2006-2008 HCHs;

WHEREAS, AHM denies all of the allegations in the Lawsuits, denies that it has engaged in any wrongdoing, denies that its advertising for the HCH was in any respect false or misleading, denies that the IMA battery systems in MY 2006-2008 do not perform as expected and further denies that the PUD adversely affects performance or fuel efficiency of MY 2006-2008 HCHs;

WHEREAS, the Parties have conducted a thorough examination and investigation of the facts and law relating to the matters set forth in the Lawsuits, which included, among other things: (1) review by Class Counsel (defined in Paragraph I.I below) of in excess of thirty-five thousand (35,000) pages of documents produced by AHM, including the translation and review of documents produced in Japanese; (2) Named Plaintiffs' production of over 900 pages of documents; (3) responses to interrogatories and requests for admissions; (4) six depositions; (5) independent vehicle testing by Class Counsel and their experts and consultants; and (6) extensive mediation and settlement negotiations, including four separate mediation sessions with the Hon. Howard B. Wiener (Ret.);

WHEREAS, the Parties reached this Agreement at arm's length, after consultation with their independent experts and attorneys, in order to conclusively resolve these disputes without the uncertainty, expense and delay of further litigation pursuant to the terms set forth herein;

3

WHEREAS, the Named Plaintiffs and Class Counsel have examined the benefits to be obtained under the terms of this Agreement, have considered the risks associated with the continued prosecution of the Lawsuits and the likelihood of success on the merits of the Lawsuits and believe that, after considering all of the circumstances, the proposed settlement set forth in this Agreement is fair, reasonable, adequate and in the best interests of the Settlement Class Members;

WHEREAS, the Parties agree that neither this Agreement nor the settlement it represents shall be construed as an admission by AHM of any wrongdoing whatsoever including an admission of a violation of any statute or law or of liability on the claims or allegations in the Lawsuits;

WHEREAS, the Parties agree and understand that neither this Agreement nor the settlement it represents shall be construed or admissible as an admission by AHM in the Lawsuits or any other proceedings that the Named Plaintiffs' claims or any similar claims are or would be suitable for class treatment if the Lawsuits proceeded through both litigation and trial;

WHEREAS, the Parties desire to compromise and settle all issues and claims that have been brought or could have been brought against the Releasees arising out of or related to the claims asserted in the Lawsuits;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein, the Parties hereto agree as follows, subject to preliminary and final approval from this Court:

## I. <u>DEFINITIONS</u>

The following words and terms used in this Agreement or the attached Exhibits shall have the definitions set forth below:

A.     "ADR Participant" shall have the meaning ascribed to it in Paragraph III.8.

B.     "Agreement" shall refer to this Class Action Settlement Agreement and Release.

C.    "AHM" shall mean American Honda Motor Co., Inc.

D.    "Attorneys' Fee Award" shall mean the total award of attorneys' fees, costs and expenses sought by and apportioned between Class Counsel subject to Court approval, and which shall not exceed $8,474,000.

E.    "Bodily Injury" shall mean any identifiable bodily harm sustained by a person according to objective medical criteria as adjudged by a licensed medical healthcare professional pursuant to an appropriate standard of care.

F.    "Cash Rebate Transferee" shall refer to any person who receives from a Settlement Class Member the right to claim the benefit of Option B.

G.    "Claim Form" shall mean the claim form Settlement Class Members must complete and submit in order to be eligible for the benefits described below, which shall be mailed with the Mailed Notice and be without material alteration from Exhibit A.  Claim Forms will be processed after the Effective Date.

H.    "Claim Period" shall mean the period in which a Settlement Class Member may submit a Claim Form, which period shall be six (6) months beginning as of the Effective Date. In no event shall monetary compensation or Rebate Certificates be issued prior to the Effective Date.

I.    "Class Counsel" shall mean the counsel whose names appear as counsel for the Named Plaintiffs and Settlement Class Members in Paragraph II.2 and on the signature page of this Agreement.

J.    "Class List" shall mean the complete listing of the names and addresses obtained by AHM of all persons AHM determines, after a good-faith search, are Settlement Class

5

Members and thereby eligible to receive the Mailed Notice, as updated through the National Change of Address database prior to the mailing of the Mailed Notice.

K.      "Class Vehicle" shall mean any MY 2003-2009 HCH owned or leased by a Settlement Class Member.

L.      "Court" shall mean the San Diego County Superior Court.

M.      "Defense Counsel" shall mean AHM's counsel of record in the Lawsuits; specifically, Mark S. Mester of Latham & Watkins LLP and Livia M. Kiser of Barack Ferrazzano Kirschbaum & Nagelberg LLP.

N.      "Effective Date" shall mean the date defined in Paragraph XII.32.

O.      "Eligible Vehicle" shall mean a new model year Honda or Acura vehicle purchased during the Redemption Period.

P.      "Final" shall mean final as defined in Paragraph XII.33.

Q.      "Final Approval Hearing" shall mean the hearing at which the Court orders final approval of the settlement as defined in Paragraph X.27.

R.      "Final Order and Judgment" shall mean the order defined in Paragraph X.27, which shall be without material alteration from Exhibit B.

S.      "Fuel Economy Video" shall mean the video created for Settlement Class Members by AHM at its sole expense containing information concerning how Settlement Class Members can drive and maintain their HCHs in order to maximize and optimize their fuel economy.

T.      "HCH" shall mean Honda Civic Hybrid.

U.      "HCH Settlement Website" shall mean the dedicated website created and maintained by the Settlement Administrator, which website shall contain relevant documents and

6

information about the settlement including this Agreement, the Class Notice, the Claim Form and the Fuel Economy Video.

V.       "Information" shall mean the materials defined in Paragraph VII.24.

W.       "Lawsuits" shall mean the *True*, *Lockabey*, *Gibble*, *Stouch*, and *Thieben* actions, each individual action being a "Lawsuit."

X.       "Mailed Notice" shall mean the notice of the settlement provided to Settlement Class Members by first class mail, postage pre-paid, which shall be without material alteration from Exhibit C.

Y.       "Mailed Notice Date" shall mean the date on which the Settlement Administrator completes the mailing by first class mail to each person on the Class List of a copy of the Mailed Notice.  Such date shall be no later than eighty-six (86) days from the Preliminary Approval Date but shall occur at an earlier date if feasible.

Z.       "MY 2003-2009 Class" shall refer to all persons who purchased or leased, other than for purposes of resale or distribution, an HCH MY 2003, 2004, 2005, 2006, 2007, 2008 and 2009, each such person a "MY 2003-2009 Settlement Class Member."

AA.       "MY 2006-2008 Subclass" shall refer to all persons who purchased or leased, other than for purposes of resale or distribution, an HCH MY 2006, 2007 or 2008, each such person a "MY 2006-2008 Subclass Member."

BB.       "Named Plaintiffs" shall mean John True, Gonzalo Delgado, Logan and Anita Lockabey, Tomas Castrejon, Ronda Gibble, Gary Stouch, Roy Sherrid, Branka Krsul, and Kevin Thieben.

CC.       "Named Plaintiffs' Incentive Awards" shall mean the incentive awards defined in Paragraph VIII.25.B., which shall be subject to Court approval.  AHM shall be obligated to pay

EXECUTION COPY

no more than $26,000 of the Named Plaintiffs' Incentive Awards, and the balance of the awards (if any) shall be paid by Class Counsel from the Attorneys' Fee Award.

DD. "Out-Of-Pocket Expenditure" shall mean a Settlement Class Member's direct outlay of funds to purchase and install a replacement IMA battery that has not been reimbursed by any party, including without limitation an insurer, AHM or a dealer.

EE. "Opt-Out" shall refer to a member of the Settlement Class who properly and timely submits a request for exclusion from the Settlement Class as set forth in Paragraph VI.23. An Opt-Out may rescind a request for exclusion by submitting a Claim Form to the Settlement Administrator to obtain benefits of the settlement.

FF. "Opt-Out List" shall mean the list of all persons who timely and properly requested exclusion from the Settlement Class.

GG. "Parties" shall refer to Named Plaintiffs and Settlement Class Members together with AHM, the Settlement Class Members (including Named Plaintiffs) being one "Party" and AHM being the other "Party."

HH. "Personal Injury" shall mean any identifiable injury to a person's body according to objective medical criteria as adjudged by a licensed medical healthcare professional pursuant to an appropriate standard of care.

II. "Preliminary Approval Date" shall mean the date the Preliminary Approval Order has been executed by the Court and received by counsel for the Parties.

JJ. "Preliminary Approval Order" shall mean the order defined in Paragraph IX.26.

KK. "PUD" shall mean the software product update described in Technical Service Bulletin ("TSB") 10-034 and shall include the IMA software and prior updates thereto, but shall

EXECUTION COPY

not include any subsequent updates.

LL.   "Rebate Certificate" shall refer to the certificate or e-certificate obtained as a result of a Settlement Class Member submitting a Claim Form (defined in Paragraph I.G. above) to the Settlement Administrator and requesting either Option A (defined in Paragraph III.6.A below) or Option B (defined in Paragraph III.6.B below).   Each Rebate Certificate shall contain the following information:   (1) the date of issuance; (2) name of the Settlement Class Member and unique identifier agreed to by the Parties in consultation with the Settlement Administrator; (3) VIN of Class Vehicle; and (4) value (i.e., $1,000 or $500).   Rebate Certificates in the amount of $500 shall indicate on their face that they are transferable by Settlement Class Members, and instructions shall be provided by which such transfers may occur.   A Rebate Certificate that is lost and that is subsequently replaced shall be dated the same date as the Rebate Certificate when first issued.   AHM and the Settlement Administrator will put into place appropriate and necessary processes and procedures to address fraud, forgery and unauthorized duplication of Rebate Certificates, and e-certificates will be used as feasible.   Only one Rebate Certificate can be redeemed by any Settlement Class Member or Cash Rebate Transferee for each Eligible Vehicle purchased, except that members of the MY 2006-2008 Subclass who are not ADR Participants can redeem up to two (2) Rebate Certificates towards the purchase of an Eligible Vehicle.

MM.   "Redemption Period" shall mean the period during which Settlement Class Members or Cash Rebate Transferees may redeem a Rebate Certificate previously claimed under Option A or Option B, which shall be up to and including twelve (12) months from the date of issuance of a Rebate Certificate.   Rebate Certificates will issue after the Effective Date.

**EXECUTION COPY**

NN.    "Release" shall mean the release and discharge, as of the Effective Date, by the Named Plaintiffs and all Settlement Class Members (and their assignees who have not excluded themselves from the Settlement Class) of the Releasees (defined below) of and from all Released Claims and shall include the agreement and commitment by the Named Plaintiffs and all Settlement Class Members to not now or hereafter initiate, maintain or assert against the Releasees or any of them any and all causes of action, claims, rights, demands, actions, claims for damages, equitable, legal and/or administrative relief, interest, demands or rights, including without limitation, claims for damages of any kind, including those in excess of actual damages, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law or any other sources that have been, could have been, may be or could be alleged or asserted now or in the future by the Named Plaintiffs or any Settlement Class Members against the Releasees, or any of them, in the Lawsuits or in any other court action or before any administrative body (including any regulatory entity or organization), tribunal, arbitration panel or other adjudicating body arising out of or related to the Released Claims.

OO.    "Released Claims" shall mean any and all claims, actions, causes of action, rights, demands, suits, debts, liens, contracts, agreements, offsets or liabilities, including but not limited to tort claims, claims for breach of contract, breach of the duty of good faith and fair dealing, breach of statutory duties, actual or constructive fraud, misrepresentations, fraudulent inducement, statutory and consumer fraud, breach of fiduciary duty, unfair business or trade practices, restitution, rescission, compensatory and punitive damages, injunctive or declaratory relief, attorneys' fees, interests, costs, penalties and any other claims, whether known or unknown, alleged or not alleged in the Lawsuits, suspected or unsuspected, contingent or matured, under federal, state or local law, which the Named Plaintiffs and/or any Settlement

10

Class Member had, now have or may in the future have with respect to any conduct, act, omissions, facts, matters, transactions or oral or written statements or occurrences prior to the Effective Date of this Agreement relating to or arising out of the advertising of the fuel economy or miles per gallon ("MPG") of MY 2003-2009 HCHs, and additionally as to members of the MY 2006-2008 Subclass, claims relating to or arising out of the Integrated Motor Assist ("IMA") battery system in MY 2006-2008 HCHs, including that it did not perform as expected and/or that the IMA battery system is somehow defective, and AHM's installation of the PUD adversely affected the performance and fuel efficiency of the MY 2006-2008 HCH, as asserted in the Lawsuits by the Named Plaintiffs and/or the Settlement Class Members including, without limitation, causes of action for violations of Cal. Bus. & Prof. Code § 17200, *et seq.*, Cal Bus. & Prof. Code § 17500, *et seq.*, Cal. Civ. Code § 1750, *et seq.* and similar claims under the statutes and common law of other states as well as claims for unjust enrichment, but excluding all claims for Personal Injury or Bodily Injury. Nothing in this Agreement shall be interpreted to modify or diminish the manufacturer's limited, written warranty with respect to a Class Vehicle.

PP.    "Releasees" shall mean AHM and all of its present, former and future officers, directors, employees, attorneys, dealers, insurers, insurance agents and brokers, independent contractors, suppliers, vendors, successors, assigns, parents, subsidiaries, affiliates, related companies, shareholders, members, counsel and legal representatives.

QQ.    "Settlement Administrator" shall mean the independent third-party entity selected by Class Counsel and Defense Counsel and approved by the Court to work at their direction to administer specific components of the Settlement, including providing Class Notice, processing proofs of claims and maintaining the HCH Settlement Website.

RR.    "Settlement Class" or "Settlement Class Member" shall include all persons in the MY 2003-2009 Class and MY 2006-2008 Subclass, subject to the exclusions set forth in Paragraph II.1 below.

SS.    "VIN" shall mean Vehicle Identification Number.

TT.    "Warranty Extension" shall mean the period of automatic extension of operative warranties for MY 2003-2008 HCHs as described in Paragraph III.7.

## II.    PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS

1.    The Parties stipulate to certification, for settlement purposes only, of a Settlement Class defined as follows:

> All persons in the United States and/or the District of Columbia who purchased or leased other than for purposes of resale or distribution a Honda Civic Hybrid model years 2003 through 2009 (MY 2003-2009 Class).
>
> A Subclass defined as all persons in the United States and/or the District of Columbia who purchased or leased other than for purposes of resale or distribution a Honda Civic Hybrid model year 2006, 2007 or 2008 (MY 2006-2008 Subclass).

The Settlement Class shall include all original purchasers and lessees as well as any subsequent purchaser or lessees who purchased or leased a Class Vehicle on or before the Preliminary Approval Date.

Specifically excluded from the Settlement Class are the following persons:

(i)    AHM and its subsidiaries and affiliates, employees, officers, directors, agents, and representatives and their family members;

(ii)    Class Counsel;

(iii)    The judges who have presided over the Lawsuits; and

(iv)    All persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with this Court's Orders.

12

2.      Solely for the purpose of implementing this Agreement and effectuating the settlement, AHM stipulates to the Court entering an order preliminarily certifying the Settlement Class, appointing the Named Plaintiffs as representatives of the Settlement Class and appointing the following as Class Counsel for the Settlement Class:

| | |
|---|---|
| Jonathan W. Cuneo, Esq.<br>William H. Anderson, Esq.<br>CUNEO GILBERT & LADUCA LLP<br>507 C Street, N.E.<br>Washington, D.C. 20002 | Nicholas E. Chimicles, Esq.<br>Alison G. Gushue, Esq.<br>CHIMICLES & TIKELLIS LLP<br>361 West Lancaster Avenue<br>Haverford, Pennsylvania 19041 |
| Alan M. Mansfield, Esq.<br>CONSUMER LAW GROUP OF CALIFORNIA<br>9466 Black Mountain Road, Suite 225<br>San Diego, California 92126 | James R. Hail, Esq.<br>DOYLE LOWTHER LLP<br>9466 Black Mountain Road, Suite 210<br>San Diego, California 92126 |
| Michael E. Lindsey, Esq.<br>LAW OFFICES OF MICHAEL E. LINDSEY<br>4455 Morena Boulevard, Suite 207<br>San Diego, California 92117 | |

3.      Solely for the purpose of implementing this Agreement and effectuating the settlement, the Parties stipulate that Rust Consulting, Inc. will be appointed as Settlement Administrator.

4.      Solely for the purpose of implementing this Agreement and effectuating the settlement, AHM stipulates that the Named Plaintiffs and Class Counsel are adequate representatives of the Settlement Class.

## III.    BENEFITS TO SETTLEMENT CLASS MEMBERS

5.      **Cash Payment(s)**

A.      AHM shall make a cash payment of $100 directly to each Settlement Class Member who submits a completed Claim Form during the Claim Period certifying his or her dissatisfaction with the fuel economy he/she achieved in his/her Class Vehicle.  A MY 2003-

**EXECUTION COPY**

2009 Class Member who claims the $100 cash payment (as applicable) is also entitled to make a claim for Option A or Option B.

B.    AHM shall make a cash payment of an additional $100 directly to each MY 2006-2008 Subclass Member who does not elect to participate in a binding dispute resolution program ("ADR," and each participant in ADR an "ADR Participant") and who submits a completed Claim Form during the Claim Period certifying his/her dissatisfaction with the performance of the IMA battery system in his/her MY 2006-2008 Class Vehicle and/or specifically with the PUD. A MY 2006-2008 Subclass Member who  is not an ADR Participant is also entitled to make an additional claim for Option B, for a total of two (2) Rebate Certificates.

C.    All cash payments made by AHM to Settlement Class Members shall be issued after the Effective Date by check, each of which shall become void if not cashed within one hundred eighty (180) days of date of issuance.

6.    **Rebates**

A.    <u>Non-Transferable $1,000 Cash Rebate ("Option A")</u>

(1)    Settlement Class Members may claim and redeem a Rebate Certificate worth one thousand dollars ($1,000, referred to herein as "Option A") provided that all of the following conditions are met:  (1) the Settlement Class Member submits a Claim Form during the Claim Period electing Option A to obtain the relevant Rebate Certificate; and (2) the Settlement Class Member sells or trades in his or her Class Vehicle and purchases an Eligible Vehicle from an authorized Honda or Acura dealer. For purposes of Option A, qualifying sales and purchases may be made any time during the Claim Period and Redemption Period; however,

14

Rebate Certificates will not be issued until after the Effective Date, and Claim Forms must be submitted in a timely fashion during the Claim Period.

(2)     Exercise of Option A shall not make a Settlement Class Member ineligible for any other offer of rebate, credit, purchase discount, financing discount or premium of any kind offered by AHM at the time of purchase of the Eligible Vehicle, provided however, that an Option A rebate may not be combined with an Option B rebate unless the redeeming Settlement Class Member is also a member of the MY 2006-2008 Subclass and is not an ADR Participant.   Rebates, credits, discounts, premiums and other offers by dealers as well as prices charged by dealers are outside the control of AHM.   Only one Option A Rebate Certificate may be redeemed by a Settlement Class Member, provided, however, that Settlement Class Members who are also members of the MY 2006-2008 Subclass and who are not ADR Participants may redeem one (1) Option A and one (1) Option B Rebate Certificate.   Rebate Certificates will be issued and redeemed by the Settlement Administrator.

(3)     To redeem a Rebate Certificate, the Settlement Class Member will submit the Rebate Certificate, along with proof of sale of his or her HCH and proof of purchase of an Eligible Vehicle to the Settlement Administrator within the Redemption Period.   Upon receipt and verification, the Settlement Administrator will issue to the Settlement Class Member a $1,000 cash payment.   The right of a Settlement Class Member to redeem the Rebate Certificate under Option A is non-transferable.   Only bona fide sales of Class Vehicles in arm's length transactions by Settlement Class Members will qualify for purposes of Option A Rebate Certificate redemptions, and the Settlement Administrator (in consultation with the Parties) reserves the right to review and/or reject the Claim of any Settlement Class Member where the sale of a Class Vehicle does not appear to meet this criteria.

B.    <u>Fully Transferable Cash Rebate ("Option B")</u>

(1)    As an alternative to Option A, Settlement Class Members may claim and redeem a Rebate Certificate worth five hundred dollars ($500, referred to herein as "Option B") provided that the following conditions are met: (1) the Settlement Class Member submits a Claim Form during the Claim Period electing Option B to obtain the relevant Rebate Certificate and then during the Redemption Period and (2) the Settlement Class Member (or Cash Rebate Transferee) purchases an Eligible Vehicle from an authorized Honda or Acura dealer.

(2)    Exercise of Option B shall not make a Settlement Class Member (or Cash Rebate Transferee) ineligible for any other offer of rebate, credit, purchase discount, financing discount or premium of any kind offered by AHM at the time of purchase of the Eligible Vehicle. Rebates, credits, discounts, premiums and other offers by dealers as well as prices charged by dealers are outside the control of AHM. Only one Option B Rebate Certificate may be redeemed by each Settlement Class Member or Cash Rebate Transferee, <u>provided however</u>, that Settlement Class Members who are also members of the MY 2006-2008 Subclass and who are not ADR Participants may redeem up to two (2) Option B Rebate Certificates. Rebate Certificates will be issued and redeemed by the Settlement Administrator.

(3)    To redeem the Rebate Certificate, the Settlement Class Member (or Cash Rebate Transferee) will submit the Rebate Certificate, along with proof of a qualifying purchase, to the Settlement Administrator within the Redemption Period. Upon receipt, the Settlement Administrator will issue to the Settlement Class Member (or Cash Rebate Transferee) a $500 cash payment. The Rebate Certificates obtained by Settlement Class Members under Option B shall be fully transferable by them (and only them) to Cash Rebate Transferees,

16

provided, however, that Cash Rebate Transferees may only redeem one (1) Rebate Certificate. In the event a Settlement Class Member transfers a Rebate Certificate, the Cash Rebate Transferee will be eligible to redeem the Rebate Certificate under the same terms as the Settlement Class Member who obtained it, provided, however, that Cash Rebate Transferees may only redeem one (1) Rebate Certificate.

        C.      Settlement Class Members who belong to the MY 2006-2008 Subclass and are not  ADR Participants may claim and redeem up to a total of two (2) Rebate Certificates. Rebate Certificates obtained under Option B may be redeemed or transferred by the Settlement Class Member (as applicable) in accordance with the terms set forth in this Paragraph III.6, provided, however, that MY 2006-2008 Subclass Members claiming two (2) Option B Rebate Certificates may not sell or transfer both Rebate Certificates to the same Cash Rebate Transferee.

        7.     **Warranty Extension**

        A.      Settlement Class Members with MY 2003, 2004, 2005, 2006, 2007 and 2008 Class Vehicles shall automatically receive a Warranty Extension.

        B.      The Warranty Extension shall be applied to the existing operative limited warranty on the MY 2003-2008 Class Vehicles and shall extend that warranty by 12,000 miles or 12 months, whichever is attained first.

        C.      If the IMA battery in a MY 2006-2008 Class Vehicle failed during what would have been the Warranty Extension for his or her HCH, but before the Effective Date of this settlement, the MY 2006-2008 Subclass Member shall be entitled to reimbursement of any Out-Of-Pocket Expenditure for the cost of parts and labor as if the Warranty Extension had been in effect when the failure took place in accordance with the terms of his or her HCH's

preexisting warranty upon providing satisfactory documentation (such as an invoice, receipt, work order, or other similar document).

    8.    **Dispute Resolution Program**

        A.    MY 2006-2008 Subclass Members who believe they have experienced performance problems after receiving the PUD in their Class Vehicles may forego the additional benefits available to the MY 2006-2008 Subclass (i.e., the additional $100 Cash Payment and the additional $500 Rebate Certificate as set forth in Paragraphs III.5.B and III.6.C above) and instead elect to participate in ADR. To elect ADR, a MY 2006-2008 Subclass member must indicate his or her intention to do so on the Claim Form. The Settlement Administrator shall keep records of all MY 2006-2008 Subclass members who have elected on their Claim Forms to become ADR Participants. Beginning on the Effective Date and during the Claim Period, the Settlement Administrator shall promptly provide AHM with the Claim Forms of all MY 2006-2008 Subclass members who have elected to become ADR Participants. Within seventy-five (75) days of receiving the Claim Form(s) from the Settlement Administrator, AHM shall contact each ADR Participant in order to initiate discussions that may lead to informal resolution of an ADR Participant's complaints. The Settlement Administrator shall also promptly contact each ADR Participant and inform each ADR Participant that: (a) the ADR Participant will be contacted by AHM within the next seventy-five (75) days to initiate discussions that may lead to informal resolution of the ADR Participant's complaint; (b) that the ADR Participant should work in good faith with AHM to reach an informal resolution of the ADR Participant's complaint; and (c) that if the ADR Participant is dissatisfied with AHM's attempts at informal resolution after this seventy-five (75) day period, the ADR Participant may contact Judicial

Arbitration and Mediation Services ("JAMS") to begin formal ADR proceedings.  Formal ADR proceedings shall be administered by JAMS in accordance with the following rules:

1.  The arbitrator will be neutral, and the ADR Participant will have a reasonable opportunity to participate in the process of choosing the arbitrator.

2.  The ADR Participant will have a right to an in-person hearing at the JAMS office nearest to his or her home address.

3.  The ADR Participant will have the right to be represented by counsel at his or her own expense.

4.  Each party will be responsible for his, her or its own attorneys' fees and costs, except that the ADR Participant's payment to JAMS for JAMS' services shall not exceed $250.

The foregoing rules shall be set forth on the HCH Settlement Website and sent to each ADR Participant.  On a quarterly basis, AHM shall provide Class Counsel a report indicating: (a) the resolution status of all ADR Participants; and (b) for those ADR Participants whose complaints are deemed resolved by AHM, the names of such persons.

## IV.   OTHER RELIEF TO SETTLEMENT CLASS MEMBERS

9.  **Advertising**

A.  As of the Effective Date, AHM shall promptly undertake to review all of the advertising of fuel economy for the HCH created by or at the direction of AHM in order to modify any disclaimer language accompanying the representations of miles per gallon or "MPG" from "actual mileage may vary" to "actual mileage will vary."  AHM agrees to use the modified language for a period of no fewer than twenty-four months from the Effective Date.

19

B.      AHM will complete the review as promptly as practicable and will modify

the disclaimer language set out above, provided however, that AHM shall not be required by this

Agreement to destroy or modify any advertising already created or contracted for as of the

Effective Date.

10.    **HCH Settlement Website And Fuel Economy Video**

A.      Not later than fourteen (14) days after the Preliminary Approval Date (or

such earlier date as is feasible), the Settlement Administrator will post the Mailed Notice on the

HCH Settlement Website (the "Website Notice").

B.      Not later than forty-five (45) days prior to the final approval hearing,

AHM shall provide to Class Counsel the script containing the proposed content of the Fuel

Economy Video.  Class Counsel shall have ten (10) days to review the substantive content of the

Fuel Economy Video script and provide approval thereof, which approval shall not unreasonably

be withheld.   In the event that Class Counsel do not comment concerning the Fuel Economy

Video script during the ten-day approval period, approval shall be deemed to have been

provided.   In the event that the Parties cannot agree on appropriate content within the

aforementioned review period, the Parties shall allow the Hon. Justice Howard B. Weiner (ret.)

to resolve the dispute.  A copy of the agreed-upon Fuel Economy Video script shall be lodged

with the Court in advance of the Final Approval Hearing.

C.      Not later than ninety (90) days after the Effective Date, the Settlement

Administrator will post on the HCH Settlement Website the Fuel Economy Video. Every

Settlement Class Member will, upon request and at AHM's expense, be entitled to a DVD

containing the Fuel Economy Video.  The HCH Settlement Website and Fuel Economy Video

posted thereon shall remain live and operative through the Redemption Period.

20

## V.   SETTLEMENT ADMINISTRATION PROCEDURES

11.     The Claim Form shall be without material alteration from Exhibit A, and a sample Claim Form shall be posted on the HCH Settlement Website not later than fourteen (14) days after the Preliminary Approval Date or such earlier date as is feasible.  AHM will bear all costs and expenses pertaining to the administration of claims of Settlement Class Members, including all costs and expenses of the Settlement Administrator, all costs related to the dissemination of Mailed Notice, handling and processing of claims, distribution of benefits and general administration of the settlement.

12.     All of the information on the Claim Form shall be deemed Information in accordance with Paragraph VII.24 below and shall not be used for any purpose other than to administer this Agreement and settlement and shall not be released or admissible for any other purpose whatsoever.

13.     To be eligible for any monetary benefit set forth in this Agreement, a Settlement Class Member must (a) truthfully, accurately and completely fill out and sign the Claim Form; and (b) mail the Claim Form, first class postage prepaid, to the Settlement Administrator during the Claim Period. Claim Forms submitted to the Settlement Administrator prior to the Claim Period will not be rejected as untimely.  To redeem a Rebate Certificate, the Settlement Class Member (or Cash Rebate Transferee, as applicable) must mail or submit the Rebate Certificate(s) with appropriate documentation to the Settlement Administrator during the Redemption Period.

14.     To be eligible for any benefit set forth in this Agreement, the VIN for the applicable Class Vehicle must match a VIN identified as a Class Vehicle in AHM's records. There shall be no recovery for any VIN that is not identifiable as a Class Vehicle in AHM's records.

15.    As of the Preliminary Approval Date, AHM and the Settlement Administrator will work expeditiously to compile data from appropriate sources including Experian from which the Class List will be created.  The Settlement Administrator in consultation with AHM shall then finalize the Class List, updated through the National Change of Address database as specified in Paragraph I.J. above, and shall use best efforts to begin the mailing of the Mailed Notice sixty (60) days after the Preliminary Approval Date.  The Settlement Administrator shall complete the mailing of the Mailed Notice no later than eighty-six (86) days after the Preliminary Approval Date or such earlier date as is feasible.  The Settlement Administrator shall provide Class Counsel and Defense Counsel an electronic database containing the Class List, including the VIN of each potential Settlement Class Member's Class Vehicle.

16.    A Claim Form may be submitted by a legally-authorized guardian or representative of an incapacitated, deceased or minor member of the Settlement Class, provided however, that documentation sufficient to confirm the legal status of the guardian or representative is also provided.

17.    The duties and obligations of the Settlement Administrator with respect to administering the settlement shall include without limitation (i) receiving and responding to communications from Settlement Class Members (including requests for exclusion, Claim Forms and questions); (ii) maintaining a dedicated toll-free telephone number that Settlement Class Members may contact; (iii) maintaining a dedicated P.O. Box to which Settlement Class Members can send requests for exclusion and Claim Forms; (iv) providing reasonable translation services to Settlement Class Members upon request; (v) processing Claim Forms; (vi) allowing a Settlement Class Member a reasonable opportunity to cure a deficient Claim Form that was submitted to, but denied by, the Settlement Administrator; (vii) issuing Rebate Certificates;

22

(viii) processing Rebate Certificate transfers and redemptions; and (ix) assisting with the ADR program as specified above in Paragraph III.8.A.

18.    After the Effective Date, the Settlement Administrator shall report to Class Counsel and AHM on a quarterly basis (i) the identities of Settlement Class Members who have elected to file Claim Forms; (ii) the disposition of all Claim Forms submitted to and processed by the Settlement Administrator; (iii) copies of all Claim Forms submitted by Settlement Class Members which were denied by the Settlement Administrator as deficient after giving the Settlement Class Member the opportunity to cure any defects in the Claim Form; and (iv) the resolution status of ADR Participants as specified above in Paragraph III.8.A.

## VI.    CLASS NOTICE PROCEDURES

19.    The Settlement Administrator shall be responsible for providing notice to the Settlement Class and shall undertake various administrative tasks, including without limitation, (i) mailing or arranging for the mailing of the Mailed Notice from the information compiled in the Class List; (ii) the creation and maintenance of the HCH Settlement Website; (iii) processes and procedures for handling returned mail; (iv) providing to Class Counsel and Defense Counsel within ten (10) business days of receipt copies of notices of intention to appear and requests for exclusion from the Settlement Class; (v) preparing an Opt-Out List of the Settlement Class Members requesting exclusion and submitting an affidavit with the Court before the Final Approval Hearing attesting to the accuracy of that list; (vi) preparing a list of all persons who submitted objections to the settlement and submitting an affidavit to the Court attesting to the accuracy of that list; and, after the Effective Date, (vii) processing Claim Forms submitted.

20.    The Settlement Administrator shall use best efforts to begin the mailing of the Mailed Notice sixty (60) days after the Preliminary Approval Date and shall complete mailing of

the Mailed Notice by no later than eighty-six (86) days from the Preliminary Approval Date or such earlier date as is feasible.

21.     The Mailed Notice shall advise the Settlement Class Member of the creation of the HCH Settlement Website, the Fuel Economy Video and the date up to which the Settlement Class Member can submit a Claim Form.  The Mailed Notice shall also contain all information necessary to contact the Settlement Administrator in the event the Settlement Class Member has any questions or is unable to download a Claim Form from the HCH Settlement Website.

22.     Promptly following the Preliminary Approval Date, Class Counsel may post the Mailed Notice and Claim Form on their own websites, and direct inquiries concerning the settlement to the Settlement Administrator.  No later than fourteen (14) days after the Preliminary Approval Date, or such earlier date as is feasible, the Settlement Administrator will post the Website Notice and Claim Form on the HCH Settlement Website.

23.     Opt-Out procedures.  All members of the Settlement Class shall have forty-five (45) days from the Mailed Notice Date to submit requests for exclusion from the Settlement Class prepared and directed in the manner set forth herein and in the proposed Mailed Notice, which shall include (i) the Settlement Class Member's name, address, telephone number; (ii) the model year and VIN of the Settlement Class Member's HCH; and (iii) a signed statement indicating the Settlement Class Member wishes to be excluded from the Settlement Class. Persons and entities who become Opt-Outs are not Settlement Class Members unless they submit a Claim Form for settlement benefits, in which case their opt-out is rescinded.

**VII.    CONFIDENTIALITY OF INFORMATION**

24.     The Parties agree that the names, addresses and other data concerning members of the Settlement Class used by the Settlement Administrator in effecting this settlement and the

electronic data processing and other recordkeeping procedures and other materials to be utilized by the Settlement Administrator in effecting its obligations hereunder (collectively, "Information") constitute trade secrets and/or highly confidential and proprietary business information.  Therefore:

A.      It is agreed that no person other than representatives of the Parties shall be allowed to access any Information except:

(1)      the Parties' respective counsel and the employees of such counsel;

(2)      the Settlement Administrator and the employees and agents of same; and

(3)      such other persons as the Court may order after hearing on notice of all counsel of record.

B.      The confidentiality of this Information shall be treated in all respects as designated "Confidential – Attorneys' Eyes Only, Competitively Sensitive" whether or not expressly so designated, pursuant to any applicable protective orders entered in any of the Lawsuits.

## VIII.  ATTORNEYS' FEE AWARD AND INCENTIVE AWARDS

25.      Class Counsel agree not to seek from the Court an Attorneys' Fee Award in excess of $8,474,000, and AHM agrees not to contest an award of that sum.  The Attorneys' Fee Award shall be subject to Court approval and paid to Class Counsel by AHM separately and apart from any other payments AHM must make to Settlement Class Members under this Agreement.

A.      Class Counsel will file their applications with the Court for the Attorneys' Fee Award and Named Plaintiffs' Incentive Awards at the same time that they file their motion

in support of the Final Order and Judgment, which shall be no later than twenty (20) days before the deadline for requesting exclusion from the settlement.

        B.     The applications for the Named Plaintiffs' Incentive Awards shall be (i) for John True in the amount of $12,500; (ii) for Gonzalo Delgado in the amount of $10,000; (iii) for the other Named Plaintiffs in the amount of $5,000, subject to the approval of the Court. AHM shall be obligated to pay no more than $26,000 of the Named Plaintiffs' Incentive Awards, the balance of which shall be paid from the Attorneys' Fee Award. AHM agrees not to oppose the application for Named Plaintiffs' Incentive Awards. No Named Plaintiff shall be eligible for an incentive award if he or she elects to exclude him/herself (i.e., becomes an Opt-Out) of this settlement, and AHM's amount of the incentive payment will be reduced proportionally by the number of Named Plaintiffs who request exclusion from  the Settlement Class, provided the provisions of Paragraph XI.30 do not otherwise govern. Named Plaintiffs' Incentive Awards shall be in addition to all the benefits provided to Named Plaintiffs as Settlement Class Members pursuant to this Agreement.

        C.     The Attorneys' Fee Award shall be paid by AHM no later than twenty (20) days after the Effective Date, provided that Class Counsel have first provided AHM with completed W-9 forms and completed wire transfer forms. Class Counsel agree that upon payment by AHM of the Attorneys' Fee Award as specified by the Court, pursuant to the wire transfer information provided by Class Counsel, AHM's obligations to Class Counsel shall be fully satisfied and discharged.

        D.     The Parties agree that AHM will not in any event or circumstance be required to pay an Attorneys' Fee Award in excess of $8,474,000 or be required to pay more

than $26,000 of the Named Plaintiffs' Incentive Awards, but only up to these amounts as ordered by the Court.

## IX.  SETTLEMENT APPROVAL PROCESS

26.  After execution of this Agreement, the Parties shall promptly move the Court to enter the Preliminary Approval Order which:

    A.  Preliminarily approves this Agreement;

    B.  Certifies the Settlement Class;

    C.  Schedules a fairness hearing on final approval of this settlement and Agreement (the "Final Approval Hearing") to consider the fairness, reasonableness and adequacy of the proposed settlement and whether it should be finally approved by the Court, such Final Approval Hearing to be no earlier than seventy-five (75) days after the Mailed Notice Date, subject to Court approval;

    D.  Finds that the proposed settlement is sufficiently fair, reasonable and adequate to warrant providing notice to the Settlement Class;

    E.  Appoints the Settlement Administrator in accordance with the provisions of Paragraph II.3;

    F.  Approves the Mailed Notice, the content of which is without material alteration from Exhibit C hereto, to be sent to Settlement Class Members and directs the Settlement Administrator to follow the processes and procedures set forth in the notice program herein;

G.     Approves the Claim Form, the content of which is without material alteration from Exhibit A hereto, for distribution to Settlement Class Members, and sets a date after which Claim Forms shall be deemed untimely;

H.     Approves the creation of the HCH Settlement Website and the HCH Fuel Economy Video as defined in Paragraph IV.10 above;

I.     Finds that the notice program set forth herein: (i) is the best practicable notice, (ii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Lawsuits and of their right to object to or to exclude themselves from the proposed settlement, (iii) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (iv) meets all applicable requirements of applicable law;

J.     Requires the Settlement Administrator to file proof of mailing of the Mailed Notice at or before the Final Approval Hearing;

K.     Requires each Settlement Class Member who wishes to exclude himself or herself from the Settlement Class to submit an appropriate, timely request for exclusion, postmarked no later than forty-five (45) days after the Mailed Notice Date to the Settlement Administrator at the address on the Mailed Notice;

L.     Preliminarily enjoins all Settlement Class Members unless and until they have timely excluded themselves from the Settlement Class (i) from filing, commencing, prosecuting, intervening in or participating as plaintiff, claimant or class member in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Lawsuits and/or the Released Claims; (ii) from filing, commencing or prosecuting a

28

lawsuit or administrative, regulatory, arbitration or other proceeding as a class action on behalf of any Settlement Class Members who have not timely excluded themselves (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Lawsuits and/or the Released Claims; and (iii) from attempting to effect Opt-Outs of a class of individuals in any lawsuit or administrative, regulatory, arbitration or other proceeding based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Lawsuits and/or the Released Claims.  This Agreement is not intended to prevent Settlement Class Members from participating in any action or investigation initiated by a state or federal agency.

M.      Orders that any Settlement Class Member who does not submit a timely, written request for exclusion from the Settlement Class (i.e., becomes an Opt-Out) will be bound by all proceedings, orders and judgments in the Lawsuits, even if such Settlement Class Member has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Release;

N.      Requires each Settlement Class Member who is not an Opt-Out and who wishes to object to the fairness, reasonableness or adequacy of this Agreement or the proposed settlement or to the Attorneys' Fee Award to file with the Court and serve on Class Counsel no later than forty-five (45) days after the Mailed Notice Date, a statement of the objection signed by the Settlement Class Member containing all of the following information:

(1)      The objector's full name, address, and telephone number,

(2)      The model year and VIN of the Settlement Class Member's Class Vehicle,

**EXECUTION COPY**

(3)    A written statement of all grounds for the objection accompanied by any legal support for such objection,

(4)    Copies of any papers, briefs or other documents upon which the objection is based,

(5)    A statement of whether the objector intends to appear at the Final Approval Hearing, and

(6)    If the objector intends to appear at the Final Approval Hearing through counsel, the objection must also identify the attorney(s) representing the objector who will appear at the Final Approval Hearing.

O.    Specifies that any Settlement Class Member who does not file a timely written objection to the settlement and a notice of his/her intent to appear at the Final Approval Hearing or who fails to otherwise comply with the requirements of Paragraph IX.26.N shall be foreclosed from seeking any adjudication or review of this settlement by appeal or otherwise.

P.    Requires that any attorney hired by a Settlement Class Member will be at the Settlement Class Member's expense for the purpose of objecting to this Agreement, to the proposed settlement or to the Attorneys' Fee Award to provide to the Settlement Administrator (who shall forward it to Class Counsel and Defense Counsel) and to file with the Clerk of the Court a notice of intention to appear no later than forty-five (45) days after the Mailed Notice Date or as the Court may otherwise direct;

Q.    Requires any Settlement Class Member who files and serves a written objection and who intends to make an appearance at the Final Approval Hearing to provide to the Settlement Administrator (who shall forward it to Class Counsel and Defense Counsel) and to

30

**EXECUTION COPY**

file with the Clerk of the Court a notice of intention to appear no later than forty-five (45) days

after the Mailed Notice Date, or as the Court otherwise may direct;

        R.     Directs the Settlement Administrator to establish a post office box in the

name of the Settlement Administrator to be used for receiving requests for exclusion, objections,

notices of intention to appear and any other communications, and providing that only the

Settlement Administrator, Class Counsel, Defense Counsel, AHM, the Court, the Clerk of the

Court and their designated agents shall have access to this post office box, except as otherwise

provided in this Agreement;

        S.     Directs the Settlement Administrator to promptly furnish Class Counsel,

Defense Counsel and AHM with copies of any and all written requests for exclusion, notices of

intention to appear or other communications that come into its possession, except as expressly

provided in this Agreement;

        T.     Directs that Class Counsel shall file their applications for the Attorneys'

Fee Award and Named Plaintiffs' Incentive Awards in accordance with the terms set forth in

Paragraph VIII.25;

        U.     Orders the Settlement Administrator to provide the Opt-Out List to Class

Counsel and Defense Counsel no later than seven (7) business days after the completion of the

forty-five day period in which Settlement Class Members may exclude themselves from the

Settlement Class, and then file with the Court the Opt-Out List with an affidavit attesting to the

completeness and accuracy thereof no later than three (3) business days thereafter or on such

other date as the Parties may direct; and

        V.     Contains any additional provisions agreeable to the Parties that might be

necessary to implement the terms of this Agreement and the proposed settlement.

## X.     FINAL ORDER AND JUDGMENT AND RELEASES

27.     If this Agreement (including any modification thereto made with the consent of the Parties as provided for herein) is approved by the Court following the Final Approval Hearing scheduled by the Court in its Preliminary Approval Order, the Parties shall request the Court to enter the Final Order and Judgment pursuant to Cal. Civ. R. 3.769, Cal. Code Civ. P. 382, Cal. Code Civ. P. 877.6 and all applicable laws, without material alteration from that attached hereto as Exhibit B that, among other things:

A.     Finds that the Court has personal jurisdiction over the Named Plaintiffs and all members of the Settlement Class and that the Court has subject matter jurisdiction to approve this settlement and Agreement and all Exhibits thereto;

B.     Certifies a Settlement Class solely for purposes of this settlement;

C.     Grants final approval to this Agreement as being fair, reasonable and adequate as to all Parties and consistent and in compliance with all requirements of Due Process and applicable law, as to and in the best interests of all Parties and directs the Parties and their counsel to implement and consummate this Agreement in accordance with its terms and provisions;

D.     Declares this Agreement and the Final Order and Judgment to be binding on and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Release (as set forth in Paragraph I.NN) maintained by or on behalf of the Named Plaintiffs and all other Settlement Class Members, as well as their agents, heirs, executors or administrators, successors and assigns;

E.     Finds that the Mailed Notice sent to Settlement Class Members: (i) constituted the best practicable notice, (ii) constituted notice that was reasonably calculated

32

under the circumstances to apprise Settlement Class Members of the pendency of the Lawsuits, of their right to object to or exclude themselves from the proposed settlement, of their right to appear at the Final Approval Hearing and of their right to seek monetary and other relief, (iii) constituted reasonable, due, adequate and sufficient notice to all persons entitled to receive notice, and (iv) met all applicable requirements of Due Process and any other applicable law;

     F.    Approves the Claim Form that was distributed to Settlement Class Members, the content of which was without material alteration from Exhibit A hereto;

     G.    Finds that Class Counsel and the Named Plaintiffs adequately represented the Settlement Class for purposes of entering into and implementing the settlement and Agreement;

     H.    Dismisses the Lawsuit now pending before the Court (including all individual and class claims presented thereby) on the merits as to AHM and with prejudice and without fees or costs except as provided herein, in accordance with the Final Order and Judgment attached hereto as Exhibit B;

     I.    Orders that within one week of the Effective Date the other Lawsuits not pending before the Court will be dismissed by Class Counsel with prejudice without fees or costs except as provided herein;

     J.    Adjudges that Named Plaintiffs and the Settlement Class have conclusively compromised, settled, dismissed and released any and all Released Claims against AHM and the Releasees;

     K.    Approves payment of the Attorneys' Fee Award to Class Counsel and the Named Plaintiffs' Incentive Awards in a manner consistent with Paragraph VIII.25;

L.    Without affecting the finality of the Final Order and Judgment for purposes of appeal, reserves jurisdiction over the Settlement Administrator, AHM, the Named Plaintiffs and the Settlement Class as to all matters relating to the administration, consummation, enforcement and interpretation of the terms of the settlement and Final Order and Judgment and for any other necessary purposes;

M.    Provides that upon the Effective Date, the Named Plaintiffs and all Settlement Class Members who have not been excluded from the Settlement Class, whether or not they return a Claim Form within the time and in the manner provided for, shall be barred from asserting any Released Claims against AHM and/or any Releasee, and any such Settlement Class Members shall have released any and all Released Claims as against AHM and all Releasees;

N.    Determines that the Agreement and the settlement provided for herein and any proceedings taken pursuant thereto are not and should not in any event be offered or received as evidence of, a presumption, concession or an admission of liability or of any misrepresentation or omission in any statement or written document approved or made by AHM or any Releasee or of the suitability of these or similar claims to class treatment in active litigation and trial; provided, however, that reference may be made to this Agreement and the settlement provided for herein in such proceedings as may be necessary to effectuate the Agreement;

O.    Bars and permanently enjoins all Settlement Class Members who have not been properly excluded from the Settlement Class from (i) filing, commencing, prosecuting, intervening in or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to

or arising out of the claims and causes of action or the facts and circumstances arbitration or other proceeding in any jurisdiction based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to these Lawsuits or the Released Claims, and (ii) organizing Settlement Class Members who have not been excluded from the class into a separate class for purposes of pursuing as a purported class action any lawsuit or arbitration or other proceeding (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on, relating to or arising out of the claims and causes of action or the facts and circumstances giving rise to the Lawsuits and/or the Released Claims, except that Settlement Class Members are not precluded from participating in any investigation or suit initiated by a state or federal agency;

P.      Approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Order and Judgment except for Opt-Outs who subsequently elect to submit Claim Forms during the Claim Period; and

Q.      Authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of this Agreement and all Exhibits hereto as (i) shall be consistent in all material respects with the Final Order and Judgment and (ii) do not limit the rights of the Parties or Settlement Class Members.

28.     As of the Effective Date, the Named Plaintiffs and other Settlement Class Members who have not excluded themselves from the Settlement Class by operation of entry of the Final Judgment and Order of Dismissal, release and forever discharge the Releasees from all Released Claims.

A.      Without in any way limiting the scope of the Release, this Release covers, without limitation, any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing the Named Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Lawsuits, the settlement of the Lawsuits, the administration of such settlement and/or the Released Claims as well as any and all claims for incentive awards to Named Plaintiffs.

B.      The Releasees, on behalf of themselves and their respective successors, assigns, past, present, and future parents, subsidiaries, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions, groups, directors, officers, shareholders, employees, agents, attorneys, representatives, servants, partners, executors, administrators, assigns, predecessors, successors, descendants, dependents, and heirs, by operation of the Final Order and Judgment are deemed to have fully released and forever discharged Named Plaintiffs, Settlement Class Members and Class Counsel from any claims arising out of the investigation, filing, prosecution or resolution of the Lawsuits.

C.      The Named Plaintiffs, the Settlement Class Members and the Releasees expressly acknowledge that they are familiar with principles of law such as Section 1542 of the Civil Code of the State of California, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MIGHT HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

To the extent that California or other law may be applicable to this Agreement, the Parties hereby expressly agree that the provisions, rights and benefits of Section 1542 and all similar federal or state laws, rights, rules or legal principles of any other jurisdiction that may be

**EXECUTION COPY**

applicable herein are hereby knowingly and voluntarily waived and relinquished to the fullest extent permitted by law solely in connection with unknown claims constituting the claims set forth herein, and the Parties hereby agree and acknowledge that this is an essential term of the Release. In connection with the Release, the Parties acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein.

D.      Without otherwise limiting its scope, the Release does not cover any claims for Personal Injury or Bodily Injury.

E.      Nothing in the Release shall preclude any action to enforce the terms of this Agreement, including participation in any of the processes detailed herein.

F.      Subject to Court approval, all Settlement Class Members who have not excluded themselves from the Settlement Class shall be bound by this Agreement and the Release and all of their claims shall be dismissed with prejudice and released, irrespective of whether they received actual notice of the Lawsuits or this settlement.

## XI.      WITHDRAWAL FROM OR TERMINATION OF SETTLEMENT

29.      Within fifteen (15) days of the occurrence of any of the following events and upon written notice to counsel for all Parties, a Party shall have the right to withdraw from the settlement:

A.      If the Court fails to approve the Agreement as written or if on appeal the Court's approval is reversed or modified;

B.      If the Court materially alters any of the terms of the Agreement; or

37

C.      If the Preliminary Approval Order, as described in Paragraph IX.26, or the Final Approval Order, as described in Paragraph X.27, is not entered by the Court or is reversed or modified on appeal, or otherwise fails for any reason.  In the event of a withdrawal pursuant to this Paragraph XI.29, any certification of a Settlement Class will be vacated, without prejudice to any Party's position on the issue of class certification and the amenability of the claims asserted in the Lawsuits to class treatment, and the Parties shall be restored to their litigation position existing immediately before the execution of this Agreement.

30.      If any Named Plaintiff or 1,500 or more of the Settlement Class Members properly and timely submit requests for exclusion from the Settlement Class as set forth in Paragraph VI.23, thereby becoming Opt-Outs, then, at the election of AHM, AHM may withdraw from this Agreement.  In that event, all of AHM's obligations under this Agreement shall cease to be of any force and effect; the certification of the Settlement Class shall be vacated without prejudice to AHM's position on the issue of class certification; and AHM shall be restored to its litigation position existing immediately before the execution of this Agreement.  In order to elect to withdraw from this Agreement on the basis set forth in this Paragraph XI.30, AHM must notify Class Counsel in writing of its election to do so within ten (10) business days after the Opt-Out List has been served on the Parties.  In the event that AHM exercises such right, Class Counsel shall have twenty (20) business days or such longer period as agreed to by the Parties to address the concerns of the Opt-Outs.  If through such efforts the total number of members of the Opt-Out List subsequently becomes and remains fewer than 1,500 Settlement Class Members, AHM shall withdraw its election to withdraw from the Agreement.  In no event, however, shall AHM have any further obligation under this Agreement to any Opt-Out unless such Settlement Class Member withdraws his/her request for exclusion.  For purposes of this

38

Paragraph, Opt-Outs shall not include (i) persons who are specifically excluded from the Settlement Class under Paragraph II.1 of the Agreement (ii) Settlement Class Members who elect to withdraw their request for exclusion and (iii) Opt-Outs who agree to sign an undertaking that they will not pursue an individual or class claim that would otherwise be a Released Claim as defined in this Agreement.

31.     In the event of withdrawal by AHM in accordance with the terms set forth in this Section XI, the Agreement shall be null and void, shall have no further force and effect with respect to any Party in the Lawsuits and shall not be offered in evidence or used in any litigation for any purpose, including the existence, certification or maintenance of any proposed or existing class or the amenability of these or similar claims to class treatment.  In the event of such withdrawal, this Agreement and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be without prejudice to AHM, Named Plaintiffs and the Settlement Class Members and shall not be deemed or construed to be an admission or confession in any way by any Party of any fact, matter or proposition of law and shall not be used in any manner for any purpose, and the Parties to the Lawsuits shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.

## XII.  **EFFECTIVE DATE**

32.     The "Effective Date" of this Agreement shall be the date when each and all of the following conditions have occurred:

A.     This Agreement has been fully executed by all Parties and their counsel;

B.     Orders have been entered by the Court certifying a Settlement Class, granting preliminary approval of this Agreement and approving the form of Class Notice and Claim Form, all as provided above;

C.    The Court-approved Mailed Notice and HCH Settlement Website have been duly created and/or disseminated as ordered by the Court;

D.    The Court has entered a Final Order and Judgment finally approving this Agreement, as provided above; and

E.    The Final Order and Judgment has become Final as defined in Paragraph XII.33.

33.    "Final," when referring to a judgment or order means that (a) the judgment is a final, appealable judgment; and (b) either (i) no appeal has been taken from the judgment as of the date on which all times to appeal therefrom have expired, or (ii) an appeal or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions or rehearing or re-argument, petitions for rehearing *en banc*, petitions for writ of *certiorari*, or otherwise, and such appeal or other review has been finally resolved in a manner that affirms the Final Order and Judgment in all material respects.

34.    If, for any reason, this Agreement fails to become Final pursuant to the foregoing Paragraph XII.33, the orders, judgment and dismissal to be entered pursuant to this Agreement shall be vacated, and the Parties will be returned to the status *quo ante* with respect to the Lawsuits as if this Agreement had never been entered into.

## XIII.  <u>ADDITIONAL PROVISIONS</u>

35.    The Exhibits to this Agreement are an integral part of the settlement and are expressly incorporated and made a part of this Agreement.

36.    This Agreement is for settlement purposes only. Neither the fact of nor any provision contained in this Agreement nor any action taken hereunder shall constitute or be

construed as an admission of the validity of any claim or any fact alleged in the Lawsuits or of any wrongdoing, fault, violation of law or liability of any kind on the part of AHM or any admission by AHM of any claim or allegation made in any action or proceeding against AHM or any concession as to the lack of merit in any of the claims asserted by the Named Plaintiffs in the Lawsuits. This Agreement shall not be offered or be admissible in evidence against the Parties or cited or referred to in any action or proceeding, except in an action or proceeding brought to enforce its terms. Nothing contained herein is or shall be construed or admissible as an admission by AHM that the Named Plaintiffs' claims or any similar claims are suitable for class treatment.

37.     In the event that there are any developments in the effectuation and administration of this Agreement that are not dealt with by the terms of this Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing agreement, as shall be ordered by this Court. The Parties shall execute all documents and use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Agreement in order to give this Agreement full force and effect. The executing of documents must take place prior to the date scheduled for the Preliminary Approval Hearing.

38.     No person shall have any claim against the Named Plaintiffs, Class Counsel, AHM, Defense Counsel, the Settlement Administrator or the Releasees or their agents based on administration of the settlement substantially in accordance with the terms of the Agreement or any order of the Court or any appellate court.

39.     Class Counsel and all other counsel of record for the Named Plaintiffs, AHM and Defense Counsel hereby agree not to engage in any communications with the media or the press,

41

on the internet, or in any public forum, orally or in writing, that relate to this settlement or the Lawsuits, other than statements that are fully consistent with the Mailed Notice.

40.    This Agreement constitutes the entire agreement between and among the Parties with respect to the settlement of the Lawsuits.  This Agreement supersedes all prior negotiations and agreements and may not be modified or amended except by a writing signed by the Parties and their respective counsel.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation or understanding concerning any part of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement.

41.    There shall be no waiver of any term or condition absent an express writing to that effect by the non-waiving Party.  No waiver of any term or condition in this Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Agreement.

42.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single agreement.

43.    This Agreement shall not be construed more strictly against one Party than another merely because of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in the Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Agreement.  All terms, conditions and Exhibits are material and necessary to this Agreement and have been relied upon by the Parties in entering into this Agreement.

44.     This Agreement shall be construed under and governed by the laws of the State of California without regard to its choice of law provisions.

45.     The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement for the purpose of the administration and enforcement of this Agreement.

46.     In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions, which shall remain in full force and effect as though the invalid, illegal or unenforceable provision had never been a part of this Agreement so long as the benefits to AHM or the Settlement Class Members  are not materially altered as the result of the invalid provision.

47.     Whenever, under the terms of this Agreement, a person is required to provide service or written notice to AHM or Class Counsel, such service or notice shall be directed to the individuals and addresses specified below, unless those individuals or their successors give notice to the other Parties in writing:

As to Named Plaintiffs:

Class Counsel

| | |
|---|---|
| Jonathan W. Cuneo, Esq. | Nicholas E. Chimicles, Esq. |
| William H. Anderson, Esq. | Alison G. Gushue, Esq. |
| CUNEO GILBERT & LADUCA LLP | CHIMICLES & TIKELLIS LLP |
| 507 C Street, N.E. | 361 West Lancaster Avenue |
| Washington, D.C. 20002 | Haverford, Pennsylvania  19041 |
| | |
| Alan M. Mansfield, Esq. | James R. Hail, Esq. |
| CONSUMER LAW GROUP OF | DOYLE LOWTHER LLP |
| CALIFORNIA | 9466 Black Mountain Road, Suite 210 |
| 9466 Black Mountain Road, Suite 225 | San Diego, California 92126 |
| San Diego, California 92126 | |

**EXECUTION COPY**

Michael E. Lindsey, Esq.
LAW OFFICES OF MICHAEL E.
LINDSEY
4455 Morena Boulevard, Suite 207
San Diego, California 92117

As to AHM:

<u>Defense Counsel</u>

| | |
|---|---|
| Mark S. Mester, Esq. | Livia M. Kiser, Esq. |
| LATHAM & WATKINS LLP | BARACK FERRAZZANO |
| 233 South Wacker Drive, Suite 5800 | KIRSCHBAUM & NAGELBERG LLP |
| Chicago, Illinois 60606 | 200 West Madison Street, Suite 3900 |
| | Chicago, Illinois 60606 |

48.    The headings used in this Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.    In construing this Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

49.    Each Party to this Agreement and the signatories thereto warrant that he, she or it is acting upon his, her or its independent judgment upon the advice of his, her or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature of kind by any other Party, other than the warranties and representations expressly made in this Agreement. Each signatory below warrants that he or she has authority to execute this Agreement or any of its Exhibits and bind the Party on whose behalf he or she is executing the Agreement.

EXECUTED as of this <u>2nd</u> day of September, 2011.

SIGNED AND AGREED:

**EXECUTION COPY**

Date: September 2, 2011    FOR NAMED PLAINTIFFS AND THE
                           SETTLEMENT CLASS

                           CHIMICLES & TIKELLIS LLP

                           By: _____

                           Nicholas E. Chimicles
                           Alison G. Gushue
                           One Haverford Centre
                           361 West Lancaster Avenue
                           Haverford, Pennsylvania 19041
                           Telephone: (610) 642-8500
                           Facsimile: (610) 649-3633

Date: September 2, 2-11    CUNEO GILBERT & LaDUCA, LLP

                           By: _____

                           Jonathan W. Cuneo
                           William H. Anderson
                           507 C Street, N.E.
                           Washington, D.C. 20002
                           Telephone: (202) 789-3960
                           Facsimile: (202) 789-1813

Date: _____      THE CONSUMER LAW GROUP

                           By: _____

                           Alan M. Mansfield
                           9466 Black Mountain Road, Suite 225
                           San Diego, California 92126
                           Telephone: (619) 308-5034
                           Facsimile: (888) 341-5048

45

EXECUTION COPY

Date: 9-2-2011                          DOYLE LOWTHER LLP

                                        By _____

                                        James R. Hail
                                        9466 Black Mountain Road, Suite 200
                                        San Diego, California 92126
                                        Telephone: (619) 573-1700
                                        Facsimile: (888) 710-6866


Date: 9/2/11                            LAW OFFICES OF MICHAEL E. LINDSEY

                                        By _____

                                        Michael E. Lindsey
                                        Attorney at Law
                                        4455 Morena Boulevard, Suite 207
                                        San Diego, California 92117
                                        Telephone: (858) 270-7000


Date _____            APPROVED AS TO FORM AND CONTENT
                                        FOR DEFENDANT AMERICAN HONDA
                                        MOTOR CO., INC.

                                        LATHAM & WATKINS LLP

                                        By: _____

                                        Mark S. Mester
                                        233 South Wacker Drive, Suite 5800
                                        Chicago, Illinois 60606
                                        Telephone: (312) 876-7700
                                        Facsimile: (312) 993-9767

46

**EXECUTION COPY**

Date:_____     DOYLE LOWTHER LLP


By: _____

    James R. Hail
    9466 Black Mountain Road, Suite 200
    San Diego, California 92126
    Telephone:  (619) 573-1700
    Facsimile:  (888) 710-6866


Date:_____     LAW OFFICES OF MICHAEL E. LINDSEY


By: _____

    Michael E. Lindsey
    Attorney at Law
    4455 Morena Boulevard, Suite 207
    San Diego, California  92117
    Telephone: (858) 270-7000


Date:___September 6, 2011_____     APPROVED AS TO FORM AND CONTENT
FOR DEFENDANT AMERICAN HONDA
   MOTOR CO., INC.

LATHAM & WATKINS LLP


By: _____

    Mark S. Mester
    233 South Wacker Drive, Suite 5800
    Chicago, Illinois 60606
    Telephone: (312) 876-7700
    Facsimile:  (312) 993-9767